1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

TOEHL HARDING,

                 Plaintiff,       07-CV-08767

         -against-        (RPP)

DAVID NASEMAN,

                 Defendant.

------------------------------------x

                 May 12, 2008

                 10:20 a.m.

DEPOSITION OF DAVID MILFORD NASEMAN

EXHIBITS 1 THROUGH 14

**Computer Reporting Incorporated** 

501 Fifth Avenue  New York, NY 10017
(212) 986-1344  Fax (212) 983-9149  www.crinyc.com

# Exhibit 1

FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TOEHL HARDING,                                    :

                              Plaintiff,          :

          – against –                             :

DAVID NASEMAN,                                    :

                              Defendant.          :
----------------------------------------------------------X

Hon. Robert P. Patterson

07-CV-08767(RPP)

**PLAINTIFF'S FIRST REQUEST
FOR THE PRODUCTION OF
DOCUMENTS AND THINGS**

**PLEASE TAKE NOTICE THAT** pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, and the Report filed in this case pursuant to Rule 26(f) of the Federal Rules of Civil

Procedure, Plaintiff TOEHL HARDING hereby requests that Defendant DAVID NASEMAN

produce the following documents set forth in "SCHEDULE A" annexed hereto, organized as

required by Federal Rule of Civil Procedure 34(b), for inspection and copying by no later than 30

days after service of same, at the offices of Judd Burstein, P.C., 1790 Broadway, Suite 1501, New

York, New York 10019.

Dated: New York, New York
       January 31, 2008

                              Yours, etc.,

                              JUDD BURSTEIN, P.C.

          By:

                              _____
                              Peter B. Schalk (PBS-8257)
                              1790 Broadway, Suite 1501
                              New York, New York 10019
                              Tel: (212) 974-2400
                              Fax: (212) 974-2944

                              *Attorneys for Plaintiff*



TO:    COHEN LANS LLP
        *Attorneys for Defendant David Naseman.*
        885 Third Avenue, 32nd Floor
        New York, NY 10022
        Tel. (212) 980-4500
        **Attn:  Robert Stephan Cohen, Esq. (RC-7592)**
                    **Dan Rottenstreich, Esq. (DR-9278)**

**SCHEDULE A**

I.    **DEFINITIONS**

    1.    The definitions set forth in Rule 26.2 and 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York are deemed to be incorporated herein by reference.

    2.    "Harding" or "Plaintiff" refers to Plaintiff Toehl Harding.

    3.    "Naseman" or "Defendant" refers to Defendant David Naseman, and any agent acting on his behalf.

    4.    "Bothe" refers to Marcia Bothe, a/k/a, Marcia Naseman.

    5.    "PSA" refers to a Property Settlement Agreement signed by Harding and Naseman, on or about May 4, 1993.

    6.    "Shearson Acct." refers to any brokerage or other account(s) with the entity f/k/a Shearson Lehman Bros., a/k/a Lehman Brothers, Inc., its successors or affiliates, in which Naseman had a beneficial interest at any time during the course of the parties' marriage, including, but not limited to, an account established in or around 1991.

    7.    The "Joint Republic Acct." refers to a checking account No. 318181371, held jointly by Harding and Naseman with the entity f/k/a Republic National Bank of New York, its successors or affiliates.

    8.    The "Naseman Republic Acct." refers to a checking account No. 318188309 in which Naseman had a beneficial interest during the course of the parties' marriage, with the entity f/k/a Republic National Bank of New York, its successors or affiliates.

3

9.      "LIN Broadcasting" refers to LIN Broadcasting Corp., now a public subsidiary of

McCaw Cellular Communications, Inc., a corporation that employed Naseman at times during the

course of the parties' marriage.

10.     "McCaw" refers to McCaw Cellular Communications Inc., a corporation that entered

into a merger agreement with LIN Broadcasting in or around December 1989.

11.     The "Dec. 7[th] Rottenstreich Ltr." refers to a letter dated December 7, 2007, from Dan

Rottenstreich, Esq., an attorney representing Naseman in this litigation, to Kent Robinson, Esq., prior

counsel for Harding, concerning, *inter alia*, Defendant's views on the merits of the litigation and a

proposed Scheduling Order.

## II.   REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All account statements for the Shearson Acct.

2.      All documents demonstrating, reflecting, or concerning the distribution or transfer

of funds, shares of stock, bonds, or other assets of any kind out of, or into, the Shearson Acct.

3.      All account statements for any brokerage accounts other than the Shearson Acct., in

which Naseman held a beneficial interest at any time during the parties' marriage.

4.      All documents demonstrating, reflecting, or concerning the distribution or transfer

of funds, shares of stock, bonds, or other assets of any kind out of, or into, any brokerage accounts

other than the Shearson Acct., in which Naseman held a beneficial interest at any time during the

parties' marriage.

5.      All account statements for the Joint Republic Acct.

6.      All documents demonstrating, reflecting, or concerning, the distribution or other

disposition of interest income generated by the Joint Republic Acct.

4

7.   All documents demonstrating, reflecting, or concerning the distribution, disposition, or transfer of any principal out of, or into, the Joint Republic Acct.

8.   All account statements for the Naseman Republic Acct.

9.   All documents demonstrating, reflecting, or concerning, the distribution or other disposition of interest income generated by the Naseman Republic Acct.

10.  All documents demonstrating, reflecting, or concerning the distribution, disposition, or transfer of any principal out of, or into, the Naseman Republic Acct.

11.  All account statements for any bank accounts other than the Joint Republic Acct. and the Naseman Republic Acct, in which Naseman held a beneficial interest at any time during the parties' marriage. This requests includes, but is not limited to, the following accounts: (a) an account with First Interstate Bank of Nevada, established in Naseman's name only in or around February 1993; (b) a money market account with Lee Bank in Lee, Massachusetts, established in Naseman's name only in or around April 1990; and (c) an account with First Florida Bank in the name of Naseman and his mother, established in or around April 1990.

12.  All documents demonstrating, reflecting, or concerning the distribution or other disposition of interest income generated from any of the accounts responsive to Request No. 11 above.

13.  All documents demonstrating, reflecting, or concerning the distribution or transfer of any principal out of, or into, any of the accounts responsive to Request No. 11 above.

14.  All documents reflecting, demonstrating, or concerning why, when, and how many options for the purchase of LIN Broadcasting stock were awarded or otherwise provided to Naseman.

5

15.    All documents reflecting, demonstrating, or concerning Naseman's exercising or otherwise cashing out of any options for the purchase of LIN Broadcasting stock. This request includes, but is not limited to, options that were exercised or otherwise cashed out in 1988 and 1990.

16.    All documents reflecting, demonstrating, or concerning the distribution or other disposition of any income received or otherwise derived by or on behalf of Naseman from options in LIN Broadcasting stock having been exercised or otherwise cashed out. This request includes, but is not limited to, options that were exercised or otherwise cashed out in 1988 and 1990.

17.    All documents reflecting, demonstrating, or concerning the sale of any LIN Broadcasting stock by or on behalf of Naseman.

18.    All documents reflecting, demonstrating, or concerning the distribution or other disposition of any income received or otherwise derived by or on behalf of Naseman from the sale of any LIN Broadcasting stock.

19.    All documents reflecting, demonstrating, or concerning why, when, and how many options to purchase McCaw stock were awarded to Naseman, if any.

20.    All documents reflecting, demonstrating, or concerning Naseman's exercising or otherwise cashing out of any options for McCaw stock.

21.    All documents reflecting, demonstrating, or concerning the distribution or other disposition of any income received or otherwise derived by or on behalf of Naseman from options in McCaw stock having been exercised or otherwise cashed out.

22.    All documents reflecting, demonstrating, or concerning the sale of any McCaw stock by or on behalf of Naseman.

6

23. All documents reflecting, demonstrating, or concerning the distribution or other disposition of any income received or otherwise derived by or on behalf of Naseman from the sale of any McCaw stock.

24. All State and Federal tax returns filed by the parties for any years during which the parties were married, as well as any drafts thereof.

25. All work papers that were used in any way in connection with the preparation of all State and Federal tax returns filed by the parties during their marriage.

26. Naseman's State and Federal tax returns for tax years 1992-1995, as well as any drafts thereof.

27. All work papers that were used in any way in connection with the preparation of Naseman's State and Federal tax returns for tax years 1992-1995.

28. Any contracts, agreements, memoranda of understanding, and the like, including, but not limited to, employment agreements, termination agreements, buyout agreements, and severance packages, as well as any drafts thereof, between LIN Broadcasting and Naseman.

29. All communications between Naseman and LIN Broadcasting concerning the effect(s) and financial ramifications of its merger with McCaw with respect to Naseman.

30. All communications between Naseman and LIN Broadcasting concerning his compensation and other employment benefits of any kind.

31. All documents demonstrating or concerning any and all income, relief of debt, monies, or other consideration of any kind received by or on behalf of Naseman in connection with his severance package from LIN Broadcasting.

7

32.    Any contracts, agreements, memoranda of understanding, and the like, as well as any drafts thereof, between McCaw and Naseman.

33.    Any communications between McCaw and Naseman.

34.    All memoranda or other documents prepared by Naseman concerning the concealment of expenditures from Harding in the context of the parties' divorce, including, but not limited to, Bothe's engagement ring, her tubal reconstructive surgery, and the satisfaction of Bothe's debts.

35.    All documents, including, but not limited to, receipts, cancelled checks, other proof of payments, insurance policies, riders, and the like, concerning Naseman's purchase of an engagement ring for Bothe.

36.    All documents, including, but not limited to, receipts, cancelled checks, promissory notes, satisfactions of judgment, satisfactions of liens, releases, and the like, concerning Naseman's having satisfied any debts of Bothe during the course of the parties' marriage, and for two years following the parties' divorce in 1993.

37.    All documents, including, but not limited to, receipts, cancelled checks, medical records, *etc.*, concerning Naseman's having paid for tubal reconstructive surgery, or other medical procedure(s), on behalf of Bothe, during the course of the parties' marriage, and for two years following the parties' divorce in 1993.

38.    All documents, including, but not limited to, bank records, cancelled checks, receipts, and the like, demonstrating monies or other consideration Naseman transferred to his relatives during the course of the parties' marriage.

39. All memoranda or other documents prepared by Naseman concerning or describing assets held individually or jointly with Harding for any years during which the parties were married.

40. All W-2s, 1099s, and K-1s received by Naseman for all years during any portion of which the parties were married.

41. All reports, findings, and writings of any kind, as well as any drafts thereof, prepared by any experts retained by Naseman, including, but not limited to, the document analysis expert referenced on p. 2 of the Dec. 7th Rottenstreich Ltr.

42. The original documents analyzed by the document analysis expert referenced on p. 2 of the Dec. 7th Rottenstreich Ltr., for review and inspection by counsel, Harding, and Plaintiff's document expert.

43. The loan application referenced on p. 1 of the Dec. 7th Rottenstreich Ltr., that allegedly placed Harding on notice of various stock options and resulting income that are at issue in this case.

44. The financial disclosure statement referenced on p. 1 of the Dec. 7th Rottenstreich Ltr., that allegedly placed Harding on notice of various stock options and resulting income that are at issue in this case.

45. Any other documents than those set forth in Requests No. 43 and 44 above, that Naseman contends allegedly placed Harding on notice of various stock options and resulting income that are at issue in this case, as well as proof of notice to Harding of same, if any.

46. The public filings with the SEC, referenced on p. 2 of the Dec. 7th Rottenstreich Ltr., which allegedly should have put Harding on notice of the existence of stock options at issue in this litigation.

9

47.    All drafts of the PSA.

48.    All communications between counsel for the parties concerning the negotiation of the PSA.

49.    All documents demonstrating, reflecting, referring to, or concerning any financial disclosure(s) made by or on behalf of Naseman to or on behalf of Harding, in the context of the parties' negotiation of the PSA.

50.    All documents demonstrating, reflecting, referring to, or concerning any financial disclosure(s) made by or on behalf of Harding to or on behalf of Naseman, in the context of the parties' negotiation of the PSA.

51.    All documents concerning or reflecting the satisfaction of mortgages held on the following properties in which, *inter alia,* Naseman held an ownership or other beneficial interest: (a) 425 East 51st St., Apt. 5A, New York, New York; (b) 425 East 51st St., Apt. 6A, New York, New York; (c) 150 Lee Road, Lenox, Massachusetts; (d) Nine Mile Point Drive, Clarlexvoix, Michigan; and (e) 512 Venice Avenue West, Unit 603, Venice, Florida.  This request includes, but is not limited to, documents reflecting or otherwise demonstrating the source of the funds used to satisfy the mortgages on the foregoing properties.

52.    Any appraisals of the properties listed in Request No. 51 above.

53.    All deeds for any of the properties listed in Request No. 51 above.

54.    Any alleged waivers of dower executed by Harding.

55.    All documents demonstrating or concerning the source of funds used to purchase any motor vehicles obtained during the course of the parties' marriage, including, but not limited to: (a)

10

a 1989 Jaguar Vanden Plas Sedan; (b) a 1989 Volvo 760 Sedan; (c) a 1991 Ford F-150 Pick-up Truck; and (d) a 1922 Ford Model T.

56.    All documents concerning the motor vehicles listed in Request No. 55 above, including, but not limited to, the vehicles' insurance, title, bills of sale, etc.

57.    Naseman's current *curriculum vitae*.

58.    Any deficiency notices sent to Naseman by or on behalf of the Internal Revenue Service or other taxing authority.

59.    Any and all financial statements for Naseman, whether individual or joint, reflecting his net worth, individually or jointly, from 1982-1995.

60.    The pleadings in any litigations to which Naseman was a party.

61.    All sworn statements given by Naseman in the context of any litigations to which he was a party.

62.    All documents, information, and things provided in response to the February 5, 1993 letter from Richard B. Cohen, Esq., an attorney who represented Harding during her divorce with Naseman, to Leonard Florescue, Esq., one of Naseman's lawyers in that proceeding.

63.    To the extent not covered by the prior Requests, all documents concerning, relating to, or reflecting all cash accounts held by Naseman during the course of the parties' marriage, as well as during the negotiation of the PSA.

64.    To the extent not covered by the prior Requests, all documents concerning, relating to, or reflecting all securities held by Naseman during the course of the parties' marriage, as well as during the negotiation of the PSA.

65.    To the extent not covered by the prior Requests, all documents concerning, relating to, or reflecting all business interests held by Naseman during the parties' marriage, as well as during the negotiation of the PSA.

66.    To the extent not covered by the prior Requests, all documents concerning, relating to, or reflecting all real estate interests held by Naseman during the parties' marriage, as well as during negotiation of the PSA.

67.    All documents concerning, relating to, or reflecting all pensions and trusts held by Naseman during the parties' marriage, as well as the negotiation of the PSA.

68.    All documents concerning, relating to, or reflecting all contingent interests held by Naseman during the parties' marriage, as well as during the negotiation of the PSA.

69.    All documents concerning, relating to, or reflecting all insurance policies pursuant to which Defendant or Plaintiff were the insured, beneficiary or trustee, including, but not limited to, homeowner's insurance policies, life insurance policies, health insurance policies, and umbrella insurance policies, during the course of the parties' marriage.

70.    All documents concerning, reflecting, or constituting any wills and codicils, trusts, and insurance policies, executed or entered into during the course of the parties' marriage, regardless of whether rescinded, revoked, or in effect.

71.    All retainer agreements and invoices for all appraisers, accountants, and forensic experts retained by or on behalf of Defendant or paid by or on behalf of Defendant with respect to the instant action.

12

72.    All documents relating to Plaintiff's or Defendant's credit card accounts, whether individually or jointly held during the course of their marriage, including, but not limited to, monthly statements and year end account summaries.

73.    To the extent not covered by prior Requests, all documents and statements for all other accounts held on behalf of Defendant in which Defendant had an equitable or legal interest, or was a signatory, or which were held by others on behalf of Defendant while he was married to Harding, including, but not limited to, brokerage accounts, investment accounts, trusts, and trust accounts.

74.    Financial statements or records received by Defendant concerning any tax shelters or limited or general partnerships in which Defendant had an interest during the course of the parties' marriage.

75.    Records of safe deposit boxes maintained by Defendant in his own name or jointly with others or to which Defendant is or was a signatory while he was married to Harding, including, but not limited to, records reflecting the name of the depository, the number of the box and the inventory of each box at the time of the negotiation of the PSA.

STATE OF NEW YORK                    )
                                     ) ss.:
COUNTY OF NEW YORK                   )

PAUL GUZMAN, being sworn, deposes and says:

The deponent is not a party to this action, is over 18 years of age and resides in Rego Park, New York. On January 31, 2008 I served the within Plaintiff's First Request for the Production of Documents and Things
Upon:

> Robert Stephan Cohen, Esq.
> Dan Rottenstreich, Esq.
> Cohen Lans LLP
> 885 Third Avenue, 32nd Floor
> New York, NY 10022

by sending a true copy of same enclosed in a properly addressed wrapper, addressed as shown into the custody of **FEDERAL EXPRESS** for overnight delivery prior to the latest time designated by that service for overnight/next business morning delivery

PAUL GUZMAN

Sworn to before me this
31st day of January, 2008

Notary Public

JULIAN A. DAVILA
Notary Public, State of New York
No. 01DA6056019
Qualified in Queens County
Commission Expires 3/12/20