# Exhibit 2

EXHIBIT 2



PROPERTY

SETTLEMENT AGREEMENT

BY AND BETWEEN

DAVID NASEMAN

AND

TOEHL HARDING

31479/0001/LNW/3953



PLAINTIFF'S
EXHIBIT
2

AGREEMENT made this ___ day of May, 1993, by and between DAVID M. NASEMAN ("Mr. Naseman"), residing at 869 Freels Peak Drive, Incline Village, Nevada 89452, and TOEBL HARDING ("Ms. Harding"), residing at 425 East 51st Street, New York, New York 10022.

### W I T N E S S E T H :

WHEREAS, the parties were duly married to each other in Lenox, Massachusetts on October 19, 1982; and

WHEREAS, there are no children of the marriage, and there are no expected children of the marriage; and

WHEREAS, the parties were granted a full and final decree of divorce on April 21, 1993 by a final Judgment of the Second Judicial District Court, State of Nevada, County of Washoe, (Index No. DV 93-D0466, Dept. No. 2); and

WHEREAS, the parties desire to fix their respective financial and property rights, and all other rights, privileges, obligations and matters with respect to each other arising out of their former marital relationship and otherwise;

NOW, THEREFORE, it is agreed as follows:

### ARTICLE 1

### ARTICLE HEADINGS

The headings at the beginning of each Article of this Agreement are for reference purposes only and shall not, in any manner, constitute terms or conditions of this Agreement, nor shall they be applicable to any interpretation of the intention or meaning of any part of this Agreement.

33679/8303/tor/7743

## ARTICLE 2

### NEVADA DIVORCE
### AND RELIGIOUS DIVORCE

1.    Ms. Harding acknowledges and represents that she was personally served with a summons and complaint on March 25, 1993 in an action entitled David N. Naseman v. Toehl Harding, in the Family Division of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe (Case No. DV 93-00466; Dept. No. 2) (the "Nevada Action"). Ms. Harding further acknowledges that she appeared in the Nevada Action through counsel and expressly consented to the final Judgment of divorce referred to in paragraph 2 of this Article.

2.    Ms. Harding acknowledges that a final Judgment divorcing the parties (the "Nevada Divorce") was made and entered on the 21st day of April, 1993 in the Nevada Action.

3.    Ms. Harding agrees that:

(a)    She waives, releases, renounces and relinquishes, now and forever, any right to contest the jurisdiction (both subject matter and personal) of the Nevada Court to grant a final Judgment divorcing the parties in the Nevada Action;

(b)    She waives, releases, renounces and relinquishes, now and forever, any right she may have to appeal the granting of the final Nevada Divorce;

(c)    She waives, releases, renounces and relinquishes, now and forever, any right she may have to contest the validity of the final Nevada Divorce, whether directly or by

-3-

S1470/0001/10N/0003

collateral attack, or by plenary action, declaratory judgment action, or otherwise, in Nevada, in New York, in Massachusetts or in any other jurisdiction, domestic or foreign.

4.    Ms. Harding, by the execution of this Agreement, dismisses her counterclaims in the Nevada Action with prejudice and directs her counsel in Nevada immediately to execute and deliver any and all documents reasonably necessary to effectuate the said dismissal with prejudice.  Moreover, she has simultaneously executed and delivered to Mr. Naseman a stipulation dismissing her counterclaim with prejudice.

5.    Ms. Harding acknowledges her understanding that having the Nevada Divorce entered on or about April 20, 1993, and the provisions of paragraphs 3 and 4 of this Article were a material, bargained-for aspect of this Agreement on Mr. Naseman's part when he agreed to the terms proposed by Ms. Harding in the letter from her counsel to Mr. Naseman's counsel dated April 15, 1993.

6.    The parties agree that, notwithstanding any language in the following documents, or any rule of law, to the effect that settlement negotiations are not admissible into evidence:  (a) the draft Separation Agreement delivered to Ms. Harding by Mr. Naseman in November 1992; (b) the letter dated February 5, 1993 from Richard B. Cohen to Leonard G. Florescue; (c) the letter from Leonard G. Florescue to Richard B. Cohen dated March 29, 1993; (d) the letter from Richard B. Cohen to Leonard G. Florescue dated April 15, 1993; (e) the letter from Leonard G. Florescue to Richard B. Cohen dated April 19, 1993;

-3-

D1472/0001/067/1993

TH712

(f) the letter from Richard B. Cohen to Leonard G. Florescue and
countersigned by both dated April 19, 1993 and (g) the letter
form Ms. Harding to the court in the Nevada Action dated
April 21, 1993, (all annexed as Exhibit A) may be admitted into
evidence by the party in order to defend the Agreement or the
Nevada Divorce if the other party attacks the final Nevada
Divorce or any of the provisions of this Agreement in any action.

7.    Simultaneously with the execution of this
Agreement Ms. Harding shall execute and deliver to Mr. Naseman a
letter (in the form annexed as Exhibit B) stating that the
parties' marriage was not sanctioned by the Roman Catholic
Church.

### ARTICLE 3
### PRIVACY OF THIS AGREEMENT AND NONINTERFERENCE

1.    It is, and shall be, lawful for the parties to
reside from time to time at such places as each may see fit and
to contract, carry on and engage in any employment, profession,
business or trade, which either may deem fit, free from control,
restraint, or interference, direct or indirect, by the other.
Neither party shall in any way molest, disturb, trouble, or
interfere with the peace and comfort of the other.

2.    (a)  Neither party, nor their assigns, successors,
associates, or their attorneys (collectively "Affiliates") shall
divulge the terms and provisions of this Agreement or cause to be
disseminated any of the provisions contained within this
Agreement to any third party (including, without limitation

-4-

22679/0021/DOC/1593

TH713

relatives of either party) not directly involved with this Agreement except those to whom the communication would be privileged.

(b) Neither party nor their Affiliates shall discuss the other's personal or business matters with any other person(s) including, without limitation, relatives of either party;

(c) Any violation of the terms of subparagraphs 2(a) and (b) shall constitute a material breach of this Agreement. In addition, in the event of any such breach, both parties hereby consent to the granting of a temporary or permanent injunction against him or her (or against any agent or Affiliate acting at his or her behest) by any court of competent jurisdiction prohibiting him or her (or his or her agent or Affiliate) from violating the terms of this paragraph. In any proceeding for an injunction and upon any motion for a temporary or permanent injunction, both parties agree that his or her ability to answer in damages shall not be a bar to, or be interposed as a defense to, the granting of such temporary or permanent injunction. Both parties further agree that the other will not have an adequate remedy at law in the event of any breach of the provisions of this paragraph and that the other party will suffer irreparable damage and injury in the event of any such breach.

-5-

TH714

## ARTICLE 4

### SEPARATE OWNERSHIP

1.   Except as otherwise expressly provided in Article 12 of this Agreement, each party shall own, as his or her separate property, free of any claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and wheresoever situate, which are now, either titularly or beneficially, in his or her name, control or possession, with full power to dispose of the same as fully and effectually in all respects and for all purposes as if never married to each other.

2.   Except as otherwise expressly provided in Article 12 of this Agreement, Mr. Naseman acknowledges that he has no right, title or interest in and to any bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by Ms. Harding or subsequently acquired by Ms. Harding, whether in her sole name or in trust for another.

3.   Except as otherwise expressly provided in Article 12 of this Agreement, Ms. Harding acknowledges that she has no right, title or interest in and to any bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by Mr. Naseman or subsequently acquired by Mr. Naseman, whether in his sole name or in trust for another.

-6-

TH715

## ARTICLE 5
### SEPARATE RESPONSIBILITY FOR DEBTS

1.  Except as is otherwise expressly set forth in paragraph 4 of this Article, Ms. Harding represents that she has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which Mr. Naseman or his estate is or may become liable. Ms. Harding shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of Mr. Naseman or for which Mr. Naseman or his estate may become liable. Ms. Harding shall satisfy and hold Mr. Naseman free and harmless from and indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which has been or may hereafter be incurred or contracted by her for the benefit of herself or for any other person than Mr. Naseman.

2.  Except as is otherwise expressly set forth in paragraph 4 of this Article, Mr. Naseman represents that he has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which Ms. Harding or her estate is or may become liable. Mr. Naseman shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of Ms. Harding or for which Ms. Harding or her estate may become liable. Mr. Naseman shall satisfy and hold Ms. Harding free and harmless from and

-7-

22479/0001/LAW/2933

indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which has been or may hereafter be incurred or contracted by him for the benefit of himself or any other person than Ms. Harding.

3.   Mr. Naseman or Ms. Harding, as the case may be, shall reimburse the other for all charges that he or she makes against the other's accounts or the other's business accounts after the execution of this Agreement, or for charges which he or she incurred before the execution of this Agreement but for which bills have not yet been received, to the extent that such charges were incurred without the other's consent.

4.   The parties acknowledge making a pledge of $2,000 to the Berkshire Playhouse Theater. Mr. Naseman represents that he has paid the first $1,000 of that pledge. Ms. Harding represents that she will pay the remaining $1,000. If either party's representation is untrue, he or she will indemnify the other against the same.

### ARTICLE 6

### SEPARATE RESPONSIBILITY FOR INCOME TAXES

1.   (a)  If in connection with any joint income tax returns heretofore filed by the parties there is any deficiency assessment, the amount ultimately determined to be due thereon, including penalties and interest, shall be paid by Mr. Naseman except to the extent that the deficiency has been caused by the inaccuracy of Ms. Harding's representation in subparagraph 2(a) of this Article.

-8-

P1479/0002/209/1953

(b)  Mr. Naseman, to the extent that the same has not been caused by the inaccuracy of Ms. Harding's representation in subparagraph 2(a) of this Article, indemnifies and holds Ms. Harding harmless against any tax assessment, penalty or interest and any expenses, including, without limitation, attorneys' and accountants' fees incurred in connection therewith.

2.  (a)  Ms. Harding represents and warrants that, to the best of her knowledge, she accurately and correctly advised Mr. Naseman (at the time of the preparation and filing of the said returns) of all income, deductions, tax bases and credits attributable solely to her.

(b)  To the extent that any assessment, penalty or interest is brought about by the failure of Ms. Harding to have accurately and correctly advised Mr. Naseman, as set forth in subparagraph 2(a), she indemnifies and hold Mr. Naseman harmless against any such assessment, penalty or interest and any expenses, including, without limitation, attorney's fees and accountant's fees incurred in connection therewith.

3.  (a)  Ms. Harding agrees to cooperate (in any reasonable manner) fully with Mr. Naseman in the event of any audit or examination of the said joint tax returns by a taxing authority and agrees to furnish to Mr. Naseman or his designee, promptly and without charge, such papers, records, documents, authorizations and information as may be reasonably appropriate in connection with said audit or examination including, without limitation, a power of attorney to negotiate and consummate any settlement of such audit or examination on her behalf, provided,

-9-

however, that if the audit or examination arises in whole or in part from any understatement of Ms. Harding's own income, or an overstatement of her deductions, bases or credits, such that she would be potentially liable under paragraph 2 of this Article to indemnify Mr. Naseman, then Mr. Naseman will "cooperate fully, etc.", as provided above in this subparagraph *mutatis mutandis*.

(b)  Any consent by either party required to reach a settlement with any taxing authority shall not be unreasonably withheld.

4.  All refunds or credits derived from previously filed joint income tax returns shall be shared equally by the parties.  Mr. Naseman represents that he is unaware of any anticipated refund.

5.  The parties will file separate income tax returns for 1992.

### ARTICLE 7

### MUTUAL EQUITABLE DISTRIBUTION WAIVER

1.  The parties hereby agree that all of their property, including all of their "marital property" as that term is defined in Section 236, Part (B) of the New York Domestic Relations Law, has been fairly and equitably divided between them pursuant to the terms of this Agreement.

2.  Except as otherwise expressly provided in Article 12 of this Agreement, each party waives any and all rights or claims (whether arising at law, in equity or by virtue of their former marital relationship) which he or she may have to

-10-



TH719

an award of equitable distribution or a distributive award in respect of any property now or previously owned (titularly or beneficially) by the other former-spouse (together with the appreciation and income thereof) or acquired jointly, either before, during or after the marriage and either before or after the execution of this Agreement.

3.    The payments and transfers of property that Mr. Naseman has obligated himself to make pursuant to the terms of this Agreement are in full satisfaction of Ms. Harding's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all of Ms. Harding's claims for attorneys' fees, accountants' fees, and other expenses that have been or may be incurred by her in reference to the execution of this Agreement, the Nevada Action, and the obtaining of the Nevada Divorce.

4.    The payments and transfers of property that Ms. Harding has obligated herself to make pursuant to the terms of this Agreement are in full satisfaction of Mr. Naseman's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all Mr. Naseman's claims for attorneys' fees, accountants' fees, and other expenses that have been or may be incurred by him in reference to the execution of

-11-

11079/9051/109/3583

TH720

this Agreement, the Nevada Action, and the obtaining of the Nevada Divorce.

## ARTICLE 8

### MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS

1.    Mr. Naseman hereby releases, and forever discharges Ms. Harding, her heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, past, present, or future which Mr. Naseman, his heirs, executors, administrators, successors and assigns ever had or now has against Ms. Harding, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B) or arising out of the former marital relationship.

2.    Ms. Harding hereby releases, and forever discharges Mr. Naseman, his heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,

-12-

TH721

promises, variances, trespasses, damages, judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, past or present, which Ms. Harding, her heirs, executors, administrators, successors and assigns ever had or now have against Mr. Naseman, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B) or arising out of the former marital relationship.

## ARTICLE 9

### MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

1. Each party hereto waives, renounces, grants and releases to the other forever, and for all purposes whatsoever, any and all rights and claims against the other's estate including dower, curtesy and community property rights and interests, and any right of election, under the relevant provisions of the Estates, Powers and Trusts Law of the State of New York or under the laws of testacy or intestacy in any jurisdiction whatsoever, which he or she now has or may hereafter acquire in the real or personal property or estates of the other, wheresoever situated and whether before or subsequent to the date of this Agreement, by reason of inheritance or descent, or by virtue of any decedent's estate law or any other statute or custom, or arising out of the former marital relationship, or for any other reason whatsoever.

-13-

22272/0001/207/2963

TH722

2.    The parties hereto expressly revoke their respective Wills insofar as the same may make any disposition (whether outright or in trust) to or for the benefit of the other and further revoke any nomination of the other party as an estate representative or in any other representative or fiduciary capacity thereunder, it being the intent of the parties that all Wills made and executed by either of them prior to the Nevada Divorce and the acknowledgment of this Agreement shall be read and administered as if the other party had predeceased him or her for purposes of distribution of his or her respective estate or the property interests otherwise passing thereunder.

3.    Where a party may be designated a beneficiary or survivor in a testamentary substitute pursuant to which any interest in property does not pass under a Will, each of the parties hereby renounces and agrees to renounce any such designation and the beneficiary or survivor shall be deemed to be the estate of the party having originally made the designation.

4.    Each of the parties hereby further renounces and agrees to renounce any right of administration upon the estate of the other or nomination by the other as estate representative, as provided for by the laws or practices of any jurisdiction whatsoever. Neither party shall object to the probate of the other's Last Will and Testament and in the event that either party dies intestate, the surviving party shall allow administration upon the estate and personal effects of the deceased party to be taken and received by any person who would

-14-

TH723

have been entitled thereto had the surviving party predeceased the deceased party unmarried.

5.    Each party shall, upon request by the executors, administrators or other legal representatives of the other party, promptly (and without charge) execute, acknowledge and deliver any instrument which in the opinion of said executors, administrators or other legal representatives is necessary to effectuate the waiver of his or her right of election against the last will and testament of the other, and the waiver of all dower, curtesy and other rights to take as distributee, heir, next-of-kin and the like.

6.    However, the foregoing shall not bar a claim on the part of either party against the estate of a deceased party for any cause arising out of a breach of this Agreement during the lifetime of the deceased party against whose estate such a claim may be made.

## ARTICLE 10
### SUPPORT AND MAINTENANCE OF THE PARTIES

1.    Taking into consideration all relevant facts and circumstances, including but not limited to the employment and employment potential of Ms. Harding and Mr. Naseman, both of whom are attorneys, and the substantial assets to be held by each party following the execution of this Agreement, neither Mr. Naseman nor Ms. Harding seeks or requires any alimony, maintenance or spousal support from the other now or in the future.    Therefore, no provision for the support or maintenance of either Mr. Naseman or Ms. Harding is made herein, and each

-15-

TH724

forever waives any claim for support or maintenance or alimony in the future.

2.    As more expressly provided for in Article 2, Ms. Harding, simultaneously herewith, will dismiss, with prejudice, her counterclaim for spousal support, alimony or maintenance in the Nevada Action.

## ARTICLE 11
### MEDICAL INSURANCE AND RELATED EXPENSES

1.    Ms. Harding shall promptly execute all documents necessary to convert Mr. Naseman's present health insurance coverage, maintained under her employment with NYNEX to an individual policy providing the same benefits as those to which he was entitled prior to the divorce, consistent with the terms, conditions and requirements of the NYNEX policy.  Ms. Harding shall take all reasonable steps necessary to keep Mr. Naseman's health insurance in effect for the three (3) years following the date of divorce as provided by the Consolidated Omnibus Budget Reconciliation Act of 1985, Title X Pub.L. 99-272 effective April 7, 1986 ("COBRA").  The cost of such medical insurance shall be paid solely by Mr. Naseman and he shall indemnify Ms. Harding for any actual expense incurred by her in the implementation of this paragraph.

2.    Each party agrees to promptly fill out, execute and deliver to the other (at the address specified by Article 16, paragraph 8) all forms and provide all information in connection with any application that may be necessary for the other's

-16-

22472/4001/LDW/2503

medical, dental and drug expenses under any insurance policies which the other may have.

## ARTICLE 12
### MARITAL PROPERTY

1.    The parties own as joint tenants with the right of survivorship, 630 shares of stock (par value $1) in the Beekman Hill House Apartment Corp. which represents their ownership of Apartment 6-A in premises located at 425 East 51st Street, New York, New York 10022. The parties are also signatories to the proprietary lease appurtenant to said apartment. Upon the execution hereof, Mr. Naseman shall convey to Ms. Harding, all of his right, title and interest in and to the said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

2.    The parties presently own as joint tenants with the right of survivorship, another 625 shares of stock (par value $1) in the Beekman Hill House Apartment Corp. which represents their ownership of Apartment 5-A in premises located at 425 East 51st Street, New York, New York 10022. The parties are also signatories to the proprietary lease appurtenant to that apartment. Upon the execution hereof, Mr. Naseman shall convey to Ms. Harding, all his right, title and interest in and to the

-17-

J1478/00021/LHF/9953

said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

3.    (a) Mr. Naseman, at the time of execution of this Agreement, shall deliver to Ms. Harding a bank or certified check for three thousand seven-hundred thirty one and 37/100 ($3,731.37) as and for his complete contribution with respect to any taxes or expenses entailed in the transfer of the two cooperative apartments.

(b) Ms. Harding shall be solely responsible for any expenses involved in the transfer of said stock and leases from Mr. Naseman and Ms. Harding to Ms. Harding including, but not limited to, New York City and New York State transfer taxes, recording fees, and charges of the Managing Agent and/or the Cooperative Board, and she shall indemnify him against the same. The parties each represent to the other that the said cooperative apartments are free and clear of any mortgages, liens or encumbrances occasioned by his or her individual acts of commission or omission.

4.    There shall be no adjustment for taxes, cooperative maintenance or apportionments and Mr. Naseman shall not be liable for any taxes, cooperative maintenance or apportionments in 1993. From and after the said conveyances, Ms. Harding shall be solely liable for all expenses in connection

-18-

with said premises, including but not limited to maintenance payments, insurance, taxes, telephone, utilities and ordinary repairs. From and after the execution hereof, Mr. Naseman shall have no right or claim with respect to the said apartments, their use or their proceeds in the event of a sale or other disposition thereof.

5.    Ms. Harding shall indemnify and hold Mr. Naseman harmless of all loss, expenses (including reasonable attorneys' fees) and damages which he may incur as the result of a failure on the part of Ms. Harding to perform the obligations relating to, or as a result of, her occupancy and ownership of the premises.

6.    Ms. Harding shall be the sole owner of the contents and furnishings contained in the said cooperative apartments 5-A and 6-A free of any claim or right of Mr. Naseman thereto.

7.    (a)  Simultaneously with the execution of this Agreement Mr. Naseman shall transfer to Ms. Harding, by wire transfer to Republic National Bank Insured Money Director Account # 318251620, five hundred thousand dollars ($500,000) from the funds currently located in insured money director account #0318181371 located at the Republic National Bank of New York.

(b)  Mr. Naseman shall retain the balance of the funds currently located in the said account #0318181371 (approximately $425,000).

(c)  Simultaneously with the execution of this Agreement, Ms. Harding will execute and deliver to Mr. Naseman

-19-

TH728

documents necessary to waive, renounce and relinquish any and all rights she has in the balance of the funds in the said account #0318181371.

(d)   Following the said transfers, neither Mr. Naseman nor Ms. Harding shall have any claim or right (whether arising at law, in equity or by virtue of the former marital relationship) to any of the funds currently in the said account #0318181371 and transferred to, or retained by, the other as provided in subparagraphs 7(a) or 7(b).

8.   (a)   Mr. Naseman is the owner of: a 1989 Jaguar Vanden Plas, VIN No. SAJKY1547KC569398, a 1991 Ford F150 Pick-up, VIN No. 2FTEF14N8MCA86947; a 1989 Volvo 760 Sedan, VIN No. YV1GA874XK0067382; and, a 1923 Ford Model T Touring Car, (no VIN). Each party represents and warrants to the other that there are no liens or chattel mortgages outstanding with respect to the said four automobiles occasioned by his or her acts of omission or commission.

(b)   In full satisfaction of Ms. Harding's claims or rights to any of the automobiles, simultaneously with the execution of this Agreement, Mr. Naseman has executed and delivered to Ms. Harding all documents necessary to transfer the ownership and registration of the said Volvo to Ms. Harding (including, but not limited to, the certificate of title and a letter confirming the transfer), and Ms. Harding agrees to pay all expenses relating to the operation, insurance, maintenance and garaging of said vehicle after the execution of this Agreement. Ms. Harding acknowledges Mr. Naseman's advice that

-20-

TH729

the Volvo will be uninsured from and after May 14, 1993 and that she will, thereafter, be solely responsible for maintaining the insurance thereon. Ms. Harding agrees to return the Massachusetts plates for the said Volvo to Mr. Naseman by express mail upon her obtaining new insurance for the Volvo or on May 14, 1993, whichever is the sooner.

(c)  Ms. Harding represents that the Volvo has not been involved in any accident, nor does it have any outstanding summonses for parking or moving violations, for which Mr. Naseman is, or may be, liable. If there, nonetheless, are any such liabilities, Ms. Harding agrees to indemnify and hold Mr. Naseman harmless from them. This representation and indemnity will apply through the date upon which Ms. Harding surrenders the license plates to Mr. Naseman as provided in subparagraph 8(b) above.

(d)  Ms. Harding will promptly take all steps necessary to transfer the account with the garage where the said Volvo is parked in New York, New York into her sole name. She agrees to indemnify Mr. Naseman against all liability for the payment of this account whether arising on or after February 1, 1993 or after the date of this Agreement.

9.  (a)  The husband is the sole owner of Lots 34 and 35 located at Nine Mile Point Drive of Michigan Shores, Charlevoix, Michigan, and the residence erected on Lot 34, commonly known as 06452 Nine Mile Point Drive, Charlevoix, Michigan 49720.

(b)  (i)  Mr. Naseman represents that the said lots 34 and 35 and the said residence are free and clear of any

-21-

mortgages, liens or other encumbrances; (ii) Ms. Harding represents that she knows of no mortgages, liens or encumbrances upon the said lots and residence, placed there as a result of any act of omission or commission by her.

(c)  Mr. Harding waives any right, title or interest in and to the said Lots and residence, and any personalty located therein irrespective of whether such right, title or interest arises at law, in equity or by virtue of the former marital relationship.  Simultaneously herewith she has executed and delivered to Mr. Naseman a quitclaim deed transferring all of her right, title and interest in and to the said property to Mr. Naseman.

10.  (a)  The parties are the owners, as tenants in common with right of survivorship, of approximately 8.7 acres of land and a residence and barn located at 150 Lee Road, Lenox, Berkshire County, Massachusetts 01240.

(b)  Each of the parties represents to the other that the said 8.7 acres and residence and barn are free and clear of any mortgages, liens or encumbrances placed there as a result of any act of omission or commission by him or her.

(c)  Simultaneously with the execution of this Agreement, Ms. Harding has executed and delivered to Mr. Naseman, all documents necessary to transfer to Mr. Naseman all of her right, title and interest in and to the said 8.7 acres and residence and barn.

(d)  From and after the date of this Agreement, Mr. Naseman shall be the sole owner of any personal property

-22-

21472/1843/1247/2232



located at the said 8.7 acres and residence and barn free of any
claim or right thereto of Ms. Harding.

11.    (a)   Mr. Naseman is the sole owner of a
condominium described as Unit #603 and an undivided 1.93% share
in the common elements appurtenant thereto, according to the
Declaration of Condominium of the Venice Avenue Condominium,
relating to 512 Venice Avenue West, Venice, Sarasota County,
Florida 34285.

(b)   (i)   Mr. Naseman represents that the said
condominium is free and clear of any mortgages, liens or
encumbrances; (ii) Ms. Harding represents that she knows of no
mortgage, lien or encumbrances upon the said condominium placed
there as a result of any act of omission or commission by her.

(c)   Ms. Harding waives any right, title or
interest in and to the said condominium and to any personalty
located therein, irrespective of whether such right, title or
interest arises at law, in equity or by virtue of the former
marital relationship.  Simultaneously herewith she has executed
and delivered to Mr. Naseman a quitclaim deed transferring all of
her right, title and interest in and to the said condominium to
Mr. Naseman.

12.   Without limiting the generality of the foregoing,
with respect to any property which Mr. Naseman or Ms. Harding
shall own following the transfers made pursuant to this Article,
Mr. Naseman or Ms. Harding, as the case may be, agrees that he or
she will indemnify and hold the other harmless of all loss,
expenses (including reasonable attorneys' fees) and damages which

-23-

TH732

the other may incur as the result of a failure on his or her part to perform the obligations relating to, or as a result of, his or her occupancy and ownership of the premises, whether such failure arises before or after the execution of this Agreement.

13.  (a)  Mr. Naseman and Ms. Harding agree and understand, and have been so advised by their respective attorneys, that no taxable gain or loss is recognized by the conveyances pursuant to this Article as provided for in Section 1041 of the Internal Revenue Code of 1986.  Neither Mr. Naseman or Ms. Harding shall take any position on his or her federal, state or local income tax returns, with respect to the tax basis of the property conveyed, that is inconsistent with the preceding sentence of this paragraph.

(b)  Each party will promptly deliver to the other any documents (in his or her possession, custody or control) relating to the tax basis of the properties to be held by the other following the execution of this Agreement and the transfers contemplated herein.

## ARTICLE 13

### INQUIRY AND DISCLOSURE

1.  Mr. Naseman has had the opportunity to make independent inquiry into the complete financial circumstances of Ms. Harding and represents to Ms. Harding that: he is satisfactorily informed of the income, assets, property and financial prospects of Ms. Harding; he is aware of all separate property and all marital property as those terms are defined in

-24-

TH733

Domestic Relations Law §236(B); that he is satisfied that full
disclosure has been made, and that he cannot appropriately make a
claim against Ms. Harding by reason of her failure to disclose or
his failure of knowledge of the financial circumstances of Ms.
Harding.

2.    Mr. Naseman has had a full opportunity and has
consulted at length with his attorneys, to wit:  Leonard G.
Florescue, Esq., of Tenzer, Greenblatt, Fallon & Kaplan in New
York, New York and Gary Silverman of Silverman, Decaria Chtd. in
Reno, Nevada regarding all of the circumstances hereof.

3.    Mr. Naseman further acknowledges that this
Agreement has been freely entered into by him, without fraud,
duress or undue influence exercised by Ms. Harding or by any
other person or persons upon him.

4.    Ms. Harding has had the opportunity to make
independent inquiry into the complete financial circumstances of
Mr. Naseman and represents to Mr. Naseman that she is
satisfactorily informed of the income, assets, property and
financial prospects of Mr. Naseman; she is aware of all separate
property and all marital property as those terms are defined in
Domestic Relations Law §236(B); she is satisfied that full
disclosure has been made, and that she cannot appropriately make
a claim against Mr.Naseman by reason of his failure to disclose
or her failure of knowledge of the financial circumstances of Mr.
Naseman.

5.    Ms. Harding has had a full opportunity and has
consulted at length with her attorneys, to wit: Richard B. Cohen

-25-

TH734

of Akabas & Cohen in New York, New York and Cassandra D. Campbell of Logar, Campbell in Reno, Nevada regarding all of the circumstances hereof.

6.    Ms. Harding further acknowledges that this Agreement has been freely entered into by her, without fraud, duress or undue influence exercised by Mr. Naseman or by any other person or persons upon her.

### ARTICLE 14
#### PENSION RIGHTS

1.    Ms. Harding hereby consents to Mr. Naseman's election to waive a qualified joint and survivor annuity form of benefit and a qualified preretirement survivor annuity form of benefit under any plan of deferred compensation to which Section 401(a)(11)(B) of the Internal Revenue Code of 1986 (the "Code") and/or Section 205(b)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") shall apply and in which Mr. Naseman currently or hereafter may be deemed a vested participant within the meaning of Section 417(f)(1) of the Code and Section 205(h)(1) of ERISA.

2.    Ms. Harding further consents to Mr. Naseman's current and future designation of any alternative form of benefit and of beneficiaries other than Ms. Harding under any of such plans (and to any revocation and/or modification of such designations) including any of such plans referred to in Section 401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

-26-

21479/0401/LCW/3302

3.    Ms. Harding hereby further agrees promptly to execute (and deliver without charge) any and all documents or forms which shall be required, at any time, and from time to time, by any or all such plans, including but not limited to, any consents required by Section 417(a)(2) of the Code or Section 205(c)(2) of ERISA to effect the payment of benefits in this manner.

4.    Ms. Harding hereby acknowledges that she understands the effect of Mr. Naseman's elections and her consents thereto. Ms. Harding further acknowledges that she understands that, absent the consent contained in this Article, she would have the right to limit her consent to the designation by Mr. Naseman of a specific beneficiary or a specific form of benefits, and Ms. Harding hereby voluntarily elects to relinquish both such rights.

5.    Mr. Naseman hereby consents to Ms. Harding's election to waive a qualified joint and survivor annuity form of benefit and a qualified preretirement survivor annuity form of benefit under any plan of deferred compensation to which Section 401(a)(11)(B) of the Code and/or Section 205(b)(1) of ERISA shall apply and in which Ms. Harding currently or hereafter may be deemed a vested participant within the meaning of Section 417(f)(1) of the Code and Section 205(h)(1) of ERISA.

6.    Mr. Naseman further consents to Ms. Harding's current and future designation of any alternative form of benefit and of beneficiaries other than Mr. Naseman under any of such plans (and to any revocation and/or modification of such

-27-

designations), including any of such plans referred to in Section 401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

7.    Mr. Naseman hereby further agrees promptly to execute (and deliver without charge) any and all documents or forms which shall be required, at any time, and from time to time, by any or all such plans; including but not limited to, any consents required by Section 417(a)(2) of the Code or Section 205(c)(2) of ERISA to effect the payment of benefits in this manner.

8.    Mr. Naseman hereby acknowledges that he understands the effect of Ms. Harding's elections and his consents thereto. Mr. Naseman further acknowledges that he understands that, absent the consent contained in this Article, he would have the right to limit his consent to the designation by Ms. Harding of a specific beneficiary or a specific form of benefits, and Mr. Naseman hereby voluntarily elects to relinquish both such rights.

9.    Each party waives any interest that he or she may have to any pension plan, profit sharing plan, 401K plan or Individual Retirement plan or employee stock ownership or stock bonuses or other employee benefit or relevant plans in the other's name whether arising before or after the execution of this Agreement.

10.    The parties intend that this Agreement be accepted as a spousal consent by each of them as Releasee to a waiver of a Qualified Pre-Retirement Survivor Annuity pursuant to Internal Revenue Code Section 417(a).

-28-

## ARTICLE 15

### LEGAL REPRESENTATION

1.    (a)   Except as provided in subparagraph 1(b), each party agrees to pay his or her own counsel and expert fees for all services rendered and disbursements incurred in connection with the negotiation and execution of this Agreement or in connection with the Nevada Action or Nevada Divorce.

(b)   Notwithstanding the foregoing, against actual bills and time charge records for Mr. Cohen's legal services and Ms. Campbell's legal services, Mr. Naseman will pay to Ms. Harding up to a total of _____ dollars ($_____).

2.    The parties each represent to the other that Ms. Harding has been represented by AKABAS & COHEN, 1500 Broadway, New York, New York 10036 and by LOGAR, CAMPBELL, 243 South Sierra Street, Reno, Nevada 89501 and Mr. Naseman has been represented by TENZER, GREENBLATT, FALLON & KAPLAN, 405 Lexington Avenue, New York, New York 10174 and SILVERMAN, DECARIA CHTD., 290 South Arlington Avenue, Reno, Nevada 89501, as their respective attorneys.  Except as specifically provided in subparagraph 1(b) of this Article, each party agrees to bear his or her own legal expenses in connection with the negotiation and preparation of this Agreement, the Nevada Action and the Nevada Divorce.  Each party represents and warrants that he or she has dealt with no other attorney for which services the other party is or may become liable.  Each part will indemnify and hold the other party harmless of all loss, expenses (including reasonable attorney

-29-

TH738