fees) and damages in the event of a claim by any attorney or other person(s) (including, without limitation, those listed in this paragraph) for counsel fees or any other fees on account of his or her representation by such attorney or person.

3.    If either party by any action, proceeding, defense, counterclaim or otherwise, seeks to vacate or set aside this Agreement or declare any of the terms and conditions to be invalid, void or against public policy, for any reason, including but not limited to fraud, duress, incompetency, overreaching or unconscionability, said party shall reimburse the other party and be liable for any and all of such party's reasonable attorney's fees and expenses, provided and to the extent that such action, proceeding, counterclaim or defense results in a settlement, decision, judgment, decree or order dismissing or rejecting said claims.

4.    If either party (the "defendant") shall be required to interpose the terms, conditions and covenants of this Agreement as a defense to an action or other proceeding instituted by the other party (the "plaintiff") and such defense shall result in a judgment, decree or order in favor of the defendant, or a settlement upon substantially the terms of this Agreement, the plaintiff shall pay to the defendant the costs and expenses incurred by the defendant including reasonable attorneys' fees.

5.    By signing below,

(a)    each counsel for Ms. Harding, for himself or herself and for his or her law firm waives any claim for counsel

-30-

82473/0003/LON/2013

TH739

fees against Mr. Naseman whether arising by statute, court order or common law.

(b)    each counsel for Mr. Naseman, for himself and for his law firm waives any claim for counsel fees against Ms. Harding whether arising by statute, court order or common law.

_____
Leonard G. Florescue
TENZER, GREENBLATT, FALLON &
    KAPLAN
Attorneys for Mr. Naseman

_____
Richard B. Cohen
ARABAS & COHEN
Attorneys for Ms. Harding

_____
Gary Silverman
SILVERMAN, DECARIA CHTD.
Attorneys for Mr. Naseman

_____
Cassandra D. Campbell
LOGAR, CAMPBELL
Attorneys for Ms. Harding

-31-

TH740

## ARTICLE 16
### GENERAL PROVISIONS

1.  **Possible Invalidity:**  In case any provision of this Agreement should be held to be contrary to or invalid under the law of any country, state or other jurisdiction, such illegality or invalidity shall not affect in any way any other provisions hereof, all of which shall continue, nevertheless, in full force and effect, and any provision which is held to be illegal or invalid in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which such provision is legal and valid.

2.  **Independent Covenants:**  Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently irrespective of any of the other rights and obligations set forth herein.

3.  **Binding on Parties' Estates:**  This Agreement and all the obligations and covenants hereof shall bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

4.  (a)  **Reconciliation and Future Decrees and Orders:**  This Agreement shall not be invalidated or otherwise affected by a reconciliation or a resumption of sexual relations between the parties except in a writing duly subscribed and executed with the same formality as this Agreement and expressly stating that the parties are cancelling this Agreement.  This Agreement shall not be invalidated or otherwise affected by any decree or judgment

-32-

21478/bbsh/mor/1131

made in any court in any pending or future action or proceeding between the parties.

(b)  Both parties agree, stipulate and consent that no Judgment, Order or Decree in any Action for divorce, whether brought in the States of Nevada or of New York or in any other state or country having jurisdiction of the parties hereto, shall make any provision for alimony or maintenance or affect the property rights of either party inconsistent with the provisions of this Agreement, but if any provision be made in any Judgment, Order or Decree which is inconsistent with the provisions of this Agreement, or that imposes a different or greater obligation on either of the parties hereto than provided in this Agreement, the provisions of this Agreement shall take precedence and shall be the only obligation of both of the parties hereto.

5.   Modification and Waiver:  Neither this Agreement nor any provision hereof shall be amended or modified except by an agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any purported amendment or modification not so subscribed and acknowledged shall be ineffective even if substantially and detrimentally relied upon. Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be

-33-

TH742

construed as a waiver or relinquishment for the future of such
provision, but the same shall continue in full force and effect.

6.  Legal Interpretation and Jurisdiction:

(a)  This Agreement and all of the rights and
obligations of the parties hereunder shall be construed according
to the laws of the State of New York as an agreement made and to
be performed within said State and without consideration of the
choice of law rules thereof.

(b)  Both parties consent to the personal
jurisdiction of the State of New York over them in any action or
proceeding brought to enforce the terms and conditions of this
Agreement.

7.  Implementation:  Either party shall, at any and
all times, upon request by the other party or his or her legal
representatives, promptly make, execute and deliver, without
charge, any and all other and further instruments as may be
reasonably necessary or desirable for the purpose of giving full
force and effect to the provisions of this Agreement.

8.  Notices:

(a)  All notices hereunder required to be sent to
Ms. Harding shall be sent by certified mail, return receipt
requested to her at 425 East 51st Street, New York, New York
10022, and to Akabas & Cohen, Attn: Richard R. Cohen, or to such
other place or person as she may designate in writing by like
notice.

(b)  All notices hereunder required to be sent to
Mr. Naseman shall be sent by certified mail, return receipt

-34-

requested to: P.O. Box 8763, Incline Village, Nevada 89452, and
to Tenzer, Greenblatt, Fallon & Kaplan, Attn: Leonard G.
Florescue, or to such other place or person as he may designate
in writing by like notice.

D.   Counterpart Originals:   This Agreement may be
executed in counterpart originals and shall become effective when
such originals subscribed to by parties and acknowledged have
been exchanged.

### ARTICLE 17

### ENTIRE UNDERSTANDING

This Agreement contains the entire understanding of the
parties who hereby acknowledge that there have been and are no
promises, representations, warranties, covenants or undertakings
other than those expressly set forth herein.

IN WITNESS WHEREOF, the parties hereto have hereunto
set their respective hands and seals the day and year first above
written to five (5) counterparts hereof, each of which shall
constitute an original.

_____
WITNESS FOR MS. HARDING

_____
TOEHL HARDING

_____
WITNESS FOR MR. NASEMAN

_____
DAVID M. NASEMAN

-35-

TH744

STATE OF NEW YORK }
                      : SS.:
COUNTY OF NEW YORK }

On this 4th day of May, 1993, before me personally came, Toehl Harding, to me known and known to me to be the individual described in and who executed the foregoing instrument and she duly acknowledged to me that she executed the same.

_____
Notary Public

RICHARD E. COHEN
Notary Public, State of New York
No. 4735008
Qualified in New York County
Term Expires May 31, 199?

STATE OF *New York* )
                        : SS.:
COUNTY OF *New York* )

On this 4th day of May, 1993, before me personally came, David M. Naseman, to me known and known to me to be the individual described in and who executed the foregoing instrument and he duly acknowledged to me that he executed the same.

_____
Notary Public

LEONARD G. FLORESCUE
NOTARY PUBLIC, State of New York
No. 51-0214502347.
Qualified in New York County
Commission Expires November 30, 19 93

-36-

22473/0901/LGN/2953

TH745

## Amendment to
## Property Settlement Agreement

WHEREAS, David M. Naseman (Mr. Naseman) and Toehl Harding (Ms. Harding) entered into a Property Settlement Agreement on May 4, 1993, (the "Agreement"), and

WHEREAS, the parties desire to modify the Agreement as set forth below,

NOW THEREFORE, it is agreed as follows:

1.   There shall be added to Article 12 of the Agreement, a new paragraph 14 which shall read as follows:

"14. (a). Mr. Naseman will be solely responsible for all taxes, recording fees and other charges incurred in connection with the recording of the quitclaim deeds following the transfers of the Massachusetts, Michigan and Florida properties referred to earlier in this Article.

(b) Mr. Naseman represents that the amounts, set forth as consideration on the quitclaim deeds referred to in subparagraph 14(a) of this Article, are correct under the applicable local laws;

(c) Mr. Naseman indemnifies Ms. Harding against any and all costs, claims, demands, judgments, penalties and other charges (collectively "Charges") (as well as reasonable attorneys fees) that she may incur

TH746

relating.. to the recording of the said quitclaim deeds provided that Mr. Naseman has not paid the Charges within ten (10) days after receiving notice that the Charges are due."

2.    Except for the aforesaid addition of paragraph 14 to Article 12 of the Agreement, the Agreement is in all respects and in all of its provisions expressly ratified and affirmed.

DAVID M. NASEMAN
by Leonard G. Florescue,
Attorney-in-fact

TOEHL HARDING

-2-

TH747

STATE OF NEW YORK    )
                     :  ss:
COUNTY OF NEW YORK   )

On this 10ᵗʰ day of May, 1993, before me personally came Toshi Harding, to me known and known to me to be the individual described in and who executed the foregoing instrument and she duly acknowledged to me that she executed the same.

_Jeanette M. Sullivan_
Notary Public

JEANETTE M. SULLIVAN
Notary Public, State of New York
No. 4885013
Qualified in Rockland County
Qualified in Westchester County
Commission Expires April 20, 19__

STATE OF NEW YORK    )
                     :  ss:
COUNTY OF NEW YORK   )

On this 5ᵗʰ day of May, 1993, before me personally came Leonard S. Florescue, to me known and known to me to be the individual described in and who executed the foregoing instrument and he duly acknowledged to me that he, as attorney-in-fact for David M. Naseman, executed the same.

_William F. Edwards_
Notary Public

WILLIAM F. EDWARDS
Notary Public, State of New York
No. 51-4904237
Qualified in New York County
Commission Expires Oct. 29, 1995

-3-

21479/0003/LGB/24652

TH748

**EXHIBITS TO**

**PROPERTY**

**SETTLEMENT AGREEMENT**

**BY AND BETWEEN**

**DAVID NASEMAN**

**AND**

**TOEHL HARDING**

TH749

SEPARATION AGREEMENT

BY AND BETWEEN

DAVID NASEMAN

AND

TOEHL HARDING

TH750

AGREEMENT made this ___ day of November, 1992, by and between DAVID M. NASEMAN ("David" or "husband"), residing at 150 Lee Road, Lenox, Massachusetts 01240, and TOEHL HARDING ("Toehl" or "wife"), residing at 425 East 51st Street, New York, New York 10022.

W I T N E S S E T H :

WHEREAS, the parties were duly married to each other in Lenox, Massachusetts on October 19, 1982; and

WHEREAS, there are no children of the marriage, and there are no expected children of the marriage; and

WHEREAS, certain unhappy and irreconcilable differences have arisen between the parties as a result of which they have separated and are now living separate and apart from each other and intend to do so for the rest of their lives; and

WHEREAS, the parties desire to confirm their separation and to fix their respective financial and property rights, and all other rights, privileges, obligations and matters with respect to each other arising out of the marital relationship and otherwise; .

NOW, THEREFORE, it is agreed as follows:

-1-

TH751

## ARTICLE 1

### ARTICLE HEADINGS

The headings at the beginning of each Article of this Agreement are for reference purposes only and shall not, in any manner, constitute terms or conditions of this Agreement; nor shall they be applicable to any interpretation of the intention or meaning of any part of this Agreement.

-2-

TH752

## ARTICLE 2

### <u>RELIGIOUS DIVORCE</u>

1.    Each of the parties agree to cooperate with the other in obtaining promptly a religious divorce (or annulment, as appropriate) and to furnish to the other party a duly authenticated copy of the document or documents terminating the marital relationship in accordance with the tenets of their religion.

2.    Simultaneously with the execution of this Agreement the wife shall execute and deliver to the husband appropriate documentation to confirm that the parties' marriage was not sanctioned by the Roman Catholic church.

-3-

TH753

## ARTICLE 3

### SEPARATE RESIDENCE AND NONINTERFERENCE

1.  It is, and shall be, lawful for the husband and wife at all times to live separate and apart from each other and to reside from time to time at such places as each may see fit and to contract, carry on and engage in any employment, profession, business or trade, which either may deem fit, free from control, restraint, or interference, direct or indirect, by the other in all respects as if he and she were single and unmarried.

2.  Neither the husband nor the wife shall in any way molest, disturb, trouble, or interfere with the peace and comfort of the other or compel or seek to compel the other to associate, cohabit or dwell with him or her by any action or proceeding for restoration of conjugal rights or by any means whatsoever.

--4--

TH754

## ARTICLE 4

### SEPARATE OWNERSHIP

1.  Except as otherwise expressly set forth herein, each party shall own, as his or her separate property, free of any claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and wheresoever situate, which are now, either titularly or beneficially, in his or her name, control or possession, with full power to dispose of the same as fully and effectually in all respects and for all purposes as if unmarried.

2.  Except as otherwise expressly provided in this Agreement, the husband acknowledges that he has no right, title or interest in and to any other bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by the wife or subsequently acquired by the wife, whether in her sole name or in trust for another.

3.  Except as otherwise expressly provided in this Agreement, the wife acknowledges that she has no right, title or interest in and to any other bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by the husband or subsequently acquired by the husband, whether in his sole name or in trust for another.

-5-

TH755

## ARTICLE 5

### SEPARATE RESPONSIBILITY FOR DEBTS

1.    Except as is otherwise expressly set forth in Schedule "A" to this Agreement, the wife represents that she has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which the husband or his estate is or may become liable.  The wife shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of the husband or for which the husband or his estate may become liable.  The wife shall satisfy and hold the husband free and harmless from and indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which may hereafter be incurred or contracted by her for the benefit of herself.

2.    Except as is otherwise expressly set forth in Schedule "B" to this Agreement, the husband represents that he has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which the wife or her estate is or may become liable.  The husband shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of the wife or for which the wife or her estate may become liable.  The husband shall satisfy and hold the wife free and harmless from and

-6-

TH756

indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which may hereafter be incurred or contracted by him for the benefit of himself.

3. ~~The husband or wife, as the case may be, shall~~ ~~reimburse the other for all charges that he or she makes against the other's accounts or the other's business accounts after the execution of this Agreement, or for charges which he or she incurred before the execution of this Agreement but for which bills have not yet been received, to the extent that such charges were incurred without the other's consent.~~

4.    (a)  The husband shall be solely responsible to pay within a reasonable time from the date of this Agreement and he shall hold the wife free and harmless from and indemnified against the debts, obligations and liabilities itemized in Schedule "B" under the heading "Husband".

(b)  The wife shall be solely responsible to pay within a reasonable time from the date of this Agreement and she shall hold the husband free and harmless from and indemnified against the debts, obligations and liabilities itemized in Schedule "A" under the heading "Wife".

TH757

## ARTICLE 6

### SEPARATE RESPONSIBILITY FOR INCOME TAXES

1.    If in connection with any joint income tax returns heretofore filed by the husband and wife there is any deficiency assessment, the amount ultimately determined to be due thereon, including penalties and interest, shall be paid by the husband unless and to the extent that the same has been caused by the failure or neglect of the wife to disclose any income which should have been included in said returns or to the extent that any deductions solely allocable to her income are disallowed.

2.    The husband, to the extent that the same has not been caused by any such failure of neglect of the wife, hereby indemnifies and holds the wife harmless against any such assessment, penalty or interest and any expenses, including without limitation, attorneys' and accountants' fees incurred in connection therewith.

3.    The wife agrees to cooperate fully with the husband in the event of any audit or examination of the said joint tax returns by a taxing authority and agrees to furnish to the husband or his designees, promptly and without charge, such papers, records, documents, authorizations and information as may be reasonably appropriate in connection with said audit or examination including, without limitation, a power of attorney to negotiate and consummate any settlement of such audit or examination on her behalf.

-8-

TH758

4.   All refunds or credits derived from previously filed joint income tax returns shall be shared equally by the parties.

5.   The parties will file separate income tax returns for 1992 and subsequent years.

-9-

TH759

## ARTICLE 7

### MUTUAL EQUITABLE DISTRIBUTION WAIVER

1.    The parties hereby agree that all of their property, including all of their "marital property" as that term is defined in Section 236, Part (B) of the New York Domestic Relations Law, has been fairly and equitably divided between them pursuant to the terms of this Agreement.

2.    Except as otherwise expressly provided in Article 12 of this Agreement, each party waives any and all rights or claims (whether arising at law, in equity or by virtue of the marital relationship) which he or she may have to an award of equitable distribution or a distributive award in respect of any property (now or previously owned, titularly or beneficially) by the other spouse together with the appreciation and income thereof or acquired jointly, either before, during or after the marriage and either before or after the execution of this Agreement.

3.    The payments and transfers of property that the husband has obligated himself to make pursuant to the terms of this Agreement are in full satisfaction of the wife's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all the wife's claims for attorney's fees, accountants fees, and other expenses that may or will be

-10-

TH760

incurred by her in reference to the execution of this Agreement and the obtaining of a judgment of divorce.

      4.  The payments and transfers of property that the wife has obligated herself to make pursuant to the terms of this Agreement are in full satisfaction of the husband's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all the husband's claims for attorney's fees, accountants fees, and other expenses that may or will be incurred by him in reference to the execution of this Agreement and the obtaining of a judgment of divorce.

-11-

TH761

## ARTICLE 8

### MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS

1.    The husband hereby releases, and forever discharges the wife, the wife's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expense, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, past, present, or future which the husband, the husband's heirs, executors, administrators, successors and assigns ever had or now has against the wife, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B) or arising out of the marital relationship, except for any cause of action for Divorce, Annulment or Separation and any defenses thereto.

2.    The wife hereby releases, and forever discharges the husband, the husband's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expense, executions, claims, and demands whatsoever, in law, admiralty or

-12-

TH762

equity, known or unknown, past or present, which the wife, the
wife's heirs, executors, administrators, successors and assigns
ever had or now have against the husband, for, upon, or by reason
of any matter, cause or thing whatsoever from the beginning of
the world to the day of the date of this Agreement, including
(without limitation) claims with respect to all separate property
and all marital property as those terms are defined in Domestic
Relations Law §236(B) or arising out of the marital relationship,
except for any cause of action for divorce, annulment or
separation and any defenses thereto.

-13-