## ARTICLE 9

### MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

1. Each party hereto waives, renounces, grants and releases to the other, forever and for all purposes whatsoever any and all rights and claims against each other's estate including dower, curtesy and community property rights and interests, and any right of election, under the relevant provisions of the Estates, Powers and Trust Law of the State of New York or under the laws of testacy or intestacy in any jurisdiction whatsoever, which he or she now has or may hereafter acquire in the real or personal property or estates of the other, wheresoever situated and whether before or subsequent to the date of this Agreement, by reason of inheritance or descent, or by virtue of any decedent estate law or any other statute or custom, or arising out of marital relations, or for any other reason whatsoever.

2. The parties hereto expressly revoke their respective wills insofar as the same make any disposition (whether outright or in trust) to or for the benefit of the other and further revoke any nomination of the other party as an estate representative or in any other representative or fiduciary capacity thereunder, it being the intent of the parties that all wills made and executed by either of them prior to the acknowledgment of this Agreement shall be read and administered as if the other party had predeceased him or her for purposes of

TH764

distribution of his or her respective estate or the property interests otherwise passing thereunder.

.3. Where a party may be designated a beneficiary or survivor in a testamentary substitute pursuant to which any interest in property does not pass under a Will, each of the parties hereby renounces and agrees to renounce any such designation and the beneficiary or survivor shall be deemed to be the estate of the party having originally made the designation.

4. Each of the parties hereby further renounces and agrees to renounce any right of administration upon the estate of the other or nomination by the other as estate representative, as provided for by the laws or practices of any jurisdiction whatsoever. Neither party shall object to the probate of the other's Last Will and Testament and in the event that either party dies intestate, the surviving party shall allow administration upon the estate and personal effects of the deceased party to be taken and received by any person who would have been entitled thereto had the surviving party predeceased the deceased party unmarried.

5. Each party shall, upon request by the executors, administrators or other legal representatives of the other party, execute, acknowledge and deliver any instrument which in the opinion of said executors, administrators or other legal representatives is necessary to effectuate the waiver of his or her right of election against the last will and testament of the

-15-

TH765

other, and the waiver of all dower, curtesy and other rights to take as distributee, heir, next-of-kin and the like.

      6.  However, the foregoing shall not bar a claim on the part of either party against the estate of a deceased party for any cause arising out a breach of this Agreement during the lifetime of the deceased party against whose estate such a claim may be made.

-16-

TH766

**ARTICLE 10**

**SUPPORT AND MAINTENANCE OF THE PARTIES**

Taking into consideration all relevant facts and circumstances, including but not limited to the employment and employment potential of the husband and wife, both of whom are attorneys, and the substantial assets to be held by each party following the execution of this Agreement, neither the husband nor the wife seeks or requires any maintenance or support from the other now or in the future.  Therefore, no provision for the support or maintenance of either the husband or wife is made herein, and each forever waives any claim for support or maintenance in the future.

-17-

TH767

## ARTICLE 11

### MEDICAL INSURANCE AND RELATED EXPENSES

1. As long as the parties are married, the wife shall maintain for the husband's benefit such Blue Cross/Blue Shield and major medical insurance, or their equivalent, as has heretofore been in force and effect.

2. In the event that the parties are divorced, the wife shall execute all documents necessary to convert the husband's present health insurance to an individual policy providing the same benefits as those to which he is presently entitled, for the benefit of the husband. The wife shall take all steps necessary to keep the husband's health insurance in effect for no less than three (3) years following the date of divorce, as provided by the Consolidated Omnibus Budget Reconciliation Act of 1985, Title X Pub.L. 99-272 effective April 7, 1986 ("COBRA"). The cost of such medical insurance shall be paid by the husband.

3. Each party agrees to promptly fill out, execute and deliver to the other all forms and provide all information in connection with any application that may be necessary for the other's medical, dental and drug expenses under any insurance policies which the other may have. If either party shall have advanced monies for said expenses which are covered by insurance and for which an insurance recovery is made, the payment by the insurance carrier shall belong (proportionately) to the part(y)(ies) so advancing said monies and any checks or drafts or

-18-

TH768

proceeds thereof from the insurance carrier shall be promptly
turned over to the part(y)(ies) so advancing said monies.

TH769

## ARTICLE 12

### MARITAL PROPERTY

1.    The parties own as joint tenants with the right of survivorship, 630 shares of stock (par value $1) in Beekman Hill House Apartment Corp. which represents their ownership of Apartment 6-A in premises located at 425 East 51st Street, New York, New York 10022.  The husband and wife are also signatories to the proprietary lease appurtenant to said apartment and upon the execution hereof, the husband shall convey to the wife, all of his right, title and interest in and to the said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

2.    The parties presently own as joint tenants with the right of survivorship, 625 shares of stock (par value $1) in the Beekman Hill House Apartment Corp. which represents their ownership of Apartment 5-A in premises located at 425 East 51st Street, New York, New York 10022.  The husband and wife are also signatories to the proprietary lease appurtenant to that apartment, and upon the execution hereof, the husband shall convey to the wife, all his right, title and interest in and to the said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer

-20-

TH770

including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

3.  The parties shall each be responsible for one-half (1/2) of any expenses involved in the transfer of said stock and leases from the husband to the wife including but not limited to New York City and New York State transfer taxes, recording fees, charges of the Managing Agent and/or Cooperative Board.  The parties each represent to the other that the said cooperative apartments are free and clear of any mortgages, liens or encumbrances.

4.  There shall be no adjustment for taxes or apportionments.  From and after said conveyance, the wife shall be solely liable for all expenses in connection with said premises, including but not limited to maintenance payments, insurance, taxes, telephone, utilities, landscaping, gardening and ordinary repairs.  From and after the execution hereof, the husband shall have no right or claim with respect to said premises, their use or their proceeds in the event of a sale or other disposition thereof.

5.  The wife shall indemnify and hold the husband harmless of all loss, expenses (including reasonable attorneys' fees) and damages which he may incur as the result of a failure on the part of the wife to perform the obligations relating to, or as a result of, her occupancy and ownership of the premises.

-21-

TH771

6.    (a)  Except as provided in paragraph 6(b) of this Article, following the execution of this Agreement, the wife shall be the sole owner of the contents and furnishings contained in the said cooperative apartments 5-A and 6-A free of any claim or right of the husband thereto.

(b)  Notwithstanding paragraph 6(a) of this Article, the husband shall retain ownership of the items of personal property listed on Schedule C, free of any claim or right of the wife thereto.  The wife agrees to grant the husband, upon reasonable notice, access to either or both apartments 5-A and 6-A for the purpose of removing the items of personal property listed on Schedule C.  If the husband has not removed all of the said personal property by December 31, 1992, then notwithstanding the foregoing, any items as yet unremoved shall be the sole property of the wife free of any claim or right of the husband thereto.

(c)  Until the husband has removed the said items of personal property or until December 31, 1992, whichever is first, the wife will keep and maintain the said items of personal property in good condition, normal wear and tear excluded, and will insure the same against loss.

7.    (a)  Simultaneously with the execution of this Agreement the husband shall transfer to the wife, by wire transfer, [$350,000] from the funds currently located in insured money director account #0318181371 located at the Republic National Bank of New York.

-22-

TH772

(b)  The husband shall retain the balance of the funds currently located in the said account #0318181371 [approximately $575,000].

(c)  Following the said transfers, neither the ~~husband nor the wife shall have any claim or right (wither~~ arising at law, in equity or by virtue of the marital relationship) to any of the funds in the said account #0318181371 retained by the other.

8.  (a)  The husband is the owner of: a 1989 Jaguar Vanden Plas, VIN No. SAJKY1547KC569398, a 1991 Ford F150 Pick-up, VIN No. 2FTEF14N8MCA86947; a 1989 Volvo 760 Sedan, VIN No. YV1GA874XK0067382; and, a 1923 Ford Model T Touring Car, (no VIN).  Each party represents and warrants to the other that there are no liens or chattel mortgages outstanding with respect to the said four automobiles.

(b)  In full satisfaction of the wife's claims or rights to any of the automobiles, simultaneously with the execution of this Agreement, the husband has executed and delivered to the wife all documents necessary to transfer the ownership and registration of the said Volvo to the wife, and the wife agrees to pay all expenses relating to the operation, maintenance and garaging of said vehicle after the execution of this Agreement.

9.  (a)  The husband is the sole owner of Lots 34 and 35 located at Nine Mile Point Drive of Michigan Shores, and the

TH773

residence erected on Lot #34, commonly known as 06452 Nine Mile Point Drive, Charlevoix, Michigan 49720.

(b)  Each of the parties represents to the other that the said lots 34 and 35 and the said residence are free and clear of any mortgages, liens or other encumbrances.

(c)  The wife waives any right, title or interest in and to the said Lots and residences, and any personalty located therein irrespective of whether such rights, title or interest arises at law, in equity or by virtue of the marriage relationship.

10.   (a)  The parties are the owners, as tenants in common with right of survivorship, of approximately 8.7 acres of land and a residence located at 150 Lee Road, Lenox, Berkshire County, Massachusetts 01240.

(b)  Each of the parties represents to the other that the said 8.7 acres and residence are free and clear of any mortgages, liens or encumbrances.

(c)  Simultaneously with the execution of this Agreement, the wife has executed and delivered to the husband, all documents necessary to transfer to the husband all of her right, title and interest in and to the said 8.7 acres and residence.

(d)  Except as set forth in paragraph 10(e) of this Article, from and after the date of this Agreement the husband shall be the sole owner of any personal property located

-24-

TH774

at the said 8.7 acres and residence free of any claim or right thereto of the wife.

(e)  Notwithstanding paragraph 10(d) of this Article, the wife shall retain ownership of the items of personal property listed on Schedule D, free of any claim or right by the husband thereto.  The husband agrees to grant the wife, upon reasonable notice, access to the said 8.7 acres and residence for the purpose of removing the items of personal property listed on Schedule D.  If the wife has not removed all of the said personal property by December 31, 1992, then, notwithstanding the foregoing, any items as yet unremoved shall be the sole property of the husband free of any claim or right of the wife thereto.

(f)  Until the wife has removed the said items of personal property or until December 31, 1992, whichever is later, the husband will keep and maintain the said items of personal property in good condition, normal wear and tear excluded, and will insure the same against loss.

11.  (a)  The husband is the sole owner of a condominium described as Unit #603 and an undivided 1.93% share in the common elements appurtenant thereto, according to the Declaration of Condominium of the Venice Avenue Condominium, relating to 512 Venice Avenue West, Venice, Sarasota County, Florida 34285.

(b)  Each of the parties represents to the other that the said condominium is free and clear of any mortgages, liens or encumbrances.

TH775

(c)  The wife waives any right, title or interest in and to the said condominium and to any personalty located therein, irrespective of whether such right, title or interest arises at law, in equity or by virtue of the marriage relationship.

12.  The husband and wife agree and understand, and have been so advised by their respective attorneys, that no taxable gain or loss is recognized by the conveyances pursuant to this Article as provided for in Section 1041 of the Internal Revenue Code of 1986.  Neither the husband nor the wife shall take any position on his or her federal, state or local income tax returns, with respect to the tax basis of the property conveyed, that is inconsistent with the preceding sentence of this paragraph.

TH776

## ARTICLE 13

### INQUIRY AND DISCLOSURE

1.   The husband has had the opportunity to make independent inquiry into the complete financial circumstances of the wife and represents to the wife that he is satisfactorily informed of the income, assets, property and financial prospects of the wife, is aware of all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B) and is satisfied that full disclosure has been made, and that he cannot appropriately make a claim against the wife by reason of her failure to disclose or his failure of knowledge of the financial circumstances of the wife.

2.   The husband has had a full opportunity and has consulted at length with his attorney, to wit:   Leonard G. Florescue, Esq., of Tenzer, Greenblatt, Fallon & Kaplan, regarding all of the circumstances hereof.

3.   The husband further acknowledges that this Agreement has been freely entered into without fraud, duress or undue influence exercised by the wife or by any other person or persons upon him.

4.   The wife has had the opportunity to make independent inquiry into the complete financial circumstances of the husband and represents to the husband that she is satisfactorily informed of the income, assets, property and financial prospects of the husband, is aware of all separate property and all marital property as those terms are defined in

-27-

TH777

Domestic Relations Law §236(B) and is satisfied that full disclosure has been made, and that she cannot appropriately make a claim against the husband by reason of his failure to disclose or her failure of knowledge of the financial circumstances of the husband.

    5.   The wife has had a full opportunity and has consulted at length with her attorney, to wit:

_____ regarding all of the circumstances hereof.

    6.   The wife further acknowledges that this Agreement has been freely entered into without fraud, duress or undue influence exercised by the husband or by any other person or persons upon her.

TH778

## ARTICLE 14

### PENSION RIGHTS

1.  The wife hereby consents to the husband's election to waive a qualified joint and survivor annuity form of benefit and a qualified preretirement survivor annuity form of benefit under any plan of deferred compensation to which Section 401(a)(11)(B) of the Internal Revenue Code of 1986 (the "Code") and/or Section 205(b)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") shall apply and in which the Husband currently or hereafter may be deemed a vested participant within the meaning of Section 417(f)(1) of the Code and Section 205(h)(1) of ERISA.

2.  The wife further consents to the husband's current and future designation of any alternative form of benefit and of beneficiaries other than the wife under any of such plans (and to any revocation and/or modification of such designations) including any of such plans referred to in Section 401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

3.  The wife hereby further agrees to execute any and all documents or forms which shall be required, at any time, and from time to time, by any or all such plans, including but not limited to, any consents required by Section 417(a)(2) of the Code or Section 205(c)(2) of ERISA to effect the payment of benefits in this manner.

4.  The wife hereby acknowledges that she understands the effect of the husband's elections and her consents thereto.

-29-

TH779

The wife further acknowledges that she understands that, absent
the consent contained in this paragraph, she would have the right
to limit her consent to the designation by the husband of a
specific beneficiary or a specific form of benefits, and the wife
hereby voluntarily elects to relinquish both such rights.

5.    The husband hereby consents to the wife's election
to waive a qualified joint and survivor annuity form of benefit
and a qualified preretirement survivor annuity form of benefit
under any plan of deferred compensation to which Section
401(a)(11)(B) of the Code and/or Section 205(b)(1) of ERISA shall
apply and in which the wife currently or hereafter may be deemed
a vested participant within the meaning of Section 417(f)(1) of
the Code and Section 205(h)(1) of ERISA.

6.    The husband further consents to the wife's current
and future designation of any alternative form of benefit and of
beneficiaries other than the husband under any of such plans (and
to any revocation and/or modification of such designations),
including any of such plans referred to in Section
401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

7.    The husband hereby further agrees to execute any
and all documents or forms which shall be required, at any time,
and from time to time, by any or all such plans; including but
not limited to, any consents required by Section 417(a)(2) of the
Code or Section 205(c)(2) of ERISA to effect the payment of
benefits in this manner.

-30-

TH780

8.    The husband hereby acknowledges that he understands the effect of the wife's elections and his consents thereto.  The husband further acknowledges that he understands that, absent the consent contained in this paragraph, he would have the right to ~~limit his consent to the designation by the wife of a specific~~ beneficiary or a specific form of benefits, and the husband hereby voluntarily elects to relinquish both such rights.

9.    Each party waives any interest that she or he may have to any pension plan, profit sharing plan, 401K plan or Individual Retirement plan or employee stock ownerships or stock bonuses or other employee benefit or relevant plan in the other's name whether arising before or after the execution of this Agreement.

10.    The parties intend that this separation agreement be accepted as a spousal consent by each of them as Releasee to a waiver of a Qualified Pre-Retirement Survivor Annuity pursuant Internal Revenue Code Section 417(a).

TH781

## ARTICLE 15

### LEGAL REPRESENTATION

1.  Each party agrees to pay his or her own counsel and expert fees for all services rendered and disbursements incurred in connection with the negotiation and execution of this Agreement or in connection with any divorce.

2.  The parties represent to each other that the wife has been represented by _____ and the husband has been represented by TENZER, GREENBLATT, FALLON & KAPLAN, 405 Lexington Avenue, New York, New York 10174, as their respective attorneys.  Each party agrees to bear his or her own legal expenses in connection with the negotiation and preparation of this Agreement or any subsequent divorce.  Each party represents and warrants that he or she has dealt with no other attorney for which services the other party is or may become liable and will indemnify and hold the other party harmless of all loss, expenses (including reasonable attorney fees) and damages in the event of a breach of said representation and warranty.

3.  If either party by any action, proceeding, defense, counterclaim or otherwise, seeks to vacate or set aside this Agreement or declare any of the terms and conditions to be invalid, void or against public policy, for any reason, including but not limited to fraud, duress, incompetency, overreaching or unconscionability, said party shall reimburse the other party and

-32-

TH782

be liable for any and all of such party's reasonable attorney's fees and expenses, provided and to the extent that such action, proceeding, counterclaim or defense results in a settlement, decision, judgment, decree or order dismissing or rejecting said claims.

4.    If either party (the "defendant") shall be required to interpose the terms, conditions and covenants of this Agreement as a defense to an action or other proceeding instituted by the other party (the "plaintiff") and such defense shall result in a judgment, decree or order in favor of the defendant, or a settlement upon substantially the terms of this Agreement, the plaintiff shall pay to the defendant the costs and expenses incurred by the defendant including reasonable attorneys' fees.

5.    By signing below,

(a)    counsel for the wife, for herself and for [    firm    ] waives any claim for counsel fees against the husband whether arising by statute, court order or common law.

(b)    counsel for the husband, for himself and for Tenzer, Greenblatt, Fallon & Kaplan waives any claim for counsel fees against the wife whether arising by statute, court order or common law.

---

Leonard G. Florescue
TENZER, GREENBLATT, FALLON &
    KAPLAN
Attorneys for the Husband          Attorneys for the Wife

-33-

TH783

**ARTICLE 16**

**GENERAL PROVISIONS**

1.    **Possible Invalidity**:  In case any provision of this Agreement should be held to be contrary to or invalid under the law of any country, state or other jurisdiction, such illegality or invalidity shall not affect in any way any other provisions hereof, all of which shall continue, nevertheless, in full force and effect; and any provision which is held to be illegal or invalid in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which such provision is legal and valid.

2.    **Independent Covenants**:  Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently irrespective of any of the other rights and obligations set forth herein.

3.    **Binding on Parties' Estates**:  This Agreement and all the obligations and covenants hereof shall bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

4.    (a)  **Reconciliation and Matrimonial Decress**:  This Agreement shall not be invalidated or otherwise affected by a reconciliation or a resumption of marital relations between the parties unless they have executed and acknowledged a written statement expressly setting forth that they are cancelling this Agreement.  This Agreement shall not be invalidated or otherwise

-34-

TH784

affected by any decree or judgment made in any court in any pending or future action or proceeding between the parties.

(b)   Both parties agree, stipulate and consent that no Judgment, Order or Decree in any Action for divorce or ~~separation, whether brought in the State of New York or in any~~ other state or country having jurisdiction of the parties hereto, shall make any provision for alimony or maintenance or effect the property rights of either party inconsistent with the provisions of this Agreement, but if any provision be made in any Judgment, Order or Decree which is inconsistent with the provisions of this Agreement, or imposes a different or greater obligation on either of the parties hereto than provided in this Agreement, the provisions of this Agreement shall take precedence and shall be the primary obligation of both of the parties hereto.  It is further agreed that, upon trial or submission of any action which has been or may hereafter be instituted by either of the parties against the other for an Absolute Divorce in any Court of competent jurisdiction, the party instituting such action shall request that the Decree or Judgment shall contain a provision specifically reciting, in words or substance: "Said Separation and Property Settlement Agreement is incorporated but not merged in, and survives this Decree or Judgment."

5.   **Modification and Waiver:**  Neither this Agreement nor any provision hereof shall be amended or modified except by an agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any purported amendment or

-35-

TH785

modification not so subscribed and acknowledged shall be ineffective even if substantially and detrimentally relied upon. Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, but the same shall continue in full force and effect.

6.    **Legal Interpretation:**  This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State and without consideration of the choice of law rules thereof.

7.    **Implementation:**  The husband and wife shall, at any and all times, upon request by the other party or his or her legal representatives, promptly make, execute and deliver any and all other and further instruments as may be reasonably necessary or desirable for the purpose of giving full force and effect to the provisions of this Agreement, without charge therefor.

8.    **Notices:**

(a)  All notices hereunder required to be sent to the wife shall be sent by certified mail, return receipt requested to:_____, or such other place as she may designate in writing and to the [wife's attorney].

-36-

TH786

(b)   All notices hereunder required to be sent to the husband shall be sent by certified mail, return receipt requested to:_____, or such other place as he may designate in writing and to Tenzer, Greenblatt, Fallon & Kaplan.

TH787

## ARTICLE 17

### ENTIRE UNDERSTANDING

This Agreement contains the entire understanding of the parties who hereby acknowledge that there have been and are no ~~promises, representations, warranties, covenants or undertakings~~ other than those expressly set forth herein.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands and seals the day and year first above written to five (5) counterparts hereof, each of which shall constitute an original.


| WITNESS FOR THE WIFE | TOEHL HARDING |
| --- | --- |
| WITNESS FOR THE HUSBAND | DAVID M. NASEMAN |

TH788

STATE OF NEW YORK )
                  :  ss.:
COUNTY OF NEW YORK )


        On this _____ day of November, 1992, before me
personally came, Toehl Harding, to me known and known to me to be
the individual described in and who executed the foregoing
instrument and she duly acknowledged to me that she executed the
same.


                                    _____
                                    Notary Public


STATE OF NEW YORK )
                  :  ss.:
COUNTY OF NEW YORK )


        On this _____ day of November, 1992, before me
personally came, David M. Naseman, to me known and known to me to
be the individual described in and who executed the foregoing
instrument and he duly acknowledged to me that he executed the
same.


                                    _____
                                    Notary Public


~39~

TH789

## AKABAS & COHEN
### ATTORNEYS AT LAW
1500 BROADWAY
21 ST FLOOR
NEW YORK, NY 10036
(212) 869-2249
TELECOPIER (212) 944-7872

SETH A. AKABAS
RICHARD S. COHEN

COUNSEL

LOUIS P. KAROL

LOUIS J. LAMATINA*
SUITE 106
1830 PALISADE AVENUE
FORT LEE, NJ 07024
(401) 885-1122

* ADMITTED NY & NJ

February 5, 1993

VIA TELECOPIER (212) 573-4313
Leonard Florescue, Esq.
Tenzer, Greenblatt, Fallon & Kaplan
405 Lexington Avenue
New York, NY 10174

Re: Naseman and Harding

Dear Mr. Florescue:

I am in receipt of Mr. Naseman's draft Separation Agreement and wanted to share with you my comments and those of Ms. Harding. I have initially noted some general concerns, and thereafter address the points in your draft that are in dispute.

A.   Financial Information

1.   We would like to have additional information concerning Mr. Naseman's financial affairs, particularly:

      -- what bank accounts does he maintain, and what are the balances in those accounts?
      -- what investments does he have?
      -- does he have any other source of income?

2.   We need the couple's last 5 years of tax returns.

B.   Equitable Distribution

Preliminarily, the status and condition of the parties is relevant to a discussion of an equitable distribution of the marital assets. For the last 2 1/2 years, Mr. Naseman has been unemployed, and has spent considerable time vacationing, skiing, golfing and traveling, apparently funding these activities from the marital bank account (or some other sources unknown to us). During this time, to the best of Ms. Harding's knowledge, he has made no effort to increase the value of the couple's liquid assets, despite Ms. Harding's repeated offers of the services of financial advisors available to the couple through Ms. Harding's employer. Instead, the principal of these assets has been invaded to support Mr.

TH790

**AKABAS & COHEN**
ATTORNEYS AT LAW

Naseman's very comfortable lifestyle.

Ms. Harding has been employed in an extremely demanding
position for the last 2 1/2 years, contributing all that time to
the marital estate. While she completely supported Mr. Naseman's
decision to take some time off, and endured long absences from him
without complaint, she waited for 2 1/2 years for Mr. Naseman to
reach a decision as to whether or not he wished to resume work.
She supported either course of action.

During this time, her position at work became more and more
difficult due to organization and personnel changes and she became
more and more unhappy. Mr. Naseman was fully aware of this
situation. Because Mr. Naseman would not make a decision as to his
future plans, Ms. Harding was unable to make any plans as to other
employment since, whatever Mr. Naseman's decision would be, it was
highly likely that the couple would not continue to reside in New
York City.

The business units for which Ms. Harding has responsibility
will be sold during 1993 and Ms. Harding will be unemployed. She
will not be assigned elsewhere in the company and the structure of
the proposed sale will not offer any opportunity for employment
with the buyers. She will thus be, at the age of 50 and as a
female, looking for employment in an extremely difficult market.
Her chances for reemployment in a position comparable to her
current one are slim, at best.

In addition, because of Mr. Naseman's decision to terminate
the couple's marriage, Ms. Harding will be faced with increased
expenses, e.g., the costs of a garage in New York City, insurance
on a car registered in New York City, etc. She must also face the
likelihood that maintenance payments on the New York City
apartments will increase.

Mr. Naseman, on the other hand, is 44 years old, extremely
marketable and at the peak of his professional earning power. He
held a highly responsible position as general counsel of a
publicly-traded corporation and has many contacts as a result of
his position. Moreover, the expenses associated with the
Massachusetts property are small in comparison to the New York City
apartments.

2

TH791