Exhibit F

J. Stephen Peek, Esq.
Nevada Bar Number 1758
Patricia C. Halstead, Esq.
Nevada Bar Number 6668
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
(775) 327-3000; (775) 786-6179-facsimile
Attorneys for Defendant David Naseman

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TOEHL HARDING,

    Plaintiff,

vs.

DAVID NASEMAN, and DOES 1-10, inclusive,

    Defendants.

CASE NO.: 3:07-cv-00072

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE**

    Defendant DAVID NASEMAN ("Mr. Naseman"), by and through his counsel of record, J. Stephen Peek, Esq. and Patricia C. Halstead, Esq. of Hale Lane Peek Dennison and Howard, hereby submit this Motion to Dismiss for Lack Personal Jurisdiction or, Alternatively, Motion to Transfer Venue. This Motion is supported by the following Points and Authorities.

**POINTS AND AUTHORITIES**

1.    Introduction

    After nearly fourteen years since the parties divorce in 1993, Plaintiff Toehl Harding ("Ms. Harding"), a New York resident, filed suit against Mr. Naseman, an Arizona resident, before the Second Judicial District Court for the State of Nevada in and for the County of Washoe (the "Second Judicial District Court"), claiming to have been defrauded of certain property in connection with the parties' divorce. Mr. Naseman removed the action to this Court based upon diversity and now seeks dismissal of this action for lack of personal jurisdiction. Should this Court choose to exercise personal jurisdiction over Mr. Naseman contrary to the arguments he raises herein, Mr. Naseman alternatively requests that this matter be transferred to the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1404(a).[1]

2. Background

On April 21, 1993, the parties, who at the time were both practicing attorneys in New York City, New York, were granted a divorce by order of the Second Judicial District Court. *See* a true and correct copy of the April 21, 1993 Order attached hereto as **Exhibit "A"** (the "Divorce Decree"). At the time the Divorce Decree was entered, the parties had not yet formally executed a property settlement agreement, although material terms had been agreed upon; thus, as stated in the Divorce Decree, the Second Judicial District Court maintained jurisdiction for the purpose of adjudicating matters of property distribution. *Id.* Once the parties' property settlement agreement was executed, the Divorce Decree specifically provided that the proceedings were to be deemed concluded in their entirety. *Id.*

In May 1993, two weeks after the Divorce Decree was entered, the parties executed the property settlement agreement (the "PSA"), a true and correct copy of which is provided herewith as **Exhibit "B."** By and through the PSA, both parties acknowledge having been represented by New York legal counsel, through whom the PSA was negotiated. *Id.* at pp. 25-26, Article 13.2 and 13.5; p. 29, Article 15.2. Both parties further agreed that the PSA is to be construed in accordance with New York law and that "[b]oth parties consent to the personal jurisdiction of the State of New York over them in any action or proceeding brought to enforce the terms or conditions of this Agreement." *Id.*, p. 34, Article 16.6(b). The PSA was also signed by both parties in New York as evidenced by the Notary Public stamps on the final page of the PSA. *Id.*, p. 36.

Despite having "had the opportunity to make independent inquiry into the complete financial circumstances of Mr. Naseman," and expressly acknowledging in no uncertain terms that she was satisfied with her knowledge of the same after consultation with legal counsel (*Id.*, p. 25, Article 13.4),

---

[1] "The need to file a special appearance in order to object to jurisdiction or venue has vanished. A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2nd Cir. 1972); *see also Shall v. Henry*, 211 F.2d 226, 231 (7th Cir. 1954). ("defenses to the merits may now be set up in the same pleadings which includes defenses of lack of jurisdiction of the person and wrong venue, without waiving the latter defenses. . . . Accordingly, special appearances to challenge jurisdiction over the person or improper venue are no longer necessary"). It is also of note that a request for an extension of time to respond to a complaint, such as was made by stipulation and order in this case, which permits Mr. Naseman to have up to and including March 1, 2007, to answer or otherwise respond to Ms. Harding's Complaint, does not constitute waiver of jurisdictional objections. *Grammenos*, 457 F.2d at 1070.

Ms. Harding filed suit nearly fourteen years after the parties' divorce and execution of the PSA, claiming, through her allegations, an interest in funds she purports were subject to division between the parties in connection with the PSA. Because, according to Ms. Harding's complaint, the sums at issue total more than $75,000 and the parties are citizens of different states, Mr. Naseman removed Ms. Harding's suit to this Court. Mr. Naseman now asks this Court to dismiss the action against him based upon lack of personal jurisdiction. Alternatively, Mr. Naseman requests that this Court transfer venue to the United States District Court for the Southern District of New York, which is located in the forum where the PSA was negotiated and which also sits in the forum where the alleged fraud would have taken place.

3.  **This Court Cannot Properly Exercise Personal Jurisdiction Over Mr. Naseman.**

    a.  *Applicable Legal Standard*

"In a diversity case, the power of a federal court to exercise personal jurisdiction over a non-resident defendant depends on a two-step test. First, the state's long arm statute must permit jurisdiction. Second, the exercise of jurisdiction must be consistent with due process." *Tweet v. Webster*, 596 F. Supp. 130, 132 (D. Nev. 1984) (*citing Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980)). Nevada's long-arm statute allows a Nevada court to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. NRS 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States"). Thus, "[b]ecause Nevada exercises jurisdiction to the extent permitted by the Constitution, the Court need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Fisher v. Professional Compounding Centers of America, Inc.*, 311 F. Supp. 2d 1008, 1013-1014 (D. Nev. 2004).

To be deemed to comport with Due Process, a defendants' contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In making this determination, courts have consistently looked to the two forms of personal jurisdiction over a non-resident defendant: general jurisdiction and specific jurisdiction.

1    General jurisdiction occurs where a defendant is held to answer in a forum for causes of action unrelated to the defendant's forum-related activities. *See, e.g., Perkins v. Benguet Mining Co.*, 342 U.S. 437, 488 (1952). To exercise general jurisdiction, a sufficient relationship between the defendant and the forum state must exist and a plaintiff must be able to demonstrate that the defendant's activities within the forum state are "substantial" or "continuous and systematic" such that the defendant may be deemed "present" in the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir. 1977).

Absent general jurisdiction, specific personal jurisdiction over a non-resident defendant may be established by a plaintiff under appropriate circumstances. Such circumstances depend upon the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). In particular, specific jurisdiction may be established over a non-resident defendant only where: 1) the non-resident defendant does some act or consummates some transaction with the forum by which he purposely avails himself of the privilege of conducting activities in the forum; 2) the claim for relief arises out of the defendant's forum-related contacts; and 3) the exercise of jurisdiction is not unreasonable. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997); *see also World-Wide Volkswagon Corp. et al*, 444 U.S. at 291.

Once personal jurisdiction is challenged, the burden of establishing whether the exercise of personal jurisdiction is appropriate falls upon the plaintiff, who must make a prima facie showing of jurisdiction to survive the motion to dismiss but who cannot simply rest on the bare allegations of his or her complaint. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). Ms. Harding cannot meet this burden. Therefore, Mr. Naseman's motion to dismiss should be granted.

    b.    *General Jurisdiction: Mr. Naseman Does Not Have Substantial or Continuous and Systematic Contacts with the State of Nevada Sufficient to Confer this Court with General Jurisdiction.*

As provided above, "[g]eneral jurisdiction occurs where a defendant is held to answer in a forum for causes of action unrelated to the defendant's forum activities. General jurisdiction over the defendant 'is appropriate where the defendant's forum activities are so "substantial" or "continuous

and systematic" that it may be deemed present in the forum.'" *Trump v. Eighth Judicial Dist. Court of State of Nev. in and for County of Clark*, 857 P.2d 740, 748 (Nev. 1993).

Notably, "[g]eneral jurisdiction will only lie where the level of contact between the defendant and the forum state is high." *Id.*; *Budget Rent-A-Car v. Eighth Judicial Dist. Court in and for County of Clark*, 835 P.2d 17, 19 (Nev. 1992) ("The level of contact with the forum state necessary to establish general jurisdiction is high").

Here, Mr. Naseman has no "substantial" or "systematic and continuous" contacts with the State of Nevada. Mr. Naseman is an Arizona resident who works primarily in Washington, D.C. *See* Mr. Naseman's Affidavit in support of this Motion, attached hereto as **Exhibit "C."** Mr. Naseman does not conduct, nor has he ever conducted, any business in Nevada; he has never been employed in Nevada; he does not own any real property in Nevada or any personal property located in Nevada; he does not maintain any bank accounts or other accounts in Nevada; nor does Mr. Naseman derive any business or profits from Nevada. *Id.*

Mr. Naseman's only activity in Nevada was to have come to the state in 1993 for purposes of establishing the requisite residency to allow him to secure a divorce. After the divorce was entered, Mr. Naseman left the state and has not been a resident of Nevada for well over a decade. *Id.* As a result, Ms. Harding cannot establish that Mr. Naseman is engaged in any activities in the State of Nevada, let alone establish any "substantial" or "continuous and systematic" contacts that could justify the exercise of general personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 415; *see also Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). Based upon the foregoing, general personal jurisdiction over Mr. Naseman cannot be established.

    c.    *Specific Jurisdiction: Ms. Harding's Claims Do Not Arise From Forum-Related Activity.*

Just as this Court lacks general personal jurisdiction over Mr. Naseman, this Court likewise cannot exercise specific personal jurisdiction. "To subject a defendant to specific jurisdiction, this court must determine if the defendant 'purposefully established minimum contacts' so that jurisdiction would comport with 'fair play and substantial justice.' For specific personal jurisdiction to exist, the cause of action must have arisen from the defendant's contacts with the forum." *Burger King Corp. v.*

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Case 1:07-cv-08767-RPP   Document 24-21   Filed 06/20/2008   Page 7 of 20
Case 3:07-cv-00072-LRH-VPC   Document 8   Filed 03/01/2007   Page 6 of 19

*Rudzewicz*, 471 U.S. 462, 476-77 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Trump*, 857 P.2d at 748-49.

The following three-part test is applied to determine whether the defendant has sufficient "minimum contacts" with the forum: 1) the nonresident defendant must purposefully direct his or her activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *See Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). Considering the factors established by this three-part test, an exercise of personal jurisdiction by this Court is not proper in this case given that none of the three required elements can be established as demonstrated below.

i. There Has Been No Purposeful Availment

In determining whether an out-of-state defendant can reasonably anticipate being haled into a foreign forum, due process requires some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This purposeful availment requirement has been interpreted to mean that "the defendant's contacts with the forum must be more than random, fortuitous, or attenuated, it is the quality of the contacts and not the quantity that confers personal jurisdiction." *Trump v. District Court*, 857 P.2d 740 (Nev. 1993) (citations omitted).

"The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state" or otherwise purposefully directs efforts toward forum residents. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478-79 (9th Cir. 1986). However, "the 'foreign-acts-with-forum-effects jurisdictional principle must be applied with caution." *Pacific Atlantic Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir. 1985). Even further, "foreseeability alone is never sufficient to establish personal jurisdiction." *Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 159 (9th Cir. 1980) (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-96 (1980)).

Here, it is pivotal that the alleged activity undertaken by Mr. Naseman that serves as the basis of Ms. Harding's complaint, i.e. alleged fraudulent conduct, was not undertaken "within the forum state," nor did Mr. Naseman's alleged actions affect a forum resident (again, Ms. Harding is a New York resident). Thus, it cannot be concluded that Mr. Naseman's alleged acts were taken with the intention of purposefully availing himself of the privilege of conducting activities within Nevada or even causing harm to a Nevada citizen, thus invoking the benefits and protections of its laws.

While Mr. Naseman did take actions within the forum to establish residency to secure the parties' divorce, the divorce was bifurcated from resolution of the property division issues and granted subject to the property division that was conducted and concluded solely in New York City, New York, by and through the parties' respective New York counsel. *See* **Exhibit C**. Thus, any acts undertaken with respect to the parties' property settlement as reflected by the PSA or as to related negotiations cannot be deemed to relate to acts undertaken for purposeful availment of the protections of the laws of the state of Nevada, particularly so when the PSA purposefully selects New York law to govern its terms and conditions. Indeed, the Second Judicial District Court never even reviewed, considered, approved, or took any action with respect to the parties' division of assets. *Id.* Accordingly, it cannot be concluded that the relevant acts alleged by Ms. Harding were purposefully directed to Nevada or to a Nevada resident.

ii. The Alleged Activities Are Not Forum-Related.

To satisfy the second requirement for specific jurisdiction and show that the cause of action arose out of "acts purposefully engaged in by the defendants in the forum state," Plaintiffs' claims must "have a specific and direct relationship or be intimately related to the forum contacts." *See Firouzabadi v. District Court*, 110 Nev. 1348, 1355, 885 P.2d 616, 621 (1994) (citation omitted). Here, there is no specific, direct, or intimate relationship between the claims set forth in Ms. Harding's complaint and Mr. Naseman's alleged activities in Nevada; therefore, Ms. Harding cannot satisfy the second requirement for specific jurisdiction.

In particular, Ms. Harding alleges that Mr. Naseman fraudulently undermined the PSA by failing to disclose assets. The PSA, however, was negotiated in New York through New York counsel, is controlled by New York law, and is subject to New York jurisdiction. Moreover, any alleged fraud

would have necessarily occurred in New York where the PSA was negotiated and executed. It is further notable that none of the property subject to division between the parties was or is located in Nevada, and any resulting impact arising from the allegations would have had their effect upon Ms. Harding solely in New York City. Thus, the actions allegedly undertaken by Mr. Naseman that serve as the basis of Ms. Harding's complaint cannot be deemed to have any relation to this forum, precluding this Court from exercising personal jurisdiction. *See Sieverding v. American Bar Association*, 439 F. Supp. 2d 111, 120 (D. D.C. 2006) (holding that fraud occurring in Colorado did not relate to forum-related activities and, therefore, could not suffice to allow court in the District of Columbia to exercise personal jurisdiction); *Yarbrough v. Estate of Yarbrough*, 326 S.E. 2d 517, 518 (Ga. Ct. App. 1985) ("The appellee's alleged conversion of the estate's assets to her own use and her alleged conspiracy with Mr. Yarbrough to defeat the appellant's rights under the divorce decree were not alleged to have taken place in this state, nor was any of the property involved alleged to have been located in this state at the time the alleged misconduct occurred. Consequently, we find these allegations to be insufficient to support the exercise of long-arm jurisdiction over the appellee").

      iii.  The Exercise of Jurisdiction Would Not Be Reasonable.

Even assuming *arguendo* that purposeful contacts may have existed, which is not the case as established above, courts must consider in the third required inquiry a panoply of other factors that bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal. *See, e.g, Harlow v. Children's Hosp.*, 432 F.3d 50, 66-67 (1st Cir. 2005). "[G]auging fairness requires an assessment of reasonableness for, in certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness." *Id.* (citations omitted).

The factors to be considered include: 1) the burden on the defendant, 2) the forum state's interest in the dispute, 3) the importance of the chosen forum to the plaintiff's interest in obtaining relief, 4) the most efficient forum for judicial resolution of the dispute, and 5) the "shared interest of the several States in furthering fundamental substantive social policies." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1175 (9th Cir. 2006). In this case, all relevant factors reveal that exercising specific personal jurisdiction over Mr. Naseman would be unreasonable.

///

First, neither party resides in Nevada. Ms. Harding resides in New York and Mr. Naseman is an Arizona resident who is currently working in Washington, D.C. Accordingly, litigating in Nevada is a burden to not only Mr. Naseman, but also to Ms. Harding. The burden of litigating a matter in a forum approximately 2,400 miles away from where Ms. Harding resides and from where Mr. Naseman works is self-evident. Time zones are different; travel costs are incurred and are expensive; logistics for document production, discovery, document review, signatures and all other paperwork are implicated; communications with counsel are made more difficult and long-distance charges cannot be avoided; scheduling is impacted by travel schedules; the availability of witnesses (who are principally located in New York) and the legal and travel expenses associated with obtaining relevant information and testimony from such witnesses would be substantial; etc.

It would further be unreasonable for this Court to assume jurisdiction when this forum has little to no interest in the dispute as addressed above. This matter does not involve novel issues of Nevada law or significant matters of Nevada public policy. Nor does the conflict involve Nevada residents or Nevada property. Nor can there be deemed any Nevada implication given that the alleged improper actions and events occurred in New York.

Even further, because the allegations in Ms. Harding's complaint center around the PSA and the parties' rights and waivers with regard to knowledge of each other's assets and property, the very terms of the PSA, which is controlled by New York law and contemplated to be subject to New York's jurisdiction, is at issue, further evidencing that Nevada is not a reasonable forum for judicial resolution of the dispute. **Exhibit B**, p. 34, Article 16.6(b). Since the PSA is governed by New York substantive law and the allegations in Ms. Harding's complaint involve a myriad of issues that will arise in any eventual litigation of this matter, a forum readily conversant with New York law is essential to avoid unnecessary legal costs that will inevitably be incurred if Nevada counsel is required to become conversant with New York law, which is the applicable law expressly contemplated by the parties in the PSA.

In fact, given New York's more proximate interest in the suit based upon the allegations and in light of Ms. Harding's New York residency, it is not readily apparent what Ms. Harding's interest is in seeking to have this forum adjudicate the matter, unless it is an attempt by her at forum shopping.

1  Indeed, Ms. Harding specifically took actions in 1993 designed to have all property issues resolved by
2  the parties in New York rather than in Nevada. Moreover, New York, unlike Nevada, has a more
3  proximate interest in the dispute as the forum where her allegations of improper conduct would have
4  occurred, the forum where relevant counsel practice, the forum with the controlling law, and the forum
5  where the complaining party resides and where any impact or effects of the alleged conduct would
6  have occurred. Accordingly, there should be little significance, if any, given to Ms. Harding's interest
7  in obtaining relief from this forum, assuming her motives for filing here can be deduced or will be
8  disclosed.

9  Finally, there is no reason to conclude that trying the case in Nevada would support "any
10 shared interest of the several States in furthering fundamental substantive social policies." Ms.
11 Harding's claims are not novel, nor do they implicate fundamental substantive social policies, and
12 Nevada does not have a shared interest with any other jurisdiction in adjudicating Ms. Harding's
13 claims.

14 Based upon the foregoing, and in consideration of each element of inquiry related to the
15 propriety of this Court exercising personal jurisdiction, it is evident that neither general nor specific
16 jurisdiction can or should be properly exercised over Mr. Naseman and that, even if it could, an
17 exercise of jurisdiction by this Court under the facts as pleaded would not be reasonable.

18   4.   Should this Court Choose to Exercise Personal Jurisdiction Despite the Foregoing, the Court Should Transfer this Matter to the Southern District for the District of New York
19        Pursuant to 28 U.S.C. §1404(a).

20 Mr. Naseman has amply demonstrated that this Court cannot and/or should not exercise
21 personal jurisdiction over him for the reasons provided above and that, therefore, Ms. Harding's
22 complaint against him should be dismissed. Should this Court reach a contrary conclusion despite the
23 foregoing arguments and, nevertheless, determine that it may properly exercise personal jurisdiction
24 over Mr. Naseman, Mr. Naseman then respectfully requests that this Court transfer this matter to the
25 United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1404(a).
26 Transfer is warranted based upon the convenience of the parties and witnesses and is supported by the
27 interest of justice as addressed below.
28 ///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

a. *Applicable Legal Standard*

28 U.S.C. § 1404(a) provides, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To successfully move for transfer under this section, the moving party must establish that the action could originally have been brought in the district to which transfer is sought. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). The moving party also bears the burden of "establishing that an action should be transferred." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981).

In ruling on a motion to transfer, courts make a "flexible and individualized analysis" and weigh "a number of case-specific factors" to determine whether the proposed transferring district is a more convenient forum for the pending action. *See Stewart Org, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A district court must consider each of the factors enumerated in § 1404(a), i.e., convenience of the parties, convenience of the witnesses, and the interests of justice. 28 U.S.C. § 1404(a). Other relevant factors include, for example, the plaintiff's choice of forum, the local interest in the issue, the relative ease of access to evidence, the availability of compulsory process for unwilling witnesses and the cost involved in securing willing witnesses, and the practical issues that make a case easier or more difficult to try in a given forum, such as familiarity of each forum with applicable law and the relative court congestion in each forum. *See, e.g., Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The Court has broad discretion over whether it would be in the interest of justice to transfer the case. *See Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983)); *see also* 17 Moore's Federal Practice 3D, § 111.13[1][a] (Matthew Bender 3rd).

Here, for the reasons detailed below, a "flexible and individualized analysis" of "case specific factors" unquestionably supports the conclusion that "it would be in the interests of justice" to transfer this case to the United States District Court for the Southern District of New York in the event that this Court proceeds despite Mr. Naseman's above-arguments, which demonstrate that this Court lacks personal jurisdiction over him.

///

b. *This Action Could and Should Have Been Brought Before the United States District Court for the Southern District of New York.*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action "to any other district or division where it might have been brought." The United States Supreme Court has interpreted this statutory language to mean that the proposed transferee district must be one in which the plaintiff properly could have filed the action at the onset. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Accordingly, at the commencement of the action, the transferee district court had to have proper venue, personal jurisdiction, and subject matter jurisdiction. *Id.*; *see Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 413-14 (9th Cir. 1985).

In the present case, venue, personal jurisdiction, and subject matter jurisdiction are all proper in the United States District Court for the Southern District of New York. Venue is proper in New York City, New York, where all relevant events surrounding the negotiations and the execution of the PSA took place. 28 U.S.C. § 1391(a) (venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred"). The United States District Court for the Southern District of New York also has personal jurisdiction over Ms. Harding and Mr. Naseman, given that Ms. Harding is a New York resident and Mr. Naseman consented to personal jurisdiction by and through the PSA. **Exhibit B,** p. 34, Article 16.6(b). Diversity jurisdiction also exists because of the parties' differing state citizenship and, according to Ms. Harding's complaint, the amount in controversy exceeds the jurisdictional minimum of $75,000. Based upon the foregoing, this action could have, and undoubtedly should have, been brought before the United States District Court for the Southern District of New York.

c. The United States District Court for the Southern District of New York Is the More Appropriate and Convenient Forum.

Pursuant to §1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (*citing Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Id.* For

example, the court may consider: 1) the location where the relevant agreements were negotiated and executed, 2) the state that is most familiar with the governing law, 3) the plaintiff's choice of forum, 4) the respective parties' contacts with the forum, 5) the contacts relating to the plaintiff's cause of action in the chosen forum, 6) the differences in the costs of litigation in the two forums, 7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and 8) the ease of access to sources of proof. *Id.* Consideration of each of these factors unequivocally establishes that the Southern District of New York is the more appropriate venue to adjudicate Ms. Harding's claims.

      i.    New York City, New York, Is the Location Where the Relevant Agreement, the PSA, Was Negotiated and Executed.

The agreement relevant to Ms. Harding's claims is the PSA, which was the document negotiated by the parties through their respective New York counsel with respect to their property settlement. By and through the PSA, Ms. Harding acknowledges having had the full opportunity to make independent inquiry into Mr. Naseman's complete financial circumstances, confirms that she was satisfactorily informed of Mr. Naseman's income, assets, property and financial prospects, was aware of all of the parties' separate property and marital property, was satisfied that full disclosure had been made, and further acknowledged that she is precluded from making any claims against Mr. Naseman on the basis of non-disclosure or for her failure to undertake sufficient independent inquiry of Mr. Naseman's financial circumstances. **Exhibit B, p. 25.** Ms. Harding further represented in the PSA that she had a full opportunity to consult with her counsel and that she was satisfied with the information she possessed, and that she freely entered into the PSA. Thus, with regard to her current claims to the contrary, the terms of the PSA will undoubtedly be at issue as may matters concerning its negotiation. Accordingly, the PSA is a central document, and consideration of where it was negotiated and executed supports a transfer of venue to the United States District Court for the Southern District of New York.

      ii.    Pursuant to the PSA, New York Law Should Govern.

To sustain her claims, Ms. Harding must attack her own representations and covenants contained within the PSA, which is explicitly governed, per the agreement of the parties, by New York law (**Exhibit B, p. 34, Article 16.6(a)**); and, because the United States District Court for the Southern

1  District of New York sits in New York City and is routinely required to apply New York law, it is
2  apparent that it is the most appropriate Federal forum to apply New York law.
3      Moreover, New York counsel is readily conversant with the New York law governing the
4  issues that may be raised with respect to the allegations in Ms. Harding's complaint and can most
5  efficiently and cost effectively address those issues. This is a particularly important considering that
6  New York is not a community property state and, therefore, the parties' property division is not
7  controlled by the same standards it would be under Nevada law. Accordingly, adjudication of Ms.
8  Harding's claims in a New York forum is extremely important in ensuring that the issues raised are
9  dealt with consistent with New York law and precedent.

          iii.    Ms. Harding Made an Inappropriate Forum Choice.

11  Although a plaintiff's choice of forum is entitled to consideration, it is less significant now than
12  before the passage of 28 U.S.C. §1404(a) given that dismissal of an action under a forum non
13  conveniens analysis was eliminated by 28 U.S.C. §1404(a) for matters properly subject to transfer.
14  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (U.S. 1955). A plaintiff's choice of forum is especially
15  afforded little weight where, as in the present case, the chosen forum lacks significant contact with the
16  underlying cause of action. *See Environmental Services, Inc. v. Bell Lumber and Pole Co.*, 607 F.
17  Supp. 851, 853 (D. Ill. 1984) ("plaintiff's choice of forum has reduced value where the forum lacks any
18  significant contact with the underlying cause of action").
19  Here, because the parties' property settlement negotiations were undertaken in New York City,
20  New York, and, thus, any alleged fraud would be deemed to have occurred there, in addition to the fact
21  that Ms. Harding is now (and was during all periods relevant to the events described in her complaint)
22  a New York resident, Ms. Harding's choice to have filed in Nevada should be given little weight, if
23  any. *Trout Unlimited v. U.S. Department of Agriculture*, 944 F. Supp. 13, 17 (D. D.C. 1996) ("The
24  showing defendants must make is lessened when the plaintiff's choice of forum has no factual nexus to
25  the case and where, as in this case, transfer is sought to the forum with which plaintiffs have
26  substantial ties and where the subject matter of the lawsuit is connected to that state"); *Southern Utah*
27  *Wilderness Alliance, supra.*, 315 F. Supp. 2d at 86 (the plaintiff's forum deference is lessened when
28  plaintiff's forum choice lacks meaningful ties to the controversy and has no particular interest in the

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

parties or subject matter); *Wallace v. Mercantile County Bank*, 2006 WL 3302490, *5 (E.D. Pa. 2006) (plaintiff's choice of forum is afforded less deference where that forum has little connection with the operative facts of the lawsuit); *American Tel & Tel Co. v. MCI Comm.*, 736 F. Supp. 1294 (D. N.J. 1990). Other facts set forth herein that relate to the substantial nexus of the events in question to New York, in addition to the respective parties' submission of any dispute related to the PSA to New York's jurisdiction should further negate Ms. Harding's ill-conceived choice of venue.

iv. <u>The Respective Parties Have Little Contact With this Forum and Any Contact that Can Be Determined Is From Years Prior.</u>

Mr. Naseman's primary contact with this forum was to move here in 1993 for the statutory residency period necessary to secure the parties' divorce. Ms. Harding, herself, has never resided in Nevada and, to the best of Mr. Naseman's knowledge, has no connections to the State of Nevada other than to have participated through her Nevada counsel in the parties' 1993 divorce proceeding. On the other hand, both parties have significant connections to the State of New York. Ms. Harding resides there and has for quite some time and Mr. Naseman formerly resided there. Further, New York City, New York, is the local where the parties lived and worked for most of their marriage. Both have counsel in New York City, New York, that assisted with the parties' divorce and through which the PSA was negotiated. The PSA was executed in New York City, New York, and it is also notable that both parties have practiced law as licensed professionals in New York.[2] In evaluating the appropriateness of this forum and the United States District for the Southern District of New York, it is evident that the parties have virtually no contacts with this forum and a great deal more contacts with New York. It is further evident that it is the New York contacts that serve as the basis for Ms. Harding's complaint.

v. <u>Ms. Harding's Suit Originates From New York Contacts.</u>

Because all property negotiations took place in New York, where the parties resided while they were married, and resulted in the PSA drafted by New York counsel and executed by the parties in New York City, New York, there is no escaping the fact that Ms. Harding's suit originates from New

---

[2] Mr. Naseman continues to be a member in good standing with the New York Bar. Ms. Harding now works in New York, New York, as a real estate professional.

::ODMA\PCDOCS\HLRNODOCS\603356\1   Page 15 of 19

York contacts. While she will no doubt argue that the alleged fraud occurred in relation to the parties' Nevada divorce, it must be kept in mind that the Second Judicial District Court granted the divorce subject to a property settlement being reached, at which time the Second Judicial District Court ruled that the divorce proceeding was to be deemed completed in its entirety. The property settlement agreement was undertaken and finalized in New York City, New York, and never submitted to, reviewed by, approved by, or otherwise acted upon by the Second Judicial District Court. **Exhibit C.** As such, all operative facts surrounding this controversy have no relation to Nevada and center solely upon New York contacts.

      vi.    It Is Much More Economical for All Involved to Litigate in New York.

Both parties have already worked with counsel in New York in relation to their divorce and property settlement and both parties may be presumed to be familiar with New York law having practiced in that jurisdiction for many years. Ms. Harding lives and works in New York, and Mr. Naseman works relatively near New York City, New York, given that he is currently working in Washington, D.C. All the witnesses, save and except for Nevada local counsel, will likely reside in New York City, New York, or its surrounding areas. Certainly, Ms. Harding herself falls into this category, as do the New York legal counsel.

In consideration of the fact that the parties have no current ties to Nevada, Ms. Harding's residency, location of witnesses, and Mr. Naseman working relatively near New York City, New York, there is no question that it would be much more economical and logistically expedient and convenient for the United States District Court for the Southern District of New York to deal with Ms. Harding's claims in accordance with New York law.

      vii.    Necessary Witnesses and Proof Are Found in New York.

Given that the alleged fraud occurred in New York City, New York, where the parties resided while they were married, it is reasonable to conclude that all necessary witnesses and documents are located in that forum. Certainly the lawyers who aided with the negotiations for the parties' PSA were New York lawyers that will likely still be in or have ties to that forum, accounts in question were maintained in financial institutions located in New York, and Ms. Harding herself continues to live in New York.

On the flip side, aside from issuing the Divorce Decree, Nevada has no ties to the action and there is certainly no indication that any relevant evidence may be found in this forum. The only evidence that may be tied to this forum is the involvement of local counsel; however, it is likely that Nevada counsel's testimony will not be necessary or beneficial in consideration of issues of attorney/client privilege and in consideration of the fact that Nevada counsel served primarily as local counsel for purposes of the divorce only -- not the parties' property settlement. Further, even if Nevada counsel's testimony was necessary, the involvement of two Nevada witnesses (Nevada counsel for each side) does not outweigh the fact that the majority of necessary evidence and witnesses are located in or around New York City, New York.

It is also imperative to consider that New York witnesses, who are those of primary concern to Ms. Harding's allegations, are not subject to compulsory process of this Court. The Southern District of New York, however, could compel their testimony and, when necessary, their attendance at judicial proceedings, and there is no indication that Nevada counsel would not cooperate in appearing in New York if necessary (recognizing that Nevada counsel did not have a substantive role with the division of property in the 1993 divorce proceeding).

### viii. Weighing the Relevant Factors Supports Transfer of this Matter to the United States District Court for the Southern District of New York.

As the foregoing demonstrates, none of the factors necessary to determine the appropriateness of a transfer of venue support this Court retaining venue in relation to Ms. Harding's lawsuit. It cannot be overlooked that all property negotiations were undertaken in New York City, New York, through New York counsel, the events complained of occurred there, and the terms of the PSA are governed by New York law. Nevada's sole involvement was granting the parties their divorce, but neither the Nevada court nor any Nevada third-parties had any direct involvement with the substantive division of assets in the parties' property settlement, its negotiations, or the drafting and execution of the resulting PSA, and it is the PSA and the parties' resulting settlement that serves as the heart of Ms. Harding's allegations and claims.

Given Ms. Harding's New York residency and New York's more proximate interest and affiliation to this matter, venue should properly be transferred to the United States District Court for

the Southern District of New York should this case not be dismissed against Mr. Naseman based upon lack of personal jurisdiction.

## CONCLUSION

Based upon the foregoing, Mr. Naseman respectfully requests that Ms. Harding's complaint against him be dismissed by this Court for lack of personal jurisdiction over Mr. Naseman. Alternatively, Mr. Naseman respectfully requests that this Court transfer venue of this case to the United States District Court for the Southern District of New York based upon convenience of the parties and witnesses and in consideration of the interest of justice, as permitted by 28 U.S.C. § 1404(a).

DATED: March 1, 2007.

/s/
J. Stephen Peek, Esq.
Nevada Bar Number 1758
Patricia C. Halstead, Esq.
Nevada Bar Number 6668
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Tenth Floor
Reno, Nevada 89511
(775) 327-3000; (775) 786-6179-facsimile
Attorneys for Defendant David Naseman

PROOF OF SERVICE

I, Liz Ford, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Hale Lane Peek Dennison and Howard. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

On March 1, 2007, the foregoing **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE** was filed electronically with the U.S. District Court and therefore the Court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

Kent Robison, Esq.
Jennifer Baker, Esq.
Robison Belaustegui Sharp & Low
71 Washington Street
Reno, NV 89503

E-Mail: krobison@rbslattys.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on March 1, 2007.

/s/
Liz Ford