UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TOEHL HARDING,                                          :

                    Plaintiff,               :

       – against –                               :

DAVID NASEMAN,                                          :

                Defendant.              :
-----------------------------------------------------------------X

Hon. Robert P. Patterson

07-CV-08767 (RPP)

**COUNTERSTATEMENT OF
DISPUTED MATERIAL FACTS
PURSUANT TO LOCAL CIVIL
RULE 56.1**

        Pursuant to Local Civil Rule 56.1(b) of the Rules of the United States District Court for the Southern District of New York, plaintiff Toehl Harding ("Harding") identifies the following material facts as to which there exists a genuine issue to be tried:

    1.      Admits.

    2.      Admits.

    3.      Admits.

    4.      Admits as to Plaintiff's employment history, but further alleges that Defendant David Naseman ("Defendant" or "Naseman") knew at the time of the parties' separation that Plaintiff's division at NYNEX was being sold and that she was going to be out of a job as a result. (June 20, 2008 Dec. of Toehl Harding ["Harding Dec."], at ¶ 33).

    5.      Admits that Defendant was not working and that his employment history is accurate, and further alleges that unbeknownst to Harding at the time, while Naseman was supposedly retired, he was using the parties' joint funds for improper purposes, such as the purchase of gifts for his girlfriend. (*See* the list of these expenses set forth under the subheading "Things to hide", in a memorandum that Naseman admits he wrote; Ex. 4 to Bothe Dec., Bates No. TH 817; and Schalk Dec., Ex. A, p. 122:9-123:18).

6.     Admits.

7.     Admits.

8.     Admits only that Harding was induced to enter into the Property Settlement Agreement ("PSA") by Naseman's fraud. (Harding Dec. at ¶¶ 19, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

9.     Plaintiff denies this statement. Plaintiff was not represented by counsel at the outset of the negotiations over the PSA. *See* Harding Dec. at ¶ 35. Rather, in the Fall of 1992, Naseman presented Harding with a written draft of the PSA which offered, *inter alia*, significantly less than half of the funds in the Joint Republic Acct. *Id.* Harding was not represented by counsel at the time, and did not retain a matrimonial attorney until January 1993. *Id.* at ¶ 36.

10.     Plaintiff denies this statement. Plaintiff disputes the characterization of the negotiations and purported proposal made on or on behalf of Plaintiff. Rather, any alleged proposal was based upon fraudulent documents provided by Defendant. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

11.     Plaintiff denies this statement. Plaintiff disputes that she was represented by counsel at the outset of the negotiations over the PSA. Harding Dec. at ¶ 35. Harding was not represented by counsel until January 1993. *Id.* at ¶36. Plaintiff admits solely the identity of the attorneys, but denies knowledge or information sufficient to form a belief as to Naseman's opinion as to counsel's reputation.

12.     Denies knowledge and information sufficient to form a belief.

13.     Plaintiff denies this statement. Plaintiff disputes that the portions of the PSA relied upon by Naseman reflect the entire agreement between the parties, and Plaintiff respectfully refers

2

the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. By way of a further denial, Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

14.     Plaintiff denies this statement. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. By way of a further denial, Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

15.     Plaintiff denies this statement. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. By way of a further denial, Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto). Harding further denies this statement as it purports to state a legal conclusion.

16.     Plaintiff denies this statement. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers

the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto). Harding further denies this statement as it purports to state a legal conclusion.

17.    Plaintiff denies this statement. Plaintiff disputes Naseman's characterization of the amended complaint and respectfully refers the Court to the amended complaint which speaks for itself. Harding further denies this statement as it purports to state a legal conclusion.

18.    Plaintiff denies this statement. Plaintiff disputes Naseman's characterization of the amended complaint and respectfully refers the Court to the amended complaint which speaks for itself. Plaintiff further disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto). Harding further denies this statement as it purports to state a legal conclusion.

19.    Admits.

20.    Admits.

21.    Plaintiff denies this statement. The bulk of the substantial assets were held jointly, except for the income and assets that Naseman fraudulently concealed. (Harding Dec., ¶¶ 3-5, 16-18, 30).

22.    Plaintiff denies this statement. Harding agreed to divide the marital assets that she knew about 50/50 with Naseman. (Harding Dec., at ¶ 34). Throughout Harding's negotiations with Naseman, she stated repeatedly and unequivocally that she expected to receive 50% of the marital assets. *Id.* at ¶ 37. Harding's attorneys confirmed this position in a letter to Naseman's counsel and the assertion was never disputed. *Id.* The claim by Naseman to have been unaware that Harding was seeking at least 50% of the marital assets is false. *Id.* Plaintiff disputes that the portions of the PSA relied upon by Naseman reflect the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

23.    Plaintiff denies this statement. Plaintiff disputes that the portions of the PSA relied upon by Naseman reflect the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto). Plaintiff further rejects this statement as it purports to state a legal conclusion.

5

24.    Plaintiff denies this statement and Naseman's characterization of the assets. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

25.    Plaintiff denies this statement and Naseman's characterization of the assets. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. Harding further alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

26.    Plaintiff denies this statement as it purports to state a legal conclusion. Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves. *See* Ex. 3 to Defendant's Exhibit Volume; *see also*, Harding Dec. at ¶¶ 3-5, 32-46. The PSA was to Harding's understanding providing her with approximately 50% of the marital estate. Harding Dec. ¶ 40. Accordingly, Harding agreed to divide the marital assets that she knew about 50/50 with Naseman. *Id.* at ¶ 34. By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding

Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

27.    Plaintiff denies this statement, as it purports to state a legal conclusion.  Plaintiff disputes that the portion of the PSA relied upon by Naseman reflects the entire agreement between the parties, and Plaintiff respectfully refers the Court to the entire agreement, and the documents upon which it was based, which speak for themselves.  By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud.  (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

28.    Plaintiff denies this statement.  The Parties made financial disclosure in negotiation the PSA and Naseman's was affirmatively fraudulent.  (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

29.    To the extent this statement is understood, it is denied as it does not accurately characterize the PSA.  Plaintiff respectfully refers the Court to the PSA for the truth of the matters set forth therein.  By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud.  (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

30.    Plaintiff denies this statement, as it does not accurately characterize the PSA.  Plaintiff respectfully refers the Court to the PSA for the truth of the matters set forth therein.  By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud.  (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

31.    Plaintiff denies this statement, as it does not accurately characterize the PSA. Plaintiff respectfully refers the Court to the PSA for the truth of the matters set forth therein. By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto; Schalk Dec., Ex. C, Lesnevich Rpt.).

32.    Plaintiff denies this statement, as it does not accurately characterize the PSA. Plaintiff respectfully refers the Court to the PSA for the truth of the matters set forth therein. By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto; Schalk Dec., Ex. C, Lesnevich Rpt.).

33.    Plaintiff denies this statement. The parties did avail themselves of disclosure, and Naseman's was affirmatively fraudulent. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto; Schalk Dec., Ex. C, Lesnevich Rpt.).

34.    Plaintiff refers the Court to Exhibit 5 for the truth of the matters therein, but denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. (Harding Dec., ¶¶ 18, 26).

35.    Plaintiff refers the Court to Exhibit 5 for the truth of the matters set forth therein, but denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. (Harding Dec., ¶¶ 18, 26).

36.    Plaintiff refers the Court to Exhibit 6 for the truth of the matters set forth therein, but denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

37.    Plaintiff refers the Court to Exhibits 5 and 6 for the truth of the matters set forth therein, but denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

38.    Admits only that there were public filings concerning the subject options and respectfully refers the Court to those filings for the truth of the matters set forth therein. Plaintiff denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

39.     Admits only that there were public filings concerning the subject options and respectfully refers the Court to those filings for the truth of the matters set forth therein. Plaintiff further denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

40.     Denies personal knowledge as to LIN's requirements. Admits only that there were public filings concerning the subject options and respectfully refers the Court to those filings for the truth of the matters set forth therein. Plaintiff further denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

41.     Plaintiff denies this statement, and alleges that she was fraudulently induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

42.     Plaintiff denies this statement, and alleges that she was fraudulently induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

43.     Admits, but Plaintiff denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

44.     Denies the characterization of widely publicized over a six month time period as vague. Plaintiff refers the Court to whatever publications there were and over whatever time they were made for the truth of same. Plaintiff further denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

45.     Admits, but Plaintiff denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

46.     Denies knowledge or information sufficient to form a belief as to what various LIN executives may have done. Admits that Naseman secretly cashed in additional stock options after

lying to Plaintiff about it, and then hid the money in Secret Accounts. (Harding Dec. at ¶¶ 13-5, 8-9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

47.     Denies the characterization of the Proxy Statement, which speaks for itself, and respectfully refers the Court to that document for the truth of the matters contained therein. Plaintiff further denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

48.     Admits, but Plaintiff denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

49.     Denies this statement as hopelessly vague.

50.     Admits and further allege that Naseman fraudulently concealed these accounts from Harding. (Harding Dec. at ¶¶ 13-5, 8-9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

51.     Admits and further allege that splitting up the tax payments between a secret account and a known account was done to further Naseman's fraud. (Harding Dec. at ¶ 49).

52.    Admits and further allege that splitting up the tax payments between a secret account and a known account was done to further Naseman's fraud. (Harding Dec. at ¶ 49).

53.    Harding refers the Court to the document for the truth of the matters set forth therein, but further alleges that Naseman began asking Harding to sign tax return in blank in 1988. (Harding Dec. at ¶ 23).

54.    Admits.

55.    Admits.

56.    Plaintiff denies this statement as vague, and it does not accurately characterize the PSA. Plaintiff respectfully refers the Court to the PSA for the truth of the matters set forth therein. By way of a further denial, Harding alleges that she was induced to enter into the PSA by Naseman's fraud. (Harding Dec. at ¶¶ 13-5, 9, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto; Schalk Dec., Ex. C, Lesnevich Rpt.).

57.    Plaintiff denies the intended implication that she was on notice of Naseman's fraud as Harding was entitled to trust her husband. Plaintiff further alleges that the disposition of the LIN options was consistent with her understanding of the financials at the time. Plaintiff further alleges by way of a denial that Defendant affirmatively lied to Harding about the value of any LIN stock options remaining after the parties exercised what Naseman said were the vast majority of options in 1988. (Harding Dec., ¶¶ 18, 26).

58.    Deny. As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

59.    Deny.    As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. In fact, there were no less than four different tentative settlement proposals, none of which were agreed to by the parties, and Defendant's last "draft" version contained for the first time the material requirement that Plaintiff execute a general release in the favor of Defendant's former attorneys. Defendant then litigated this matter on the merits without objection. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

60.    Deny.    As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. In fact, there were no less than four different tentative settlement proposals, none of which were agreed to by the parties, and Defendant's last "draft" version contained for the first time the material requirement that Plaintiff execute a general release in the favor of Defendant's former attorneys. Defendant then litigated this matter on the merits without objection. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

61.    Deny.    As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. In fact, there were no less than four different tentative settlement proposals, none of which were agreed to by the parties, and Defendant's last "draft" version contained for the first time the material requirement that Plaintiff execute a general release in the favor of Defendant's former attorneys. Defendant then litigated this matter on the merits without objection. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

14

62.    Deny.   As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. In fact, there were no less than four different tentative settlement proposals, none of which were agreed to by the parties, and Defendant's last "draft" version contained for the first time the material requirement that Plaintiff execute a general release in the favor of Defendant's former attorneys. Defendant then litigated this matter on the merits without objection. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

63.    Deny.   As Defendant was aware, Plaintiff had not yet retained counsel when the communications were exchanged, and there was no meeting of the minds as to a settlement of the present litigation. In fact, there were no less than four different tentative settlement proposals, none of which were agreed to by the parties, and Defendant's last "draft" version contained for the first time the material requirement that Plaintiff execute a general release in the favor of Defendant's former attorneys. Defendant then litigated this matter on the merits without objection. (Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

## ADDITIONAL DISPUTED MATERIAL FACTS

1.    At Naseman's request, Harding began to sign copies of tax returns in blank beginning in 1988 (Harding Dec. at ¶ 23).

2.    In late 1989 to 1990, Harding asked Naseman whether they were going to make any money from stock options in LIN Broadcasting Corporation ("LIN"), Naseman's then employer, that might be cashed out as a result of McCaw Cellular Communications Inc.'s ("McCaw") takeover of LIN. (Harding Dec. at ¶ 26). In response, Naseman lied to Harding and stated that they were going to get "very little". *Id.* In actuality, Naseman received more than $4 million in proceeds from LIN

stock options in 1990, and he diverted that income into secret accounts (the "Secret Accounts"), so that when he divorced Harding two years later, Naseman could keep it all for himself. (Harding Dec. at ¶¶ 19, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

3.    Naseman secretly filed 1990 tax returns that Harding had signed in blank reflecting $5,561,728.19 in income, thus enabling him to hide the fact that he had earned more than $4 million in 1990 by cashing out LIN stock options. (Harding Dec., ¶ 5(c) and *passim*, Exs. 3 and 4 thereto). Naseman hid his fraud by paying more than $160,000 in federal taxes for 1990 out of one of the Secret Accounts, while only paying $100,000 out of a joint account that Harding knew about. Naseman did this so that Harding would only think that a $100,000 federal tax payment had been due for 1990, and remain unaware of the $4+ million in joint income that he had hidden from her. (Harding Dec., ¶ 49, and Ex. 3 and 4 thereto).

4.    In or around 1990, Naseman surreptitiously changed the mailing address on one of the Secret Accounts from home to work to hide the fact that the proceeds of the LIN Stock options were going to be deposited into that account. (Ex. A to Schalk Dec., Naseman Deposition Tr., p. 172:2-8 and Ex. 11 thereto, Bates No. DN 00421, and Ex. 14 thereto, Bates No. DN 00081; Harding Dec. at ¶¶ 30-31). At his deposition, Naseman falsely testified that he had switched the address on the secret account because he was "moving". In reality the parties merely switched apartments in the same building due to renovations; they still owned both apartments; and Naseman still had access to both, adjacent mailboxes. *Id.*

5.    When the parties negotiated the PSA, Naseman was well aware that Harding expected to receive at least 50% of the entire marital estate. (Harding Dec. at ¶ 37; Bothe Dec., Exs. 3 and 4).

6.      As part of his obligation to provide financial disclosure prior to entering into the PSA, Naseman prepared and produced fraudulent 1990 state and federal tax returns which showed only $1,323,916.85 in income as opposed to the actual $5,561,728.19. (Bothe Dec., Exs. 1 and 2; Schalk Dec., Ex. C, Lesnevich Rpt.[1]; Harding Dec., Exs. 3 and 4). In entering into the PSA, Harding relied upon the fraudulent 1990 tax returns. (Harding Dec. at ¶ 39).

7.      Harding never agreed to waive her right to her share of the Secret Accounts or the hidden 1990 income. (Harding Dec. at ¶ 43).

8.      Naseman's subsequent wife, Marcia Bothe, found overwhelming documentary proof of Naseman's fraud in what was at the time their marital home. (Bothe Dec., ¶ 6, and Exs. 1-4 thereto). Ms. Bothe telephoned Harding on January 18, 2006, and informed Harding of Naseman's fraud. (Harding Dec., ¶ 47; Bothe Dec., ¶ 9). Shortly thereafter, Bothe sent Harding copies of the documentary evidence of Naseman's fraud. (Harding Dec., ¶ 48, and Exs. 3-4 thereto; Bothe Dec., ¶ 10, and Exs. 1-4 thereto).

---

[1]      Notably, Plaintiff's expert confirmed that Naseman himself wrote both sets of 1990 returns, one for $1,323,916.85 and the other for $5,329,797. Simply put, there was no legitimate reason for Naseman to carefully prepare these vastly different tax returns for the same tax year.

17

9.    There was no meeting of the minds as to a settlement of the present litigation.

(Harding Dec., ¶¶ 52-54; Burstein Dec., *passim*; Schalk Dec., *passim*).

Dated: New York, New York
      June 20, 2008

                    Respectfully yours,

                    JUDD BURSTEIN, P.C.,

By:   Peter B. Schalk (PBS-8257)
        1790 Broadway, Suite 1501
        New York, New York 10019
        Tel. 212-974-2400
        Fax 212-974-2944