UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
TOEHL HARDING,                                      :

                  *Plaintiff,*            :

      – against –                                  :

DAVID NASEMAN,                                   :

               *Defendant.*          :
--------------------------------------------------------------X

Hon. Robert P. Patterson

07-CV-08767 (RPP)

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

JUDD BURTEIN, P.C.
1790 Broadway, Ste 1501
New York, New York 10019
*Attorney for Plaintiff*

*Of Counsel*
Judd Burstein
Peter B. Schalk
Matthew G. DeOreo

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

SUMMARY JUDGMENT IS NOT WARRANTED AS THIS CASE
CONTAINS MULTIPLE DISPUTED ISSUES OF MATERIAL FACT . . . . . . . . . . . . . . . . . . . 1

POINT II

DEFENDANT FAILS TO MEET HIS BURDEN
OF PROVING THE EXISTENCE OF A BINDING SETTLEMENT . . . . . . . . . . . . . . . . . . . . 1

    A.    There Was No Binding Settlement Under
          CPLR 2104 or Common Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Defendant's Continued Participation in the
          Litigation Shows the Absence of Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT III

PLAINTIFF'S CLAIMS ARE NOT BARRED BY A RELEASE,
*RES JUDICATA*, RATIFICATION, OR CONTRACT DISCLAIMERS . . . . . . . . . . . . . . . . . . 6

    A.    The Release Does Not Bar Harding's Claims . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The Doctrine of Ratification Does Not Bar Harding's Claims . . . . . . . . . . . . . . 8

    C.    Harding's Fraud Damages Are Not Unduly Speculative . . . . . . . . . . . . . . . . . . 10

    D.    Defendant's Case Law Is Inapposite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E.    Defendant has Failed to Establish that the
          Present Suit is Barred by the Nevada Divorce Judgment . . . . . . . . . . . . . . . . . 15

    F.    Harding's Purported Waiver of Her Right to
          Investigate the Marital Assets Does Not Bar her Current Claim . . . . . . . . . . . . 17

POINT IV

DEFENDANT FAILS TO ESTABLISH THAT HARDING'S
FRAUD CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ............... 20

POINT V

PLAINTIFF'S NON-FRAUD CLAIMS ARE NOT SUBJECT TO DISMISSAL ........... 23

    A.    Defendant Fails to Establish that Plaintiff's
           Non-Fraud Claims Are Time Barred ................................... 23

    B.    Plaintiff's Non-Fraud Claims Are
           Not Subject to Dismissal by Law ...................................... 24

CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

CASES

*Akgul v. Akgul,*
    175 A.D.2d 194, 572 N.Y.S.2d 338 (2d Dep't 1991) ............................. 14

*Ambase Corp. v. City Investing Co. Liquidating Trust,*
    01 Civ. 0771, 2002 U.S. Dist. LEXIS 482 (S.D.N.Y. Jan. 11, 2002) ............... 24

*Amiel v. Amiel,*
    657 N.Y.S.2d 763, 239 A.D.2d 532 (2d Dep't 1997) ............................. 20

*Asdourian v. Konstantin,*
    93 F. Supp. 2d 296 (E.D.N.Y. 2000) ......................................... 25

*Azoy v. Fowler,* 57 A.D.2d 541 (2d Dep't 1977) ...................................... 22

*Bard-Parker Co. v. Dictograph Products Co.,*
    258 A.D. 638, 17 N.Y.S.2d 588 (1st Dep't 1940) ............................... 8

*Bennett Silvershein Assocs. v. Furman,*
    No. 91 Civ. 3118, 1997 U.S. Dist. LEXIS 12909 (S.D.N.Y. Aug. 26, 1997) ......... 23

*Berman v. Berman,*
    629 N.Y.S.2d 82, 217 A.D.2d 531 (2d Dep't 1995) ............................. 20

*Beutel v. Beutel,*
    55 N.Y.2d 957, 449 N.Y.S.2d 180 (1982) ...................................... 14

*Brink's, Inc. v. New York,*
    717 F.2d 700 (2d Cir. N.Y. 1983) ............................................ 11

*C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.,*
    419 F.Supp.2d 419 (S.D.N.Y. 2005) .......................................... 7

*Carosella v. Carosella,*
    129 A.D.2d 547, 514 N.Y.S.2d 42 (2d Dep't 1987) ............................. 20

*Chalos v. Chalos,*
    128 A.D.2d 498, 512 N.Y.S.2d 426 (2d Dep't 1987) ........................ 14,15

*Ciaramella v. Reader's Digest Ass'n,*
    131 F.3d 320 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cole v. Kobs & Draft Advertising, Inc.,*
    921 F.Supp. 220 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Colello v. Colello,*
    9 A.D.3d 855, 859 (4th Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Colyer v. Colyer,*
    26 A.D.3d 303, 810 N.Y.S.2d 155 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Consol. Edison, Inc. v. Northeast Utils.,*
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cotz v. Mastroeni,*
    476 F. Supp. 2d 332 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cucchiaro v. Cucchiaro,*
    165 Misc. 2d 134 (Sup. Ct. Orange Co. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,23

*Delyanis v. Dyna-Empire, Inc.,*
    465 F.Supp.2d 170 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*DiSalvo v. Graff,*
    227 A.D.2d 298, 642 N.Y.S.2d 883 (1st Dep't, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Emord v. Emord,*
    193 A.D.2d 775, 598 N.Y.S.2d 266 (2d Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Finova Capital Corp v. Cote (In re Finova Capital Corp.),*
    358 B.R. 113 (Bankr. D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Frehe v. Schildwachter,*
    289 N.Y. 250 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Galyn v. Schwartz,*
    56 N.Y.2d 969, 453 N.Y.S.2d 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Galtieri v. Kelly,*
    441 F. Supp. 2d 447 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gaton v. Gaton,*
    170 A.D.2d 576; 566 N.Y.S.2d 353 (2d Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 14,20

*Gilbert v. Rothschild,*
    280 N.Y. 66 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Glynwill Invs. v. Prudential Secs.,*
    92 Civ. 9267, 1995 U.S. Dist. LEXIS 8262 (S.D.N.Y. June 15, 1995) . . . . . . . . . . . . 24

*Goldberg v. KZ 72nd,*
    567 N.Y.S.2d 249, 171 A.D.2d 525 (N.Y. App. Div. 1st Dep't 1991) . . . . . . . . . . . . . 19

*Gould v. Cayuga Co. Bank,*
    99 N.Y. 333 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Greschler v. Greschler,*
    51 N.Y.2d 368, 434 N.Y.S.2d 194 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Griffel v. Belfer,*
    12 A.D.2d 609 (1st Dep't 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grubman v. Grubman,*
    191 A.D.2d 194, 594 N.Y.S.2d 220 (1st Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . 14,20

*Guedj v. Dana,*
    783 N.Y.S.2d 37 (1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hadden v. Con Edison Co.,*
    34 N.Y.2d 88 (N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Haynes v. Haynes,*
    606 N.Y.S.2d 631, 200 A.D.2d 457 (1st Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hirsch v. Hirsch,*
    134 A.D.2d 485, 521 N.Y.S.2d 269 (2d Dep't 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Holm v. Shilensky,*
    269 F. Supp. 359 (S.D.N.Y. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,*
    No. 04 Civ. 1621, 2005 U.S. Dist. Lexis 11130 (S.D.N.Y. June 9, 2005) . . . . . . . . . . . 7

*Inman v. Merchants Mut. Casualty Co.,*
    274 A.D. 320 (3d Dep't 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*James G. Kennedy & Co. v. Chu,*
    509 N.Y.S.2d 199 (3d Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kaufman v. Cohen,*
    307 A.D.2d 113, 122-123 (1st Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kaufman v. Kaufman,*
    135 A.D.2d 786 (2d Dep't 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kershen v. Hoffman,*
    209 A.D.2d 588 (2d Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kleinberg v. Ambassador Assocs.,*
    103 A.D.2d 347 (N.Y. App. Div. 1st Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Koch v. Koch,*
    198 A.D.2d 701, 603 N.Y.S.2d 932 (3d Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . 14,15

*Kojovic v. Goldman,*
    35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kremer v. Chem. Constr. Corp.,*
    102 S. Ct. 1883, 456 U.S. 461 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lavi v. Lavi,*
    103 A.D.2d 400, 480 N.Y.S.2d 338 (2d Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Luftig v. Luftig,*
    239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't 1997) . . . . . . . . . . . . . . . . . . . . . 14,15,19

*Mahan v. Mahan,*
    29 A.D.3d 471, 817 N.Y.S.2d 216 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Markovitz v. Markovitz,*
    29 A.D.3d 460, 816 N.Y.S.2d 419 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . . . . . . 14,20

*Mattera v. Mattera,*
    125 A.D.2d 555, 509 N.Y.S.2d 831 (2d Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McCaughey v. McCaughey,*
    612 N.Y.S.2d 579, 205 A.D.2d 330 (1st Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . 14,19,20

*McFarland v. McFarland,*
    70 N.Y.2d 916, 524 N.Y.S.2d 392 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McGuinness v. Standard Drywall Corp.,*
    193 A.D.2d 518 (1st Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McManus v. Board of Ed.,*
    87 N.Y.2d 183 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Melchiorre v. Melchiorre,*
    142 A.D.2d 558, 529 N.Y.S.2d 905 (2d Dep't 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Melstein v. Schmid Labs., Inc.,*
    116 A.D.2d 632 (2d Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Nat'l Union Fire Ins. Co. of Louisiana v. Universal Fabricators, Inc.,*
    No. 05 Civ. 3418, 2007 U.S. Dist. LEXIS 51925 (S.D.N.Y. July 18, 2007) . . . . . . . . . 1-2

*Neuhs v. Ingersoll Rand Co.,*
    495 N.Y.S.2d 256, 115 A.D.2d 187 (N.Y. App. Div. 3d Dep't 1985) . . . . . . . . . . . . . . 23

*Percoco v. Lesnak,*
    24 A.D.3d 427, 806 N.Y.S.2d 674 (2d Dep't 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rainbow v. Swisher,*
    72 N.Y.2d 106, 531 N.Y.S.2d 775 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rella v. N. Atl. Marine, Ltd.,*
    No. 02 Civ. 8573, 2004 U.S. Dist. LEXIS 11567 (S.D.N.Y. June 23, 2004) . . . . . . . . . . 4

*Rosenberg v. Inner City Broad. Corp.,*
    No. 99 Civ. 9579, 2001 U.S. Dist. LEXIS 13192 (S.D.N.Y. Aug. 29, 2001) . . . . . . . . . 2

*Rutland House Associates v. Danoff,*
    325 N.Y.S.2d 273, 37 A.D.2d 828 (N.Y. App. Div. 1st Dep't 1971) . . . . . . . . . . . . . . 23

*Seifried v. Seifried,*
    188 Misc. 2d 93, 726 N.Y.S.2d 837 (Sup. Ct. Essex Co. 2001) . . . . . . . . . . . . . . . . . . 25

*Shalmoni v. Shalmoni,*
    141 A.D.2d 628, 529 N.Y.S.2d 538 (2d Dep't 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shapiro v. Hersch,*
    182 A.D.2d 403, 582 N.Y.S.2d 141 (1st Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Short v. KeySpan Corporate Servs., LLC,*
    No. 14565/05, 2006 NY Misc. LEXIS 739 (Sup. Ct. Kings Co. Mar. 22, 2006) . . . . . . . 8

*Silas v. City of New York,*
    536 F. Supp. 2d 353 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sir Speedy, Inc. v. L&P Graphics, Inc.,*
    957 F.2d 1033 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Slotkin v. Citizens Casualty Co.,*
    614 F.2d 301 (2d Cir. 1979) (citations omitted),
    *cert. denied,* 449 U.S. 981, 101 S. Ct. 395, 101 S. Ct. 396 (1980) . . . . . . . . . . . . . . . . . 9

*Stacom v. Wunsch,*
    173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,14

*Stambovsky v. Ackley,*
    572 N.Y.S.2d 672 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sterling Fifth Assocs. v. Carpentille Corp.,*
    10 A.D.3d 282 (1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tahini Invest., Ltd. v. Bobrowsky,*
    99 A.D.2d 489 (2d Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tig Ins. Co. v. Newmont Mining Corp.,*
    413 F.Supp.2d 273 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*TMG-II v. Price Waterhouse & Co.,*
    572 N.Y.S.2d 6, 175 A.D.2d 21 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Todd v. Pearl Woods, Inc.,*
    20 A.D.2d 911 (2d Dep't 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Urtz v. New York C. & H. R. R. Co.,*
    202 N.Y. 170 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V.S. Intern., S.A. v. Boyden World Corp.*,
    No. 90-cv-4091, 1993 U.S. Dist. LEXIS 2586 (S.D.N.Y. Mar. 4, 1993) . . . . . . . . . . . . 11

*W. Alton Jones Found. v. Chevron U.S.A.*,
    97 F.3d 29 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Weintraub v. Weintraub*,
    302 N.Y. 104 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zola v. Gordon*,
    685 F. Supp. 354, 373 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## STATUTES

CPLR § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,24

CPLR § 213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21

CPLR § 2104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT IS NOT WARRANTED AS THIS CASE
CONTAINS MULTIPLE DISPUTED ISSUES OF MATERIAL FACT**[1]

This case presents a myriad of disputed issues of material fact. Plaintiff contends that she

was defrauded out of her share of more than $2.7 million in marital assets. As the factual

submissions filed herewith unequivocally show, there is compelling direct and circumstantial proof

that a fraud did take place. Defendant, on the other hand, maintains that Harding knowingly

contracted away her right to share in those assets apparently to enable Naseman – who had asked for

the divorce – to stay "retired" by living off the income. The parties thus present two, fundamentally

incompatible factual scenarios giving rise to a host of disputed issues of material fact. Out of space

considerations, we respectfully incorporate herein by reference the disputed issues of material fact

set forth in Plaintiff's Rule 56.1 Counterstatement of Disputed Material Facts, as well as all of the

Declarations filed herewith, and their accompanying exhibits.

**POINT II**

**DEFENDANT FAILS TO MEET HIS BURDEN
OF PROVING THE EXISTENCE OF A BINDING SETTLEMENT**

**A.    There Was No Binding Settlement Under CPLR 2104 or Common Law**

CPLR 2104 provides: "An agreement between parties or their attorneys relating to any matter

in an action, other than one made between counsel in open court, is not binding upon a party unless

it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered."

"The term 'subscribed' as used in CPLR 2104 is interpreted to mean 'signed.'" *See Nat'l Union Fire*

---

[1]    Out of space considerations, we do not recite the well-known standard governing
summary judgment motions. *See Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 355 (S.D.N.Y. 2007)
(Conner, S.D.J.).

*Ins. Co. of Louisiana v. Universal Fabricators, Inc.*, No. 05 Civ. 3418, 2007 U.S. Dist. LEXIS 51925 (S.D.N.Y. July 18, 2007) (Scheindlin D.J.) (Applying CPLR 2104 to an alleged settlement in a litigation in the United States District Court for the Southern District of New York).

While the applicability of CPLR 2104 in federal court has never been definitively ruled upon by the Second Circuit, District Courts within the Southern District of New York apply the Rule.[2] Defendant points to no stipulation signed by counsel or a party, let alone a stipulation reduced to an order signed by the Court and entered, or an oral agreement in open Court. In fact, Defendant's counsel was aware that JBPC had not even been retained during the time when the supposedly determinative communications were sent. (Burstein Dec. at ¶¶ 15-17 and Ex. 1 thereto; Schalk Dec. at ¶¶ 6-7). *A fortiori*, then, there could not have been a stipulation or any other document signed "**by counsel**" for Plaintiff. In sum, the requirements of CPLR 2104 were not met.

Additionally, even if the Court were not to apply CPLR 2104, and we respectfully submit that it should, CPLR 2104 is based upon the common law that a party must knowingly and clearly waive a claim: "'Waiver' contemplates the 'intentional relinquishment of a known right'; it must be clearly established, not inferred from doubtful or equivocal acts or language, and the burden of proof is on the one asserting the right was waived." *James G. Kennedy & Co. v. Chu*, 509 N.Y.S.2d 199, 201 (3d Dep't 1986). The common law provides a four factor analysis for determining the validity of a settlement "in the absence of a document executed by both sides":

> We must consider (1) whether there has been an express reservation of the right not
> to be bound in the absence of a signed writing; (2) whether there has been partial

---

[2]        "[J]udges of this Court ... have found Section 2104 applicable to settlement agreements, although the Court of Appeals for the Second Circuit has not yet decided the issue." *Rosenberg v. Inner City Broad. Corp.*, No. 99 Civ. 9579, 2001 U.S. Dist. LEXIS 13192 (S.D.N.Y. Aug. 29, 2001) (Hellerstein, D.J.) (footnotes and citations omitted).

performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.... No single factor is decisive, but each provides significant guidance.

*Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997) (citation omitted).

Consequently, under the common law (and also CPLR 2104), there can be no waiver of claims through a purported settlement – clearly a type of an agreement that is usually committed to writing – when it was not even partially performed and the communications purportedly establishing the agreement have inconsistent terms. *See Sterling Fifth Assocs. v. Carpentille Corp.*, 10 A.D.3d 282, 283 (1st Dep't 2004) ("Although the letter set forth the terms of the proposed settlement, and indicated that plaintiff's representatives believed that third-party defendant First Stone Associates, L.P. would agree to the transaction, such decision still had to be made by First Stone Associates. *** The terms of the proposed compromise also left open for future negotiations the significant issue of the tax ramifications of the settlement.").[3]

In this case, there was never any agreement reached as to what the terms of any proposed settlement were. In the first instance, the relevant communications were all sent or received by JBPC at a time when JBPC was not yet retained. (Burstein Dec. at ¶¶ 4-7, 15-17 and Ex. 1 thereto; Schalk Dec. at ¶¶ 6-7; Harding Dec. at ¶ 51). Indeed, Defendant's counsel knew full well that JBPC had

---

[3]     *See also Kershen v. Hoffman*, 209 A.D.2d 588 (2d Dep't 1994) ("The record clearly established that the plaintiff's attorney forwarded the stipulation of discontinuance, signed by the plaintiff, to the defendant Ahmed Gaber's attorney on the express condition that the parties exchange releases. This condition was not met by the defendant Ahmed Gaber. Thus, the stipulation of discontinuance should have been vacated."); *Kleinberg v. Ambassador Assocs.*, 103 A.D.2d 347, 348 (N.Y. App. Div. 1st Dep't 1984) ("[A] stipulation must embody offered terms and arise from a valid acceptance of that offer. The intention to accept must be manifested unequivocally, the acceptance must be of the terms stated in the offer, and if the offeree responds by adding provisions or making a counterproposal, the offer is deemed rejected, rendering subsequent acceptance impossible.") (citations omitted).

not been retained when the communications at issue were sent. (Burstein Dec. at ¶¶ 15-17 and Ex. 1 thereto; Schalk Dec. at ¶¶ 6-7). Thus, JBPC did not have actual or apparent authority to settle a claim for Harding. *See Melstein v. Schmid Labs., Inc.*, 116 A.D.2d 632, 634 (2d Dep't 1986) ("[W]ithout a grant of authority from the client, an attorney cannot compromise or settle a claim.")

Furthermore, the communications in question simply do not objectively admit of a finding that there was a meeting of the minds. Out of space considerations, we will not repeat the detailed factual analysis on this issue as set forth in the Burstein Dec. *passim*. Suffice it to say that the supposedly determinative communications reveal no less than four different and inconsistent tentative settlement proposals. Burstein Dec. at ¶ 28 and *passim*.

The final communication about settlement actually confirmed that no agreement had been reached. Thus, when Mr. Cohen sent Mr. Burstein a proposed release on January 2, 2008, the cover e-mail explicitly identifies its attachment as being a "draft". (Defendant's Ex. 17, p. 1). Mr. Cohen further wrote: "Let me know if this is acceptable." *Id.* This tentative language demonstrates that there was no settlement. *See Rella v. N. Atl. Marine, Ltd.*, No. 02 Civ. 8573, 2004 U.S. Dist. LEXIS 11567 (S.D.N.Y. June 23, 2004) (Party's letter that it was "enclosing a *proposed* stipulation of settlement for [opposing parties'] review and approval" showed intent not to be bound absent a signed agreement.) (Italics in original).  The draft release further contained new and totally unacceptable terms, such as a general releases in favor of the attorneys who had represented Naseman in negotiating and drafting the PSA at issue in this case. (Defendant's Ex. 17 at p. 2; Burstein Dec., ¶ 26; Harding Dec., ¶ 53).

**B.**    **Defendant's Continued Participation in the Litigation Shows the Absence of Agreement**

If a party continues to litigate a case after an alleged settlement, that party cannot later argue

that a settlement was reached. *See W. Alton Jones Found. v. Chevron U.S.A.*, 97 F.3d 29 (2d Cir.

1996); *Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639 (S.D.N.Y. 2004) (Koeltl, D.J.).

In *W. Alton Jones*, the Court held that if the parties had actually settled, they would not have

continued to litigate:

> We see no reason why, if Gulf believed all along that Cities was included within the
> class [that had settled their claims against Gulf], Gulf would have delayed moving
> to dismiss those claims. If Gulf really did believe the claims were barred, then by
> waiting three and a half years to make its summary judgment motion, Gulf wasted
> extraordinary amounts of its own, its adversary's, and the court's time and money
> litigating issues which would have been rendered irrelevant if the settlement
> precluded Cities' claims. *** In sum, we agree with the district court that "had the
> parties intended to include Cities, Gulf would not have wasted a moment to point that
> out to the Oklahoma court and to move for appropriate relief. **Indeed, the time to
> do that would have been either immediately after the settlement was concluded,
> or, at the latest, when Cities noticed its intention to resume active litigation** in
> Oklahoma." Gulf's three and a half year delay in moving for judgment based on the
> settlement in the class action is powerful evidence that Gulf did not believe that the
> settlement barred the prosecution of Cities' claims.

97 F.3d at 34 (emphasis supplied).

*Con Edison* similarly held that a party's failure to raise the "settlement" as a defense at the

beginning of a litigation established that, as here, the alleged "settlement" was contrived:

> [T]he release cannot reasonably be construed to preclude the claims asserted in this
> litigation. This conclusion is only confirmed by Con Ed's failure to raise its "release"
> defense until over a year after the Settlement Agreement was formalized and nine
> months after it became final. When Con Ed ultimately did raise the issue, it did so
> only in the final two pages of a forty-page summary judgment motion. **The failure
> to raise the defense earlier is persuasive evidence that the Settlement Agreement
> was never intended to affect this action and that Con Ed's interpretation of the
> release was contrived for this litigation.**

332 F. Supp. 2d at 650-651 (emphasis supplied).

Based upon these precedents, it is indisputable that there was no binding settlement. On January 8, 2008, after the last communication concerning settlement was sent on January 2, 2008, Defendant's counsel signed the Rule 26(f) Report setting forth the parties' joint proposed discovery plan. (Burstein Decl., Ex. 2). At the January 19, 2008 adjourned date of the **pretrial** conference in this case, the parties apprised the Court that they had been unable to reach a settlement, and the Court "So Ordered" the Rule 26(f) Report signed by Defendant's counsel. (Burstein Decl., Ex. 2; Schalk Dec., ¶ 10).

Defendant's counsel did not argue at the January 19th conference that the parties should not proceed with discovery because the case was settled. Instead, Defendant proceeded to litigate this case through the conclusion of party discovery without ever mentioning the supposed settlement. Naseman appeared for deposition in this case while represented by counsel and without objection. Defendant further produced discovery in response to Plaintiff's written discovery requests; retained an expert; and produced an expert report in support of this motion. (Burstein Decl., ¶ 31).

## C.    Defendant's Case Law Is Inapposite

The case law supposedly relied upon by Defendant is so distinguishable that it supports Plaintiff's position. In *Delyanis v. Dyna-Empire, Inc.*, 465 F.Supp.2d 170, 172 (E.D.N.Y. 2006), unlike this case, (a) there was an all day mediation resulting in (b) a comprehensive settlement agreement signed by counsel and the parties, and (c) a follow up e-mail to the mediator and defendant's counsel accepting the agreement and confirming that the mediator could advise the Court of the settlement.[4]

---

[4]    In *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 Civ. 1621, 2005 U.S. Dist. Lexis 11130 (S.D.N.Y. June 9, 2005) (Wood, D.J.), plaintiff's counsel wrote that

(continued...)

## POINT III

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY A RELEASE, *RES JUDICATA*, RATIFICATION, OR CONTRACT DISCLAIMERS

### A.    The Release Does Not Bar Harding's Claims

The release that Naseman purports to rely upon is contained in the PSA, and so it cannot bar

Plaintiff's cause of action for fraudulent inducement with respect to that contract. *See C3 Media &*

*Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419, 429 (S.D.N.Y. 2005) (Pauley,

D.J.) ("The Release does not apply to any liabilities and obligations that the Separation Agreement

expressly creates, or any claims that accrue after the date of the Agreement.  Accordingly, even if

Defendants can enforce the Release, it does not preclude claims for breach of the Separation

Agreement and fraudulent inducement, which cannot be released.") (quotations, citations and

brackets omitted).

The cases that defendant cites on this issue are not on point.[5]

---

[4](...continued)

Hostcentric would not respond to any further settlement offers "unless they were **binding offers** made in writing." *Id* at *3. (Emphasis supplied).  Defendant's counsel responded that evening with "in its own words ... 'a final settlement counter-proposal' ... and listed all of the essential terms of the settlement: the settlement amount, removal of property from the premises, mutual general releases and dismissal of the lawsuit...." *Id*. at *14.  Plaintiff's counsel then wrote in response "to 'formally accept [the] settlement offer.'"  The parties proceeded "*to advise the court that this action has been settled*." *Id*. at *6 (emphasis in original).  Here, there was no such definitive offer and acceptance of a settlement and the parties did not jointly inform the Court in writing that the case had been settled.  Rather, Naseman's counsel only advised the Court of Defendant's "expectation" that dismissal papers would be filed. (Defendant's Ex. 13).

[5]      In *Frehe v. Schildwachter*, 289 N.Y. 250, 253 (1943) and *Short v. KeySpan Corporate Servs., LLC*, No. 14565/05, 2006 NY Misc. LEXIS 739, at *7 (Sup. Ct. Kings Co. Mar. 22, 2006), the Court held that plaintiff failed to establish fraudulent inducement.  In *Gilbert v. Rothschild*, 280 N.Y. 66 (1939), *Bard-Parker Co. v. Dictograph Products Co.*, 258 A.D. 638, 17 N.Y.S.2d 588 (1st Dep't 1940), and *Stacom v. Wunsch*, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991), the
(continued...)

7

Harding is not seeking to pursue her underlying divorce claims, but brings an action sounding in fraud for the difference between a fair and honest divorce settlement and her fraudulently induced one. *See Infra* at Point III, B. As such, the release cannot bar claims based upon the terms of the PSA that contains it.

**B.** **The Doctrine of Ratification Does Not Bar Harding's Claims**

In arguing that Plaintiff's claims are barred by ratification, Defendant misconstrues the gravamen of Plaintiff's complaint. Contrary to Defendant's position, Plaintiff is not seeking to rescind the PSA. Under New York law, a party who has been fraudulently induced to settle a claim may either (a) rescind the settlement, **or** (b) ratify the settlement, retain the proceeds, and institute an action to recover fraud damages:

> The law of New York is clear that one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement. *** The premises for the rule ... are quite sound. If all that will result from a misrepresentation [inducing a settlement] is a new trial, then the party making it has everything to gain and nothing to lose. The plaintiffs would be placed at a disadvantage by a new trial; the defendants would not. If anything, defendants would benefit by having a preview of plaintiffs' case. As McCormick notes in the case of willful fraud:
>
> > If the defendant by willful falsehood has cozened the plaintiff into risking his property upon a bargain, which, upon the information given by the defendant, would have been profitable, a remedy which merely seeks to place the plaintiff back in the position he was in before seems hardly adequate. The plaintiff might well be given the value of the expected bargain. **A willful fraud should cost as much as a broken promise.**

---

[5](...continued)

plaintiffs were seeking to pursue the underlying claims that were released, thus rescission was necessary. (As set forth *infra* at Point III, B, Plaintiff does not seek rescission.)

*Slotkin v. Citizens Casualty Co.*, 614 F.2d 301, 312 (2d Cir. 1979) (citations omitted; emphasis

supplied), *cert. denied*, 449 U.S. 981, 101 S. Ct. 395, 101 S. Ct. 396 (1980).

      The measure of Plaintiff's damages is thus "the difference between what would have been

a fair and honest settlement and the amount ... accepted in reliance on the alleged misrepresentations

of defendant." *Griffel v. Belfer*, 12 A.D.2d 609, 609 (1st Dep't 1960).[6]  This basis for recovery in

fraud asserted by Harding has long been recognized by the New York Court of Appeals. *See Urtz*

*v. New York C. & H. R. R. Co.*, 202 N.Y. 170 (1911) and *Gould v. Cayuga Co. Bank*, 99 N.Y. 333

(1885). As held in *Urtz*: "The action is not to enforce or vacate the compromise but to recover the

actual pecuniary loss sustained by the plaintiff." 202 N.Y. at 176.  *Urtz* explained the proper

measure of damages in fraud cases such as this one:

> The jury, in the case here, found that the deceit of the defendant moved the plaintiff
> to release unto the defendant, in consideration of the sum of five hundred dollars,
> whatever right or cause of action she had against it through the killing of her
> husband. Unless the right of action had a value and a value greater than five hundred
> dollars, the plaintiff was not defrauded.  If what she parted with had a value less than
> or only equal to the value of that which she received, she was not injured; if greater,
> she was injured and in a sum equal to its excess of value.

*Urtz*, 202 N.Y. at 174.

    *Gould* similarly held:

> And here we may turn to the other branch of the argument, that the action is an
> attempt to recover under the mask of damages the extinguished balance of the
> original obligation.  That is not the effort and such is not the true measure of
> damages.  If it was, very much of the appellants' argument would be difficult to

---

[6]    *See also Inman v. Merchants Mut. Casualty Co.*, 274 A.D. 320, 323 (3d Dep't 1948)
("Obviously unless her cause of action had more value than the amount which she received when
she executed the release she was not defrauded.  Fraud without damage or damage without fraud is
not actionable; but, where both concur, an action lies.  If a jury should find that respondent, by reason
of the fraud, has been damaged in a sum in excess of what she received she would be entitled to
recover the excess.").

answer. There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it. In no form of action while the compromise stands can that balance be recovered. But because of that fact it does not follow that merely nominal damages resulted from the fraud. While their measure is not the extinguished balance, and cannot be without making the rule as to rescission an idle and useless formality, its measure is indemnity for the real loss sustained, which may very well prove to be less, and even much less than the contract balance. Such damages will compensate the fraud as make the compromise, which is to stand, an honest and fair one, instead of a dishonest and fraudulent one.

*Gould*, 99 N.Y. at 339.

More recently, the New York Court of Appeals held that a plaintiff may sue for fraudulent inducement relating to a **divorce settlement** and recover the difference between a divorce settlement that was not the result of fraud and the fraudulently induced divorce settlement:

[W]e assume the truth of plaintiff's allegations therein that she was induced, by the defendant's false representations of his financial worth, to accept under the 1944 agreement a sum inadequate for her proper maintenance during the pendency of the contemplated New Jersey divorce action and in full satisfaction of any and all of the defendant's obligations to her which might survive the decree in that action. In those circumstances ... [the] measure of plaintiff's damages which could be applied under the complaint herein [would be] the proper amount for plaintiff's maintenance and support based upon the defendant's true financial worth.

*Weintraub v. Weintraub*, 302 N.Y. 104, 108 (1951), *superseded by statute on other grounds as stated in Lavi v. Lavi*, 103 A.D.2d 400, 480 N.Y.S.2d 338 (2d Dep't 1984).

Therefore, Harding's claim is completely proper.

## C.    Harding's Fraud Damages Are Not Unduly Speculative[7]

In a footnote without citing to any authority, Defendant states that Plaintiff's damages are too speculative to sustain a recovery. Defendant's MOL, p. 12, n. 8. This is not so. Any alleged

---

[7]    The following analysis does not take into account the interest that Plaintiff should be entitled to on any judgment. All arguments with respect to interest are reserved.

difficulty in precisely calculating Plaintiff's damages is solely attributable to Defendant's own

misconduct. Under the circumstances, even a reasonable estimate of damages **at trial** would suffice:

> Where a defendant's own misconduct has prevented a more precise computation of
> damages, the jury may make a just and reasonable estimate of the damage based on
> relevant data, and render its verdict accordingly. In such circumstances juries are
> allowed to act upon probable and inferential, as well as direct and positive proof.
> Any other rule would enable the wrongdoer to profit by his wrongdoing at the
> expense of his victim.

*Sir Speedy, Inc. v. L&P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992) (internal citations,

quotations and ellipses omitted)[8]

In opposing **summary judgment**, Harding merely needs to establish a question of fact that

damages **exist**. *See V.S. Intern., S.A. v. Boyden World Corp.*, No. 90-cv-4091, 1993 U.S. Dist.

LEXIS 2586, at *20 (S.D.N.Y. Mar. 4, 1993) (Leisure, D.J.):

> [Defendant] can prevail on its motion for summary judgment on the issue of damages
> only if plaintiffs have failed to raise a genuine issue of material fact as to the
> existence of alleged damages. In other words, if plaintiffs demonstrate a genuine
> issue of fact as to the existence of actual damages resulting from the breach of
> contract, then summary judgment in Boyden's favor is inappropriate even if the
> precise amount or extent of the damages is still somewhat uncertain. When an issue
> of fact as to the existence of recoverable damages is raised, a plaintiff must be given
> the opportunity to prove the amount of such damages at trial ....")

*See also Cole v. Kobs & Draft Advertising, Inc.*, 921 F.Supp. 220, 226 (S.D.N.Y. 1996) (Kram, D.J.)

("The mere fact that quantification of such losses may be difficult is not a bar to Cole's claim. For

---

[8]    *See also Brink's, Inc. v. New York*, 717 F.2d 700, 711 (2d Cir. N.Y. 1983) ("In such
case [where the defendant's act prevents more precise proof] ...it will be enough if the evidence show
the extent of the damages as a matter of just and reasonable inference, although the result be only
approximate. The wrongdoer is not entitled to complain that they cannot be measured with the
exactness and precision that would be possible if the case, which he alone is responsible for making,
were otherwise.") (quotations and citations omitted; brackets in the original).

these reasons, defendant's motion for summary judgment dismissing the complaint for failure to present evidence of damages related to the alleged fraud is denied.").

There are a number of methodologies to calculate Harding's damages that are not unduly speculative. **First**, Naseman has admitted that the Shearson Acct. contained approximately $2.7 million as of the signing of the PSA. (Schalk Dec., Ex. A, p. 87:23-25). A reasonable trier of fact could easily conclude that (a) Harding would have been entitled to 50% of the funds in the Shearson Acct. if she had not been induced by fraud to enter into the PSA; (b) Naseman kept the more than $2.7 million in the Shearson Acct. by virtue of his having fraudulently induced Harding to enter into the PSA; and (c) Harding is consequently entitled to 50% of the more than $2.7 million that the Shearson Acct. contained when the PSA was signed, or a minimum of $1.35 million.

**Second**, the parties' actual joint gross income for 1990 was $5,561,728.19. (Harding Dec., Exs. 3-4). The parties' gross income for 1990 as falsely represented to Harding by Naseman was $1,323,916.85. (Bothe Dec., Exs. 1-2). If this figure is subtracted from the actual income, we arrive at $4,237,811.34 in concealed gross income for 1990. Giving Naseman a credit for the difference between the actual tax paid and his calculation of tax owed on the fake return, there should be a further adjustment of $155,335.62, arriving at a subtotal of $4,082,475.72 in net income that Naseman concealed from Harding for 1990.

To clarify, the calculation is as follows:

|   | |
|---|---|
|   | $5,561,728.19 (Actual joint gross income for 1990) |
| - | $1,323,916.85 (Gross income as falsely represented to Harding) |
| = | $4,237,811.34 (Concealed gross income for 1990) |
|   | |
|   | $4,237,811.34 (Concealed gross income for 1990) |
| - | $155,335.62  (Tax adjustment) |
| = | $4,082,475.72 (Joint income concealed from Harding with tax adjustment) |

12

$4,082,475.72 \div 2 = \$2,041,237.86$

A reasonable juror could find that absent Naseman's fraud, Harding would have been entitled to 50% of the net joint income that Naseman fraudulently concealed from her, or $2,041,237.86.

**Third**, Naseman also concealed his use of marital assets to pay for at least the following improper expenses:

|   |         |                                        |
|---|---------|----------------------------------------|
|   | $90,000 | Debt of Bothe's business               |
|   | $10,000 | Tubal reconstructive surgery for Bothe |
|   | $25,000 | Diamond engagement ring for Bothe      |
| + | $65,000 | Monies sent to relatives               |
|   | $190,000 |                                       |

(*See* the list of these expenses set forth under the subheading "Things to hide", in a memorandum that Naseman admits he wrote when negotiating the PSA; Ex. 4 to Bothe Dec., Bates No. TH 817; Schalk Dec., Ex. A, p. 122:9-123:18). A reasonable trier of fact could conclude that because Naseman was still married to Harding, he should not have secretly spent $190,000 in marital assets on his girlfriend's tubal reconstructive surgery and an engagement ring, *etc.*, and that Harding was entitled to of 50% of this figure, or an additional $95,000.

## D.    **Defendant's Case Law Is Inapposite**

In arguing that Harding's fraud claim fails because she received benefits under the PSA and thus ratified it, Defendant resorts to string citations without any substantive analysis.[9] These cases

---

[9]    *See Beutel v. Beutel*, 55 N.Y.2d 957, 449 N.Y.S.2d 180 (1982); *Colyer v. Colyer*, 26 A.D.3d 303, 810 N.Y.S.2d 155 (1st Dep't 2006); *Mahan v. Mahan*, 29 A.D.3d 471, 817 N.Y.S.2d 216 (1st Dep't 2006); *Markovitz v. Markovitz*, 29 A.D.3d 460, 816 N.Y.S.2d 419 (1st Dep't 2006); *Luftig v. Luftig*, 239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't 1997); *McCaughey v. McCaughey*, 205 A.D.2d 330, 612 N.Y.S.2d 579 (1st Dep't 1994); *Koch v. Koch*, 198 A.D.2d 701, 603 N.Y.S.2d 932 (3d Dep't 1993); *Grubman v. Grubman*, 191 A.D.2d 194, 594 N.Y.S.2d 220 (1st Dep't 1993); *Stacom v. Wunsch*, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991); *Akgul v. Akgul*, 175 A.D.2d 194, 572 N.Y.S.2d 338 (2d Dep't 1991); *Gaton v. Gaton*, 170 A.D.2d 576; 566 N.Y.S.2d 353 (2d

(continued...)

are all materially distinguishable on multiple grounds. **First**, Harding is not seeking rescission, but is ratifying the settlement, retaining the proceeds, and suing for fraud damages. Yet, many of Defendant's cases do not even concern fraud claims. *See, e.g., Beutel, Colyer, Markovitz, Akgul, Gaton.* To the extent that the cases actually involve fraud, they do so only generally or as a rescission claim. None of the cases state that they relate to Harding's type of fraud claim, namely one based upon a ratification of the PSA with damages for fraud.

**Second**, to the extent that these cases deal with fraud, they were dismissed because they were based solely on conclusory allegations, or plaintiff failed to proffer any evidence to support a finding of fraud. *See, e.g., Mahan, McCaughey, Shalmoni, Hirsch.* Here, Harding has submitted substantial, detailed evidence of Defendant's fraud, including (a) expert testimony that Naseman drafted both the $5+ million 1990 return and the fraudulent $1.3 million 1990 tax return (Schalk Dec., Exs. B-D), (b) documentary proof of Defendant's scheme to defraud, including Naseman's own written admissions and two unreconcilable sets of 1990 tax returns (Bothe Dec., Exs. 1-4 and Harding Dec., Exs. 3-4), and (c) a nonparty's sworn statement that the incriminating proof was found in Naseman's possession. (Bothe Dec. at ¶ 6).

**Third**, the fraud claims in *Koch* were dismissed as untimely, while Harding's claim is timely. *See* Point IV, *infra*. In *Luftig*, the plaintiff knew of defendant's fraud during the relevant time period, while Harding first discovered the fraud nearly 13 years after the PSA was signed. Similarly, the plaintiff in *Chalos* always knew about the existence of the property at issue, but merely claimed that

---

[9](...continued)
Dep't 1991); *Melchiorre v. Melchiorre*, 142 A.D.2d 558, 529 N.Y.S.2d 905 (2d Dep't 1988); *Shalmoni v. Shalmoni*, 141 A.D.2d 628, 529 N.Y.S.2d 538 (2d Dep't 1988); *Hirsch v. Hirsch*, 134 A.D.2d 485, 521 N.Y.S.2d 269 (2d Dep't 1987); *Chalos v. Chalos*, 128 A.D.2d 498, 512 N.Y.S.2d 426 (2d Dep't 1987).

defendant did not apprise her of its value. Harding thought that the vast majority of LIN options had already been exercised in 1988, and Defendant affirmatively provided Harding with fraudulent tax returns essentially stating that $4+ million in marital income did not exist. Hence, the value of the Secret Accounts is not material to this motion.

**E.    Defendant has Failed to Establish that the Present Suit is Barred by the Nevada Divorce Judgment**

Defendant argues that Harding's present suit is barred by the Nevada judgment of divorce. The parties, however, consented to personal jurisdiction in this forum under Article 16, Sec. 6 (B) of the PSA, which provides: "(B) Both parties consent to the personal jurisdiction of the State of New York over them in any action or proceeding brought to enforce the terms and conditions of this agreement." Defendant is thoroughly familiar with this provision, moreover, because he used it successfully to argue that this case, which was originally filed in Nevada State Court, should be transferred here. *See* Ex. F to the Schalk Dec.,"Naseman's Motion to Dismiss or in the Alternative to Transfer," at p. 12, where Naseman expressly relies upon Article 16, Sec. 6, to argue that "[i]n the present case, venue, personal jurisdiction, and subject matter jurisdiction are all proper in the United States District Court for the Southern District of New York." The Nevada District Court granted Naseman's application to transfer, and relied upon Article 16 of the PSA in doing so. Ex. G to the Schalk Dec., at p. 7.

This Court also plainly has subject matter jurisdiction under 28 U.S.C. 1332, as the parties are citizens of different States and the amount in controversy exceeds $75,000. It thus appears that

15

Defendant seeks to invoke the doctrine of abstention, but Naseman is barred from doing so by another doctrine, that of judicial estoppel.[10]

Defendant seeks to improperly multiply proceedings, sending Plaintiff on a legal merry-go-round from Nevada State Court, to the United States District Court for the District of Nevada, to this Court, and now hopes to send the case back to Nevada again. If the Court were to grant Naseman such relief, which we respectfully submit would be error, Defendant should be compelled to pay for **all** of Plaintiff's cost, fees, and expenses incurred to date under 28 U.S.C. § 1927.

In addition to Defendant having consented to this Court's jurisdiction, and being estopped from arguing that the Nevada judgment bars this suit, the PSA was executed **after** the Nevada judgment of divorce judgment was entered. The PSA does not state that it was merged into the judgment, and Defendant has not submitted any evidence of merger. Thus, this suit may be

---

[10]    *See Finova Capital Corp v. Cote (In re Finova Capital Corp.)*, 358 B.R. 113, 117 (Bankr. D. Del. 2006):

The doctrine of judicial estoppel is an equitable doctrine used by the courts to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and with a recognition that each case must be decided upon its own particular facts and circumstances. The Third Circuit has consistently held that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

The Court finds that the case at hand is a textbook example that illustrates the need for the doctrine of judicial estoppel. The Defendants succeeded in getting the summary judgment vacated and the Plaintiff's claims dismissed in Vermont by arguing that this Court is the proper forum in which to hear these claims. Once the Plaintiff filed the adversary proceeding in this Court, the Defendants changed their tune, arguing that the claims should not be heard here.... If the Defendants have their way in this Court as they have in the Superior Court, the Plaintiff will be left without forum in which to bring its claims. Courts generally should not abstain from hearing a case or controversy where the plaintiff has no other forum in which to seek relief.

(citations and quotations omitted)

maintained separate and apart from that judgment. *See Kaufman v. Kaufman*, 135 A.D.2d 786, 787

(2d Dep't 1987) ("Since the stipulation was incorporated but not merged in the judgment of divorce,

the present action is not barred by that judgment. The terms of the agreement were separable and

subject to an independent suit. The present claim of fraud in the inducement, by its very nature, has

not been precluded by either the terms of the stipulation or the findings in the judgment.").

   None of the authorities relied upon by Defendant concern a property settlement agreement

that contained a New York forum selection clause. Nor does Naseman cite a case where a defendant

successfully moved to transfer a litigation to New York from the forum where the divorce judgment

was entered, and then argued disingenuously that the foreign judgment barred the suit. Defendant's

case law is distinguishable on other grounds as well.[11]

**F.    Harding's Purported Waiver of Her Right to Investigate the Marital Assets Does Not
        Bar her Current Claim**

   Defendant argues that Harding's claims fail as a matter of law because in the PSA, Harding

purportedly waived any claim concerning marital assets that were not otherwise provided for in that

agreement. However, under New York law, a party "cannot be held to have waived rights of which

she was unaware." *McManus v. Board of Ed.*, 87 N.Y.2d 183, 189 (1995). As a corollary, a waiver

is invalid if it is induced by fraud. *Hadden v. Con Edison Co.*, 34 N.Y.2d 88, 98 (N.Y. 1974) ("We

---

[11]    *Kremer v. Chem. Constr. Corp.*, 102 S. Ct. 1883, 456 U.S. 461, 507 (1982), has
nothing to do with settlement agreements or the merger of such agreements into judgments. In
*Rainbow v. Swisher*, 72 N.Y.2d 106, 108, 531 N.Y.S.2d 775, 776 (1988), the settlement agreement
specifically stated that it was merged into the divorce judgment. In *McFarland v. McFarland*, 70
N.Y.2d 916, 524 N.Y.S.2d 392 (1987), *Galyn v. Schwartz*, 56 N.Y.2d 969, 453 N.Y.S.2d 624 (1982),
and *Greschler v. Greschler*, 51 N.Y.2d 368, 434 N.Y.S.2d 194 (1980), the Court applied special
comity rules applicable to foreign countries. Under such rules, a court will not opine as to the
validity of "separation agreements which may have been **incorporated** [into foreign divorce
decrees]." *Greschler*, 51 N.Y.2d at 376 (emphasis supplied). Thus, for divorce judgments outside
the United States, incorporation is sufficient for purposes of *res judicata*, regardless of merger.

17

do find merit, however, in Con Edison's final contention that it should be permitted to rescind the agreement whereby it waived its right to discharge Hadden, if it is established that the waiver was induced by Hadden's fraudulent misrepresentations.").

Furthermore, when a party waives any claim based upon the other party's misrepresentations, that waiver does not apply to representations of fact that are peculiarly within the knowledge of the party making them. *See Tahini Invest., Ltd. v. Bobrowsky*, 99 A.D.2d 489, 490 (2d Dep't 1984):

> Where a party to a contract conceals a material fact which he is in good faith bound to disclose, such silence may constitute an actionable misrepresentation. Furthermore, even where the parties have executed a specific disclaimer of reliance on a seller's representations, a purchaser may not be precluded from claiming reliance on any oral misrepresentations if the facts allegedly misrepresented are peculiarly within the seller's knowledge. The material issues of whether defendant knew of the existence of the dumping site and whether plaintiff could have ascertained the site's presence with reasonable diligence, present questions of fact which may not be resolved on motion papers.

*See also Stambovsky v. Ackley*, 572 N.Y.S.2d 672, 677 (1st Dep't 1991) ("Even an express disclaimer will not be given effect where the facts are peculiarly within the knowledge of the party invoking it."). In this case, the "marital and contractual relationship between the parties at the time of execution of the separation agreement placed a duty upon defendant to disclose to plaintiff all material facts known to him concerning his assets." *Cucchiaro v. Cucchiaro*, 165 Misc. 2d 134, 140 (Sup. Ct. Orange Co. 1995).

Naseman can cite to no case standing for the proposition that a defendant who (a) provides affirmatively fraudulent documents as part of his financial disclosure prior to entering into a property settlement agreement, (b) with the intent of deceiving his spouse about the extent of the marital estate, is nonetheless (c) insulated from liability based upon disclaimer language contained in the property settlement agreement. Therefore, none of Defendant's case law addresses our facts.

18

Defendant's authority is distinguishable on other grounds as well. In *Luftig v. Luftig*, 239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't 1997), the Court merely held that plaintiff was barred from suing upon an oral promise not memorialized in the settlement agreement, which had a provision specifically stating that the parties were not relying on any promise not contained in it. Similarly, the claims in *Holm v. Shilensky*, 269 F. Supp. 359 (S.D.N.Y. 1967), *Haynes v. Haynes*, 606 N.Y.S.2d 631, 200 A.D.2d 457 (1st Dep't 1994), *Goldberg v. KZ 72nd*, 567 N.Y.S.2d 249, 171 A.D.2d 525 (N.Y. App. Div. 1st Dep't 1991), and *McCaughey v. McCaughey*, 612 N.Y.S.2d 579, 205 A.D.2d 330 (1st Dep't 1994), were based upon collateral promises not contained in the written agreements that were specifically disclaimed in those same agreements.

In *Kojovic v. Goldman*, 35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006), plaintiff merely alleged that defendant failed to disclose the value of a known asset. As for *DiSalvo v. Graff*, 227 A.D.2d 298, 642 N.Y.S.2d 883 (1st Dep't, 1996), the lower court's opinion, 1995 NY Misc. LEXIS 722, makes clear that it also concerns the failure to reveal the value of a disclosed asset. The failure to disclose the value of a **known** asset is hardly akin to affirmatively providing fraudulent tax returns to your spouse to keep her from learning about $4+ million in joint income to ensure that the proceeds of that income are not included in a property settlement agreement.[12]

---

[12]    Additionally, *Markovitz v. Markovitz*, 29 A.D.3d 460, 816 N.Y.S.2d 419 (1st Dep't 2006) and *Gaton v. Gaton*, 170 A.D.2d 576; 566 N.Y.S.2d 353 (2d Dep't 1991), were not fraud cases. In *Amiel v. Amiel*, 657 N.Y.S.2d 763, 239 A.D.2d 532 (2d Dep't 1997), there was no finding that defendant hid assets from plaintiff or provided plaintiff with fraudulent financial documents. In *Berman v. Berman*, 629 N.Y.S.2d 82, 217 A.D.2d 531 (2d Dep't 1995), unlike here, the wife knew about at least one of the disputed properties, and thus was on notice.

In *Hirsch v. Hirsch*, 134 A.D.2d 485, 521 N.Y.S.2d 269 (2d Dep't 1987), plaintiff failed to submit any evidence of fraud. Similarly, in *Carosella v. Carosella*, 129 A.D.2d 547, 514 N.Y.S.2d 42 (2d Dep't 1987) and *McCaughey*, plaintiffs merely supported their fraud claims with conclusory
(continued...)

## POINT IV

## DEFENDANT FAILS TO ESTABLISH THAT HARDING'S
## FRAUD CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

For "an action based upon fraud[,] the time within which the action must be commenced shall

be the greater of six years from the date the cause of action accrued or two years from the time the

plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable

diligence have discovered it." CPLR 213(8). Harding did not discover Defendant's fraud until

January 2006, when Defendant's previous wife, Ms. Bothe, contacted her and informed Harding of

facts establishing that Defendant hid substantial assets from Harding at the time the PSA was signed.

(Harding Dec., ¶¶ 47-48; Bothe Dec., ¶¶ 9-10). Harding filed her fraud claim well within two years

of that discovery. (Harding Dec. at ¶¶ 47-48, 51).

Defendant argues that with reasonable diligence Harding could have discovered the fraud

earlier by reviewing public records relating to Naseman's receipt of the LIN stock options.

"Reasonable diligence", however, only requires an investigation or inquiry **if** the plaintiff is on notice

of facts requiring such an investigation:

> This action, alleging fraudulent conveyance by Celine Dana, was commenced within
> two years of plaintiffs' discovery of the transfers, and thus within the statute of
> limitations (CPLR 203[g] )[[13]]. The mere fact that deeds had earlier been recorded

---

[12](...continued)
allegations. Lastly, in *Grubman v. Grubman*, 191 A.D.2d 194, 594 N.Y.S.2d 220 (1st Dep't 1993),
the Court only references the fraud claim in a single sentence in a wholly generalized fashion, and
it is impossible to apply the decision to the facts of this case.

[13]    CPLR 203(g) has identical language as CPLR 213(8) in that it provides: "where the
time within which an action must be commenced is computed from the time when facts were
discovered or from the time when facts could **with reasonable diligence have been discovered,** or
from either of such times, the action must be commenced within two years after such actual or
(continued...)

was insufficient to constitute constructive notice of the conveyances **in the absence of some knowledge that would have required plaintiffs to investigate the public records**.

*Guedj v. Dana*, 783 N.Y.S.2d 37, 38 (1st Dep't 2004) (emphasis supplied); *see also Mattera v. Mattera*, 125 A.D.2d 555, 557, 509 N.Y.S.2d 831, 833-834 (2d Dep't 1986) ("It was not until 1983 that the plaintiff's wife ordered him out of the marital residence at 56 Ridgewood Terrace and advised him that he did not own the property. If the plaintiff can prove that he was not aware that he was signing a deed, **there would have been no reason for him to have checked upon his ownership status prior to 1983**. Accordingly, that cause of action, which was brought in 1983, may be timely.") (emphasis supplied); *Emord v. Emord*, 193 A.D.2d 775, 776-777, 598 N.Y.S.2d 266, 267 (2d Dep't 1993):

> The plaintiff's complaint clearly sets forth that she was misled by the defendant Paul Emord's affirmative representations as well as the silence of his partner, the appellant William J. Volkman, Jr., so that she believed that Paul Emord was satisfying the mortgage payments. Neither defendant informed the plaintiff that Paul Emord permitted the marital residence to be foreclosed upon or that he and his cohort, the appellant Volkman, subsequently purchased the premises, thereby extinguishing the plaintiff's rights in the property which had been previously held by the plaintiff and Paul Emord as tenants by the entirety and which tenancy had been converted to a tenancy in common following their divorce. *** [W]e find that her initiation of this action on April 2, 1990, was well within the two-year period after her July 20, 1989, discovery of the fraudulent acts and is not time-barred.

In 1989-1990, Harding had no reason to check the public records about McCaw's takeover of LIN, because: (a) the parties had already exercised what Naseman told her was the vast majority of LIN options in 1988 (Harding Dec., ¶¶ 13-19); (b) to Harding's reasonable understanding, the proceeds of the LIN options were accounted for (*id.*); (c) two years before he asked for a divorce,

---

[13](...continued)
imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." (Emphasis supplied).

Naseman affirmatively lied to Harding claiming that they were only going to get "very little" from cashing out the remaining LIN options for tax year 1990, because the majority of options were exercised in 1988 (*id.* at ¶ 26); and (d) Naseman deceived Harding during the negotiation of the PSA by providing her with fraudulent 1990 tax returns. (Harding Dec. at ¶¶ 19, 23, 26, 31, 38-43, 49, and Exs. 1-4 thereto; Bothe Dec. at ¶ 6, 9, and Exs. 1-4 thereto).

Whether a plaintiff's purported failure to search public records is unreasonable is a question of fact inappropriate for resolution on summary judgment.[14] This is especially so, when the true facts are peculiarly within the knowledge of a defendant who willfully misrepresents the truth, as opposed to merely concealing it. *See Todd v. Pearl Woods, Inc.*, 20 A.D.2d 911, 911 (2d Dep't 1964) ("[I]t is our opinion that where, as here alleged, the facts were peculiarly within the knowledge of the defendants and were willfully misrepresented, the failure of the plaintiffs to ascertain the truth by inspecting the public records is not fatal to their action."). The marital relationship also placed a heightened obligation upon Naseman to make truthful disclosure. *Cucchiaro*, 165 Misc. 2d at 140.

At a minimum, whether a duty of inquiry arose is a question of fact that should not be determined on summary judgment. *See, e.g., Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118, 1997 U.S. Dist. LEXIS 12909, 20-21 (S.D.N.Y. Aug. 26, 1997) (Koeltl, D.J.):

---

[14]  *See McGuinness v. Standard Drywall Corp.*, 193 A.D.2d 518 (1st Dep't 1993) ("Although the alleged fraudulent transfers commenced in 1983 and the action was not brought until 1990, after investigations in connection with attempts to satisfy the judgments, plaintiffs utilized reasonable diligence in discovering the transfers, which transfers were peculiarly within the knowledge of defendants, and **the failure of plaintiffs to ascertain the truth by inspecting public records is not determinative.** ") (emphasis supplied); *Azoy v. Fowler*, 57 A.D.2d 541, 542 (2d Dep't 1977) ("The circumstances of the instant case do not demonstrate that, as a matter of law, plaintiffs failed to exercise reasonable diligence in discovering the fraud. Nor, considering those circumstances, is their failure to ascertain the truth by inspecting the public records fatal to their action.").

To determine when the fraud was or should have been discovered, a district court applies an objective test: "If the circumstances of the alleged fraud would "suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises . . . " As explained above, there is at least a question of fact as to whether persons of ordinary intelligence would have known that they had been defrauded where the defendants allegedly engaged in a campaign of misrepresentations and omissions calculated to cover up the fraud itself. Accordingly, the defendants' motion for summary judgment on the fraud and fraudulent concealment claims is denied.") (citations omitted);

Defendant's case law is not on point.[15]

## POINT V

### PLAINTIFF'S NON-FRAUD CLAIMS ARE NOT SUBJECT TO DISMISSAL

A.    **Defendant Fails to Establish that Plaintiff's Non-Fraud Claims Are Time Barred**

The two year discovery rule of CPLR 203(g) applies to plaintiff's claims for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. *See Ambase Corp. v. City Investing Co. Liquidating Trust*, 01 Civ. 0771, 2002 U.S. Dist. LEXIS 482 (S.D.N.Y. Jan. 11, 2002) (Stanton, D.J.) (unjust enrichment); *Glynwill Invs. v. Prudential Secs.*, 92 Civ. 9267, 1995 U.S. Dist. LEXIS 8262 (S.D.N.Y. June 15, 1995) (Haight, D.J.) (breach of fiduciary duty and contract claims); *Kaufman v. Cohen*, 307 A.D.2d 113, 122-123 (1st

---

[15]    In *Percoco v. Lesnak*, 24 A.D.3d 427, 428, 806 N.Y.S.2d 674, 675 (2d Dep't 2005), plaintiff admitted that she discovered the fraud more than two years before she filed her claim. In *Shapiro v. Hersch*, 182 A.D.2d 403, 582 N.Y.S.2d 141 (1st Dep't 1992), plaintiff could have easily discovered the fraud more than two years before bringing suit, because unlike Naseman's fraud, the "underlying facts of the fraud were well publicized ...." Similarly, in *TMG-II v. Price Waterhouse & Co.*, 572 N.Y.S.2d 6, 175 A.D.2d 21 (1st Dep't 1991), plaintiff knew of the fraud well before the two-year period, because it was detailed in the press and plaintiff's principal's admitted their knowledge in a separate litigation. In *Neuhs v. Ingersoll Rand Co.*, 495 N.Y.S.2d 256, 115 A.D.2d 187 (N.Y. App. Div. 3d Dep't 1985), plaintiff outlined the grounds for her fraud claim in a letter that she sent prior to the two-year period. In *Rutland House Associates v. Danoff*, 325 N.Y.S.2d 273, 37 A.D.2d 828 (N.Y. App. Div. 1st Dep't 1971), plaintiff knew of the fraud at least five years prior to the commencement of the suit.

Dep't 2003) (breach of fiduciary duty). As to conversion, "CPLR 206(a)(1) incorporates the discovery rule into conversion actions involving money held by one acting in a fiduciary capacity." *Zola v. Gordon*, 685 F. Supp. 354, 373 (S.D.N.Y. 1988). Defendant, as Harding's husband, was misappropriating funds from Harding as a fiduciary. *See Colello v. Colello*, 9 A.D.3d 855, 859 (4th Dep't 2004) (holding that spouses are fiduciaries of each other).

Therefore, for the same reasons that Harding's fraud claims are timely under the discovery rule, so too are her claims for breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion.

**B.    Plaintiff's Non-Fraud Claims Are Not Subject to Dismissal as a Matter of Law**

With the exception of statute of limitation grounds, Defendant does not challenge Harding's breach of fiduciary duty claim. Based upon Defendant's failure in this regard, the Court should also uphold Harding's claim for a constructive trust, as a constructive trust is a remedy for a breach of fiduciary duty. *See, e.g.*, Restatement of the Law, Restitution, § 190 ("Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as fiduciary, he holds it upon a constructive trust for the other.").

"Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Asdourian v. Konstantin*, 93 F. Supp. 2d 296, 298 (E.D.N.Y. 2000). Upon the entering of the decree of divorce in Nevada in April of 1993, Harding had an enforceable superior possessory property right to her portion of the marital assets in the Secret Accounts. *See Galtieri v. Kelly*, 441 F. Supp. 2d 447, 456 (E.D.N.Y. 2006) ([A] spouse's right to equitable distribution ... [vests once] a judgment of divorce is entered."). Defendant interfered with Harding's

superior rights in the Secret Accounts through his unauthorized dominion and control over them, thus giving rise to a claim for conversion.

Based on the forgoing, Harding has also established an unjust enrichment claim, because upon the entering of the divorce decree, Defendant was unjustly enriched with Plaintiff's portion of the Secret Accounts, and equity and good conscience mandate its return.

Despite Defendant's conclusory statements to the contrary, Plaintiff has adequately alleged that Defendant violated the covenant of good fath and fair dealing, which is "implicit in all contracts." *See Tig Ins. Co. v. Newmont Mining Corp.*, 413 F.Supp.2d 273, 281 (S.D.N.Y. 2005) (Scheindlin, D.J.). Defendant's fabrication of fraudulent tax returns and other deceitful behavior "frustrated a fundamental purpose underlying the agreement" – a fair and equitable distribution of the parties' marital estate. *Id.*

## CONCLUSION

**WHEREFORE**, based upon the foregoing, together with all of the accompanying submissions, and all of the proceedings heretofore had herein, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
    June 20, 2008

Respectfully yours,
JUDD BURSTEIN, P.C.,

By:    Peter B. Schalk (PBS-8257)
        1790 Broadway, Suite 1501
        New York, New York 10019
        Tel. 212-974-2400
        Fax 212-974-2944

Of Counsel:
    Judd Burstein, Esq.
    Matthew G. DeOreo, Esq.

25