United States District Court
Southern District of New York
----------------------------------------------------------x
Toehl Harding,

                Plaintiff,

    -against-

David Naseman,

                Defendant.
----------------------------------------------------------x

Hon. Robert P. Patterson

07 Civ 08767 (RPP)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO ENFORCE A SETTLEMENT OR FOR SUMMARY JUDGMENT

Cohen Lans LLP
Attorneys for Defendant
885 Third Avenue
New York, New York 10022
(212) 980-4500

Cohen Lans LLP
885 Third Avenue 32nd Floor New York NY 10022

TABLE OF CONTENTS

I. PLAINTIFF HAS SHOWN A BINDING SETTLEMENT ................................................. 1

   A. CPLR § 2104 is Satisfied ............................................................................................... 1

   B. Defendant's "Delay" In Filing This Motion Does Not Suggest Otherwise ..................... 2

II. THE CLAIMS ARE BARRED BY THE AGREEMENT AND PLAINTIFF'S CONDUCT ........................................................................................................................... 3

   A. Release ............................................................................................................................ 3

   B. Res Judicata ................................................................................................................... 4

   C. Ratification .................................................................................................................... 4

   D. Disclaimers .................................................................................................................... 7

   E. Waiver ............................................................................................................................ 8

III. PLAINTIFF'S OPPOSITION ACTUALLY ESTABLISHES THAT HER CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ................................................. 8

   A. Plaintiff Admits that the So-Called "Secret Accounts" Were Disclosed ....................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

*American Airlines v. Block*,
  905 F.2d 12 (2d Cir. 1990) ........................................................................................... 5

*Ankenbrandt v. Richards*,
  504 U.S. 689 (1992) ................................................................................................... 5

*Bishop v. Graziano*,
  10 Misc.3d 342, 804 N.Y.S.2d 236 (Sup. Ct. Suffolk Co. 2005) ............................... 8

*Brenhouse v. Bloch*,
  418 F. Supp. 412 (E.D.N.Y. 1976) .............................................................................. 5

*C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*,
  419 F. Supp. 2d 419 (S.D.N.Y. 2005) ......................................................................... 3

*Cassens v. Cassens*,
  430 F. Supp. 2d 830 (S.D. Ill. 2006) ........................................................................... 5

*Consolidated Edison, Inc. v. Northeast Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..................................................................... 2, 3

*Danaan Realty Corp. v. Harris*,
  5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959) .................................................................... 7

*Delyanis v. Dyna-Empire, Inc.*,
  465 F. Supp. 2d 170 (E.D.N.Y. 2006) ........................................................................ 2

*Doe v. Poe*,
  189 A.D.2d 132, 595 N.Y.S.2d 503 (2d Dep't 1993) ................................................. 1

*DynCorp v. GTE Corporation*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002) ......................................................................... 8

*Eisenstein v. Haber*,
  1993 WL 37146 (S.D.N.Y. 1993) ............................................................................... 5

*Elk Grove Unified School District v. Newdow*,
  542 U.S. 1 (2004) ....................................................................................................... 5

*Frehe v. Schildwachter*,
  289 N.Y. 250 (1943) ................................................................................................... 3

*Fusaro v. Fusaro*,
   550 F. Supp. 1260 (D.C. Pa. 1982) ............................................................................ 5

*Gardner v. Jacon*,
   148 A.D.2d 794, 538 N.Y.S.2d 377 (3d Dep't 1989) ................................................ 1

*Gould v. Cayuga County*,
   99 N.Y. 333 (1885) .................................................................................................... 5

*Griffel v. Belfer*,
   12 A.D.2d 609 (1st Dep't 1960) ................................................................................ 5

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ........................................................................................ 7

*Hickey v. Daniels*,
   No. 06-CV-6838 (JFB) .............................................................................................. 5

*Hostcentric Technologies, Inc. v. Republic Thunderbolt*,
   2005 WL 1377853 (S.D.N.Y. June 9, 2005) ............................................................ 2

*Kahn v. Kahn*,
   21 F.3d 859 (8th Cir. 1994) ....................................................................................... 5

*Knize v. Knize*,
   2007 WL 1771545 (D.Conn., June 15, 2007) ........................................................... 5

*Kojovic v. Goldman*,
   35 A.D.2d 65, 823 N.Y.S.2d 35 (1st Dep't 2006) ..................................................... 7

*Kojovic v. Goldman*,
   35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006) ..................................................... 5

*Lavi v. Lavi*,
   103 A.D.2d 400, 480 N.Y.S.2d 338 (2d Dep't 1984) ................................................ 6

*Little v. Greyhound Lines, Inc.*,
   2005 WL 2429437 (S.D.N.Y. September 30, 2005) ................................................. 2

*McArthur v. Bell*,
   788 F. Supp. 706 (E.D.N.Y. 1992) ............................................................................ 5

*McLaughlin v. Cotner*,
   193 F.3d 410 (6th Cir. 1999) ..................................................................................... 5

*Palaniappan v. Angamuthu,*
   No. 07-CV-0176A, 2007 WL 2973582 (W.D.N.Y. Oct. 4, 2007) ........................................ 5

*Puletti v. Patel,*
   05 CV 2293, 2006 WL 2010809 (E.D.N.Y. July 14, 2006) .............................................. 5

*Rainbow v. Swisher,*
   72 N.Y.2d 106 (1998) ...................................................................................................... 4

*Short v. Keyspan Corp. Services,*
   11 Misc.3d 1076 ............................................................................................................... 4

*Stacom v. Wunsch,*
   173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991) .................................................... 3, 6

*Tartaglia v. Paul Revere Life Insurance Co.,*
   948 F. Supp. 325 (S.D.N.Y.1996) .................................................................................... 1

*Tonti v. Petropoulous,*
   656 F.2d 212 (6th Cir.1981) ............................................................................................ 5

*Tropp v. Lumer,*
   23 A.D.3d 550, 806 N.Y.S.2d 599 (2d Dep't 2005) ........................................................ 1

*W. Alton Jones Foundation v. Chevron U.S.A.,*
   97 F.3d 29 (2d Cir. 1996) ............................................................................................ 2, 3

*Weintraub v. Weintraub,*
   302 N.Y. 104 (1951) ........................................................................................................ 6

*Wise v. Bravo,*
   666 F.2d 1328 (10th Cir.1981) ........................................................................................ 5

**FEDERAL STATUTES**

Federal Rules of Evidence § 501 ........................................................................................ 1

Defendant David Naseman ("Naseman") respectfully submits this reply in further support of his motion to enforce a settlement or for summary judgment

## I. PLAINTIFF HAS SHOWN A BINDING SETTLEMENT

**A.    CPLR § 2104 is Satisfied.** Harding contends that no binding settlement exists because the requirements of CPLR § 2104 were not met. CPLR § 2104 provides, in relevant part, that:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

Plaintiff's attorney, Judd Burstein, argues, first, that the signature requirement cannot be met because at the time he communicated plaintiff's December 18 and 19 "walk-away" offer, he was not yet plaintiff's attorney.[1] Mr. Burstein, however, asserts the attorney-client privilege on plaintiff's behalf for a communication occurring on the very same day as to which he denies acting as plaintiff's attorney. Burstein Decl., ¶ 16, fn. 1 and Exh. 1 to Burstein Declaration. Before the attorney-client privilege can come into existence, however, the relationship of an attorney and client must exist. Doe v. Poe, 189 A.D.2d 132, 134, 595 N.Y.S.2d 503, 504 (2d Dep't 1993) ("First, it is beyond dispute that no attorney-client privilege arises unless an attorney client relationship has been established . . .") (quoting Priest v. Henessey, 51 N.Y.2d 62, 68 (1980)).[2]

Second, plaintiff contends that there is no writing <u>subscribed</u> by her attorney. However, plaintiff's attorney's email offer of December 18 (Naseman Exh. 12) (as well as his email of

---

[1] Harding's attorney's attempt to argue that no attorney-client relationship existed because he had not yet entered into a retainer agreement with her lacks merit. It is well settled that an attorney-client relationship can exist in the absence of a retainer agreement. Tropp v. Lumer, 23 A.D.3d 550, 551, 806 N.Y.S.2d 599, 600 (2d Dep't 2005) (citing Gardner v. Jacon, 148 A.D.2d 794, 795, 538 N.Y.S.2d 377, 379 (3d Dep't 1989)).

[2] Since this is a diversity case, privilege issues are controlled by state law. Fed.R.Evid. 501; Tartaglia v. Paul Revere Life Ins. Co., 948 F.Supp. 325, 326 (S.D.N.Y. 1996).

1

December 19 (Naseman Exh. 15)) stating the material terms of the settlement is sufficient under New York law to create a binding settlement. Hostcentric Technologies, Inc. v. Republic Thunderbolt, 2005 WL 1377853 (S.D.N.Y. June 9, 2005) (applying New York law) (party's email offer sufficient under New York law to create enforceable settlement agreement against it); see also, Delyanis v. Dyna-Empire, Inc., 465 F.Supp.2d 170, 174-176 (E.D.N.Y. 2006) (applying New York law).[3]

### B.     Defendant's "Delay" In Filing This Motion Does Not Suggest Otherwise.

Harding contends that Naseman's "delay" in filing this motion evidences that no settlement agreement exists.[4] Plaintiff's Memorandum of Law in Opposition (hereafter, "Ptf. Mem."), p. 5. Harding's reliance on W. Alton Jones Found v. Chevron U.S.A., 97 F.3d 29 (2d Cir. 1996) and Consol. Edison, Inc. v. Northeast Utils, 332 F.Supp.2d 639 (S.D.N.Y. 2004), is misplaced. In Chevron, the defendant waited three and one half years to move on its defense that a release existed in a related action that precluded the claims against it (97 F.3d at 33), and in Consol. Edison the defendant waited one year (332 F. Supp.2d at 650). Here, Naseman filed his motion to enforce the settlement roughly four months after Harding's disavowal. Further, in Chevron, the defendant had

---

[3] In both Hostcentric and Delyanis the parties informed the court that a settlement had been reached and in both cases the court found that informing the court of a settlement is a strong indication of the party's intent to be bound. Hostcentric, 2005 WL 1377853, *4; Delyanis, 465 F.Supp.2d at 176; see also, Little v. Greyhound Lines, Inc., 2005 WL 2429437 (S.D.N.Y. September 30, 2005). In the instant case, defendant's letter to the Court (reviewed and approved by plaintiff's counsel prior to being sent to the Court) stated that "[p]laintiff has agreed to withdraw the action." Naseman Exh. 14.

[4] Harding attempts to convince the Court that Naseman's "continued participation" in the litigation shows the absence of agreement. Harding, however, fails to inform the Court that Naseman conducted no discovery during the four months from when Harding disavowed the settlement agreement until the filing of this motion. Since the filing of this motion, Naseman has conducted no discovery other than in connection with the deposition of Harding's expert witness, whose deposition was court-ordered at Harding's insistence. Even at the deposition, Naseman's counsel asserted that his "presence here today in no way -- we reserve the argument that we put before the court that we believe that this case has reached a binding settlement, but because of court order we are present." (Cohen Decl. ¶ 21 and Exh. A thereto).

several opportunities to move to enforce the settlement prior to filing its motion, including in connection with an earlier filed summary judgment motion. Id. at 34. Here, Naseman is asserting the settlement defense in his first motion. Further, in Chevron, the defendant did not inform the court of the existence of a settlement until it filed its motion. Id. at 33. Here, Naseman informed the Court immediately as well as raised the settlement agreement at the first court hearing. Naseman Exh. 14; Rottenstreich Decl. ¶ 4. Further, in Consol. Edison, the issue before the court was not whether the parties had settled their dispute within the main action, but whether the scope of a release in a related action encompassed the claims against the defendant in the main action. Consol. Edison, 332 F.Supp.2d at 646. Since the defendant in Consol. Edison waited a year to raise its release defense (and did so only in the final two pages of a forty page brief), the court found that defendant's "interpretation of the release was contrived for this litigation." Id. at 650-51. Here, it cannot be disputed that Naseman's first argument is to enforce the settlement and that the issue of settlement is not contrived. Naseman Exhs. 12-18.

## II. THE CLAIMS ARE BARRED BY THE AGREEMENT AND PLAINTIFF'S CONDUCT

A.   **Release.**  Plaintiff relies solely on C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419 (S.D.N.Y. 2005), to argue as to why the release she gave in the Agreement does not bar her claims. In C3, however, the release was held not to bar the claims (a) because plaintiff sought to rescind the release for fraud and (b) because the claims arose from events post-dating the release. Here, plaintiff has eschewed rescission and relies solely on pre-release events.

Nor are defendant's authorities distinguishable on the grounds stated by plaintiff. For example, in Stacom v. Wunsch, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991), a marital agreement case, fraud in the inducement and other claims were barred precisely because of the release in the parties' unrescinded agreement. Frehe v. Schildwachter, 289 N.Y. 250 (1943), was

3

not, as plaintiff claims, merely about pleading deficiencies. Rather, the court stated "[t]he release is a complete bar to the present action against the defendant, unless rescinded." Id. at 251. There, as here, there was no rescission claim and no tender back of benefits. The fraud claim was therefore dismissed. Lack of rescission, not pleading issues, likewise barred the claim in Short v. Keyspan Corp. Services, 11 Misc.3d 1076 (Sup. Ct. Kings Co. 2006).

     **B.**     **Res Judicata.** Plaintiff argues that this Court's jurisdiction and the parties' contractual forum selection clause defeats defendant's res judicata argument. Ptf. Mem. pp. 15-17. Plaintiff simply misapprehends the issue. The New York Court of Appeals in Rainbow v. Swisher, 72 N.Y.2d 106, 110 (1998), held that a plaintiff is precluded from litigating claims -- like Harding's economic rights vis-à-vis Naseman -- that were "or might have been litigated" in the 1993 Nevada divorce action. See, Naseman Decl. Exh. D, Harding's counterclaim in the Nevada action, in which she asserts a host of economic claims. Plaintiff barely mentions Rainbow, commenting only that the Rainbow rule is inapposite because "the settlement agreement specifically stated that it was merged into the divorce judgment." Ptf. Mem., p. 17, fn. 11. This is a distinction without a difference. The judgment still stands as a bar, as Rainbow explicitly states. Likewise, plaintiff's statement that the Court of Appeals decisions in McFarland and Greschler involved foreign, not sister-state decrees leads nowhere, as the comity doctrine is weaker than that of full faith and credit, and hence, the res judicata effect of a domestic (Nevada) judgment is stronger, not weaker, than a foreign one

     **C.**     **Ratification.** Plaintiff's arguments about why her claims are not barred by her ratification of the Agreement are equally disingenuous, especially since plaintiff now fully acknowledges her ratification of the Agreement. (Ptf. Mem., p. 8, p. 7, fn. 5; Complaint ¶¶ 99, 107, 116).

4

The New York domestic relations cases without exception state the doctrine, based among other things on the policy favoring finality in divorce matters,[5] that a party who has ratified a separation agreement may not sue her ex-spouse for additional monies allegedly due in connection with the separation, divorce, marital property rights, etc.[6] The New York marital cases cited in

---

[5] See, Kojovic v. Goldman, 35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006).

[6] Plaintiff relies on irrelevant commercial, not marital, law cases, which in any event do not support her. Gould v. Cayuga County, 99 N.Y. 333 (1885), explains that an action for damages for fraudulent inducement may only be brought if it is impossible for plaintiff to rescind the contract and restore the parties to their original positions -- which is not the case here. 99 N.Y. at 337. Griffel v. Belfer, 12 A.D.2d 609 (1st Dep't 1960), acknowledges Gould.

Plaintiff argues from the commercial cases that if a claim did lie here, the measure of damages would be, as stated in Griffel, "the difference between what would have been a fair and honest settlement" and the deal actually made. Id. Plainly, such a measure is wholly speculative, as it is either the outcome of a hypothetical divorce negotiation or the equally speculative determination of what a New York divorce judge would have awarded in 1993.

Indeed, given plaintiff's argument, if this Court should determine that any part of this diversity-based case can survive, it should be remanded to New York state court, since the issues will, as plaintiff admits, require the application of New York's equitable distribution law (as in effect in 1993). The fact that Naseman's prior counsel removed the case from Nevada state court and then caused its transfer here does not deprive this Court of such power. See, e.g., Hickey v. Daniels, No. 06-CV-6838 (JFB)(WDW), 2007 WL 1965297 (E.D.N.Y. July 2, 2007) (refusing to reconsider sua sponte dismissal of action on domestic relations exception grounds); Knize v. Knize, 2007 WL 1771545, at *2 (D.Conn., June 15, 2007) (remanding sua sponte, because "the domestic relations exception to diversity jurisdiction would seem to preclude the defendant from removing the case even if he could demonstrate diversity of citizenship"); see also, McLaughlin v. Cotner, 193 F.3d 410 (6th Cir. 1999) (affirming sua sponte dismissal on domestic relations exception grounds).

The United States Supreme Court has long recognized: a "domestic exception" to its jurisdiction. Palaniappan v. Angamuthu, No. 07-CV-0176A, 2007 WL 2973582, *2-3 (W.D.N.Y. Oct. 4, 2007), quoting, Puletti v. Patel, 05 CV 2293(SJ), 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006); Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12-13 (2004). In Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992), the Court clarified that the exception applies equally to suits founded on diversity and federal jurisdiction. The exception precludes parties from adjudicating in federal court any claim that would require the court to interpret and apply a state's domestic relations laws. Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994) (claim for damages for fraud and breach of fiduciary duty in connection with separation agreement dismissed, because to adjudicate the issue of damages the court would have to consider the factors a Missouri state court would consider in dividing property); Cassens v. Cassens, 430 F. Supp. 2d 830 (S.D. Ill. 2006) (fraud in the inducement challenge to agreement remanded to state court); American Airlines v. Block, 905 F.2d 12, 14 (2d Cir. 1990); McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992); Wise v. Bravo,

5

defendant's original memorandum of law (at pp. 13-14) exemplify the binding authority on point. Kojovic, Mahan, Luftig, McCaughey, Koch, Grubman, Stacom, Shalmoni, Gaton, Hirsch, Melchiurre, Akgul, and Shalos are all appellate level New York decisions barring fraud in the inducement claims arising in connection with the negotiation of separation agreements. Shalmoni, which went to the Court of Appeals, specifically involved dismissal of a claim for damages for such alleged fraud on ratification grounds. (Contrast, plaintiff's statements at Ptf. Mem., p. 18)

Hence, plaintiff is just inaccurate in "distinguishing" the cases as not involving damages (see, e.g., Shalmoni, a damages case), as based solely on pleading deficiencies (see, e.g., Stacom, Chalos, Gaton, Hirsch, Melchiurre, decided on summary judgment), or as untimely (which was an alternate ground of decision only, and in only one of the fifteen cited cases (Koch)).

Weintraub v. Weintraub, 302 N.Y. 104 (1951), and Lavi v. Lavi, 103 A.D.2d 400, 480 N.Y.S.2d 338 (2d Dep't 1984), the only matrimonial cases cited on this point by plaintiff, do not support her position at all. In Weintraub, the Court of Appeals sustained the dismissal of an action for damages brought by the wife on the ground that the parties' agreement was procured by fraud. The court wrote: "where, as here, the plaintiff asserts that she neither attacks the validity of the agreement of 1944 nor asks for its rescission or modification, but demands of the defendant damages by reason of his alleged deceit, we think the law of this jurisdiction is opposed to her position." 302 N.Y. at 107. Lavi is simply irrelevant, as it involved an application by the wife to declare the nullity of a foreign divorce decree, and in such actions (of which this case is not one, as plaintiff concedes) the court is statutorily empowered to award alimony (a remedy plaintiff does not seek here).

---

666 F.2d 1328, 1333 (10th Cir. 1981); Tonti v. Petropoulous, 656 F.2d 212, 216 (6th Cir. 1981); Eisenstein v. Haber, 1993 WL 37146, at *3 (S.D.N.Y. 1993); Fusaro v. Fusaro, 550 F. Supp. 1260, 1263 (D.C. Pa. 1982); Palaniappan v. Angamuthu, supra; Brenhouse v. Bloch, 418 F. Supp. 412, 416 (E.D.N.Y. 1976)

6

    **D.**    **Disclaimers.**  Because marital agreements are so susceptible to after-the-fact challenge, the New York cases in this area (ignored by plaintiff) hold the parties to the disclaimers and acknowledgements they make in those agreements, especially when they have legal representation, <u>even as against fraud in the inducement challenges</u>. This court's decision in <u>Holm</u> (applying New York law) and the appellate decisions in <u>Kojovic</u>, <u>Markovitz</u>, <u>Luftig</u>, <u>Amiel</u>, <u>DeSalvo</u>, <u>Berman</u>, <u>Haynes</u>, <u>McCaughey</u>, <u>Grubman</u>, <u>Gaton</u>, and <u>Hirsch</u> (Def. Mem., pp. 14-16) <u>all</u> so hold. Plaintiff's reliance on non-marital cases (Ptf. Mem., pp. 17-19) is simply not to the point, since this case, like those defendant relied on, stems from a marital negotiation.[7]

    Plaintiff's comments about <u>Kojovic v. Goldman</u>, 35 A.D.2d 65, 823 N.Y.S.2d 35 (1st Dep't 2006), in fact underscore the validity of defendant's motion. There, the dismissal of a claim that a spouse fraudulently concealed the value of an asset (whose existence was known) was sustained. Here, too, Harding knew or is deemed to have known of the so-called "secret accounts" because they are disclosed in the 1989 and 1991 tax returns she herself states she reviewed and whose authenticity is unchallenged (Naseman Reply Decl. ¶¶ 5-12), and she also knew of Naseman's pre-takeover LIN options from the loan application she signed and the existence and sale proceeds of the LIN options was expressly disclosed in available public filings (Naseman Aff. ¶¶ 10-11, 14). As in <u>Kojovic</u>, Harding "has only herself to blame for her failure to inquire further. Such failure is not, however, a basis upon which to vacate the settlement." 35 A.D.2d at 72.

---

[7] Plaintiff's attempted distinguishing of the marital cases defendant cited on the grounds they involved suits on a "<u>promise</u> not memorialized in the agreement" is without validity, because (1) those cases actually involved alleged <u>parol representations</u>, as does this one, and (2) plaintiff here sues on an alleged parol representation (as to 1990 income) similarly not contained in the agreement. Further, even in the commercial context, the Court of Appeals in <u>Danaan Realty Corp. v. Harris</u>, 5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959), made it clear that where, as here, a plaintiff makes specific representations and waives the right to rely on parol representations, she will be foreclosed from claiming fraud in connection with parol representations. Accord, <u>Harsco Corp. v. Segui</u>, 91 F.3d 337 (2d Cir. 1996).

E.   **Waiver.**  Harding argues that even though she disclaimed reliance on representations Naseman made outside the Agreement, she can still sue for fraud because she was misled concerning facts of which Naseman had "peculiar knowledge." The plaintiff in DynCorp v. GTE Corporation, 215 F.Supp.2d 308 (S.D.N.Y. 2002), made the same argument, which was rejected by the court. In DynCorp, the plaintiff signed a purchase agreement in which the seller disclaimed express and implied representations and warranties, other than those contained in the purchase agreement. Id. at 311. Following the acquisition, the plaintiff sued, alleging that the seller had fraudulently induced it to enter into the purchase agreement by misrepresenting the financial condition of the company. Id. at 319. Relying on plaintiff's waiver and Danann Realty, and Harsco, supra, the court dismissed the fraudulent inducement claim, id. at 319-321, noting that the plaintiff "could have negotiated for further access or more complete representations, but it either declined, or was unable, to do so." Id. at 322.

Here, the parties did not make any representations as to the accuracy and completeness of any tax return, bank or investment account information and therefore Harding is arguing as to the falsity of a representation that was never made. Therefore, under Danann, the issue as to accuracy is irrelevant. See, also, Bishop v. Graziano, 10 Misc.3d 342, 804 N.Y.S.2d 236 (Sup. Ct. Suffolk Co. 2005) ("Absent any representation, we do not reach the issue of whether it was false. Absent any representation, how could the [plaintiff] argue reliance?").

### III.   PLAINTIFF'S OPPOSITION ACTUALLY ESTABLISHES THAT HER CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

A.   **Plaintiff Admits that the So-Called "Secret Accounts" Were Disclosed.**

Naseman contends in his moving papers that the statute of limitations bars Harding's claims because at the least she could have discovered the existence of the allegedly hidden assets (i.e. the Shearson Lehman Brothers account ("Shearson Account") and Naseman's individual Republic National Bank account ("Individual Republic Account")) with the exercise of reasonable diligence

8

no later than 1993.[8] Def. Mem., pp. 16-19. Harding provides a perfunctory response that the complaint is timely because she filed it within two years of January 2006 when she alleges she discovered "facts establishing that Defendant hid substantial assets from [her] at the time the PSA was signed." Ptf. Mem., p. 20.

Harding's attempt to convince the Court that she could not have discovered the Shearson Account and Individual Republic Account prior to entering into the Agreement in 1993 with reasonable diligence is premised on two contentions -- (1) Naseman "actively concealed" or "hid" the Shearson Account and Individual Republic Account from her during their divorce settlement negotiations (Amended Complaint ¶ 5), and (2) she therefore could not have discovered the alleged "fraud" with reasonable diligence <u>because</u> the "true facts [were] peculiarly within the knowledge" of Naseman (Ptf. Mem., pp. 21-22).

However, Harding acknowledges in her own declaration that she <u>received and reviewed</u> the parties' tax returns for 1988, 1989, 1990 and 1991 before signing the Agreement. Harding Decl. ¶ 39 ("I recall that the other tax returns [other than for 1992] requested by my attorneys had been produced."); Naseman Exh. 4 at TH790 (letter from Harding's attorney to Naseman's attorney dated February 5, 1993, requesting the parties' "last 5 years of tax returns."). The parties' 1991 tax return <u>disclosed</u> the existence of both the Shearson Account and Individual Republic Account and that they were of considerable value. Exh. B to Naseman Reply Decl. at DN00439 and Reply Decl. ¶¶ 5-12. (Also, the 1989 return reveals the Individual Republic Account, the Shearson Account not having yet been opened). Naseman Reply Decl. ¶ 5, fn. 3.

Accordingly, notwithstanding her attempts to sensationalize her allegations by, *inter alia*, referring to the Shearson Account and Individual Republic Account as "Secret Accounts," Harding's declaration acknowledges that these accounts were neither "secret" nor "peculiarly within

---

[8] Naseman denies that Harding did not have actual knowledge of these accounts during the marriage. Naseman Aff. ¶ 15.

9

the knowledge" of Naseman. Rather, she herself states that they were disclosed to her and she reviewed them prior to her executing the Agreement in 1993.[9] Harding Decl ¶ 39.

## CONCLUSION

For the reasons set forth in defendant's submissions, the motion should be granted and the amended complaint dismissed.

Respectfully submitted,

Cohen Lans LLP

By: *(signature)*

Deborah E. Lans (DL-5063)
Robert Stephen Cohen (RC-7592)

Attorneys for Defendant
885 Third Avenue
New York, New York 10022
(212) 980-4500

---

[9] Indeed -- even in the absence of Harding's admission that she received the 1989 and 1991 tax returns that identified the Shearson Account and Individual Republic Account -- she was admittedly on notice of facts that required an investigation into Naseman's individual bank and investment accounts. On February 5, 1993, Harding's attorney specifically inquired into the bank and investment accounts that Naseman maintained as well as any other sources of his income, thereby acknowledging their existence. Naseman Exh. 4 at TH790. Naseman's attorney effectively confirmed the existence of such accounts in his March 29, 1993 response, "Simultaneously, as you also know (I presume), Mr. Naseman and Ms. Harding have never had joint accounts or pooled their monies whether for bill paying, investment or any other purpose." Naseman Exh. 4 at TH795 (emphasis added).