# EXHIBIT B

1 | 1090
KENT R. ROBISON, ESQ.
2 | Nevada State Bar No. 1167
JENNIFER L. BAKER, ESQ.
3 | Nevada State Bar No. 9559
ROBISON, BELAUSTEGUI, SHARP & LOW
4 | 71 Washington Street
Reno, Nevada 89503
5 | Telephone:    (775) 329-3151
Facsimile:    (775) 329-7169
6 | Attorneys for Plaintiff

FILED

2007 JAN 12  PM 4: 37

RONALD A. LONGTIN, JR.
**J. Ames**
BY:_____
DEPUTY

### IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

### IN AND FOR THE COUNTY OF WASHOE

* * * * *

TOEHL HARDING,

        Plaintiff,

vs.

DAVID NASEMAN, and DOES 1-10,
inclusive,

        Defendants.

_____/

CASE NO.:   CV06-03098

DEPT. NO.:   4

### FIRST AMENDED COMPLAINT

For her First Amended Complaint, Plaintiff Toehl Harding ("Harding") alleges as follows:

### PARTIES

1.      Harding is an individual residing in New York City, New York.

2.      Upon information and belief, Defendant David Naseman ("Naseman") is an individual residing in Scottsdale, Arizona.

3.      DOES 1-10, inclusive, are the fictitious names of defendants who or which are the

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE
(775) 329-3151

1  lawyers, agents, representatives, employees, partners, joint venturers, or co-conspirators, of

2  Naseman who or which are equally responsible for Harding's damages as alleged herein, in either

3  a representative capacity or by virtue of independent acts or omissions. When the true names and

4
5  identities of these DOE defendants are ascertained, plaintiff will seek leave to amend this

6  complaint to insert their true names and identities.

7  **GENERAL ALLEGATIONS**

8      4.      On October 19, 1982, Harding and Naseman were married in Lenox,

9  Massachusetts.

10     5.      During their marriage, Harding and Naseman resided in New York City, New

11
12  York.

13     6.      While living in New York City together, Harding and Naseman were each

14  employed as attorneys. Naseman practiced primarily in the areas of corporate and

15  telecommunications law, focusing on mergers and acquisitions and federal and state regulatory

16  issues.

17     7.      Throughout their marriage, Naseman regularly prepared the parties' joint tax

18
19  returns. Beginning in 1988, Naseman asked and Harding agreed that before the tax returns were

20  completed that Harding sign her name to blank 1040 forms and other tax return forms. After

21  Harding had signed blank tax return forms, Naseman would then complete, sign himself, and file

22  the tax returns. Naseman's explanation for his request was that Harding was often away on

23  business, and him being able to fill out the tax returns after Harding had signed blank tax return

24
25  forms would facilitate the timely filing of their tax returns. Harding often did not see the

26  completed tax return forms prior to filing or even after.

27     8.      On or about April 14, 1991, Harding signed a blank 1040 form for purposes of

28  filing her and Naseman's federal tax return for 1990. Harding did not see the completed tax

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

1    return filed that year.

2        9.    In addition, Naseman regularly had control over the parties' joint bank accounts.

3    In 1989 Naseman opened an account at Republic National Bank in his name only and began

4    hiding funds into his separate account at Republic National Bank.  Naseman kept the existence of

5    the separate Republic National Bank account and the amounts deposited therein concealed from

6    Harding.

7

8        10.    In August of 1992, Naseman informed Harding that he desired a divorce.

9    Naseman moved to Incline Village, Nevada to establish Nevada residency.

10       11.    The parties each retained counsel in New York City and Nevada and began

11   negotiating a potential settlement agreement.  Naseman was represented by Leonard Florescue

12   ("Florescue"), his New York counsel, and Gary Silverman, as his Nevada counsel.  Harding was

13   represented by Richard Cohen ("Cohen") as her New York counsel and Casey Campbell, as her

14

15   Nevada counsel.

16       12.    In connection with these settlement negotiations, Harding requested full and

17   complete disclosure of all financial information from Naseman.  Harding specifically requested

18   identification and documentation pertaining to all of Naseman's bank accounts and the balances

19

20   therein, identification of all of Naseman's investments, identification of any other sources of

21   income to Naseman, and copies of the parties' tax returns of the five (5) preceding years (1987 -

22   1991).  At the time of Harding's request for tax returns, the parties' 1992 tax returns had not yet

23   been filed for the 1992 tax year.

24

25       13.    Naseman fraudulently concealed over $4,000,000 that he had received as a result

26   of exercising stock options in 1990.  Naseman accomplished this fraud by preparing a false tax

27   return for 1990 that showed the parties' joint income to be $1,323,916.  To further accomplish

28   his fraud on Harding, he prepared a second tax return that was filed with the Internal Revenue

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

3

1    Service showing the actual joint income for 1990 in the amount of $5,561,728. Naseman

2    fraudulently misrepresented the parties' joint income for 1990 during the divorce settlement

3    negotiations by representing that the actual 1990 income was $1,3223,916. Naseman

4    fraudulently concealed from the Plaintiff over $4,000,000 received from the exercise of the stock

5    options and Naseman fraudulently concealed from the Plaintiff the 1990 tax return showing the

6    parties' joint income to be $5,561,728.

7

8         14.    The 1990 1040 provided by Naseman to Harding during settlement negotiations

9    reported the parties' income as $1,323,916. This was false. The false income tax return was

10   intended to and did deceive Harding and Harding justifiably relied on Naseman's representations

11   as set forth on the false tax return.

12

13        15.    Naseman received substantial amounts of money as a result of two different

14   events in which Naseman exercised stock options. He deposited a substantial portion of the

15   proceeds from the exercise of these stock options in bank accounts were concealed from Harding.

16   The existence and amounts of the proceeds deposited into the concealed bank accounts were

17   concealed from Harding during their divorce negotiations.

18

19        16.    The 1990 IT-201 (the parties' New York State tax return) provided by Naseman to

20   Harding during settlement negotiations reported the parties income as $1,323,916.

21        17.    Harding pursued settlement negotiations on the reasonable belief that the parties'

22   income in 1990 was approximately $1,323,916.

23        18.    Naseman has admitted that the 1990 1040 actually filed by Naseman, but

24   concealed from Harding, reported the parties' income as $5,561, 728.

25

26        19.    Harding was never informed, nor did she ever have reason to believe, that the

27   parties' income in 1990 was actually more than $4,200,000 in excess of the amount upon which

28   she was basing her settlement negotiations.

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

4

20.    Naseman refused to disclose and actively concealed from Harding the full extent of the parties' marital income and assets for other years during their marriage, including 1988, 1991 and 1992.

21.    Naseman maintained a Shearson Lehman Bros. account (the "Shearson Account") that he actively concealed from Harding.

22.    Naseman has admitted his fraud upon Harding in a memo he authored and sent to his divorce attorneys during the divorce negotiations.   The memo reads in part:

> *For various reasons, TH is unaware of the existence of the Shearson Lehman Bros. account or the income that has been generated by that account over the last two years.  Similarly, TH is not presently aware of the extent of my income for the 1990 and 1991 tax years, nor for the year 1992 just completed.  We can discuss the reasons for this at your convenience.*

23.    Neither Campbell nor Cohen nor Harding were informed about the concealed income or the concealed bank accounts.

24.    On March 23, 1993, Naseman filed a Complaint seeking dissolution of his marriage to Harding in the Second Judicial District Court of the State of Nevada (the "Nevada Divorce Action").   The Nevada Divorce Action was assigned to Department No. 2 with a case number DV 93-00466.

25.    Harding appeared in the divorce action through Nevada counsel.

26.    On April 21, 1993, the Nevada Court entered a Decree of Divorce (the "Nevada Divorce Decree") declaring Harding and Naseman divorced.

27.    The assets and debts of Harding and Naseman were allocated in the Nevada divorce proceeding pursuant to a Property Settlement Agreement (the "PSA") procured through and as a result of Naseman's fraudulent misrepresentations and fraudulent concealment.  Neither Naseman nor his attorneys divulged the truthful amounts of money earned by the parties or the

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

5

1  existence of the Shearson Lehman account. Harding was fraudulently induced into signing the

2  PSA by which the parties divided and distributed their marital property.

3      28.    At the time the parties executed the PSA, the balance in the undisclosed and

4  actively concealed Shearson Account was approximately $2,770,000.

5

6      29.    Harding entered into the PSA based upon Naseman's misrepresentations of the

7  parties' income and assets. Specifically, Harding relied upon Naseman's representation that the

8  parties' income was approximately $1,323,916 in 1990 when, in fact, the parties' income was

9  $5,561,728.

10     30.    Harding also entered into the PSA based upon the reasonable belief that she was

11 aware of all of the parties' marital assets and without knowledge or reason to know of her

12 husband's fraudulent concealment of the stock option proceeds, existence of the Shearson

13 Account and the Republic National Bank separate account in Naseman's name only.

14

15     31.    On or about June 12, 1993, less than two months after his divorce from Harding

16 became final, Naseman married Marcia Naseman ("Marcia").

17

18     32.    Thereafter, Marcia and Naseman moved to Arizona.

19     33.    Prior to her marriage to Naseman, Marcia had been gainfully employed in Lenox,

20 Massachusetts.

21     34.    Naseman regularly prepared the joint tax returns for himself and Marcia. As a

22 part of Naseman's and Marcia's regular practice, Naseman asked and Marcia agreed that Marcia

23 would sign her name to three (3) or four (4) blank 1040 forms and other tax return forms, which

24 Naseman would then complete, sign himself, and file. Naseman's explanation for needing

25 multiple forms was that he wanted to have extras for drafts and in case of mistakes. Marcia often

26

27 did not see the completed tax return forms prior to filing or even after.

28     35.    In or about 2005, Naseman filed for divorce from Marcia in the State Court of

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

6

1   Arizona (the "Arizona Divorce Action").

2       36.     In connection with the Arizona Divorce Action, Naseman provided Marcia with

3   discovery documents that included incomplete financial information and tax returns.

4       37.     In connection with the Arizona Divorce Action and her settlement negotiations
5
with Naseman, Marcia searched Naseman's financial records. During her search, Marcia
6
7   uncovered two different 1990 1040 forms purportedly reporting the income for Harding and

8   Naseman for 1990. One 1040 recorded income in the amount of $1,323,916; the other 1040

9   recorded income in the amount of $5,561,728.

10
        38.     The $1,323,916 1040 tax return and the $5,561,728 1040 tax return for 1990 bear
11
identical and/or photocopied signatures of Harding and Naseman. Both returns were prepared in
12
13  Naseman's handwriting.

14      39.     On or about January 21, 2006, Marcia forwarded copies of both the $1,323,916

15  1040 tax return and the $5,561,728 1040 tax return to Harding.

16
        40.     Prior to receiving the $1.3M 1040 and the $5.5M 1040 from Marcia, Harding had
17
never seen or been aware of the $5.5M 1040 or the possibility that the parties had earned income
18
19  even remotely close to $5,561,728 during 1990.

20      41.     In light of the devious and secret dealings by Naseman and in light of his

21  intentional and deliberate concealment in which Naseman's lawyer(s) participated, Harding

22  could not reasonably have discovered the existence of the $5,561,728 1040 tax return during her
23
settlement negotiations with Naseman prior to executing the PSA or thereafter.
24
25      42.     Marcia also forwarded to Harding information that disclosed to Harding, for the

26  first time in 2006, the existence of the Shearson Account and the balance at the time of Harding's

27  execution of the PSA.

28      43.     Because of Naseman's fraudulent misconduct, Harding could not reasonably have

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

7

1  discovered the existence of the Shearson Account or its balance during her settlement

2  negotiations with Naseman prior to executing the PSA or thereafter.

3      44.    The information forwarded to Harding by Marcia in 2006 also disclosed the

4  existence of additional income that Naseman had concealed from Harding.

5      45.    On or about February 1, 2006, Marcia forwarded to Harding Naseman's memo to

6

7  his lawyer(s) in which he admitted that Harding was not aware of the full extent of the parties'

8  income for the years 1990, 1991, and 1992, nor was she aware of the existence of the Shearson

9  Account or the income therefrom.

10     46.    Naseman has also concealed substantial marital assets and income from Marcia.

11     47.    The Memo was prepared by Naseman for the benefit and review of at least one of

12

13  his attorneys retained in connection with the Nevada Divorce Action.

14     48.    Naseman engaged in a similar pattern of conduct regarding joint tax returns for

15  Marcia and him. Naseman insisted that Marcia sign blank tax returns. Naseman would later

16  complete the tax returns and file them without revealing the contents to Marcia. Naseman led

17  Marcia to believe that the tax returns were being filed with the Internal Revenue Service when in

18  fact they were not.

19

20     49.    Naseman has hidden substantial assets and income in overseas accounts, including

21  at least one (1) in the United Kingdom.

22     50.    Naseman has failed to file federal tax returns for at least four (4) tax years,

23  including 1999, 2002, 2003, and 2004.

24     51.    The IRS has begun collection activities relating to the missing 1999 return and

25  has, to this end, placed a federal tax lien on all of Naseman's currently-owned and future-

26

27  acquired property.

28     52.    Naseman never informed his wife Marcia that he had failed to file tax returns on

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

8

1    their joint behalf for these tax years, despite her signature on multiple blank tax forms.

2    53.    Naseman has possession and control and/or knowledge of other tax returns that

3    disclose marital income and assets attributed to the marriage of Naseman and Harding that were

4    undisclosed and/or actively concealed from Harding during the marriage, during the PSA

5    settlement negotiations, and thereafter.

6    54.    Upon information and belief, Naseman is currently licensed to practice law in the

7    State of New York and the District of Columbia and is currently employed as senior counsel in

8    the corporate department for the law firm Crowell & Moring, LLP, located in Washington, D.C.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

55.    Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

56.    During their marriage, Naseman regularly prepared the parties' joint tax returns.

57.    Naseman prepared the parties' joint tax return in 1990.

58.    During the settlement negotiations leading up to the execution of the parties' PSA, Harding requested of Naseman financial information and, specifically, the parties' tax returns for the five years prior to execution of the PSA. This request included tax returns for the year 1990.

59.    Naseman provided Harding with the $1.3M 1040 in response to her requests.

60.    Although the $1.3M 1040 indicated that the parties had earned $1,323,916 in income in 1990, the parties actually earned approximately $5,561,728 that year.

61.    Naseman knew or believed that the parties had actually earned approximately $5,561,728 in 1990, when he falsely represented to Harding that the parties' income in 1990 had been approximately $1,323,916.

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

9

62.     Naseman also falsely represented to Harding the full extent of the parties' income for other years of the marriage, including 1991 and 1992, and the full extent of the parties' marital assets.

63.     Further, Naseman falsely represented to Harding the full extent of their assets by failing to disclose and/or actively concealing, in response to Harding's requests for information about the parties' financial situation, the existence of the Shearson Account.

64.     Naseman made these false representations with the intent to induce Harding into entering into the PSA and accepting a settlement of her rights in the marital estate based upon a belief that the marital estate was substantially less than it was in reality.

65.     Naseman further made these false representations with the intent to induce Harding into entering into the PSA and accepting a settlement that was substantially less than her equitable share of the marital estate. The 1990 income was in part caused by a merger between two companies, one of whom was Naseman's employer. The merger resulted in the opportunity for Naseman to receive substantial income. Harding expressly requested from Naseman information about the income derived as a result of the merger. In response to Harding's inquiry, Naseman falsely stated to Harding that the income derived as a result of the merger was minimal. Naseman's response was false. The income derived as a result of the merger was substantial and Naseman intentionally misrepresented to Harding the financial impact to the parties that was caused by the merger, intending that Harding rely on his misstatements. Harding justifiably relied on Naseman's false description of the financial consequences of the merger. This justifiable reliance deprived Harding of the opportunity to negotiate a fair and equitable settlement in the divorce proceedings and has caused Harding damages in excess of $4,000,000.

66.     Harding justifiably relied upon Naseman's false representations regarding the extent of their assets and income in 1990 and other years.

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

10

67.    As a proximate result of Naseman's fraudulent misrepresentations, Harding has sustained damages in excess of $10,000.

68.    As a further proximate result of Naseman's fraudulent misrepresentations, Harding has been forced to obtain legal counsel to bring this action and has incurred costs and attorneys' fees that she is entitled to recover.

69.    Moreover, because Naseman made the fraudulent misrepresentations intentionally, willfully, and maliciously, Harding is entitled to punitive damages in an amount to be determined at trial in accordance with the evidence and principles of justice.

### SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

70.    Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

71.    Naseman maintained a pecuniary interest in the division and distribution of the marital estate by the PSA executed by the parties.

72.    In the course and scope of negotiating and executing the PSA, Naseman failed to exercise reasonable care and competence in communicating the extent of the parties' assets and income for, at least, 1990 through 1992.

73.    Naseman also failed to exercise reasonable care and competence in communicating the extent of the parties' assets, including a failure to disclose and/or active concealment of the Shearson Account.

74.    Harding justifiably relied upon Naseman's false representations of the parties' income for 1990 as approximately $1,323,916, as well as his false representations of the parties' income for 1991 and 1992.

75.    As a proximate result of Naseman's false and negligent misrepresentations,

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

1    Harding has suffered damages in excess of $10,000.

2        76.    As a further proximate result of Naseman's negligent misrepresentations, Harding

3    has been forced to obtain legal counsel to bring this action and has incurred costs and attorneys'

4    fees that she is entitled to recover.

5

6    **THIRD CLAIM FOR RELIEF**
     **(Fraudulent Concealment)**

7        77.    Harding hereby incorporates by reference the preceding paragraphs as if fully set

8    forth herein.

9

10       78.    By failing to provide Harding with the $5.5M 1040 or other information

11   disclosing that the parties earned income of approximately $5,561,728 in 1990, and instead

12   providing Harding with the $1.3M 1040, Naseman fraudulently concealed a fact that was

13   material to the parties' negotiation of a fair and equitable settlement of the marital estate in the

14   PSA.

15       79.    As an attorney, Naseman's duty of disclosure is heightened.

16

17       80.    Naseman had a duty to disclose to Harding the $5.5M 1040 and the fact that the

18   parties had earned income of approximately $5,561,728 in 1990.

19       81.    Naseman also had a duty to disclose the full extent of the parties' income for at

20   least the last five (5) years of the parties' marriage, including 1991 and 1992.

21

22       82.    Further, Naseman had a duty to disclose the existence of all marital assets,

23   including the Shearson Account.

24       83.    Naseman intentionally concealed the $5.5M 1040 and the fact that the

25   parties had earned income of approximately $5,561,728 in 1990, as is evidenced by his creation

26   and delivery of the $1.3M 1040 to Harding in response to her request for the parties' tax returns

27   for the prior five years. Naseman further intentionally concealed the full extent of the parties'

28

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

12

1  marital income for 1991 and 1992, as well as the existence of the Shearson Account, which

2  contained a balance of approximately $2,770,000 at the time of execution of the PSA.

3      84.    Harding was unaware of the existence of the $5.5M 1040 or the fact that the

4  parties had earned income of approximately $5,561,728 in 1990. Harding was also unaware of

5

6  the full extent of the parties' income for 1991 and 1992, as well as the existence of the Shearson

7  Account and its balance.

8      85.    Harding would not have agreed to the division and distribution of the marital

9  estate as provided in the PSA had she known that the parties had actually earned approximately

10  $5,561,728 in 1990, that the parties had earned more than the disclosed amount in 1991 and

11  1992, and that the Shearson Account existed with a balance of approximately $2,770,001.97.

12

13      86.    As a proximate result of Naseman's fraudulent concealment of the actual income

14  of the parties in 1990 and the $5.5M 1040, the parties' income in 1991 and 1992, and the

15  Shearson Account, Harding has been damaged in excess of $10,000.

16      87.    As a further proximate result of Naseman's fraudulent concealment of the actual

17  income of the parties in 1990 and the $5.5M 1040, the parties' income in 1991 and 1992, and the

18

19  Shearson Account, Harding has been forced to obtain legal counsel to bring this action and has

20  incurred costs and attorneys' fees that she is entitled to recover.

21      88.    Moreover, because Naseman made fraudulent misrepresentation intentionally,

22  willfully, and maliciously, Harding is entitled to punitive damages in an amount to be determined

23  at trial in accordance with the evidence and principles of justice.

24              **FOURTH CLAIM FOR RELIEF**
25              **(Breach of Fiduciary Duty)**

26      89.    Harding hereby incorporates by reference the preceding paragraphs as if fully set

27  forth herein.

28

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

13

90. As Harding's husband and as an attorney, Naseman owed her a fiduciary duty of loyalty and honesty.

91. As an attorney, Naseman had a heightened duty of full and accurate disclosure.

92. Naseman breached his fiduciary duty of honesty to Harding when he misrepresented to her the extent of their marital income.

93. Naseman further breached his fiduciary duty of honesty to Harding when he concealed the existence of the Shearson account and the income therefrom.

94. Naseman also breached his fiduciary duty of honesty when he concealed from Harding the $5.5M 1040, and the full extent of the parties' income in 1991 and 1992, especially in light of her requests for the parties' tax returns for the five (5) years preceding their divorce.

95. Naseman breached his fiduciary duty of loyalty to Harding when he took the above-described actions and induced Harding into accepting the PSA that provided her less than her fair share of the marital estate based on a false belief that the parties' marital estate was less than it actually was, wherein Naseman profited with a larger share of the marital estate than he was entitled to at Harding's detriment.

96. As a proximate result of Naseman's breach of his fiduciary duties of loyalty and honesty, Harding has been damaged in excess of $10,000.

97. As a further proximate result of Naseman's breach of his fiduciary duties of loyalty and honesty, Harding has been forced to obtain legal counsel to bring this action and has incurred costs and attorneys' fees that she is entitled to recover.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

98. Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

14

99.   The PSA constitutes an enforceable contract between Harding and Naseman.

100.   The PSA contemplated and imposed upon Naseman an obligation of full disclosure of the parties' marital assets.

101.   Harding fully performed or was excused from performing all of her obligations under the PSA.

102.   Naseman, on the other hand, breached this obligation by concealing from Harding the $5.5M 1040 and the Shearson account, and concealing and/or misrepresenting the extent of their marital income during 1990, 1991, and 1992.

103.   As a proximate result of Naseman's breach of his contractual obligation of full disclosure, Harding has been damaged in excess of $10,000.

104.   As a further proximate result of Naseman's breach of his contractual obligation of full disclosure, Harding has been forced to obtain legal counsel to bring this action and has incurred costs and attorneys' fees that she is entitled to recover.

**SIXTH CLAIM FOR RELIEF**
**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)**

105.   Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

106.   Nevada law implies in every contract a covenant of good faith and fair dealing.

107.   Harding and Naseman are parties to the PSA, which constitutes an enforceable contract.

108.   In connection with the negotiation and performance of the PSA, Naseman owed Harding a duty of good faith and fair dealing.

109.   Naseman breached his duty of good faith and fair dealing by concealing from Harding the $5.5M 1040 and the Shearson account, and concealing and/or misrepresenting the

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

15

1  extent of their marital income during 1990, 1991, and 1992.

2      110.   The above-described conduct was unfaithful to the purpose of the PSA - resolving

3  the parties' competing rights and claims to marital property in a fair and fully informed manner

4  that allowed the parties to avoid litigating the issues.

5

6      111.   As a result of Naseman's breaching conduct, Harding's justified expectations in

7  negotiating and ultimately accepting a fair and equitable settlement of her claims to the marital

8  property in an informed and intelligent manner where denied.

9      112.   As a proximate result of Naseman's breach of his implied covenant of good faith

10  and fair dealing, Harding has been damaged in excess of $10,000.

11

12      113.   As a further proximate result of Naseman's breach of his implied covenant of

13  good faith and fair dealing, Harding has been forced to obtain legal counsel to bring this action

14  and has incurred costs and attorneys' fees that she is entitled to recover.

15                          **SEVENTH CLAIM FOR RELIEF**

16        **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

17      114.   Harding hereby incorporates by reference the preceding paragraphs as if fully set

18  forth herein.

19      115.   Nevada law implies in every contract a covenant of good faith and fair dealing.

20      116.   Harding and Naseman are parties to the PSA, which constitutes an enforceable

21  contract.

22

23      117.   In connection with the negotiation and performance of the PSA, Naseman owed

24  Harding a duty of good faith and fair dealing.

25      118.   In addition, as Harding's husband, Naseman owed Harding a fiduciary duty of

26  loyalty and honesty.

27

28      119.   Naseman breached his duty of good faith and fair dealing by engaging in

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

16

1  fraudulent conduct, including concealing from Harding the $5.5M 1040 and the Shearson

2  account, and concealing and/or misrepresenting the extent of their marital income during 1990,

3  1991, and 1992.

4
      120.   The above-described conduct was unfaithful to the purpose of the PSA - resolving

5
6  the parties' competing rights and claims to marital property in a fair and fully informed manner

7  that allowed the parties to avoid litigating the issues.

8     121.   As a result of Naseman's breaching conduct, Harding's justified expectations in

9
   negotiating and ultimately accepting a fair and equitable settlement of her claims to the marital

10 property in an informed and intelligent manner where denied.

11
      122.   As a proximate result of Naseman's breach of his implied covenant of good faith

12
13 and fair dealing, Harding has been damaged in excess of $10,000.

14    123.   As a further proximate result of Naseman's breach of his implied covenant of

15 good faith and fair dealing, Harding has been forced to obtain legal counsel to bring this action

16 and has incurred costs and attorneys' fees that she is entitled to recover.

17
                          **EIGHTH CLAIM FOR RELIEF**
18                             **(Unjust Enrichment)**

19    124.   Harding hereby incorporates by reference the preceding paragraphs as if fully set

20 forth herein.

21
      125.   Fundamental principles of equity, justice, and good conscience require that
22
23 Harding was and is entitled to a fair share of the more than $4.2 million of marital income earned

24 during her marriage to Naseman or, at the very least, she was entitled to a full disclosure of the

25 parties' marital income so that she could make an informed decision regarding the PSA.

26
      126.   By concealing from Harding the $5.5M 1040 and the Shearson account, and
27
28 concealing and/or misrepresenting the extent of their marital income during 1990 and other years

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

17

1  during their marriage, Naseman improperly obtained and has improperly retained sole possession

2  and control of more than $4.2 million and the income that has or could have been generated

3  therefrom.  Naseman also improperly obtained and has improperly retained sole possession and

4  control of the full balance of the Shearson Account and the additional, undisclosed and/or

5  concealed income from other years of the parties' marriage, including 1991 and 1992.

6

7      127.    Naseman has been unjustly enriched by the sum of all marital assets and income

8  undisclosed and/or concealed from Harding plus interest accruing from the date of the execution

9  of the PSA.  This amount is in excess of $10,000.

10                          **NINTH CLAIM FOR RELIEF**
                                 **(Conversion)**
11

12      128.    Harding hereby incorporates by reference the preceding paragraphs as if fully set

13  forth herein.

14      129.    Through his tortious conduct described above, Naseman wrongfully obtained and

15  has wrongfully retained possession and control over assets and income totaling more than $4.2

16  million, a portion of which is the rightful property of Harding.

17

18      130.    Naseman's wrongful exertion of control and possession of assets and income to

19  which Harding is legally and equitably entitled is in complete derogation of Harding's rights in

20  the assets and income.

21      131.    As a proximate result of Naseman's conversion of Harding's personal property,

22  Harding has been damaged in excess of $10,000.

23

24      132.    As a further proximate result of Naseman's conversion of Harding's personal

25  property, Harding has been forced to obtain legal counsel to bring this action and has incurred

26  costs and attorneys' fees that she is entitled to recover.

27  ///

28

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

18

**TENTH CLAIM FOR RELIEF**
**(Constructive Trust/Equitable Lien)**

133.    Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

134.    Upon information and belief, Naseman has used the assets and income he wrongfully concealed and retained in derogation of Harding's rights in them to purchase and/or improve real and personal property.

135.    Harding therefore is legally and equitably entitled to recovery of any and all real and/or personal property acquired with or improved by the assets and income wrongfully concealed and retained by Naseman to which she was and is legally and equitably entitled.

136.    Harding therefore requests the imposition of a constructive trust and/or equitable lien upon Naseman's assets for the marital assets and income to which Harding is entitled.

**ELEVENTH CLAIM FOR RELIEF**
**(Fraud on the Court)**

137.    Harding hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

138.    Naseman misrepresented and/or concealed marital assets and income that were subject to division and distribution by the Court in the Nevada Divorce Action and that would have been divided and distributed by the Nevada Court had the parties not entered into the PSA.

139.    The PSA is a contract that the parties presented to the Court for approval and incorporation and integration into the Nevada Divorce Decree.

140.    By inducing Harding to execute the PSA based upon fraudulent and/or other wrongful conduct, Naseman engaged in conduct aimed at subverting the integrity of the Nevada Court.

141.    As a licensed attorney, Naseman is and was at the time of the Nevada Divorce

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE.

19

1    Action, an officer of the Court.

2        142.    Moreover, upon information and belief, Naseman was aided in this fraudulent

3    conduct by a yet unknown person (or persons) believed to be an attorney acting in his capacity as

4    attorney in connection with the Nevada Divorce Action.

5

6        143.    Through the above-described conduct, Naseman and/or his co-conspirator(s)

7    prevented Harding from fairly presenting to the Nevada Court her claim to a fair share of the

8    marital estate.

9        144.    Through the above-described conduct, Naseman and/or his co-conspirator(s)

10   engaged in fraud upon the Nevada Court.

11

12       145.    Because Naseman obtained the Nevada Divorce Decree by perpetrating a fraud on

13   the Nevada Court, Harding is entitled to damages according to proof in excess of $4,000,000.

14       146.    As a proximate result of Naseman and/or his co-conspirator's fraud upon the

15   Nevada Court, Harding has been damaged in excess of $10,000.

16       147.    As a further proximate result of Naseman and his co-conspirator's fraud upon the

17   Nevada Court, Harding has been forced to obtain legal counsel to bring this action and has

18
     incurred costs and attorneys' fees that she is entitled to recover.
19

20                          **TWELFTH CLAIM FOR RELIEF**
                               **(Constructive Fraud)**
21

22       148.    Harding hereby incorporates by reference the preceding paragraphs as if fully set

23   forth herein.

24       149.    As her husband and as a lawyer, Naseman owed Harding fiduciary duties of

25   honestly and loyalty.

26       150.    By concealing and/or misrepresenting the extent of the parties' income for 1990,

27   1991, and 1992, as well as the existence of the Shearson Account, Naseman breached his duty to

28

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

20

18  6. Such other relief as this Court finds appropriate.

19  DATED this 12th day of January, 2007.

20
21                              ROBISON, BELAUSTEGUI, SHARP & LOW
                                A Professional Corporation
22                              71 Washington Street
                                Reno, Nevada 89503
23
24  By:    _____
           KENT R. ROBISON
25         JENNIFER L. BAKER
           Attorneys for Plaintiff
26
27         J:\WPData\Krr\1094.001\P-First Amended Complaint.wpd

28

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

21

1  Harding.

2      151.    As a result of Naseman's breach of his fiduciary duties to Harding, Harding has

3  been damaged in excess of $10,000.

4      152.    As a further proximate result of Naseman and his co-conspirator's fraud upon the

5

6  Nevada Court, Harding has been forced to obtain legal counsel to bring this action and has

7  incurred costs and attorneys' fees that she is entitled to recover.

8      WHEREFORE, Harding prays for judgment against Naseman as follows:

9      1.    Compensatory damages in excess of $10,000 according to proof;

10     2.    Punitive damages in an amount no less than three times compensatory damages

11

12  according to proof;

13     3.    Attorneys' fees and costs of suit as damages;

14     4.    Attorneys' fees and costs of suit in the alternative as prevailing party;

15     5.    Imposition of a constructive trust and/or equitable lien upon the assets and income

16  of Naseman; and

17

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF WASHOE

**AFFIRMATION**
**Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document, **First Amended Complaint,** filed in Case Number CV06-03098

☒     Document does not contain the social security number of any person.

**-OR-**

☐     Document contains the social security number of a person as required by:

    ☐     A specific State or Federal Law, to wit:

    _____
    (state specific State or Federal Law)

    **-or-**

    ☐     For the administration of a public program.

    **-or-**

    ☐     For a application for a Federal or State Grant.

DATED this 17th day of January, 2007.

KENT R. ROBISON
Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, Nevada 89503
Attorneys for Plaintiff

ROBISON,
BELAUSTEGUI,
SHARP & LOW
PROFESSIONAL
CORPORATION
ORNEYS AT LAW
SHINGTON ST.
EVADA 89503
HONE