# EXHIBIT C

CLOSED

# United States District Court
## District of Nevada (Reno)
### CIVIL DOCKET FOR CASE #: 3:07-cv-00072-LRH-VPC

Harding v. Naseman
Assigned to: Judge Larry R. Hicks
Referred to: Magistrate Judge Valerie P. Cooke
Case in other court: Second Judicial District Court, CV06-03098
Cause: 28:1332 Diversity-Petition for Removal

Date Filed: 02/13/2007
Date Terminated: 10/04/2007
Jury Demand: None
Nature of Suit: 370 Fraud or Truth-In-Lending
Jurisdiction: Diversity

**Plaintiff**

**Toehl Harding**

represented by **Kent R. Robison**
Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, NV 89503
(775) 329-3151
Fax: (775) 329-7169
Email: krobison@rbslattys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Baker**
Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, NV 89503
775-329-3151
Fax: 775-329-7169
Email: jbaker@rbslattys.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**David Naseman**

represented by **J. Stephen Peek**
Hale Lane Peek, et al
3930 Howard Hughes Parkway
Suite 400
Las Vegas, NV 89169
Email: speek@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia Halstead**

Hale Lane Peek, Dennison & Howard
5441 Kietzke Lane
Suite 200
Reno, NV 89511
Email: phalstead@halelane.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/13/2007 | 1 | PETITION FOR REMOVAL by David Naseman *Notice of Removal* from Second Judicial District Court, Case Number CV06-03098, (Filing fee $ 350 receipt number 481978), filed by David Naseman. (Attachments: # 1 Exhibit Exhibit A to Notice of Removal# 2 Civil Cover Sheet Civil Cover Sheet) (Halstead, Patricia) (Entered: 02/13/2007) |
| 02/14/2007 | | Case assigned to District Judge Larry R. Hicks and Magistrate Judge Valerie P. Cooke. (FJ, ) (Entered: 02/14/2007) |
| 02/14/2007 | 2 | MINUTE ORDER IN CHAMBERS of the Honorable Larry R. Hicks, U.S. District Judge on 2/14/2007. By Deputy Clerk: Daniel R. Morgan. IT IS ORDERED that all parties removing actions to this court must, WITHIN 15 DAYS, file and serve a signed Statement including: date complaint served; date summons served; on diversity jurisdiction cases, names of served defendants who are citizens of Nevada, the citizenship of the other parties and a summary of defendants evidence of the amount in controversy; if filed more than 30 days after service, the reason removal has taken place at this time and the date you first received a paper identifying the basis for removal; if action in state court was commenced more than one year before the date of removal, the reasons this action should not summarily be remanded to the state court; name of any defendant known to have been served before removal filed who did not join in removal and reasons they did not; all defendants who joined in removal may file statement jointly. IT IS FURTHER ORDERED that counsel shall, WITHIN 30 DAYS, file a Joint Status Report including: list of pending motions and/or other matters which require the attention of this court and copies of same; statement by counsel of action required to be taken by this court. Removing defendant shall serve a copy of this Order on all other parties to the action no later than the time they file and serve a copy of the Statement required by this Order. A party who learns that the Statement(s) filed pursuant to this Order contain(s) incorrect information shall promptly notify this court in writing. Statement due by 3/1/2007. Status Report due by 3/16/2007.**(no image attached)** (DRM, ) (Entered: 02/14/2007) |
| 02/14/2007 | 3 | CERTIFICATE of Interested Parties by Defendant David Naseman. (Halstead, Patricia) Modified on 5/10/2007 to reflect *No Other Known Interested Parties.* |

| | | (BLG). (Entered: 02/14/2007) |
|---|---|---|
| 02/14/2007 | 4 | STATEMENT of to Court Pursuant to February 14, 2007 Minute Order re 2 Minute Order re Removal,,,,,, ; by Defendant David Naseman. (Halstead, Patricia) (Entered: 02/14/2007) |
| 02/21/2007 | 5 | CERTIFICATE of Interested Parties *with Certificate of Service* by Plaintiff Toehl Harding. (Robison, Kent) Modified on 5/10/2007 to reflect *No Other Known Interested Parties*. (BLG). (Entered: 02/21/2007) |
| 02/21/2007 | 6 | NOTICE by Defendant David Naseman *Notice of Stipulation and Order for Extension of Time to Answer or Otherwise Respond to Complaint* (Halstead, Patricia) (Entered: 02/21/2007) |
| 02/26/2007 | 7 | STATUS REPORT *(JOINT)* by Plaintiff Toehl Harding, Defendant David Naseman. (Robison, Kent) (Entered: 02/26/2007) |
| 03/01/2007 | 8 | MOTION to Dismiss for Lack of Jurisdiction *Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer Venue* by Defendant David Naseman. Responses due by 3/19/2007. (Attachments: # 1 Exhibit A through C)(Halstead, Patricia) (Entered: 03/01/2007) |
| 03/19/2007 | 9 | RESPONSE to 8 MOTION to Dismiss for Lack of Jurisdiction *Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer Venue*; filed by Plaintiff Toehl Harding. *with Certificate of Service* Replies due by 4/2/2007. (Robison, Kent) (Entered: 03/19/2007) |
| 04/12/2007 | 10 | REPLY to Response to 8 MOTION to Dismiss for Lack of Jurisdiction *Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer Venue*; filed by Defendant David Naseman. (Halstead, Patricia) (Entered: 04/12/2007) |
| 10/03/2007 | 11 | ORDER GRANTING IN PART AND DENYING IN PART 8 Motion to Dismiss for Lack of Jurisdiction. Mtn is granted with respect to mtn to transfer and denied with respect to mtn to dismiss. Clerk directed to take all necessary action to transfer action to USDC Southern Dist of NY. Signed by Judge Larry R. Hicks on 10/2/07. (Copies have been distributed pursuant to the NEF - JC) (Entered: 10/03/2007) |
| 10/03/2007 | 12 | TRANSMITTAL of Certified copy of 11 Order on Motion to Dismiss/Lack of Jurisdiction and copy of docket sheet to USDC, Southern District of NY. **Mailed to Clerk's Office,120 Daniel Patrick MoynihanUnited States Courthouse,500 Pearl Street,New York, NY 10007-1312.** (JC) (Entered: 10/03/2007) |
| 10/26/2007 | 13 | TRANSMITTAL RETURN re 12 Transmittal. **NY Case #1:07cv8767.** (JC) (Entered: 10/29/2007) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 07/30/2008 06:56:04 |

| PACER Login: | bf0064 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 3:07-cv-00072-LRH-VPC |
| Billable Pages: | 2 | Cost: | 0.16 |

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOEHL HARDING,

                              Plaintiff,

          vs.

DAVID NASEMAN, and DOES 1-10,
inclusive,

                              Defendants.

Case No. 1:07-cv-08767-RPP

**ANSWER
AND
COUNTERCLAIM**

Defendant, David Naseman ("Naseman"), by his attorneys, Cohen Lans LLP, as

and for his Answer to plaintiff Toehl Harding's Complaint, respectfully alleges as

follows:

1.      Admits.

2.      Admits.

3.      Denies.

4.      Admits.

5.      Admits, except for periods when Naseman resided in Lenox,

Massachusetts and/or Incline Village, Nevada.

6.      Admits.

7.      Admits the first sentence of Paragraph 7, and denies all remaining

sentences.

8.      Denies.

9.      Denies all allegations contained in Paragraph 9, but admits that he

maintained a bank account under his name at Republic National Bank that Harding knew

that he had.

10.     Admits.

11.     Admits.

12.     Denies.

13.     Denies.

14.     Denies.

15.     Denies the allegations contained in paragraph 15, but admits that he exercised stock options which Harding knew that he had, and deposited the "proceeds" of those options in his separate bank account that Harding knew that he had.

16.     Denies.

17.     Denies.

18.     Denies the allegations contained in Paragraph 18, but admits the parties' adjusted gross income, as stated on their 1990 joint tax returns, was $5,561,728.

19.     Denies.

20.     Denies.

21.     Denies.

22.     Denies.

23.     Denies.

24.     Admits (though the Complaint For Divorce was actually filed on March 22, 1993).

25.     Admits.

26.     Admits.

2

27.     Denies the allegations contained in paragraph 27, but admits that the parties' assets and liabilities were distributed pursuant to the "Property Settlement Agreement ("PSA")".

28.     Admits.

29.     Denies.

30.     Denies.

31.     Admits.

32.     Admits.

33.     Admits.

34.     Denies the allegations contained in Paragraph 34, but admits that he prepared tax returns for himself and Marcia Naseman (now known as "Marcia Bothe" and hereinafter referred to as "Bothe").

35.     Denies.

36.     Denies.

37.     Denies.

38.     Denies knowledge or information sufficient to form a belief as to whether the two tax returns referenced factually "bear identical and/or photocopied signatures of Harding and Naseman", but admits that the two tax returns referenced appear to have identical photocopied signatures of Harding and Naseman.

39.     Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

40.     Denies.

3

41.    Denies.

42.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

43.    Denies.

44.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

45.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

46.    Denies.

47.    Paragraph 47 is unintelligible as there is no defined term "Memo" in the Complaint.

48.    Denies.

49.    Denies.

50.    Denies.

51.    Denies

52.    Denies.

53.    Denies.

54.    Admits.

4

## FIRST CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

55.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

56.     Admits.

57.     Admits.

58.     Denies knowledge or information sufficient to form a belief as to what, if anything, Harding may have requested of Naseman during "the settlement negotiations leading up to the execution of the parties' PSA".

59.     Denies.

60.     Denies that a Form 1040 for the year 1990 reflecting "that the parties had earned $1,323,916 in income in 1990" was created or ever seen by Naseman prior to November 2005, but admits that the parties' adjusted gross income for 1990 was approximately $5,561,728.

61.     Denies the allegations contained in Paragraph 61, but admits that the parties' adjusted gross income in 1990 was approximately $5,561,728.

62.     Denies.

63.     Denies.

64.     Denies.

65.     Denies the allegations contained in Paragraph 65, but admits that in 1990, Naseman was able to exercise certain stock options – that Harding admits she knew about in Paragraph 65 – as a result of a tender offer transaction involving two companies, one of which was Naseman's employer at the time.

5

66. Denies that he made any "false representations regarding the extent of their assets and income in 1990 and other years", and denies knowledge or information sufficient to form a belief as to what, if anything, Harding relied upon.

67. Denies.

68. Denies.

69. Denies.

### SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

70. Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

71. Paragraph 71 is unintelligible, in that Naseman does not understand what Harding means by "Naseman maintained a pecuniary interest in the divisions and distribution of the marital estate by the PSA executed by the parties", and refers to the PSA for its contents.

72. Denies.

73. Denies.

74. Denies that he made any "false representations of the parties' income for 1990 as approximately $1,323,916" or "of the parties' income for 1991 and 1992", and denies knowledge or information sufficient to form a belief as to what, if anything, Harding relied upon.

75. Denies.

76. Denies.

6

## THIRD CLAIM FOR RELIEF
### (Fraudulent Concealment)

77.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

78.     Denies.

79.     Paragraph 79 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

80.     Paragraph 80 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

81.     Paragraph 81 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

82.     Paragraph 82 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

83.     Denies.

84.     Denies.

85.     Denies knowledge or information sufficient to form a belief as to what, if anything, Harding may or may not have done, and states that Harding was at all relevant times aware of the parties' true income and the existence and exercise of Naseman's stock options.

86.    Denies.

87.    Denies.

88.    Denies.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

89.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

90.    Paragraph 90 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman owed Harding a fiduciary duty when they were negotiating the PSA.

91.    Paragraph 91 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman owed Harding a fiduciary duty when they were negotiating the PSA.

92.    Paragraph 92 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "misrepresented to her the extent of their marital income".

93.    Paragraph 93 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "concealed the existence of the Shearson account and the income therefrom".

94.    Paragraph 94 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "concealed from Harding the $5.5M 1040, and the full extent of the parties' income in 1991 and 1992,

especially in light of her requests for the parties' tax returns for the five (5) years preceding their divorce".

95.    Denies.

96.    Denies.

97.    Denies.

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

98.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

99.    Paragraph 99 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that the "PSA constitutes an enforceable contract between Harding and Naseman".

100.    Paragraph 100 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

101.    Paragraph 101 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Harding has performed "all of her obligations under the PSA".

102.    Denies.

103.    Denies.

104.    Denies.

9

## SIXTH CLAIM FOR RELIEF
### (Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)

105.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

106.    Paragraph 106 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that the PSA and this dispute are governed by New York law.

107.    Paragraph 107 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that "Harding and Naseman are parties to the PSA, which constitutes an enforceable contract".

108.    Paragraph 108 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial.

109.    Denies.

110.    Denies.

111.    Denies.

112.    Denies.

113.    Denies.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Breach of Implied Covenant of Good Faith and Fair Dealing)

114.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

115.    Paragraph 115 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that the PSA and this dispute are governed by New York law.

10

116.   Paragraph 116 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that "Harding and Naseman are parties to the PSA, which constitutes an enforceable contract".

117.   Paragraph 117 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial.

118.   Paragraph 118 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that "Naseman owed Harding a fiduciary duty of loyalty and honesty" when they were negotiating the PSA.

119.   Denies.

120.   Denies.

121.   Denies.

122.   Denies.

123.   Denies.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

124.   Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

125.   Paragraph 125 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

126.   Denies.

127.   Denies.

## NINTH CLAIM FOR RELIEF
### (Conversion)

128.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

129.    Denies.

130.    Denies.

131.    Denies.

132.    Denies.

## TENTH CLAIM FOR RELIEF
### (Constructive Trust/Equitable Lien)

133.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

134.    Denies.

135.    Denies.

136.    Denies.

## ELEVENTH CLAIM FOR RELIEF
### (Fraud on the Court)

137.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

138.    Denies.

139.    Paragraph 139 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that the PSA was presented "for approval and incorporation and integration into the Nevada Divorce Decree".

140.    Denies.

12

141.    Paragraph 141 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that Naseman is an attorney.

142.    Denies.

143.    Denies.

144.    Denies.

145.    Denies.

146.    Denies.

147.    Denies.

## TWELFTH CLAIM FOR RELIEF
### (Constructive Fraud)

148.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

149.    Paragraph 149 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that "Naseman owed Harding fiduciary duties of loyalty and honesty" when they were negotiating the PSA.

150.    Denies.

151.    Denies.

152.    Denies.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Harding's claims are barred by the doctrine of laches and her failure to act timely.

3.    Harding's claims are barred by the doctrine of waiver.

13

al allegation,

n attorney.

Harding's claims are barred by the doctrine of unclean hands.

Harding's claims are barred by the doctrine of ratification.

Harding's claims are barred by the doctrine of statute of limitations.

Harding's claims are barred by the doctrine of accord and satisfaction.

Harding's claims are barred by the doctrine of assumption of risk.

Harding's claims are barred by the doctrine of contributory negligence.

Harding's claims are barred by the doctrine of estoppel.

Harding's claims are barred by the doctrine of payment and release.

Harding's claims are barred by the doctrine of res judicata.

ragraphs as if

al allegation,

wed Harding

A.

e granted.

r failure to act

## COUNTERCLAIM

Defendant, Counter-Plaintiff David Naseman, by and through his

n Lans LLP, as and for his counterclaim alleges with personal knowledge

tions and upon information and belief as to those of others, as follows:

larding's complaint is part and parcel of a campaign of false allegations

Bothe in connection with her divorce proceeding with Naseman, and was

lothe had failed to prevail on virtually all of her property claims in that

he alleged 1990 Form 1040 showing income of $1,323,916 is a false and

:. Upon information and belief, the "signature block" on that document

ted" from the "authentic" 1990 Form 1040 that reflected the parties' true

,728. Naseman prepared and showed Harding only one 1990 Form

ig the parties' true income of $5,561,728; and he did not see the 1990

ng income of $1,323,916 until in mysteriously appeared almost one

14

141.    Paragraph 141 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that Naseman is an attorney.

142.    Denies.

143.    Denies.

144.    Denies.

145.    Denies.

146.    Denies.

147.    Denies.

## TWELFTH CLAIM FOR RELIEF
### (Constructive Fraud)

148.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

149.    Paragraph 149 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that "Naseman owed Harding fiduciary duties of loyalty and honesty" when they were negotiating the PSA.

150.    Denies.

151.    Denies.

152.    Denies.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Harding's claims are barred by the doctrine of laches and her failure to act timely.

3.    Harding's claims are barred by the doctrine of waiver.

13

4.    Harding's claims are barred by the doctrine of unclean hands.

5.    Harding's claims are barred by the doctrine of ratification.

6.    Harding's claims are barred by the doctrine of statute of limitations.

7.    Harding's claims are barred by the doctrine of accord and satisfaction.

8.    Harding's claims are barred by the doctrine of assumption of risk.

9.    Harding's claims are barred by the doctrine of contributory negligence.

10.    Harding's claims are barred by the doctrine of estoppel.

11.    Harding's claims are barred by the doctrine of payment and release.

12.    Harding's claims are barred by the doctrine of res judicata.

## COUNTERCLAIM

1.    Defendant, Counter-Plaintiff David Naseman, by and through his

attorneys, Cohen Lans LLP, as and for his counterclaim alleges with personal knowledge

as to his own actions and upon information and belief as to those of others, as follows:

2.    Harding's complaint is part and parcel of a campaign of false allegations

orchestrated by Bothe in connection with her divorce proceeding with Naseman, and was

filed only after Bothe had failed to prevail on virtually all of her property claims in that

proceeding.

3.    The alleged 1990 Form 1040 showing income of $1,323,916 is a false and

altered document. Upon information and belief, the "signature block" on that document

was "cut-and-pasted" from the "authentic" 1990 Form 1040 that reflected the parties' true

income of $5,561,728. Naseman prepared and showed Harding only one 1990 Form

1040: that showing the parties' true income of $5,561,728; and he did not see the 1990

Form 1040 showing income of $1,323,916 until in mysteriously appeared almost one

14

year into his divorce proceeding with Bothe in connection with Bothe seeking to delay an impending trial in that proceeding.

4.    The PSA is a valid and enforceable contract entered into by and between Harding and Naseman.

5.    Article 3, Paragraph 2(a) of the PSA provides that: "[n]either party, nor their assigns, successors, associates, or their attorneys (collectively "Affiliates") shall divulge the terms and provisions of this Agreement or cause to be disseminated any of the provisions contained within this Agreement to any third party (include, without limitation, relatives of either party) not directly involved with this Agreement . . . ."

6.    Article 3, Paragraph 2(b) of the PSA provides that: "[n]either party nor their Affiliates shall discuss the other's personal or business matters with any other person(s) including, without limitation, relatives of either party".

7.    Article 3, Paragraph 2(c) of the PSA provides that: "[a]ny violation of the terms of subparagraphs 2(a) and (b) shall constitute a material breach of this Agreement". The provisions of Article 3 quoted herein are collectively referred to as the "Confidentiality Provisions" of the PSA.

8.    Article 15, Paragraph 3 of the PSA provides that:

> [i]f either party, by any action, proceeding, defense, counterclaim
> or otherwise, seeks to vacate or set aside this Agreement or declare
> any of the terms and conditions to be invalid, void or against
> public policy, for any reason, including but not limited to fraud,
> duress, incompetency, overreaching or unconscionability, said
> party shall reimburse the other party and be liable for any and all
> of such party's reasonable attorney's fees and expenses, provided
> and to the extent that such action, proceeding, counterclaim or
> defense results in a settlement, decision, judgment, decree or order
> dismissing or rejecting said claims.

15

9.      Article 15, Paragraph 4 of the PSA provides that:

    [i]f either party (the "defendant") shall be required to interpose the terms, conditions and covenants of this Agreement as a defense to an action or other proceeding instituted by the other party (the "plaintiff") and such defense shall result in a judgment, decree or order in favor of the defendant, or a settlement upon substantially the terms of this Agreement, the plaintiff shall pay to the defendant the costs and expenses incurred by the defendant including reasonable attorneys' fees.

10.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

11.     Upon information and belief, Harding breached the Confidentiality Provisions of the PSA by discussing its terms with, and otherwise disclosing its terms to, third-parties and/or discussing Naseman's personal or business matters with third-parties, including, but not limited to, Bothe and her counsel.

12.     As a direct and proximate result of that breach, Naseman has sustained damages.

13.     The express terms of the PSA operate as a complete bar to Harding suit. Upon entry of judgment or settlement in Naseman's favor, Naseman shall be entitled to costs, including reasonable attorneys' fees and expenses.

14.     Naseman expressly reserves any and all claims he may have arising out of the filing of this bogus lawsuit.

    **WHEREFORE**, Naseman prays for a judgment against Harding as follows:

    a.      dismissing the complaint in its entirety,

16

b.    awarding sanctions to Naseman for Harding's fraudulent filings;

c.    enter judgment in Naseman's favor on his counterclaim;

d.    awarding Naseman attorneys' fees and costs; and

e.    awarding Naseman any other relief the Court deems just and

proper.

Dated: New York, New York
       December 7, 2007

COHEN LANS LLP

By

Robert Stephan Cohen (RC-7592)
Dan Rottenstreich (DR-9278)

885 Third Avenue, 32nd Floor
New York, NY  10022
(212)980-4500

*Attorneys for Defendant*
*David Naseman*

17

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TOEHL HARDING,                                              :

                              *Plaintiff,*                  :        Hon. Robert P. Patterson

                                                                     07-CV-08767(RPP)
              – against –                                   :

DAVID NASEMAN,                                              :        **REPLY TO COUNTERCLAIM**

                              *Defendant.*                  :
------------------------------------------------------------X

      Plaintiff TOEHL HARDING ("Plaintiff" or "Harding"), by and through her attorneys, Judd

Burstein, P.C., as and for her Reply to the Counterclaim of Defendant DAVID NASEMAN

("Naseman" or "Defendant"), alleges as follows:

**ANSWERING THE COUNTERCLAIM**

      1.     In response to Paragraph 1 of the Counterclaim, admits that Defendant purports to

assert allegations and a counterclaim by and through his attorneys, but denies that he is entitled to

any relief, and as set forth herein, denies that certain of his allegations, whether allegedly based upon

personal knowledge or information and belief, are truthful.

      2.     Denies the allegations contained in Paragraph 2 of the Counterclaim, except denies

knowledge or information sufficient to form a belief as to the status of the divorce proceedings

between Bothe and Naseman.

      3.     In response to the allegations contained in Paragraph 3 of the Counterclaim, denies

that in 1991 (or ever) Naseman showed Harding a 1990 Form 1040 showing $5,561,728 in income,

and denies that Naseman did not see the 1990 Form 1040 showing income of $1,323,916 until it

appeared in the context of the divorce proceeding with Bothe. Harding denies knowledge or

information sufficient to form a belief as to the manner by which the 1990 Form 1040 showing

income of $1,323,916 was created, and further alleges upon information and belief that it was

Naseman who created it, and so the manner of its creation is peculiarly within his knowledge.

4.      The allegations set forth in Paragraph 4 of the Counterclaim constitute a legal

conclusion that is for the Court to determine, and as to which no response is required.

5.      In response to the allegations set forth in Paragraphs 5, 6, 8, and 9 of the

Counterclaim, Plaintiff respectfully refers the Court to the parties' "Property Settlement Agreement"

("PSA") for the truth of the matters set forth therein.

6.      In response to the allegations set forth in Paragraph 7 of the Counterclaim, Plaintiff

respectfully refers the Court to the PSA itself for the truth of the matters set forth therein, and admits

only that the phrase "Confidentiality Provisions" appears subsequently in the Counterclaim.

7.      In response to the allegations contained in Paragraph 10 of the Counterclaim, Plaintiff

(a) admits that Defendant purports to incorporate by reference into the Counterclaim various

provisions of the PSA, (b) respectfully refers the Court to those provisions of the Counterclaim for

the truth of the matters asserted therein; and (c) further alleges that Naseman is entitled to no relief

pursuant to any provision of the PSA.

8.      Denies the allegations contained in Paragraph 11, 12, and 13 of the Counterclaim.

9.      In response to the allegations contained in Paragraph 14 of the Counterclaim, Plaintiff

admits that Naseman purports to reserve any and all claims he may have, but denies that he has any

such claims or the right to reserve same.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

10.     The Counterclaim fails to state a claim upon which relief can be granted.

2

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

11.    The counterclaim is barred and/or subject to set off by reason of Defendant's breaches of his own contractual obligations.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

12.    Plaintiff did not breach the PSA.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

13.    Defendant's alleged damages are not the result of any actionable conduct on the part of Plaintiff.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

14.    Any alleged losses suffered by Defendant are attributable in whole or in part to his own conduct.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

15.    The attorney's fees provisions contained in the PSA that Defendant purports to rely upon do not apply to the claims raised herein.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

16.    Defendant's counterclaim is barred, or subject to set off, by virtue of his breach of the implied covenant of good faith and fair dealing respective to the PSA.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE**

17.    Defendant's counterclaim is barred or subject to set off by virtue of his having fraudulently induced Harding to enter into the PSA.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

18.     Defendant's Counterclaim is barred by the doctrine of waiver.

Dated: New York, New York
       January 2, 2008

Yours, etc.,

JUDD BURSTEIN, P.C.,

By:    Peter B. Schalk (PBS-8257)
       1790 Broadway, Suite 1501
       New York, New York 10019
       Tel. 212-974-2400
       Fax 212-974-2944

4

# EXHIBIT F

Harding is not seeking to pursue her underlying divorce claims, but brings an action sounding in fraud for the difference between a fair and honest divorce settlement and her fraudulently induced one. *See Infra* at Point III, B. As such, the release cannot bar claims based upon the terms of the PSA that contains it.

**B.    The Doctrine of Ratification Does Not Bar Harding's Claims**

In arguing that Plaintiff's claims are barred by ratification, Defendant misconstrues the gravamen of Plaintiff's complaint. Contrary to Defendant's position, Plaintiff is not seeking to rescind the PSA. Under New York law, a party who has been fraudulently induced to settle a claim may either (a) rescind the settlement, **or** (b) ratify the settlement, retain the proceeds, and institute an action to recover fraud damages:

> The law of New York is clear that one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement. *** The premises for the rule ... are quite sound. If all that will result from a misrepresentation [inducing a settlement] is a new trial, then the party making it has everything to gain and nothing to lose. The plaintiffs would be placed at a disadvantage by a new trial; the defendants would not. If anything, defendants would benefit by having a preview of plaintiffs' case. As McCormick notes in the case of willful fraud:
>
> > If the defendant by willful falsehood has cozened the plaintiff into risking his property upon a bargain, which, upon the information given by the defendant, would have been profitable, a remedy which merely seeks to place the plaintiff back in the position he was in before seems hardly adequate. The plaintiff might well be given the value of the expected bargain. **A willful fraud should cost as much as a broken promise.**

---

[5](...continued)

plaintiffs were seeking to pursue the underlying claims that were released, thus rescission was necessary. (As set forth *infra* at Point III, B, Plaintiff does not seek rescission.)

*Slotkin v. Citizens Casualty Co.*, 614 F.2d 301, 312 (2d Cir. 1979) (citations omitted; emphasis supplied), *cert. denied*, 449 U.S. 981, 101 S. Ct. 395, 101 S. Ct. 396 (1980).

The measure of Plaintiff's damages is thus "the difference between what would have been a fair and honest settlement and the amount ... accepted in reliance on the alleged misrepresentations of defendant." *Griffel v. Belfer*, 12 A.D.2d 609, 609 (1st Dep't 1960).[6] This basis for recovery in fraud asserted by Harding has long been recognized by the New York Court of Appeals. *See Urtz v. New York C. & H. R. R. Co.*, 202 N.Y. 170 (1911) and *Gould v. Cayuga Co. Bank*, 99 N.Y. 333 (1885). As held in *Urtz*: "The action is not to enforce or vacate the compromise but to recover the actual pecuniary loss sustained by the plaintiff." 202 N.Y. at 176. *Urtz* explained the proper measure of damages in fraud cases such as this one:

> The jury, in the case here, found that the deceit of the defendant moved the plaintiff to release unto the defendant, in consideration of the sum of five hundred dollars, whatever right or cause of action she had against it through the killing of her husband. Unless the right of action had a value and a value greater than five hundred dollars, the plaintiff was not defrauded. If what she parted with had a value less than or only equal to the value of that which she received, she was not injured; if greater, she was injured and in a sum equal to its excess of value.

*Urtz*, 202 N.Y. at 174.

*Gould* similarly held:

> And here we may turn to the other branch of the argument, that the action is an attempt to recover under the mask of damages the extinguished balance of the original obligation. That is not the effort and such is not the true measure of damages. If it was, very much of the appellants' argument would be difficult to

---

[6]    *See also Inman v. Merchants Mut. Casualty Co.*, 274 A.D. 320, 323 (3d Dep't 1948) ("Obviously unless her cause of action had more value than the amount which she received when she executed the release she was not defrauded. Fraud without damage or damage without fraud is not actionable; but, where both concur, an action lies. If a jury should find that respondent, by reason of the fraud, has been damaged in a sum in excess of what she received she would be entitled to recover the excess.").

answer. There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it. In no form of action while the compromise stands can that balance be recovered. But because of that fact it does not follow that merely nominal damages resulted from the fraud. While their measure is not the extinguished balance, and cannot be without making the rule as to rescission an idle and useless formality, its measure is indemnity for the real loss sustained, which may very well prove to be less, and even much less than the contract balance. Such damages will compensate the fraud as make the compromise, which is to stand, an honest and fair one, instead of a dishonest and fraudulent one.

*Gould*, 99 N.Y. at 339.

More recently, the New York Court of Appeals held that a plaintiff may sue for fraudulent inducement relating to a **divorce settlement** and recover the difference between a divorce settlement that was not the result of fraud and the fraudulently induced divorce settlement:

> [W]e assume the truth of plaintiff's allegations therein that she was induced, by the defendant's false representations of his financial worth, to accept under the 1944 agreement a sum inadequate for her proper maintenance during the pendency of the contemplated New Jersey divorce action and in full satisfaction of any and all of the defendant's obligations to her which might survive the decree in that action. In those circumstances ... [the] measure of plaintiff's damages which could be applied under the complaint herein [would be] the proper amount for plaintiff's maintenance and support based upon the defendant's true financial worth.

*Weintraub v. Weintraub*, 302 N.Y. 104, 108 (1951), *superseded by statute on other grounds as stated in Lavi v. Lavi*, 103 A.D.2d 400, 480 N.Y.S.2d 338 (2d Dep't 1984).

Therefore, Harding's claim is completely proper.

## C.   Harding's Fraud Damages Are Not Unduly Speculative[7]

In a footnote without citing to any authority, Defendant states that Plaintiff's damages are too speculative to sustain a recovery. Defendant's MOL, p. 12, n. 8. This is not so. Any alleged

---

[7]    The following analysis does not take into account the interest that Plaintiff should be entitled to on any judgment. All arguments with respect to interest are reserved.

10