# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOEHL HARDING, | Case No. 1:07-cv-08767-RPP |
| Plaintiff, | |
| vs. | |
| DAVID NASEMAN, and DOES 1-10, inclusive, | ANSWER AND COUNTERCLAIM |
| Defendants. | |



Defendant, David Naseman ("Naseman"), by his attorneys, Cohen Lans LLP, as

and for his Answer to plaintiff Toehl Harding's Complaint, respectfully alleges as

follows:

1.      Admits.

2.      Admits.

3.      Denies.

4.      Admits.

5.      Admits, except for periods when Naseman resided in Lenox,

Massachusetts and/or Incline Village, Nevada.

6.      Admits.

7.      Admits the first sentence of Paragraph 7, and denies all remaining

sentences.

8.      Denies.

9.      Denies all allegations contained in Paragraph 9, but admits that he

maintained a bank account under his name at Republic National Bank that Harding knew

that he had.

10. Admits.

11. Admits.

12. Denies.

13. Denies.

14. Denies.

15. Denies the allegations contained in paragraph 15, but admits that he exercised stock options which Harding knew that he had, and deposited the "proceeds" of those options in his separate bank account that Harding knew that he had.

16. Denies.

17. Denies.

18. Denies the allegations contained in Paragraph 18, but admits the parties' adjusted gross income, as stated on their 1990 joint tax returns, was $5,561,728.

19. Denies.

20. Denies.

21. Denies.

22. Denies.

23. Denies.

24. Admits (though the Complaint For Divorce was actually filed on March 22, 1993).

25. Admits.

26. Admits.

27.    Denies the allegations contained in paragraph 27, but admits that the parties' assets and liabilities were distributed pursuant to the "Property Settlement Agreement ("PSA")".

28.    Admits.

29.    Denies.

30.    Denies.

31.    Admits.

32.    Admits.

33.    Admits.

34.    Denies the allegations contained in Paragraph 34, but admits that he prepared tax returns for himself and Marcia Naseman (now known as "Marcia Bothe" and hereinafter referred to as "Bothe").

35.    Denies.

36.    Denies.

37.    Denies.

38.    Denies knowledge or information sufficient to form a belief as to whether the two tax returns referenced factually "bear identical and/or photocopied signatures of Harding and Naseman", but admits that the two tax returns referenced appear to have identical photocopied signatures of Harding and Naseman.

39.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

40.    Denies.

41.    Denies.

42.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

43.    Denies.

44.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

45.    Denies knowledge or information sufficient to form a belief as to what, if anything, Bothe may have forwarded to Harding or the time that any such purported delivery may have occurred.

46.    Denies.

47.    Paragraph 47 is unintelligible as there is no defined term "Memo" in the Complaint.

48.    Denies.

49.    Denies.

50.    Denies.

51.    Denies

52.    Denies.

53.    Denies.

54.    Admits.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

55.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

56.     Admits.

57.     Admits.

58.     Denies knowledge or information sufficient to form a belief as to what, if anything, Harding may have requested of Naseman during "the settlement negotiations leading up to the execution of the parties' PSA".

59.     Denies.

60.     Denies that a Form 1040 for the year 1990 reflecting "that the parties had earned $1,323,916 in income in 1990" was created or ever seen by Naseman prior to November 2005, but admits that the parties' adjusted gross income for 1990 was approximately $5,561,728.

61.     Denies the allegations contained in Paragraph 61, but admits that the parties' adjusted gross income in 1990 was approximately $5,561,728.

62.     Denies.

63.     Denies.

64.     Denies.

65.     Denies the allegations contained in Paragraph 65, but admits that in 1990, Naseman was able to exercise certain stock options – that Harding admits she knew about in Paragraph 65 – as a result of a  tender offer transaction involving two companies, one of which was Naseman's employer at the time.

66.     Denies that he made any "false representations regarding the extent of their assets and income in 1990 and other years", and denies knowledge or information sufficient to form a belief as to what, if anything, Harding relied upon.

67.     Denies.

68.     Denies.

69.     Denies.

## SECOND CLAIM FOR RELIEF
### (Negligent Misrepresentation)

70.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

71.     Paragraph 71 is unintelligible, in that Naseman does not understand what Harding means by "Naseman maintained a pecuniary interest in the divisions and distribution of the marital estate by the PSA executed by the parties", and refers to the PSA for its contents.

72.     Denies.

73.     Denies.

74.     Denies that he made any "false representations of the parties' income for 1990 as approximately $1,323,916" or "of the parties' income for 1991 and 1992", and denies knowledge or information sufficient to form a belief as to what, if anything, Harding relied upon.

75.     Denies.

76.     Denies.

6

## THIRD CLAIM FOR RELIEF
### (Fraudulent Concealment)

77.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

78.    Denies.

79.    Paragraph 79 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

80.    Paragraph 80 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

81.    Paragraph 81 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

82.    Paragraph 82 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

83.    Denies.

84.    Denies.

85.    Denies knowledge or information sufficient to form a belief as to what, if anything, Harding may or may not have done, and states that Harding was at all relevant times aware of the parties' true income and the existence and exercise of Naseman's stock options.

7

86.    Denies.

87.    Denies.

88.    Denies.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

89.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

90.    Paragraph 90 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman owed Harding a fiduciary duty when they were negotiating the PSA.

91.    Paragraph 91 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman owed Harding a fiduciary duty when they were negotiating the PSA.

92.    Paragraph 92 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "misrepresented to her the extent of their marital income".

93.    Paragraph 93 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "concealed the existence of the Shearson account and the income therefrom".

94.    Paragraph 94 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Naseman "concealed from Harding the $5.5M 1040, and the full extent of the parties' income in 1991 and 1992,

especially in light of her requests for the parties' tax returns for the five (5) years preceding their divorce".

95.    Denies.

96.    Denies.

97.    Denies.

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

98.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

99.    Paragraph 99 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that the "PSA constitutes an enforceable contract between Harding and Naseman".

100.    Paragraph 100 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

101.    Paragraph 101 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that Harding has performed "all of her obligations under the PSA".

102.    Denies.

103.    Denies.

104.    Denies.

**SIXTH CLAIM FOR RELIEF**
**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)**

105.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

106.     Paragraph 106 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that the PSA and this dispute are governed by New York law.

107.     Paragraph 107 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that "Harding and Naseman are parties to the PSA, which constitutes an enforceable contract".

108.     Paragraph 108 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial.

109.     Denies.

110.     Denies.

111.     Denies.

112.     Denies.

113.     Denies.

**SEVENTH CLAIM FOR RELIEF**
**(Tortious Breach of Implied Covenant of Good Faith and Fair Dealing)**

114.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

115.     Paragraph 115 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that the PSA and this dispute are governed by New York law.

10

116.    Paragraph 116 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that "Harding and Naseman are parties to the PSA, which constitutes an enforceable contract".

117.    Paragraph 117 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial.

118.    Paragraph 118 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that "Naseman owed Harding a fiduciary duty of loyalty and honesty" when they were negotiating the PSA.

119.    Denies.

120.    Denies.

121.    Denies.

122.    Denies.

123.    Denies.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

124.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

125.    Paragraph 125 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but states that Naseman properly disclosed to Harding everything he was required to disclose.

126.    Denies.

127.    Denies.

## NINTH CLAIM FOR RELIEF
### (Conversion)

128.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

129.    Denies.

130.    Denies.

131.    Denies.

132.    Denies.

## TENTH CLAIM FOR RELIEF
### (Constructive Trust/Equitable Lien)

133.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

134.    Denies.

135.    Denies.

136.    Denies.

## ELEVENTH CLAIM FOR RELIEF
### (Fraud on the Court)

137.    Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

138.    Denies.

139.    Paragraph 139 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that the PSA was presented "for approval and incorporation and integration into the Nevada Divorce Decree".

140.    Denies.

141.     Paragraph 141 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but admits that Naseman is an attorney.

142.     Denies.

143.     Denies.

144.     Denies.

145.     Denies.

146.     Denies.

147.     Denies.

### TWELFTH CLAIM FOR RELIEF
### (Constructive Fraud)

148.     Naseman hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

149.     Paragraph 149 purports to state a legal conclusion, not a factual allegation, which does not require an admission or denial, but denies that "Naseman owed Harding fiduciary duties of loyalty and honesty" when they were negotiating the PSA.

150.     Denies.

151.     Denies.

152.     Denies.

### AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Harding's claims are barred by the doctrine of laches and her failure to act timely.

3.     Harding's claims are barred by the doctrine of waiver.

4.    Harding's claims are barred by the doctrine of unclean hands.

5.    Harding's claims are barred by the doctrine of ratification.

6.    Harding's claims are barred by the doctrine of statute of limitations.

7.    Harding's claims are barred by the doctrine of accord and satisfaction.

8.    Harding's claims are barred by the doctrine of assumption of risk.

9.    Harding's claims are barred by the doctrine of contributory negligence.

10.    Harding's claims are barred by the doctrine of estoppel.

11.    Harding's claims are barred by the doctrine of payment and release.

12.    Harding's claims are barred by the doctrine of res judicata.

## COUNTERCLAIM

1.    Defendant, Counter-Plaintiff David Naseman, by and through his attorneys, Cohen Lans LLP, as and for his counterclaim alleges with personal knowledge as to his own actions and upon information and belief as to those of others, as follows:

2.    Harding's complaint is part and parcel of a campaign of false allegations orchestrated by Bothe in connection with her divorce proceeding with Naseman, and was filed only after Bothe had failed to prevail on virtually all of her property claims in that proceeding.

3.    The alleged 1990 Form 1040 showing income of $1,323,916 is a false and altered document. Upon information and belief, the "signature block" on that document was "cut-and-pasted" from the "authentic" 1990 Form 1040 that reflected the parties' true income of $5,561,728. Naseman prepared and showed Harding only one 1990 Form 1040: that showing the parties' true income of $5,561,728; and he did not see the 1990 Form 1040 showing income of $1,323,916 until in mysteriously appeared almost one

year into his divorce proceeding with Bothe in connection with Bothe seeking to delay an impending trial in that proceeding.

4.    The PSA is a valid and enforceable contract entered into by and between Harding and Naseman.

5.    Article 3, Paragraph 2(a) of the PSA provides that: "[n]either party, nor their assigns, successors, associates, or their attorneys (collectively "Affiliates") shall divulge the terms and provisions of this Agreement or cause to be disseminated any of the provisions contained within this Agreement to any third party (include, without limitation, relatives of either party) not directly involved with this Agreement . . . ."

6.    Article 3, Paragraph 2(b) of the PSA provides that: "[n]either party nor their Affiliates shall discuss the other's personal or business matters with any other person(s) including, without limitation, relatives of either party".

7.    Article 3, Paragraph 2(c) of the PSA provides that: "[a]ny violation of the terms of subparagraphs 2(a) and (b) shall constitute a material breach of this Agreement". The provisions of Article 3 quoted herein are collectively referred to as the "Confidentiality Provisions" of the PSA.

8.    Article 15, Paragraph 3 of the PSA provides that:

> [i]f either party, by any action, proceeding, defense, counterclaim or otherwise, seeks to vacate or set aside this Agreement or declare any of the terms and conditions to be invalid, void or against public policy, for any reason, including but not limited to fraud, duress, incompetency, overreaching or unconscionability, said party shall reimburse the other party and be liable for any and all of such party's reasonable attorney's fees and expenses, provided and to the extent that such action, proceeding, counterclaim or defense results in a settlement, decision, judgment, decree or order dismissing or rejecting said claims.

9.      Article 15, Paragraph 4 of the PSA provides that:

> [i]f either party (the "defendant") shall be required to interpose the
> terms, conditions and covenants of this Agreement as a defense to
> an action or other proceeding instituted by the other party (the
> "plaintiff") and such defense shall result in a judgment, decree or
> order in favor of the defendant, or a settlement upon substantially
> the terms of this Agreement, the plaintiff shall pay to the defendant
> the costs and expenses incurred by the defendant including
> reasonable attorneys' fees.

10.     Naseman hereby incorporates by reference the preceding paragraphs as if
fully set forth herein.

11.     Upon information and belief, Harding breached the Confidentiality
Provisions of the PSA by discussing its terms with, and otherwise disclosing its terms to,
third-parties and/or discussing Naseman's personal or business matters with third-parties,
including, but not limited to, Bothe and her counsel.

12.     As a direct and proximate result of that breach, Naseman has sustained
damages.

13.     The express terms of the PSA operate as a complete bar to Harding suit.
Upon entry of judgment or settlement in Naseman's favor, Naseman shall be entitled to
costs, including reasonable attorneys' fees and expenses.

14.     Naseman expressly reserves any and all claims he may have arising out of
the filing of this bogus lawsuit.

        **WHEREFORE**, Naseman prays for a judgment against Harding as
follows:

        a.      dismissing the complaint in its entirety,

16

  b.  awarding sanctions to Naseman for Harding's fraudulent filings;

  c.  enter judgment in Naseman's favor on his counterclaim;

  d.  awarding Naseman attorneys' fees and costs; and

  e.  awarding Naseman any other relief the Court deems just and

proper.

Dated: New York, New York
   December 7, 2007

         COHEN LANS LLP

         By_____
         Robert Stephan Cohen (RC-7592)
         Dan Rottenstreich (DR-9278)

         885 Third Avenue, 32nd Floor
         New York, NY  10022
         (212)980-4500

         *Attorneys for Defendant*
         *David Naseman*

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )

                            ss.:

COUNTY OF NEW YORK  )

The undersigned being duly sworn, deposes and says:

1.      Deponent is not a party to the action, is over 18 years of age and resides in Hastings-on-Hudson, New York.

2.      On the 7th day of December 2007, deponent served a true and correct copy of the within Answer and Counterclaim upon:

> Robison Belaustegui Sharp & Low
> Attorneys for Plaintiff
> 71 Washington Street
> Reno, Nevada 89503
> Attn: Kent R. Robison, Esq.

by depositing same in a prepaid properly addressed wrapper in an official depository under the exclusive care and custody of Federal Express, an overnight delivery service, prior to the latest time designated by Federal Express for overnight business day delivery.

_____
Rebecca Billingy

Sworn to before me this 7th
day of December 2007.

_____
Notary Public

ARTHUR D. ETTINGER
Notary Public, State of New York
No. 02ET6020607
Qualified in New York County
Commission Expires April 22, 2011

#52133