# EXHIBIT B

# Part 1

PROPERTY

SETTLEMENT AGREEMENT

BY AND BETWEEN

DAVID NASEMAN

AND

TOEHL HARDING

21479/0001/LGF/2953

AGREEMENT made this ___ day of May, 1993, by and between DAVID M. NASEMAN ("Mr. Naseman"), residing at 869 Freels Peak Drive, Incline Village, Nevada 89452, and TOEHL HARDING ("Ms. Harding"), residing at 425 East 51st Street, New York, New York 10022.

W I T N E S S E T H :

WHEREAS, the parties were duly married to each other in Lenox, Massachusetts on October 19, 1982; and

WHEREAS, there are no children of the marriage, and there are no expected children of the marriage; and

WHEREAS, the parties were granted a full and final decree of divorce on April 21, 1993 by a final Judgment of the Second Judicial District Court, State of Nevada, County of Washoe, (Index No. DV 93-00466, Dept. No. 2); and

WHEREAS, the parties desire to fix their respective financial and property rights, and all other rights, privileges, obligations and matters with respect to each other arising out of their former marital relationship and otherwise;

NOW, THEREFORE, it is agreed as follows:

ARTICLE 1

ARTICLE HEADINGS

The headings at the beginning of each Article of this Agreement are for reference purposes only and shall not, in any manner, constitute terms or conditions of this Agreement; nor shall they be applicable to any interpretation of the intention or meaning of any part of this Agreement.

21479/0001/LGP/2953

## ARTICLE 2

### NEVADA DIVORCE
### AND RELIGIOUS DIVORCE

1. Ms. Harding acknowledges and represents that she was personally served with a summons and complaint on March 25, 1993 in an action entitled David M. Naseman v. Toehl Harding, in the Family Division of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe (Case No. DV 93-00466; Dept. No. 2) (the "Nevada Action"). Ms. Harding further acknowledges that she appeared in the Nevada Action through counsel and expressly consented to the final Judgment of divorce referred to in paragraph 2 of this Article.

2. Ms. Harding acknowledges that a final Judgment divorcing the parties (the "Nevada Divorce") was made and entered on the 21st day of April, 1993 in the Nevada Action.

3. Ms. Harding agrees that:

   (a) She waives, releases, renounces and relinquishes, now and forever, any right to contest the jurisdiction (both subject matter and personal) of the Nevada Court to grant a final Judgment divorcing the parties in the Nevada Action;

   (b) She waives, releases, renounces and relinquishes, now and forever, any right she may have to appeal the granting of the final Nevada Divorce;

   (c) She waives, releases, renounces and relinquishes, now and forever, any right she may have to contest the validity of the final Nevada Divorce, whether directly or by

-2-

collateral attack, or by plenary action, declaratory judgment action, or otherwise, in Nevada, in New York, in Massachusetts or in any other jurisdiction, domestic or foreign.

    4.   Ms. Harding, by the execution of this Agreement, dismisses her counterclaims in the Nevada Action with prejudice and directs her counsel in Nevada immediately to execute and deliver any and all documents reasonably necessary to effectuate the said dismissal with prejudice. Moreover, she has, simultaneously, executed and delivered to Mr. Naseman a stipulation dismissing her counterclaim with prejudice.

    5.   Ms. Harding acknowledges her understanding that having the Nevada Divorce entered on or about April 20, 1993, and the provisions of paragraphs 3 and 4 of this Article were a material, bargained-for aspect of this Agreement on Mr. Naseman's part when he agreed to the terms proposed by Ms. Harding in the letter from her counsel to Mr. Naseman's counsel dated April 15, 1993.

    6.   The parties agree that, notwithstanding any language in the following documents, or any rule of law, to the effect that settlement negotiations are not admissible into evidence: (a) the draft Separation Agreement delivered to Ms. Harding by Mr. Naseman in November 1992; (b) the letter dated February 5, 1993 from Richard B. Cohen to Leonard G. Florescue; (c) the letter from Leonard G. Florescue to Richard B. Cohen dated March 29, 1993; (d) the letter from Richard B. Cohen to Leonard G. Florescue dated April 15, 1993; (e) the letter from Leonard G. Florescue to Richard B. Cohen dated April 19, 1993;

21479/0001/LGF/2953

(f) the letter from Richard B. Cohen to Leonard G. Florescue and countersigned by both dated April 19, 1993 and (g) the letter form Ms. Harding to the court in the Nevada Action dated April 21, 1993, (all annexed as Exhibit A) may be admitted into evidence by the party in order to defend the Agreement or the Nevada Divorce if the other party attacks the final Nevada Divorce or any of the provisions of this Agreement in any action.

    7.    Simultaneously with the execution of this Agreement Ms. Harding shall execute and deliver to Mr. Naseman a letter (in the form annexed as Exhibit B) stating that the parties' marriage was not sanctioned by the Roman Catholic Church.

## ARTICLE 3

### PRIVACY OF THIS AGREEMENT AND NONINTERFERENCE

    1.    It is, and shall be, lawful for the parties to reside from time to time at such places as each may see fit and to contract, carry on and engage in any employment, profession, business or trade, which either may deem fit, free from control, restraint, or interference, direct or indirect, by the other. Neither party shall in any way molest, disturb, trouble, or interfere with the peace and comfort of the other.

    2.    (a) Neither party, nor their assigns, successors, associates, or their attorneys (collectively "Affiliates") shall divulge the terms and provisions of this Agreement or cause to be disseminated any of the provisions contained within this Agreement to any third party (including, without limitation

-4-

relatives of either party) not directly involved with this Agreement except those to whom the communication would be privileged.

(b) Neither party nor their Affiliates shall discuss the other's personal or business matters with any other person(s) including, without limitation, relatives of either party;

(c) Any violation of the terms of subparagraphs 2(a) and (b) shall constitute a material breach of this Agreement. In addition, in the event of any such breach, both parties hereby consent to the granting of a temporary or permanent injunction against him or her (or against any agent or Affiliate acting at his or her behest) by any court of competent jurisdiction prohibiting him or her (or his or her agent or Affiliate) from violating the terms of this paragraph. In any proceeding for an injunction and upon any motion for a temporary or permanent injunction, both parties agree that his or her ability to answer in damages shall not be a bar to, or be interposed as a defense to, the granting of such temporary or permanent injunction. Both parties further agree that the other will not have an adequate remedy at law in the event of any breach of the provisions of this paragraph and that the other party will suffer irreparable damage and injury in the event of any such breach.

## ARTICLE 4

### SEPARATE OWNERSHIP

1. Except as otherwise expressly provided in Article 12 of this Agreement, each party shall own, as his or her separate property, free of any claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and wheresoever situate, which are now, either titularly or beneficially, in his or her name, control or possession, with full power to dispose of the same as fully and effectually in all respects and for all purposes as if never married to each other.

2. Except as otherwise expressly provided in Article 12 of this Agreement, Mr. Naseman acknowledges that he has no right, title or interest in and to any bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by Ms. Harding or subsequently acquired by Ms. Harding, whether in her sole name or in trust for another.

3. Except as otherwise expressly provided in Article 12 of this Agreement, Ms. Harding acknowledges that she has no right, title or interest in and to any bank or similar accounts, business interests, licenses, degrees, securities, pension or similar plans or other investments, now, or previously, owned titularly or beneficially by Mr. Naseman or subsequently acquired by Mr. Naseman, whether in his sole name or in trust for another.

21479/0001/LGF/2953

## ARTICLE 5

### SEPARATE RESPONSIBILITY FOR DEBTS

1. Except as is otherwise expressly set forth in paragraph 4 of this Article, Ms. Harding represents that she has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which Mr. Naseman or his estate is or may become liable. Ms. Harding shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of Mr. Naseman or for which Mr. Naseman or his estate may become liable. Ms. Harding shall satisfy and hold Mr. Naseman free and harmless from and indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which has been or may hereafter be incurred or contracted by her for the benefit of herself or for any other person than Mr. Naseman.

2. Except as is otherwise expressly set forth in paragraph 4 of this Article, Mr. Naseman represents that he has not heretofore incurred or contracted any debt, charge, obligation or liability whatsoever for which Ms. Harding or her estate is or may become liable. Mr. Naseman shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, whether for necessaries or otherwise, upon the credit of Ms. Harding or for which Ms. Harding or her estate may become liable. Mr. Naseman shall satisfy and hold Ms. Harding free and harmless from and

21479/0001/LGF/2953

indemnified against all debts, charges, obligations or liabilities of every kind and nature whatsoever which has been or may hereafter be incurred or contracted by him for the benefit of himself or any other person than Ms. Harding.

    3. Mr. Naseman or Ms. Harding, as the case may be, shall reimburse the other for all charges that he or she makes against the other's accounts or the other's business accounts after the execution of this Agreement, or for charges which he or she incurred before the execution of this Agreement but for which bills have not yet been received, to the extent that such charges were incurred without the other's consent.

    4. The parties acknowledge making a pledge of $2,000 to the Berkshire Playhouse Theater. Mr. Naseman represents that he has paid the first $1,000 of that pledge. Ms. Harding represents that she will pay the remaining $1,000. If either party's representation is untrue, he or she will indemnify the other against the same.

## ARTICLE 6

### SEPARATE RESPONSIBILITY FOR INCOME TAXES

    1. (a) If in connection with any joint income tax returns heretofore filed by the parties there is any deficiency assessment, the amount ultimately determined to be due thereon, including penalties and interest, shall be paid by Mr. Naseman except to the extent that the deficiency has been caused by the inaccuracy of Ms. Harding's representation in subparagraph 2(a) of this Article.

-8-

(b) Mr. Naseman, to the extent that the same has not been caused by the inaccuracy of Ms. Harding's representation in subparagraph 2(a) of this Article, indemnifies and holds Ms. Harding harmless against any tax assessment, penalty or interest and any expenses, including, without limitation, attorneys' and accountants' fees incurred in connection therewith.

2. (a) Ms. Harding represents and warrants that, to the best of her knowledge, she accurately and correctly advised Mr. Naseman (at the time of the preparation and filing of the said returns) of all income, deductions, tax bases and credits attributable solely to her.

(b) To the extent that any assessment, penalty or interest is brought about by the failure of Ms. Harding to have accurately and correctly advised Mr. Naseman, as set forth in subparagraph 2(a), she indemnifies and hold Mr. Naseman harmless against any such assessment, penalty or interest and any expenses, including, without limitation, attorney's fees and accountant's fees incurred in connection therewith.

3. (a) Ms. Harding agrees to cooperate (in any reasonable manner) fully with Mr. Naseman in the event of any audit or examination of the said joint tax returns by a taxing authority and agrees to furnish to Mr. Naseman or his designee, promptly and without charge, such papers, records, documents, authorizations and information as may be reasonably appropriate in connection with said audit or examination including, without limitation, a power of attorney to negotiate and consummate any settlement of such audit or examination on her behalf, provided,

-9-

however, that if the audit or examination arises in whole or in part from any understatement of Ms. Harding's own income, or an overstatement of her deductions, bases or credits, such that she would be potentially liable under paragraph 2 of this Article to indemnify Mr. Naseman, then Mr. Naseman will "cooperate fully, etc.", as provided above in this subparagraph <u>mutatis mutandis</u>.

  (b) Any consent by either party required to reach a settlement with any taxing authority shall not be unreasonably withheld.

  4. All refunds or credits derived from previously filed joint income tax returns shall be shared equally by the parties. Mr. Naseman represents that he is unaware of any anticipated refund.

  5. The parties will file separate income tax returns for 1992.

## ARTICLE 7

### MUTUAL EQUITABLE DISTRIBUTION WAIVER

  1. The parties hereby agree that all of their property, including all of their "marital property" as that term is defined in Section 236, Part (B) of the New York Domestic Relations Law, has been fairly and equitably divided between them pursuant to the terms of this Agreement.

  2. Except as otherwise expressly provided in Article 12 of this Agreement, each party waives any and all rights or claims (whether arising at law, in equity or by virtue of their former marital relationship) which he or she may have to

21479/0001/LGF/2953

an award of equitable distribution or a distributive award in respect of any property now or previously owned (titularly or beneficially) by the other former-spouse (together with the appreciation and income thereof) or acquired jointly, either before, during or after the marriage and either before or after the execution of this Agreement.

3. The payments and transfers of property that Mr. Naseman has obligated himself to make pursuant to the terms of this Agreement are in full satisfaction of Ms. Harding's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all of Ms. Harding's claims for attorneys' fees, accountants' fees, and other expenses that have been or may be incurred by her in reference to the execution of this Agreement, the Nevada Action, and the obtaining of the Nevada Divorce.

4. The payments and transfers of property that Ms. Harding has obligated herself to make pursuant to the terms of this Agreement are in full satisfaction of Mr. Naseman's claims for equitable distribution as the term is defined by §236(B) of the Domestic Relations Law of the State of New York and similar laws of any other jurisdiction where such property may be located and in full satisfaction of all Mr. Naseman's claims for attorneys' fees, accountants' fees, and other expenses that have been or may be incurred by him in reference to the execution of

21479/0001/LGF/2953

2. The parties hereto expressly revoke their respective Wills insofar as the same may make any disposition (whether outright or in trust) to or for the benefit of the other and further revoke any nomination of the other party as an estate representative or in any other representative or fiduciary capacity thereunder, it being the intent of the parties that all Wills made and executed by either of them prior to the Nevada Divorce and the acknowledgment of this Agreement shall be read and administered as if the other party had predeceased him or her for purposes of distribution of his or her respective estate or the property interests otherwise passing thereunder.

3. Where a party may be designated a beneficiary or survivor in a testamentary substitute pursuant to which any interest in property does not pass under a Will, each of the parties hereby renounces and agrees to renounce any such designation and the beneficiary or survivor shall be deemed to be the estate of the party having originally made the designation.

4. Each of the parties hereby further renounces and agrees to renounce any right of administration upon the estate of the other or nomination by the other as estate representative, as provided for by the laws or practices of any jurisdiction whatsoever. Neither party shall object to the probate of the other's Last Will and Testament and in the event that either party dies intestate, the surviving party shall allow administration upon the estate and personal effects of the deceased party to be taken and received by any person who would

have been entitled thereto had the surviving party predeceased the deceased party unmarried.

5. Each party shall, upon request by the executors, administrators or other legal representatives of the other party, promptly (and without charge) execute, acknowledge and deliver any instrument which in the opinion of said executors, administrators or other legal representatives is necessary to effectuate the waiver of his or her right of election against the last will and testament of the other, and the waiver of all dower, curtesy and other rights to take as distributee, heir, next-of-kin and the like.

6. However, the foregoing shall not bar a claim on the part of either party against the estate of a deceased party for any cause arising out of a breach of this Agreement during the lifetime of the deceased party against whose estate such a claim may be made.

## ARTICLE 10

### SUPPORT AND MAINTENANCE OF THE PARTIES

1. Taking into consideration all relevant facts and circumstances, including but not limited to the employment and employment potential of Ms. Harding and Mr. Naseman, both of whom are attorneys, and the substantial assets to be held by each party following the execution of this Agreement, neither Mr. Naseman nor Ms. Harding seeks or requires any alimony, maintenance or spousal support from the other now or in the future. Therefore, no provision for the support or maintenance of either Mr. Naseman or Ms. Harding is made herein, and each

-15-

forever waives any claim for support or maintenance or alimony in the future.

2. As more expressly provided for in Article 2, Ms. Harding, simultaneously herewith, will dismiss, with prejudice, her counterclaim for spousal support, alimony or maintenance in the Nevada Action.

## ARTICLE 11

### MEDICAL INSURANCE AND RELATED EXPENSES

1. Ms. Harding shall promptly execute all documents necessary to convert Mr. Naseman's present health insurance coverage, maintained under her employment with NYNEX to an individual policy providing the same benefits as those to which he was entitled prior to the divorce, consistent with the terms, conditions and requirements of the NYNEX policy. Ms. Harding shall take all reasonable steps necessary to keep Mr. Naseman's health insurance in effect for the three (3) years following the date of divorce as provided by the Consolidated Omnibus Budget Reconciliation Act of 1985, Title X Pub.L. 99-272 effective April 7, 1986 ("COBRA"). The cost of such medical insurance shall be paid solely by Mr. Naseman and he shall indemnify Ms. Harding for any actual expense incurred by her in the implementation of this paragraph.

2. Each party agrees to promptly fill out, execute and deliver to the other (at the address specified by Article 16, paragraph 8) all forms and provide all information in connection with any application that may be necessary for the other's

21479/0001/LGF/2953

medical, dental and drug expenses under any insurance policies which the other may have.

## ARTICLE 12

### MARITAL PROPERTY

1. The parties own as joint tenants with the right of survivorship, 630 shares of stock (par value $1) in the Beekman Hill House Apartment Corp. which represents their ownership of Apartment 6-A in premises located at 425 East 51st Street, New York, New York 10022. The parties are also signatories to the proprietary lease appurtenant to said apartment. Upon the execution hereof, Mr. Naseman shall convey to Ms. Harding, all of his right, title and interest in and to the said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

2. The parties presently own as joint tenants with the right of survivorship, another 625 shares of stock (par value $1) in the Beekman Hill House Apartment Corp. which represents their ownership of Apartment 5-A in premises located at 425 East 51st Street, New York, New York 10022. The parties are also signatories to the proprietary lease appurtenant to that apartment. Upon the execution hereof, Mr. Naseman shall convey to Ms. Harding, all his right, title and interest in and to the

said cooperative stock and the said proprietary lease and shall execute all documents necessary to effectuate said transfer including, but not limited to, an assignment of said stock (on the back of the stock certificate if available), assignment of the proprietary lease and any other documents that may be required by the Cooperative Board to effectuate said transfer.

    3.   (a)  Mr. Naseman, at the time of execution of this Agreement, shall deliver to Ms. Harding a bank or certified check for three thousand seven-hundred thirty one and 37/100 ($3,731.37) as and for his complete contribution with respect to any taxes or expenses entailed in the transfer of the two cooperative apartments.

    (b)  Ms. Harding shall be solely responsible for any expenses involved in the transfer of said stock and leases from Mr. Naseman and Ms. Harding to Ms. Harding including, but not limited to, New York City and New York State transfer taxes, recording fees, and charges of the Managing Agent and/or the Cooperative Board, and she shall indemnify him against the same. The parties each represent to the other that the said cooperative apartments are free and clear of any mortgages, liens or encumbrances occasioned by his or her individual acts of commission or omission.

    4.  There shall be no adjustment for taxes, cooperative maintenance or apportionments and Mr. Naseman shall not be liable for any taxes, cooperative maintenance or apportionments in 1993. From and after the said conveyances, Ms. Harding shall be solely liable for all expenses in connection