# EXHIBIT B

## Part 2

with said premises, including but not limited to maintenance payments, insurance, taxes, telephone, utilities and ordinary repairs.  From and after the execution hereof, Mr. Naseman shall have no right or claim with respect to the said apartments, their use or their proceeds in the event of a sale or other disposition thereof.

5.   Ms. Harding shall indemnify and hold Mr. Naseman harmless of all loss, expenses (including reasonable attorneys' fees) and damages which he may incur as the result of a failure on the part of Ms. Harding to perform the obligations relating to, or as a result of, her occupancy and ownership of the premises.

6.   Ms. Harding shall be the sole owner of the contents and furnishings contained in the said cooperative apartments 5-A and 6-A free of any claim or right of Mr. Naseman thereto.

7.   (a)  Simultaneously with the execution of this Agreement Mr. Naseman shall transfer to Ms. Harding, by wire transfer to Republic National Bank Insured Money Director Account # 318251620, five hundred thousand dollars ($500,000) from the funds currently located in insured money director account #0318181371 located at the Republic National Bank of New York.

(b)  Mr. Naseman shall retain the balance of the funds currently located in the said account #0318181371 (approximately $425,000).

(c)  Simultaneously with the execution of this Agreement, Ms. Harding will execute and deliver to Mr. Naseman

-19-

documents necessary to waive, renounce and relinquish any and all
rights she has in the balance of the funds in the said account
#0318181371.

(d)    Following the said transfers, neither Mr.
Naseman nor Ms. Harding shall have any claim or right (whether
arising at law, in equity or by virtue of the former marital
relationship) to any of the funds currently in the said account
#0318181371 and transferred to, or retained by, the other as
provided in subparagraphs 7(a) or 7(b).

8.    (a)    Mr. Naseman is the owner of: a 1989 Jaguar
Vanden Plas, VIN No. SAJKY1547KC569398, a 1991 Ford F150 Pick-up,
VIN No. 2FTEF14N8MCA86947; a 1989 Volvo 760 Sedan, VIN No.
YV1GA874XK0067382; and, a 1923 Ford Model T Touring Car, (no
VIN).  Each party represents and warrants to the other that there
are no liens or chattel mortgages outstanding with respect to the
said four automobiles occasioned by his or her acts of omission
or commission.

(b)    In full satisfaction of Ms. Harding's claims
or rights to any of the automobiles, simultaneously with the
execution of this Agreement, Mr. Naseman has executed and
delivered to Ms. Harding all documents necessary to transfer the
ownership and registration of the said Volvo to Ms. Harding
(including, but not limited to, the certificate of title and a
letter confirming the transfer), and Ms. Harding agrees to pay
all expenses relating to the operation, insurance, maintenance
and garaging of said vehicle after the execution of this
Agreement.  Ms. Harding acknowledges Mr. Naseman's advice that

-20-

the Volvo will be uninsured from and after May 14, 1993 and that
she will, thereafter, be solely responsible for maintaining the
insurance thereon.  Ms. Harding agrees to return the
Massachusetts plates for the said Volvo to Mr. Naseman by express
mail upon her obtaining new insurance for the Volvo or on May 14,
1993, whichever is the sooner.

(c)  Ms. Harding represents that the Volvo has not
been involved in any accident, nor does it have any outstanding
summonses for parking or moving violations, for which Mr. Naseman
is, or may be, liable.  If there, nonetheless, are any such
liabilities, Ms. Harding agrees to indemnify and hold Mr. Naseman
harmless from them.  This representation and indemnity will apply
through the date upon which Ms. Harding surrenders the license
plates to Mr. Naseman as provided in subparagraph 8(b) above.

(d)  Ms. Harding will promptly take all steps
necessary to transfer the account with the garage where the said
Volvo is parked in New York, New York into her sole name.  She
agrees to indemnify Mr. Naseman against all liability for the
payment of this account whether arising on or after February 1,
1993 or after the date of this Agreement.

9.   (a)  The husband is the sole owner of Lots 34 and
35 located at Nine Mile Point Drive of Michigan Shores,
Charlevoix, Michigan, and the residence erected on Lot 34,
commonly known as 06452 Nine Mile Point Drive, Charlevoix,
Michigan 49720.

(b)  (i)  Mr. Naseman represents that the said
lots 34 and 35 and the said residence are free and clear of any

-21-

mortgages, liens or other encumbrances; (ii) Ms. Harding represents that she knows of no mortgages, liens or encumbrances upon the said lots and residence, placed there as a result of any act of omission or commission by her.

(c)  Mr. Harding waives any right, title or interest in and to the said Lots and residence, and any personalty located therein irrespective of whether such right, title or interest arises at law, in equity or by virtue of the former marital relationship.  Simultaneously herewith she has executed and delivered to Mr. Naseman a quitclaim deed transferring all of her right, title and interest in and to the said property to Mr. Naseman.

10.  (a)  The parties are the owners, as tenants in common with right of survivorship, of approximately 8.7 acres of land and a residence and barn located at 150 Lee Road, Lenox, Berkshire County, Massachusetts 01240.

(b)  Each of the parties represents to the other that the said 8.7 acres and residence and barn are free and clear of any mortgages, liens or encumbrances placed there as a result of any act of omission or commission by him or her.

(c)  Simultaneously with the execution of this Agreement, Ms. Harding has executed and delivered to Mr. Naseman, all documents necessary to transfer to Mr. Naseman all of her right, title and interest in and to the said 8.7 acres and residence and barn.

(d)  From and after the date of this Agreement, Mr. Naseman shall be the sole owner of any personal property

-22-

located at the said 8.7 acres and residence and barn free of any claim or right thereto of Ms. Harding.

11.  (a)  Mr. Naseman is the sole owner of a condominium described as Unit #603 and an undivided 1.93% share in the common elements appurtenant thereto, according to the Declaration of Condominium of the Venice Avenue Condominium, relating to 512 Venice Avenue West, Venice, Sarasota County, Florida 34285.

(b)  (i)  Mr. Naseman represents that the said condominium is free and clear of any mortgages, liens or encumbrances; (ii) Ms. Harding represents that she knows of no mortgage, lien or encumbrances upon the said condominium placed there as a result of any act of omission or commission by her.

(c)  Ms. Harding waives any right, title or interest in and to the said condominium and to any personalty located therein, irrespective of whether such right, title or interest arises at law, in equity or by virtue of the former marital relationship.  Simultaneously herewith she has executed and delivered to Mr. Naseman a quitclaim deed transferring all of her right, title and interest in and to the said condominium to Mr. Naseman.

12.  Without limiting the generality of the foregoing, with respect to any property which Mr. Naseman or Ms. Harding shall own following the transfers made pursuant to this Article, Mr. Naseman or Ms. Harding, as the case may be, agrees that he or she will indemnify and hold the other harmless of all loss, expenses (including reasonable attorneys' fees) and damages which

-23-

the other may incur as the result of a failure on his or her part to perform the obligations relating to, or as a result of, his or her occupancy and ownership of the premises, whether such failure arises before or after the execution of this Agreement.

13.  (a)  Mr. Naseman and Ms. Harding agree and understand, and have been so advised by their respective attorneys, that no taxable gain or loss is recognized by the conveyances pursuant to this Article as provided for in Section 1041 of the Internal Revenue Code of 1986.  Neither Mr. Naseman or Ms. Harding shall take any position on his or her federal, state or local income tax returns, with respect to the tax basis of the property conveyed, that is inconsistent with the preceding sentence of this paragraph.

(b)  Each party will promptly deliver to the other any documents (in his or her possession, custody or control) relating to the tax basis of the properties to be held by the other following the execution of this Agreement and the transfers contemplated herein.

## ARTICLE 13

### INQUIRY AND DISCLOSURE

1.  Mr. Naseman has had the opportunity to make independent inquiry into the complete financial circumstances of Ms. Harding and represents to Ms. Harding that: he is satisfactorily informed of the income, assets, property and financial prospects of Ms. Harding; he is aware of all separate property and all marital property as those terms are defined in

-24-

Domestic Relations Law §236(B); that he is satisfied that full disclosure has been made, and that he cannot appropriately make a claim against Ms. Harding by reason of her failure to disclose or his failure of knowledge of the financial circumstances of Ms. Harding.

2.    Mr. Naseman has had a full opportunity and has consulted at length with his attorneys, to wit:  Leonard G. Florescue, Esq., of Tenzer, Greenblatt, Fallon & Kaplan in New York, New York and Gary Silverman of Silverman, Decaria Chtd. in Reno, Nevada regarding all of the circumstances hereof.

3.    Mr. Naseman further acknowledges that this Agreement has been freely entered into by him, without fraud, duress or undue influence exercised by Ms. Harding or by any other person or persons upon him.

4.    Ms. Harding has had the opportunity to make independent inquiry into the complete financial circumstances of Mr. Naseman and represents to Mr. Naseman: that she is satisfactorily informed of the income, assets, property and financial prospects of Mr. Naseman; she is aware of all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B); she is satisfied that full disclosure has been made, and that she cannot appropriately make a claim against Mr.Naseman by reason of his failure to disclose or her failure of knowledge of the financial circumstances of Mr. Naseman.

5.    Ms. Harding has had a full opportunity and has consulted at length with her attorneys, to wit: Richard B. Cohen

-25-

of Akabas & Cohen in New York, New York and Cassandra D. Campbell

of Logar, Campbell in Reno, Nevada regarding all of the

circumstances hereof.

      6.    Ms. Harding further acknowledges that this

Agreement has been freely entered into by her, without fraud,

duress or undue influence exercised by Mr. Naseman or by any

other person or persons upon her.

**ARTICLE 14**

**PENSION RIGHTS**

      1.    Ms. Harding hereby consents to Mr. Naseman's

election to waive a qualified joint and survivor annuity form of

benefit and a qualified preretirement survivor annuity form of

benefit under any plan of deferred compensation to which Section

401(a)(11)(B) of the Internal Revenue Code of 1986 (the "Code")

and/or Section 205(b)(1) of the Employee Retirement Income

Security Act of 1974 ("ERISA") shall apply and in which

Mr.Naseman currently or hereafter may be deemed a vested

participant within the meaning of Section 417(f)(1) of the Code

and Section 205(h)(1) of ERISA.

      2.    Ms. Harding further consents to Mr. Naseman's

current and future designation of any alternative form of benefit

and of beneficiaries other than Ms. Harding under any of such

plans (and to any revocation and/or modification of such

designations) including any of such plans referred to in Section

401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

-26-

3.     Ms. Harding hereby further agrees promptly to execute (and deliver without charge) any and all documents or forms which shall be required, at any time, and from time to time, by any or all such plans, including but not limited to, any consents required by Section 417(a)(2) of the Code or Section 205(c)(2) of ERISA to effect the payment of benefits in this manner.

4.     Ms. Harding hereby acknowledges that she understands the effect of Mr. Naseman's elections and her consents thereto.  Ms. Harding further acknowledges that she understands that, absent the consent contained in this Article, she would have the right to limit her consent to the designation by Mr. Naseman of a specific beneficiary or a specific form of benefits, and Ms. Harding hereby voluntarily elects to relinquish both such rights.

5.     Mr. Naseman hereby consents to Ms. Harding's election to waive a qualified joint and survivor annuity form of benefit and a qualified preretirement survivor annuity form of benefit under any plan of deferred compensation to which Section 401(a)(11)(B) of the Code and/or Section 205(b)(1) of ERISA shall apply and in which Ms. Harding currently or hereafter may be deemed a vested participant within the meaning of Section 417(f)(1) of the Code and Section 205(h)(1) of ERISA.

6.     Mr. Naseman further consents to Ms. Harding's current and future designation of any alternative form of benefit and of beneficiaries other than Mr. Naseman under any of such plans (and to any revocation and/or modification of such

-27-

designations), including any of such plans referred to in Section 401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of ERISA.

7.    Mr. Naseman hereby further agrees promptly to execute (and deliver without charge) any and all documents or forms which shall be required, at any time, and from time to time, by any or all such plans; including but not limited to, any consents required by Section 417(a)(2) of the Code or Section 205(c)(2) of ERISA to effect the payment of benefits in this manner.

8.    Mr. Naseman hereby acknowledges that he understands the effect of Ms. Harding's elections and his consents thereto. Mr. Naseman further acknowledges that he understands that, absent the consent contained in this Article, he would have the right to limit his consent to the designation by Ms. Harding of a specific beneficiary or a specific form of benefits, and Mr. Naseman hereby voluntarily elects to relinquish both such rights.

9.    Each party waives any interest that he or she may have to any pension plan, profit sharing plan, 401K plan or Individual Retirement plan or employee stock ownership or stock bonuses or other employee benefit or relevant plans in the other's name whether arising before or after the execution of this Agreement.

10.    The parties intend that this Agreement be accepted as a spousal consent by each of them as Releasee to a waiver of a Qualified Pre-Retirement Survivor Annuity pursuant to Internal Revenue Code Section 417(a).

-28-

## ARTICLE 15

### LEGAL REPRESENTATION

1.    (a)  Except as provided in subparagraph 1(b), each party agrees to pay his or her own counsel and expert fees for all services rendered and disbursements incurred in connection with the negotiation and execution of this Agreement or in connection with the Nevada Action or Nevada Divorce.

(b)  Notwithstanding the foregoing, against actual bills and time charge records for Mr. Cohen's legal services and Ms. Campbell's legal services, Mr. Naseman will pay to Ms. Harding up to a total of _____ dollars ($_____).

2.    The parties each represent to the other that Ms. Harding has been represented by AKABAS & COHEN, 1500 Broadway, New York, New York 10036 and by LOGAR, CAMPBELL, 243 South Sierra Street, Reno, Nevada 89501 and Mr. Naseman has been represented by TENZER, GREENBLATT, FALLON & KAPLAN, 405 Lexington Avenue, New York, New York 10174 and SILVERMAN, DECARIA CHTD., 290 South Arlington Avenue, Reno, Nevada 89501, as their respective attorneys.  Except as specifically provided in subparagraph 1(b) of this Article, each party agrees to bear his or her own legal expenses in connection with the negotiation and preparation of this Agreement, the Nevada Action and the Nevada Divorce.  Each party represents and warrants that he or she has dealt with no other attorney for which services the other party is or may become liable.  Each part will indemnify and hold the other party harmless of all loss, expenses (including reasonable attorney

-29-

fees) and damages in the event of a claim by any attorney or other person(s) (including, without limitation, those listed in this paragraph) for counsel fees or any other fees on account of his or her representation by such attorney or person.

3.    If either party by any action, proceeding, defense, counterclaim or otherwise, (seeks to vacate or set aside this Agreement) or (declare any of the terms and conditions to be invalid, void or against public policy, for any reason, including but not limited to fraud, duress, incompetency, overreaching or unconscionability, said party shall reimburse the other party and be liable for any and all of such party's reasonable attorney's fees and expenses, provided and to the extent that such action, proceeding, counterclaim or defense results in a settlement, decision, judgment, decree or order dismissing or rejecting said claims.

4.    If either party (the "defendant") shall be required to interpose the terms, conditions and covenants of this Agreement as a defense to an action or other proceeding instituted by the other party (the "plaintiff") and such defense shall result in a judgment, decree or order in favor of the defendant, or a settlement upon substantially the terms of this Agreement, the plaintiff shall pay to the defendant the costs and expenses incurred by the defendant including reasonable attorneys' fees.

5.    By signing below,

(a)    each counsel for Ms. Harding, for himself or herself and for his or her law firm waives any claim for counsel

fees against Mr. Naseman whether arising by statute, court order or common law.

(b)    each counsel for Mr. Naseman, for himself and for his law firm waives any claim for counsel fees against Ms. Harding whether arising by statute, court order or common law.


_Leonard T. Florescue_
_____
Leonard G. Florescue
TENZER, GREENBLATT, FALLON &
   KAPLAN
Attorneys for Mr. Naseman

_____
Richard B.Cohen
AKABAS & COHEN
Attorneys for Ms. Harding


_____
Gary Silverman
SILVERMAN, DECARIA CHTD.
Attorneys for Mr. Naseman

_____
Cassandra D. Campbell
LOGAR, CAMPBELL
Attorneys for Ms. Harding

-31-

21473/0001/LGF/2953

### ARTICLE 16

### <u>GENERAL PROVISIONS</u>

1.  <u>**Possible Invalidity**</u>:  In case any provision of this Agreement should be held to be contrary to or invalid under the law of any country, state or other jurisdiction, such illegality or invalidity shall not affect in any way any other provisions hereof, all of which shall continue, nevertheless, in full force and effect; and any provision which is held to be illegal or invalid in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which such provision is legal and valid.

2.  <u>**Independent Covenants**</u>:  Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently irrespective of any of the other rights and obligations set forth herein.

3.  <u>**Binding on Parties' Estates**</u>:  This Agreement and all the obligations and covenants hereof shall bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

4.  (a)  <u>**Reconciliation and Future Decrees and Orders**</u>: This Agreement shall not be invalidated or otherwise affected by a reconciliation or a resumption of sexual relations between the parties except in a writing duly subscribed and executed with the same formality as this Agreement and expressly stating that the parties are cancelling this Agreement.  This Agreement shall not be invalidated or otherwise affected by any decree or judgment

-32-

made in any court in any pending or future action or proceeding between the parties.

(b)   Both parties agree, stipulate and consent that no Judgment, Order or Decree in any Action for divorce, whether brought in the States of Nevada or of New York or in any other state or country having jurisdiction of the parties hereto, shall make any provision for alimony or maintenance or affect the property rights of either party inconsistent with the provisions of this Agreement, but if any provision be made in any Judgment, Order or Decree which is inconsistent with the provisions of this Agreement, or that imposes a different or greater obligation on either of the parties hereto than provided in this Agreement, the provisions of this Agreement shall take precedence and shall be the only obligation of both of the parties hereto.

5.   **Modification and Waiver**:  Neither this Agreement nor any provision hereof shall be amended or modified except by an agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any purported amendment or modification not so subscribed and acknowledged shall be ineffective even if substantially and detrimentally relied upon. Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be

-33-

construed as a waiver or relinquishment for the future of such provision, but the same shall continue in full force and effect.

6.  **Legal Interpretation and Jurisdiction**:

(a)  This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State and without consideration of the choice of law rules thereof.

(b)  Both parties consent to the personal jurisdiction of the State of New York over them in any action or proceeding brought to enforce the terms and conditions of this Agreement.

7.  **Implementation**:  Either party shall, at any and all times, upon request by the other party or his or her legal representatives, promptly make, execute and deliver, without charge, any and all other and further instruments as may be reasonably necessary or desirable for the purpose of giving full force and effect to the provisions of this Agreement.

8.  **Notices**:

(a)  All notices hereunder required to be sent to Ms. Harding shall be sent by certified mail, return receipt requested to her at 425 East 51st Street, New York, New York 10022, and to Akabas & Cohen, Attn: Richard B. Cohen, or to such other place or person as she may designate in writing by like notice.

(b)  All notices hereunder required to be sent to Mr. Naseman shall be sent by certified mail, return receipt

-34-

requested to: P.O. Box 8763, Incline Village, Nevada 89452, and
to Tenzer, Greenblatt, Fallon & Kaplan, Attn: Leonard G.
Florescue, or to such other place or person as he may designate
in writing by like notice.

        9.  **Counterpart Originals**:  This Agreement may be
executed in counterpart originals and shall become effective when
such originals subscribed to by parties and acknowledged have
been exchanged.

**ARTICLE 17**

**ENTIRE UNDERSTANDING**

        This Agreement contains the entire understanding of the
parties who hereby acknowledge that there have been and are no
promises, representations, warranties, covenants or undertakings
other than those expressly set forth herein.

        **IN WITNESS WHEREOF,** the parties hereto have hereunto
set their respective hands and seals the day and year first above
written to five (5) counterparts hereof, each of which shall
constitute an original.


_____         _____
WITNESS FOR MS. HARDING             TOEHL HARDING


_____         _____
WITNESS FOR MR. NASEMAN             DAVID M. NASEMAN

-35-

STATE OF NEW YORK )
                  :   ss.:
COUNTY OF NEW YORK )


        On this ___4th___ day of May, 1993, before me personally
came, Toehl Harding, to me known and known to me to be the
individual described in and who executed the foregoing instrument
and she duly acknowledged to me that she executed the same.

_____
                Notary Public


                                        RICHARD B. COHEN
                               Notary Public, State of New York
                                       No. 4735055
                                Qualified in New York County
                               Term Expires May 31, 1995


STATE OF _New York_ )
                    :   ss.:
COUNTY OF _New York_ )


        On this ___4th___ day of May, 1993, before me personally
came, David M. Naseman, to me known and known to me to be the
individual described in and who executed the foregoing instrument
and he duly acknowledged to me that he executed the same.

_____
                Notary Public


                                     LEONARD G. FLORESCUE
                               NOTARY PUBLIC, State of New York
                                     No. 31-02FL4502587
                                Qualified in New York County
                            Commission Expires November 30, 19 23


                              -36-