EXHIBIT C

PART 1

United States District Court
Southern District Of New York

\----------------------------------------------------x

Toehl Harding,                              :

                        Plaintiff,          :        Hon. Robert P. Patterson
                                            :        07 Civ. 08767 (RPP)
            -against-                       :
                                            :
David Naseman,                              :
                                            :
                        Defendant.          :

\----------------------------------------------------x

# DEFENDANT'S MEMORANDUM OF LAW

Cohen Lans LLP
Attorneys for Defendant
885 Third Avenue
New York, New York 10022
(212) 980-4500

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

FACTS ................................................................................. 1

LEGAL ARGUMENT ................................................................ 7

I.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE
    THE PARTIES REACHED A BINDING AGREEMENT TO SETTLE THIS CASE ...... 7

II. PLAINTIFF'S CLAIMS ARE BARRED BY PLAINTIFF'S
    GENERAL RELEASE, RES JUDICATA, PLAINTIFF'S RATIFICATION
    OF THE AGREEMENT AND HER CONTRACTUAL DISCLAIMERS...................... 11

    A. Release................................................................... 11

    B. Res Judicata ............................................................ 12

    C. Ratification............................................................. 13

    D. The Plaintiff's Own Acknowledgements and Disclaimers Bar Her Claims
       as a Matter of Law .................................................... 14

III. HARDING'S CLAIMS ARE TIME-BARRED............................................ 16

    A. Fraud (The First, Third, Eleventh and Twelfth Claims)...................... 16

    B. Remaining Claims......................................................... 19

IV. HARDING'S NON-FRAUD CLAIMS ARE ALSO NOT LEGALLY
    COGNIZABLE.................................................................... 20

    A. Breach of Contract....................................................... 20

    B. Good Faith and Fair Dealing.............................................. 20

    C. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing ........ 20

    D. Conversion............................................................... 20

    E. Unjust Enrichment ....................................................... 21

    F. Constructive Trust ...................................................... 21

G. "Fraud on the Court" ............................................................................................ 22

CONCLUSION ............................................................................................................. 22

TABLE OF AUTHORITIES

CASES

*Akgul v. Akgul,*
    175 A.D.2d 194, 572 N.Y.S.2d 338 (2d Dep't 1991) ............................................13, 21

*Aldrich v. Marsh & McLennon,*
    2007 WL. 775882 (Sup. Ct. N.Y. County, June 4, 2007) ...........................................19

*Allen v. Colgate Palmolive Co.,*
    1986 WL. 8218 (S.D.N.Y. 1986) ..................................................................................10

*Alstom SA Securities Litigation,*
    406 F. Supp. 2d 402 (S.D.N.Y. 2005) .........................................................................18

*Amiel v. Amiel,*
    239 A.D.2d 532, 657 N.Y.S.2d 763 (2d Dep't 1997) ...................................................15

*Arvantides v. Arvantides,*
    64 N.Y.2d 1033 (1985).....................................................................................................3

*Bard-Parker Co., Inc. v. Dictograph Products Co.,*
    258 A.D. 638, 17 N.Y.S.2d 588 (1st Dep't 1940).........................................................11

*Batas v. Prudential Insurance Co. of America,*
    281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001)......................................................20·

*Berman v. Berman,*
    217 A.D.2d 531, 629 N.Y.S.2d 82 (2d Dep't 1995) .....................................................15

*Beutel v. Beutel,*
    55 N.Y.2d 957, 449 N.Y.S.2d 180 (1982)....................................................................13

*Brassey v. Brassey,*
    154 A.D.2d 293, 546 N.Y.S.2d 370 (1st Dep't 1989)...................................................15

*Capital Distributions Services, Ltd. v. Ducor Express Airlines, Inc.,*
    440 F. Supp. 2d 195 (E.D.N.Y. 2006) .........................................................................21

*Carosella v. Carosella,*
    129 A.D.2d 547, 514 N.Y.S.2d 42 (2d Dep't 1987) .....................................................16

*Chalos v. Chalos,*
    128 A.D.2d 498, 512 N.Y.S.2d 426 (2d Dep't 1987) ...................................................14

*Christian v. Christian,*
    42 N.Y.2d 63  396 N.Y.S.2d 817 (1977) ................................................................15

*Chucchiaro v. Chucchiaro,*
    165 Misc. 2d 134, 627 N.Y.S.2d 224 (Sup. Ct. Orange County 1995) ................16, 17

*Civ. 2464,*
    2004 WL. 2191588 (D. Conn. Aug. 12, 2004) ........................................................9

*Colyer v. Colyer,*
    26 A.D.3d 303, 810 N.Y.S.2d 155 (1st Dep't 2006) ................................................13

*de la Fuente v. DCI Telecommunications, Inc.,*
    206 F.R.D. 368 (S.D.N.Y. 2002) ............................................................................18

*Delyanis v. Dyna-Empire, Inc.,*
    465 F. Supp. 2d 170 (E.D.N.Y. 2006) ..................................................................8, 9

*DiSalvo v. Graff,*
    227 A.D.2d 298, 642 N.Y.S.2d 883 (1st Dep't 1996) ..............................................15

*Freha v. Schildwachter,*
    289 N.Y. 250 (1942) ............................................................................................11

*Galtieri v. Kramer,*
    648 N.Y.S.2d 144 (2d Dep't 1996) ........................................................................21

*Galyn v. Schwartz,*
    56 N.Y.2d 969, 453 N.Y.S.2d 624 (1982) ..............................................................12

*Gaton v. Gaton,*
    170 A.D.2d 576, 566 N.Y.S.2d 353 (2d Dep't 1991) .........................................13, 16

*Gilbert v. Rothschild,*
    280 N.Y. 66 (1939) ..............................................................................................11

*Goldberg v. KZ 72nd,*
    171 A.D.2d 525, 567 N.Y.S.2d 249 (1st Dep't 1991) ..............................................16

*Greschler v. Greschler,*
    51 N.Y.2d 368, 434 N.Y.S.2d 194 (1980) ..............................................................12

*Grubman v. Grubman,*
    191 A.D.2d 194, 594 N.Y.S.2d 220 (1st Dep't 1993) .........................................13, 15

*Haynes v. Haynes,*
   200 A.D.2d 457, 606 N.Y.S.2d 631 (1st Dep't 1994)..................................15

*Hirsch v. Hirsch,*
   134 A.D.2d 485, 521 N.Y.S.2d 269 (2d Dep't 1987) ...........................14, 16

*Holm v. Shilensky,*
   269 F. Supp. 359 (S.D.N.Y. 1967),
   *aff'd,* 388 F.2d 54 (2d Cir. 1968) ..............................................................16

*Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC,*
   No. 04 Civ. 1621 (KMW), 2005 WL 1377853 (S.D.N.Y. June 9, 2005)...........8, 9, 10

*In re Integrated Resources Real Estate Limited Partnership Sec. Lit.,*
   850 F. Supp. 1105 (S.D.N.Y. 1994) ...........................................................18

*Jernow v. Wendy's International, Inc.,*
   2007 WL 4116241 (S.D.N.Y. 2007) ..........................................................20

*King v. Fox,*
   2004 WL 68397 (S.D.N.Y. January 14, 2004) ...........................................21

*Kobylack v. Kobylack,*
   62 N.Y.2d 399 (1984)................................................................................3

*Koch v. Koch,*
   198 A.D.2d 701, 603 N.Y.S.2d 932 (3d Dep't 1993) ..................................13

*Kojovic v. Goldman,*
   35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006)........................................15

*Kremer v. Chemical Construction Corp.,*
   456 U.S. 461 (1982) .................................................................................12

*Luftig v. Luftig,*
   239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't 1997)............................13, 15

*Mahan v. Mahan,*
   29 A.D.3d 471, 817 N.Y.S.2d 216 (1st Dep't 2006).....................................13

*Markovitz v. Markovitz,*
   29 A.D.3d 460, 816 N.Y.S.2d 419 (1st Dep't 2006)................................13, 14

*McCaughey v. McCaughey,*
   205 A.D.2d 330, 612 N.Y.S.2d 579 (1st Dep't 1994)............................13, 15

*McFarland v. McFarland,*
  70 N.Y.2d 916, 524 N.Y.S.2d 392 (1987)................................................12

*Meek & Associate, Inc. v. First Union Insurance Group,*
  Civil Action No. 99-2519-CM, 2002 WL. 1998204 (D. Kan. Aug. 6, 2002) .........9, 17

*Meese v. Miller,*
  79 A.D.2d 237, 436 N.Y.S.2d 496 (4th Dep't 1981) ................................21

*Melchiorre v. Melchiorre,*
  142 A.D.2d 558, 529 N.Y.S.2d 905 (2d Dep't 1988) ................................13

*National Casualty Co. v. Vigilant Insurance Co.,*
  466 F. Supp. 2d 533 (S.D.N.Y. 2006) ........................................21

*Neuhs v. Ingersoll Rand Co.,*
  115 A.D.2d 187, 495 N.Y.S.2d 256 (3d Dep't 1985) ................................17

*O'Brien v. O'Brien,*
  66 N.Y.2d 576 (1985)....................................................21

*Percoco v. Lesnak,*
  24 A.D.3d 427, 806 N.Y.S.2d 647 (2d Dep't 2005) ................................17

*Pommer v. Trustco Bank,*
  183 A.D.2d 976, 583 N.Y.S.2d 553 (3d Dep't 1992) ................................17

*Powell v. Omnicom, BBDO/PHD,*
  497 F.3d 124 (2d Cir. 2007) ..............................................9, 10

*Prestandrea v. Stein,*
  262 A.D.2d 621, 692 N.Y.S.2d 689 (2d Dep't 1999) ................................17

*Rainbow v. Swisher,*
  72 N.Y.2d 106, 531 N.Y.S.2d 775 (1998)................................12

*Rosner v. Codate Corp.,*
  917 F. Supp. 1009 (S.D.N.Y. 1996) ........................................19

*Rubin v. Kurzman,*
  436 F. Supp. 1044 (S.D.N.Y. 1977) ........................................21

*Rutland House Associates v. Danoff,*
  37 A.D.2d 828, 325 N.Y.S.2d 273 (1st Dep't 1971)................................17

*Shalmoni v. Shalmoni,*

141 A.D.2d 628, 529 N.Y.S.2d 538 (2d Dep't 1988),
*app. dismissed*, 73 N.Y.2d 851, 537 N.Y.S.2d 495 (1988) ...........................................13

*Shapiro v. Hersch*,
182 A.D.2d 403, 582 N.Y.S.2d 141 (1st Dep't 1992).................................................17

*Short v. Keyspan Corporate Services, LLC*,
11 Misc.3d 1076(816 N.Y.S.2d 701 (Sup. Ct. Kings County 2006).........................11

*Siler v. Lutheran Social Services Of Metropolitan*,
N.Y., 10 ..........................................................................................................17

*Stacom v. Wunsch*,
173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991)........................................11, 13, 21

*TIG Insurance Co. v. Newmont Mining Corp.*,
413 F. Supp. 2d 273 (S.D.N.Y. 2005) ....................................................................20

*TMG-II v. Price Waterhouse & Co.*,
175 A.D.2d 21, 572 N.Y.S.2d 6 (1st Dep't 1991).....................................................17

*Watts v. Exxon Corp.*,
188 A.D.2d 74, 594 N.Y.S.2d 443 (3d Dep't 1993) ...................................................17

*Whispell v. Whispell*,
144 A.D.2d 804, 534 N.Y.S.2d 577 (2d Dep't 1988) ..................................................3

## STATUTES

Domestic Relations Law §236(B)...........................................................................3, 4

Defendant David Naseman ("Naseman") respectfully submits this memorandum in support of his motion for enforcement of an agreement to settle this dispute or for summary judgment dismissing the amended complaint with prejudice.

### Facts

This is an action for damages related to the parties' negotiation of a property settlement agreement fifteen years ago in 1993.[1]  On the same set of facts, plaintiff purports to plead twelve claims, labelled as fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, breach of fiduciary duties, breach of contract, contractual breach of the implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, constructive trust/equitable lien, fraud on the court and constructive fraud.

The core of plaintiff's complaint lies in her assertion that in connection with the negotiation of the parties' agreement, Naseman concealed the amount of the parties' 1990 income (¶ 13) by providing plaintiff with a false 1990 IRS Form 1040 (¶ 14).  Plaintiff asserts that she negotiated the agreement "on the reasonable belief that the parties' income three years earlier in 1990 was approximately $1,323,916" (¶ 17), when it was actually $5,561,728 as the result of Naseman's disposition of his employee stock options in 1990 (¶¶ 13, 18).  Plaintiff also claims Naseman concealed the existence of the accounts holding the residue of the proceeds of the options (¶ 15).

Plaintiff seeks only damages.  She does not seek relief from the parties' divorce decree or to rescind or avoid the parties' agreement; instead, she specifically avers that the agreement "constitutes an enforceable contract between Harding and Naseman" (¶¶ 99, 107, 116).  Even

---

[1] The amended complaint (hereafter, the "complaint") is Exhibit 1 in the separately-filed Exhibit Volume.

now, more than two years after she allegedly discovered Naseman's fraud, she has not tendered back to Naseman the considerable assets she received under the agreement (Naseman Aff., ¶ 8).

When the parties made their agreement, plaintiff, Toehl Harding ("Harding"), was Vice President and General Counsel of a division of NYNEX Corporation, a Fortune 500 public telecommunications company (Naseman Aff., ¶ 3). She had been a practicing corporate attorney for about 20 years (id.). Before joining NYNEX she was with a prestigious New York City law firm and then with U.S. Industries, Inc. (id.). Naseman was also a corporate lawyer (id.). He had served as Vice President, General Counsel and Secretary for LIN Broadcasting Corporation ("LIN"), a broadcasting and communications public company headquartered in New York City, from September 1983 until shortly after its highly publicized acquisition by McCaw Cellular Communications, Inc. ("McCaw") in 1990 (id., ¶¶ 3, 14).

Harding was represented by two competent matrimonial law firms in connection with the negotiations and resulting agreement and divorce (Naseman Aff., ¶ 4, fn. 1; Exhibits 3-4).

The parties' 36-page 1993 Property Settlement Agreement ("Agreement") was executed May 4, 1993. It contains the following provisions relevant to Harding's claims:

Article 2      Waiver Concerning Divorce Judgment. In Article 2 Harding consented to the jurisdiction of the Nevada court and waived forever any right to challenge, appeal or contest the validity of the Nevada divorce judgment "whether directly or by collateral attack, or by plenary action, declaratory judgment action, or otherwise, in Nevada, in New York, in Massachusetts or in any other jurisdiction, domestic or foreign." (Agreement, Art. 2, ¶ 3).[2]

---

[2] The Agreement is Exhibit 3 in the Exhibit Volume. Referenced in Article 2 of the Agreement are the documents exchanged in connection with the settlement negotiations. Article 2, ¶ 6 provides that those materials "may be admitted into evidence ... in order to defend the Agreement or the Nevada Divorce if the other party attacks the final Nevada Divorce or any of the provisions of this Agreement in any action." Those documents are collectively reproduced in Exhibit 4. The documents do not include the tax return on which Harding now premises her claim, and the documents make it clear that financial disclosure was not made by Naseman (or by Harding) during the negotiation of the Agreement.

Article 7    <u>Mutual Equitable Distribution Waiver</u>. New York's Equitable
Distribution Law (Domestic Relations Law § 236, Part (B)) provides for
the distribution of property acquired during marriage as a court determines
to be equitable.[3]  In Article 7 of their Agreement:

"1.  The parties hereby agree that all of their property, including all of
their 'marital property' as that term is defined [by law]… has been fairly
and equitably divided between them…[and]

"2.  Except as otherwise expressly provided in Article 12 of this
Agreement, each party waives any and all rights or claims … which he or
she may have to an award of equitable distribution or a distributive award
in respect of any property now or previously owned (titularly or
beneficially) by the other former-spouse (together with the appreciation
and income thereof)… [and]

"3. The payments and transfers of property that Mr. Naseman has
obligated himself to make pursuant to the terms of this Agreement are in
full satisfaction of Ms. Harding's claims for equitable distribution as the
term is defined by 236(B) of the Domestic Relations Law of the State of
New York and similar laws of any other jurisdiction …"

Article 8    <u>General Release</u>.  Article 8 contains Harding's general release to
Naseman, as follows:

"2.  Ms. Harding hereby releases, and forever discharges Mr. Naseman,
his heirs, executors, administrators, successors and assigns from all
actions, causes of action, suits, debts, dues, sums of money, accounts,
reckonings, bonds, bills, specialities, covenants, contracts, controversies,
agreements, promises, variances, trespasses, damages, judgments,
expenses, executions, claims, and demands whatsoever, in law, admiralty
or equity, known or unknown, past or present, which Ms. Harding, her
heirs, executors, administrators, successors and assigns ever had or now
have against Mr. Naseman, for, upon, or by reason of any matter, cause or
thing whatsoever from the beginning of the world to the day of the date of
this Agreement, including (without limitation) claims with respect to all
separate property and all marital property as those terms are defined in

---

[3] New York law does not prescribe percentages, and the cases specifically hold that a 50-50
division is not presumed, especially in short, childless marriages like these parties had.
<u>Arvantides v. Arvantides</u>, 64 N.Y.2d 1033 (1985). Often in such cases the asset division largely
tracks the parties' economic contributions and/or, when the parties lived largely economically
separate lives, title.  <u>See</u>, <u>Kobylack v. Kobylack</u>, 62 N.Y.2d 399 (1984); <u>Whispell v. Whispell</u>,
144 A.D.2d 804, 534 N.Y.S.2d 577 (2d Dep't 1988).

3

Domestic Relations Law §236(B) or arising out of the former marital relationship."

Article 13    Waiver Re Financial Disclosure.  Article 13 provides:

"4.  Ms. Harding has had the opportunity to make independent inquiry into the complete financial circumstances of Mr. Naseman and represents to Mr. Naseman: that she is satisfactorily informed of the income, assets, property and financial prospects of Mr. Naseman; she is aware of all separate property and all marital property as those terms are defined in Domestic Relations Law §236(B); she is satisfied that full disclosure has been made, and that she cannot appropriately make a claim against Mr. Naseman by reason of his failure to disclose or her failure of knowledge of the financial circumstances of Mr. Naseman.

"5.  Ms. Harding has had a full opportunity and has consulted at length with her attorneys, to wit: Richard B. Cohen of Akabas & Cohen in New York, New York and Cassandra D. Campbell of Logar, Campbell in Reno, Nevada regarding all of the circumstances hereof.

"6.  Ms. Harding further acknowledges that this Agreement has been freely entered into by her, without fraud, duress or undue influence exercised by Mr. Naseman or by any other person or persons upon her." (Emphasis added).

Article 17    No Representations.  Article 17 states:

"This Agreement contains the entire understanding of the parties who hereby acknowledge that there have been and are no promises, representations, warranties, covenants or undertakings other than those expressly set forth herein."  (Emphasis added).

As part of the Agreement, Naseman made identical waivers and releases in favor of Harding.

Harding's claims rely on the notion that in 1990 -- more than two years before the parties separated -- Naseman exercised employee stock options and that in 1993 he had some amount of resulting proceeds thereof of which she was unaware (complaint ¶¶ 13, 15, 27-29).  She contends that she was misled as to the exercise because Naseman gave her a falsified 1990 tax return to sign that did not disclose the proceeds (id. ¶ 14).

4

Harding's position is a non-starter on numerous grounds. First, for a fraud claim to prevail or for Harding to successfully avoid the bar of the statute of limitations, she must show not only that she was misled by Naseman but also that she reasonably relied on his affirmative representations and/or could not herself have discovered the fraud, among other things.

But, Harding cannot make such a showing. Well before signing the Agreement, in 1987, she had attested to her knowledge and awareness of and disclosed the LIN options in a signed and certified application made in connection with a real estate loan; Harding also submitted a financial statement disclosing Naseman's options as by far the largest asset in that statement (Exhibits 5 and 6). Moreover, the issuance to Naseman of employee stock options and their subsequent disposition was information that was publicly available to Harding -- the option grants were disclosed in SEC filings (Exhibit 8). Further, as a corporate attorney for several public companies during her long legal career, Harding clearly knew that options were a standard component of executive compensation, and she clearly had the ability to "discover" Naseman's options, their disposition and the proceeds thereof (especially if, as she represented and acknowledged in the Agreement, she had made an independent inquiry into his finances). Indeed, that Harding knew of the acquisition-derived income is admitted in the complaint, where Harding alleges that she "expressly requested from Naseman information about the income derived as a result of the merger" (complaint ¶ 65). Finally, the disposition of the options was a matter of public record, as it occurred in connection with the highly publicized, six-month battle for control of LIN, Naseman's employer, which was the subject of SEC filings (Naseman Aff. ¶¶

12-14; Exhibits 7-8).[4]

Harding also alleges that Naseman concealed a bank account and an investment account containing the remaining proceeds of his 1990 option income for an over two-year period, even though (a) part of the parties' joint 1990 tax obligations was satisfied by a check from the bank account (Naseman Aff., ¶ 15); (b) the interest, dividends and income from trading activities during 1991 are accurately reported in joint tax returns signed by Harding for 1991 (which returns also identify the bank account and the investment account as the sources of income) (id.); (c) the 1990 income enabled, among other things, the purchase of the Florida condominium and renovations at the New York apartment and the Lenox property (id., ¶ 6); and (d) Harding concededly was aware that the options had been exercised (complaint ¶ 65) and hence she was on notice that there had to be accounts (or other assets) representing the option proceeds.

For a host of reasons discussed below (each of which is independently dispositive), Harding's claims must be dismissed with prejudice.

---

[4] Further, though not relevant to disposition of this motion, Harding's claims are based upon a fraudulent document. Harding claims that Naseman caused her to sign blank 1990 Forms 1040 and that he later showed her a 1990 1040 tax return during the settlement negotiations that understated the parties' joint 1990 income (although an accurate 1990 1040 tax return was filed with the IRS, showing the parties' higher, actual income) (complaint ¶¶ 13-14, 16). According to Harding, she "relied" upon the 1990 1040 Form understating the parties' joint income in entering into the Agreement three years later (although she represented otherwise in the Agreement). Compare complaint ¶¶ 27-29 to Agreement (Exhibit 3), Art. 17. In reality, there is only one 1990 1040 tax return: the accurate return (complaint ¶ 13; Speckin Aff.; Naseman Aff., ¶ 16). Further, Harding's complaint allegation that she signed blank tax forms is directly contrary to what Harding's counsel stated during the settlement negotiations in 1993 regarding the allocation of tax liabilities solely to Naseman: "Ms. Harding's role [was] merely that of signing the prepared returns." Letter of Richard B. Cohen to Leonard Florescue dated February 5, 1993, at p.3 (contained in Exhibit 4) (emphasis added).

**Legal Argument**

**I.**

**The Complaint Should Be Dismissed Because
The Parties Reached A Binding Agreement To Settle This Case**

On December 7, 2007, Naseman's counsel wrote a letter to Harding's counsel highlighting various flaws in plaintiff's complaint and urging Harding to withdraw the action (Affidavit of Robert Stephan Cohen, sworn May 22, 2008 ("Cohen Aff."), ¶ 3; Exhibit 11).  In response, on December 18, 2007, Harding's counsel made an offer of settlement, both verbally and in writing, to resolve this case with each party walking away from any claims he or she might have against the other (Cohen Aff., ¶ 4).  The writing, which confirms the oral offer of settlement, states:

> "Bob [Cohen, Naseman's counsel] —
>
> If there is any way to let me know today (email would be fine) whether your client will agree to the walk-away, it would be much appreciated.  Obviously, if he will not so agree, we need to get on the same page about a discovery schedule.
>
> Regards
>
> Judd Burstein" [Harding's New York counsel] (Exhibit 12).

Naseman's counsel timely accepted the offer (Cohen Aff., ¶ 5).  The Court was notified of the settlement on December 19, 2007 (id., ¶ 6; Exhibits 13-14).  Harding's counsel wrote confirmatory emails later that same day (Exhibit 15) and again on December 20, the latter stating:

> "I just want to confirm:
>
> Your client will agree to dismissal of [plaintiff's] claims and your client's counterclaim with prejudice.

7

You insist that the stipulation specifically recite that there is no [monetary] consideration for [plaintiff's] dismissal, thereby allowing your client to argue publicly that [plaintiff] dismissed the suit because it was meritless.

Your client will not agree to a confidentiality provision barring both parties from speaking publicly about the litigation, its merits or the settlement.

Judd Burstein" (Exhibit 16; Cohen Aff. ¶ 7.)

Thereafter, Harding refused to execute the general release tendered by defendant (id., ¶ 9).

"Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside. Once reached by the parties, settlement agreements are binding and enforceable." Delyanis v. Dyna-Empire, Inc., 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006) (citing cases). Moreover, "[i]t is black letter law in the Second Circuit that settlement agreements are contracts and must therefore be construed according to general principles of contract law." Hostcentric Tech., Inc. v. Republic Thunderbolt, LLC, No. 04 Civ. 1621 (KMW), 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (applying New York law) (citations and internal quotation marks omitted). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Id. (citations and internal quotation marks omitted).

Here, there is no dispute that on and as of December 19, 2007 Harding had offered to resolve the instant litigation with a mutual "walk-away" -- i.e., each party would release the other from all claims, without the payment of any money, and that Naseman had accepted that offer. That the anticipated exchange of releases was not consummated is irrelevant, as the offer and acceptance created an enforceable agreement. As Hostcentric makes clear, "It is well established that the parties are bound to the terms of a contract even though it is not signed [or even

written]." Id. at *5, quoting Omega Eng'r, Inc. v. Omega, S.A., 98 Civ. 2464, 2004 WL 2191588, at 7 (D. Conn. Aug. 12, 2004)). Accord, Delyanis, 465 F. Supp. 2d at 174.

The determination of whether the parties assented and had an intention to be bound is viewed from an objective perspective. Hostcentric, 2005 WL 1377853, at *6. Courts consider four factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. No single factor is decisive, but each provides significant guidance.

Powell v. Omnicom, BBDO/PHD, 497 F.3d 124, 129-30 (2d Cir. 2007) (citations and internal quotation marks omitted).

"The first factor, the parties' objectively-expressed intent, is the most important." Hostcentric, 2005 WL 1377853, at *6-7 (collecting cases). Here, there is no dispute that Harding never reserved a right not to be bound in the absence of a writing. The second factor is effectively neutral here, because the agreement was quickly repudiated by Harding. The third factor counsels in favor of a binding agreement: the parties agreed to the very simple, material term that each party would release his or her claims against the other without the making of any payments (i.e., a mutual "walk-away").

That Harding later reneged, because she wanted a confidentiality provision, is irrelevant. Meek & Assoc., Inc. v. First Union Ins. Group, Civil Action No. 99-2519-CM, 2002 WL 1998204 (D. Kan. Aug. 6, 2002), is precisely on point. The court was asked to enforce an oral settlement agreement where the subsequently-proposed, implementing written agreement contained a confidentiality agreement to which one side objected. The court found that the