EXHIBIT C

PART 2

dispute over confidentiality did not change the enforceability of the agreement because "[d]efendant's offer to plaintiff was not conditioned upon acceptance of a confidentiality provision." The court also noted that "the majority of courts to decide the issue have held that confidentiality is not a material term of a settlement agreement." 2002 WL 1998204 at *3, citing Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1083 (8th Cir. 1997). This Court has held the same. Allen v. Colgate Palmolive Co., 1986 WL 8218, *4 (S.D.N.Y. 1986) (settlement agreement was enforceable notwithstanding a dispute over a confidentiality provision, because confidentiality is not a material term).[5]

Finally, with respect to the fourth enforceability factor, the court in Hostcentric explained that "[t]he correct question is whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing." 2002 WL 1998204, at *9. The settlement at issue here is as simple as simple can be: the parties agreed to walk away from their claims. The only tasks required to effectuate the settlement were the execution of a stipulation of voluntary dismissal and a general release.

For the foregoing reasons, the Court should enforce the parties' settlement that was reached on December 19, 2007 and dismiss the action with prejudice.

---

[5] Further, in Powell v. Omnicom, supra, 497 F.3d 124, the Second Circuit, in confirming the enforceability of an oral settlement, found that later-arising issues as to the language of a to-be agreed reference letter and the removal of a negative report from the plaintiff's employee file were legally insignificant, as they "are relevant to performance of the settlement rather than assent to its terms." Id. Here, too, Harding's offer to resolve the case with mutual releases was not conditioned on the agreement being confidential; confidentiality was not even mentioned in her offer. Cohen Aff., ¶ 10. The term also relates to performance of the agreement, not assent to its terms.

## II.

### Plaintiff's Claims Are Barred By Plaintiff's General Release, Res Judicata, Plaintiff's Ratification Of The Agreement And Her Contractual Disclaimers

#### A.    Release

The Agreement contains a broad release from Harding to Naseman (quoted at pp. 3-4, above), and it is undisputed that none of the operative "facts" alleged by Harding in the complaint occurred at any time after the Agreement containing the release was executed and effective. Since Harding has not even asked to rescind or avoid the Agreement and indeed, even after Harding had knowledge of the alleged fraud, she affirmed that the Agreement remains in effect and enforceable (complaint ¶¶ 99,107, 116), the release is a bar to each of Harding's claims. See, Stacom v. Wunsch, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991) (and cases cited therein) (proceeding between former spouses dismissed in light of the wife's release);[6] also see, Gilbert v. Rothschild, 280 N.Y. 66 (1939) (a general release procured by fraud is voidable, not void, and unless and until avoided in an action for rescission (in which plaintiff also tenders back all consideration received) is an "absolute bar" to claims); Freha v. Schildwachter, 289 N.Y. 250 (1942); Bard-Parker Co., Inc. v. Dictograph Products Co., 258 A.D. 638, 17 N.Y.S.2d 588 (1st Dep't 1940); Short v. Keyspan Corporate Services, LLC, 11 Misc.3d 1076(A), 816

---

[6] The Agreement, duly executed and delivered with the advice of counsel, provides that New York law will govern "[t]his Agreement and all of the rights and obligations of the parties hereunder…" (Exhibit 3, Article 16, ¶ 6(a)). The Agreement was negotiated in correspondence between the parties' respective New York counsel (Naseman Aff., ¶ 4). Plaintiff was, at all times, a New York resident and, for most of the marriage, the parties resided in New York City (id., ¶ 2).

N.Y.S.2d 701 (Sup. Ct. Kings County 2006). Accordingly, Harding's general release to

Naseman in the Agreement bars her complaint in its entirety.[7]

**B.    Res Judicata**

Harding's claims are also precluded under the doctrine of res judicata. As the New York

Court of Appeals explained in Rainbow v. Swisher, 72 N.Y.2d 106, 110, 531 N.Y.S.2d 775

(1998):

> [A] final judgment of divorce issued by a court having both
> subject matter and personal jurisdiction has the effect of
> determining the rights of the parties with respect to every
> material issue that was actually litigated or might have been
> litigated… [citations omitted].

Since Harding contracted away her right to challenge the Nevada decree, she cannot now re-

litigate the issue of her property rights arising by virtue of the marriage, either directly or by a

collateral claim for damages (which in essence just avers that she did not receive enough). See

also, Kremer v. Chemical Construction Corp., 456 U.S. 461, 467 (1982).[8]

---

[7] Further, Harding alleges that the Agreement was incorporated into the parties Nevada divorce
decree (complaint ¶ 139). Harding has not challenged the divorce (nor could she, as in Article 2
of the Agreement she waived any right to contest or appeal its validity or the court's jurisdiction,
whether directly or collaterally (Exhibit 3)). Where an agreement is incorporated into a sister
state or foreign divorce decree, the validity of the agreement may not be attacked without the
plaintiff first successfully challenging the decree. McFarland v. McFarland, 70 N.Y.2d 916, 917,
524 N.Y.S.2d 392 (1987) (fraud and duress claims barred); Galyn v. Schwartz, 56 N.Y.2d 969,
453 N.Y.S.2d 624 (1982) (overreaching and duress claims barred); Greschler v. Greschler, 51
N.Y.2d 368, 374, 434 N.Y.S.2d 194 (1980) (fraud claims barred). Since Harding, with the
advice of counsel, waived the right to challenge the decree, it too stands as a bar to her damage
claims.

[8] Harding's damages are, in any event, too speculative to sustain any viable claims, since they
invite this Court to determine what deal the parties might have negotiated if Harding had known
what she alleges she did not know.

C.    **Ratification**

   Collateral challenges to property settlement agreements grounded on alleged fraud,

duress or the like are also barred by the doctrine of ratification, and summary judgment

dismissing such claims must be granted when the plaintiff has acted pursuant to the agreement

and accepted its benefits for any period of time. Beutel v. Beutel, 55 N.Y.2d 957, 449 N.Y.S.2d

180 (1982) (two years after agreement made and after plaintiff's acceptance of its benefits, claim

barred and dismissal proper); Colyer v. Colyer, 26 A.D.3d 303, 810 N.Y.S.2d 155 (1st Dep't

2006) (same); Mahan v. Mahan, 29 A.D.3d 471, 817 N.Y.S.2d 216 (1st Dep't 2006) (refusing to

permit amendment of pleading to allege fraud when plaintiff had accepted benefits under

agreement for ten months); Markovitz v. Markovitz, 29 A.D.3d 460, 816 N.Y.S.2d 419 (1st

Dep't 2006) (estoppel, created by acceptance of benefits, required dismissal); Luftig v. Luftig,

239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't 1997) (parties did not exchange disclosure; failure

to challenge agreement for 3 years after the discovery of fraud and acceptance of benefits barred

claim); McCaughey v. McCaughey, 205 A.D.2d 330, 612 N.Y.S.2d 579 (1st Dep't 1994) (fraud

claim by investment-banker wife barred by her acceptance of asset-transfer 3 years earlier;

summary judgment proper); Koch v. Koch, 198 A.D.2d 701, 603 N.Y.S.2d 932 (3d Dep't 1993)

(ratification barred forgery and fraud claims); Grubman v. Grubman, 191 A.D.2d 194, 594

N.Y.S.2d 220 (1st Dep't 1993) (fraud); Stacom v. Wunsch, 173 A.D.2d 401, 570 N.Y.S.2d 32

(1st Dep't 1991) (claims for prima facie tort, fraud and constructive trust barred); Akgul v.

Akgul, 175 A.D.2d 194, 572 N.Y.S.2d 338 (2d Dep't 1991) (same); Gaton v. Gaton, 170 A.D.2d

576, 566 N.Y.S.2d 353 (2d Dep't 1991) (same); Melchiorre v. Melchiorre, 142 A.D.2d 558, 529

N.Y.S.2d 905 (2d Dep't 1988) (same); Shalmoni v. Shalmoni, 141 A.D.2d 628, 529 N.Y.S.2d

538 (2d Dep't 1988), app. dismissed, 73 N.Y.2d 851, 537 N.Y.S.2d 495 (1988) (damage claim

for fraud barred by acceptance of benefits; dismissal proper); <u>Hirsch v. Hirsch</u>, 134 A.D.2d 485,

521 N.Y.S.2d 269 (2d Dep't 1987) (same); <u>Chalos v. Chalos</u>, 128 A.D.2d 498, 512 N.Y.S.2d 426

(2d Dep't 1987) (same).

Here, Harding accepted all of the considerable benefits of the Agreement over the course

of the fourteen years preceding the commencement of this lawsuit. More than two years after

she alleges she discovered Naseman's fraud (complaint ¶ 39), she still has not tendered back the

benefits (Naseman Aff., ¶ 8). Naseman has fully performed (<u>id</u>.). Any claim is now barred by

Harding's ratification of the Agreement.

**D.    The Plaintiff's Own Acknowledgements and**
**<u>Disclaimers Bar Her Claims as a Matter of Law</u>**

The key facts asserted in the complaint cannot be credited because they are contrary to

Harding's representations, acknowledgements and disclaimers made in the Agreement, to which

New York law holds her. In Article 13 of the Agreement, Harding specifically acknowledged

that she had independently investigated Naseman's finances, she acknowledged her awareness of

the parties' finances, and she specifically agreed "that she cannot appropriately make a claim

against Mr. Naseman by reason of his failure to disclose or her failure of knowledge of the

financial circumstances of Mr. Naseman" (Exhibit 3, Art. 13 ¶ 4). She also acknowledged

entering into the Agreement "freely…without fraud…" (<u>id</u>., Art., ¶ 6), and (in Article 17) she

acknowledged "that there have been and are no representations…other than those expressly set

forth herein." (There are, in fact, <u>no</u> financial representations set forth in the Agreement).

New York law does not permit Harding to repudiate or contradict the acknowledgements

and disclaimers made in the Agreement, nor to claim reliance on representations not recited in

the contract. <u>Markovitz v. Markovitz</u>, 29 A.D.3d 460, 816 N.Y.S.2d 419 (1st Dep't 2006) (party

bound by contractual waiver of discovery and acknowledgement of agreement's fairness);

14

Kojovic v. Goldman, 35 A.D.3d 65, 823 N.Y.S.2d 35 (1st Dep't 2006) (fraud claims barred by wife's acknowledgement in agreement that she had inquired into husband's finances and her waiver of right to investigate further);[9] Luftig v. Luftig, 239 A.D.2d 225, 657 N.Y.S.2d 658 (1st Dep't. 1997) (where informal financial statements were attached to agreement, and agreement acknowledged waiver of discovery and recited that there were no representations not stated therein, claim of alleged fraudulent, oral representations barred; language of agreement made any alleged reliance "manifestly unreasonable"); Amiel v. Amiel, 239 A.D.2d 532, 657 N.Y.S.2d 763 (2d Dep't 1997) (husband's acknowledgement barred his inconsistent litigation claims); DiSalvo v. Graff, 227 A.D.2d 298, 642 N.Y.S.2d 883 (1st Dep't 1996) (fraud claim barred by wife's acknowledgement in agreement that she had made her own independent investigation of husband's finances); Berman v. Berman, 217 A.D.2d 531, 629 N.Y.S.2d 82 (2d Dep't 1995) (where no discovery undertaken, claim of reliance on fraudulent financials unreasonable); Haynes v. Haynes, 200 A.D.2d 457, 606 N.Y.S.2d 631 (1st Dep't 1994) (disclaimer language defeated claim of fraudulent oral representations); McCaughey v. McCaughey, 205 A.D.2d 330, 612 N.Y.S.2d 579 (1st Dep't 1994) (fraud claims dismissed where investment banker represented that the agreement was not the result of fraud and there were no promises other than those set out in the contract); Grubman v. Grubman, 191 A.D.2d 194, 594 N.Y.S.2d 220 (1st

---

[9] The Kojovic Court also expressed New York's "disdain for post divorce claims of concealment" (35 A.D.3d at 70), noting our strong policy that "judicial review [of separation agreements] is to be exercised circumspectly, sparing and with a persisting view of the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions… necessitating 'a high order of evidence… to overcome that presumption [of the validity of such agreements]'", quoting, Christian v. Christian, 42 N.Y.2d 63 at 71-72, 396 N.Y.S.2d 817 (1977), and Brassey v. Brassey, 154 A.D.2d 293, 295, 546 N.Y.S.2d 370 (1st Dep't 1989).  The plaintiff there, because a sophisticated businesswoman, "should have been aware" of the possible existence and potential value of the allegedly undisclosed asset. Id., at 72 (emphasis added).

Dep't 1993) (same); <u>Gaton v. Gaton</u>, 170 A.D.2d 576, 566 N.Y.S.2d 353 (2d Dep't 1991) (recital

in agreement rebutted duress claim); <u>Hirsch v. Hirsch</u>,, 134 A.D.2d 485, 521 N.Y.S.2d 269 (2d

Dep't 1987) (wife's acknowledgement that she had not relied on any representations barred her

fraud claim); <u>Carosella v. Carosella</u>, 129 A.D.2d 547, 514 N.Y.S.2d 42 (2d Dep't 1987)

(acknowledgements rebutted claim of duress). <u>See also</u>, <u>Holm v. Shilensky</u>, 269 F.Supp. 359,

364-65 (S.D.N.Y. 1967), <u>aff'd</u>, 388 F.2d 54 (2d Cir. 1968) ("[T]here can be no doubt that New

York law would not permit a plaintiff to aver or prove fraudulent misrepresentations inducing an

agreement when that agreement expressly declared that there were no such representations, when

each party had independent legal advice, when each party believed the agreement 'fair, just and

reasonable', [and] when each signed 'freely and voluntarily' …"); <u>Goldberg v. KZ 72nd</u>, 171

A.D.2d 525, 567 N.Y.S.2d 249 (1st Dep't 1991) (disclaimer bars reliance on alleged oral

misrepresentation).[10]

### III.

### Harding's Claims Are Also Time-Barred

**A.**    <u>**Fraud (The First, Third, Eleventh and Twelfth Claims)**</u>

Actions "based upon fraud" are to be brought within "the greater of six years from the

date the cause of action accrued or two years from the time the plaintiff … discovered the fraud,

or could with reasonable diligence have discovered it." New York Civil Practice Law and Rules

("CPLR") § 213(8). Assuming <u>arguendo</u> that Harding's fraud-based claims are otherwise legally

cognizable, they are all time-barred unless saved by the discovery rule, because Harding

concedes the fraud occurred more than six years ago. The test as to when a plaintiff should have

---

[10] <u>Chucchiaro v. Chucchiaro</u>, 165 Misc.2d 134, 627 N.Y.S.2d 224 (Sup. Ct. Orange County 1995), discusses language Harding could have employed but did not-- <u>i.e.</u>, "Each of us hereby warrants to the other that neither of us is now possessed of any marital property of any kind or description, other than specifically listed herein." <u>Id.</u>, at 136.

discovered an alleged fraud is an objective one; the question is what plaintiff should have known with the exercise of reasonable diligence.  Prestandrea v. Stein, 262 A.D.2d 621, 692 N.Y.S.2d 689 (2d Dep't 1999) (citing, Watts v. Exxon Corp., 188 A.D.2d 74, 594 N.Y.S.2d 443 (3d Dep't 1993); TMG-II v. Price Waterhouse & Co., 175 A.D.2d 21, 572 N.Y.S.2d 6 (1st Dep't 1991)).  In assessing what a plaintiff should have known, the court considers whether the plaintiff was aware of enough operative facts so that, with reasonable diligence, she could have discovered the fraud.  Id.; see also, Shapiro v. Hersch, 182 A.D.2d 403, 582 N.Y.S.2d 141 (1st Dep't 1992) (where facts were well publicized, plaintiff could have discovered them); Neuhs v. Ingersoll Rand Co., 115 A.D.2d 187, 188-89, 495 N.Y.S.2d 256 (3d Dep't 1985); Cucchiaro, supra, 165 Misc.2d at 138-139 (fraud claim dismissed because the wife should have known that her husband, a police officer, would have a pension, even though he did not disclose it); Rutland House Assocs. v. Danoff, 37 A.D.2d 828, 325 N.Y.S.2d 273 (1st Dep't 1971) (facts as to public company, reflected in its filings, are discoverable).

Finally, the burden of establishing that the fraud could not have been discovered timely rests on the plaintiff who seeks the benefit of the discovery exception to the six-year statute of limitations.  Percoco v. Lesnak, 24 A.D.3d 427, 806 N.Y.S.2d 647 (2d Dep't 2005); Siler v. Lutheran Social Servs. Of Metro N.Y., 10 A.D.3d 646, 782 N.Y.S.2d 93 (2d Dep't 2004); Pommer v. Trustco Bank, 183 A.D.2d 976, 583 N.Y.S.2d 553 (3d Dep't 1992).

Here, the undisputed facts show that Harding could, with even a modicum of diligence, have discovered the existence of the proceeds arising from the disposition of Naseman's stock options.  First, the 1987 loan application Harding signed, along with its accompanying personal financial statement, disclosed the ownership of options Harding should have accounted for when she was settling with Naseman (Naseman Aff. ¶¶ 10, 11; Exhibits 5-6).

17

Second, the parties had discussed the issuance and exercise of the stock options (Naseman Aff. ¶¶ 10, 13).

Third, Harding was an experienced corporate attorney who knew from experience (including her own) that senior employees of public companies routinely receive stock options as part of their compensation and receive buy-out arrangements when a takeover occurs (id., ¶ 10). Thus, it is objectively reasonable to assume that Harding knew that Naseman either had actually received or could have received proceeds relating to his stock options for which she should have accounted when she executed the Agreement. Indeed, Harding concedes that she specifically inquired of Naseman what income he derived from the merger (complaint ¶ 65).

Fourth, the issuance, exercise and/or disposition of the options were matters of public record, having been disclosed by Naseman's employer in SEC filings well before the Agreement was made (Exhibits 7 and 8). The public disclosure of information in SEC filings and in media coverage has been held to put a plaintiff on notice that further inquiry is required.[11]

Likewise, Harding was on ample notice concerning the bank and brokerage accounts that held the option proceeds and could and should have discovered them. The accounts are specifically reflected on the parties' 1991 tax returns (Naseman Aff., ¶ 15). Substantial funds from the accounts were used, among other things, to pay off joint tax obligations, acquire and make improvements to real estate properties and travel extensively (id., ¶¶ 6, 15). Harding is deemed to have known that the options were exercised and Naseman received change of control benefits from LIN (see discussion of SEC filings and media coverage, above). The obvious

---

[11] See, e.g., Alstom SA Securities Litigation, 406 F.Supp.2d 402 (S.D.N.Y. 2005) (inquiry notice created by SEC filings and media coverage); de la Fuente v. DCI Telecommunications, Inc., 206 F.R.D. 368, 382 (S.D.N.Y. 2002); In re Integrated Resources Real Estate Limited Partnership Sec. Lit., 850 F. Supp. 1105 (S.D.N.Y. 1994).

investigation for her to have made (either directly or through one of her attorneys) would have lead to disclosure of the accounts, if, as she now alleges fourteen years later, she really did not know of them.

A plaintiff cannot, simply by failing to investigate, remain ignorant of facts and thereby toll the limitations period. Rosner v. Codate Corp., 917 F.Supp. 1009, 1020-21 (S.D.N.Y. 1996) (applying New York law); Aldrich v. Marsh & McLennon, 2007 WL 775882 (Sup. Ct. N.Y. County, June 4, 2007) (information available to public "would have placed person of ordinary intelligence on inquiry notice" of the facts). Harding, a corporate lawyer of more than ordinary intelligence, obviously could, with the exercise of a modicum of diligence, have learned of the accounts that she now claims to have discovered in 2006, in 1993 or earlier.[12]

In light of the foregoing, there cannot be any genuine issue that Harding could have discovered the existence and exercise of the stock options and/or the proceeds arising from their disposition as far back as 1990. As a result, her fraud claims are time-barred and must be dismissed with prejudice.

**B.    Remaining Claims**

Assuming arguendo that Harding's other claims are legally cognizable, they too are time-barred. The claims assert negligence, breach of fiduciary duty, breach of contract, unjust enrichment and conversion and are governed by either a three year (conversion, CPLR § 214) or six year (CPLR § 213) statute. The limitations period has long since run on any such claims or conceivable variations.

---

[12] Furthermore, Harding made a conscious decision (despite Naseman's offer during the settlement negotiations to engage in reciprocal discovery (Naseman Aff., ¶ 4)) to forgo discovery, which she acknowledged and memorialized in the Agreement (Exhibit 3) at Article 13, ¶ 4 with the full knowledge that no financial or other representations were being made in the Agreement (Article 17). She cannot now be heard to complain about her decision.

**IV.**

**Harding's Non-Fraud Claims Are Also Not Legally Cognizable**

**A.  Breach of Contract**

Harding alleges that Naseman's failure to disclose his stock options and the income he realized upon their disposition breached the Agreement. But, the Agreement did not obligate Naseman to make any disclosures, and any alleged non-disclosures occurred <u>before</u> the Agreement was executed. As a result, Naseman's alleged non-disclosures or misrepresentations cannot support a claim that the Agreement was breached. <u>See</u>, <u>Jernow v. Wendy's International, Inc.</u>, 2007 WL 4116241, *4 (S.D.N.Y. 2007).

**B.  Good Faith and Fair Dealing**

To establish a breach of the implied covenant of good faith and fair dealing, the plaintiff must show that the defendant sought to prevent performance of the contract or to deny its benefits to the plaintiff. <u>TIG Insurance Co. v. Newmont Mining Corp.</u>, 413 F.Supp. 2d 273, 281 (S.D.N.Y. 2005) (applying New York law). Harding does not allege, let alone can she establish, that Naseman sought to prevent performance of the Agreement or to deny Harding any of its benefits. Indeed, Harding received all of the benefits she bargained for.

**C.  Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

A claim for tortious breach of the implied covenant of good faith and fair dealing is not recognized in New York. <u>Batas v. Prudential Ins. Co. of America</u>, 281 A.D. 2d 260, 265, 724 N.Y.S.2d 3, 7 (1st Dep't 2001).

**D.  Conversion**

Harding's conversion claim is apparently based on the theory that the proceeds from Naseman's disposition of his stock options were property rights in which Harding had an

20

interest, as conversion is an unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of superior possessory right of another in the property. Galtieri v. Kramer, 648 N.Y.S.2d 144, 145 (2d Dep't 1996) (quoting Meese v. Miller, 79 A.D.2d 237, 242, 436 N.Y.S.2d 496 (4th Dep't 1981). As Naseman was the owner of the "property" at issue,[13] Harding did not have a "superior possessory right . . . in the property". Hence, the conversion claim fails as a matter of law.

**E.    Unjust Enrichment**

The elements of an unjust enrichment claim are (i) defendant has been enriched; (ii) at the expense of the plaintiff; and (iii) the circumstances are such that in equity and good conscience the defendant should make restitution. Nat'l Cas. Co. v. Vigilant Ins. Co., 466 F.Supp.2d 533, 543 (S.D.N.Y. 2006) (applying New York law). Harding cannot make out unjust enrichment because she had no fixed right to share in Naseman's assets (see note 3, above). Also, this equitable claim is barred by Harding's ratification. Akgul v. Akgul, supra, 175 A.D.2d at 195; King v. Fox, 2004 WL 68397, *8 (S.D.N.Y. January 14, 2004).

**F.    Constructive Trust**

To impose a constructive trust, plaintiff must establish: (i) a confidential or fiduciary relationship between the parties, (ii) a promise by defendant, (iii) plaintiff's transfer, made in reliance on that promise, and (iv) unjust enrichment. Capital Distributions Services, Ltd. v. Ducor Express Airlines, Inc., 440 F.Supp.2d 195 (E.D.N.Y. 2006) (applying New York law). Harding cannot prove any of the elements. Also, the claim is barred by ratification and laches. Stacom, supra, 173 A.D.2d at 401; Rubin v. Kurzman, 436 F.Supp. 1044, 1047 (S.D.N.Y. 1977).

---

[13] "[U]ntil there is an action which potentially changes the marital status, equitable distribution [and rights in property titled to the other spouse] is purely an inchoate right which has no existence..." Florescue, Leonard G., "'Chapin' Unwittingly Creates Community Property State," New York Law Journal (p. 3, col. 2, April 23, 2008), citing O'Brien v. O'Brien, 66 N.Y.2d 576, 583 (1985).

G.      **"Fraud on the Court"**

Plaintiff's eleventh claim is titled "fraud on the court." We have not located any case in which a Nevada or New York court has recognized this cause of action.

### Conclusion

For the foregoing reasons, the complaint should be dismissed in its entirety with prejudice, together with such other relief as is proper.

Cohen Lans LLP
Attorneys for Defendant

By

Robert Stephan Cohen (RC-7592)
Deborah E. Lans (DEL-5063)
885 Third Avenue
New York, New York 10022
(212) 980-4500

Of Counsel:    Ryan Weiner (RW-5439)
Cohen Lans LLP
885 Third Avenue
New York, New York 10022
(212) 980-4500

22