UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

TOEHL HARDING,                                       :

                        *Plaintiff,*       :

         – against –                        :

DAVID NASEMAN,                                       :

                     *Defendant.*       :

-------------------------------------------------------------X

Hon. Robert P. Patterson

07-CV-08767(RPP)

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>THE COURT'S SUBJECT MATTER JURISDICTION</u>

JUDD BURSTEIN, P.C.,
1790 Broadway, Suite 1501
New York, New York 10019
Tel.: 212-974-2400
Fax: 212-974-2944

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I

THE COURT HAS SUBJECT MATTER
JURISDICTION OVER THIS LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.     Diversity Jurisdiction Exists in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.     General Principles Concerning the Domestic
       Relations Exception to Federal Subject Matter
       Jurisdiction Confirm its Lack of Application to this Case . . . . . . . . . . . . . . . . . . . . 5

C.     The Domestic Relations Exception
       Does Not Apply to Tort Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.     The Domestic Relations Exception Does Not
       Apply to Claims Involving Breach of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.     The Application of Judicial Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT II

THERE IS NO BASIS FOR THE COURT TO INVOKE THE
DOCTRINE OF ABSTENTION IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A.     The Relevant Precedents Prohibit the
       Invocation of the Abstention Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.     Judicial Estoppel and Related Concepts
       Prevent the Application of Abstention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

POINT III

THE CASE LAW RELIED UPON BY
DEFENDANT IS NOT ON POINT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT IV

IF THE COURT HOLDS THAT IT LACKS SUBJECT MATTER
JURISDICTION  OR THAT ABSTENTION IS WARRANTED,
PLAINTIFF SHOULD BE AWARDED COSTS
AND ATTORNEYS' FEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

<u>CASES</u>

*American Airlines, Inc. v. Block,*
    905 F. 2d 12 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,7,15,20,21

*Ankenbrandt v. Richards,*
    504 U.S. 689, 119 L. Ed. 2d 468, 112 S. Ct. 2206 (1992) . . . . . . . . . . . . 6,7,8,9,10,12,13

*Barber v. Barber,*
    62 U.S. 582 (1859) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,7

*Brenhouse v. Bloch,*
    418 F. Supp. 412 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Burford v. Sun Oil Co.,*
    319 U.S. 315, 87 L. Ed. 1424, 63 S. Ct. 1098 (1943) . . . . . . . . . . . . . . . . . . . . . . . . 14

*C-Y Development Co. v. City of Redlands,*
    703 F.2d 375 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,*
    600 F.2d 1228 (7th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cassens v. Cassens,*
    430 F. Supp. 2d 830 (S.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976) . . . . . . . . . . . . . . . . . . . . 13,14,15

*County. of Allegheny v. Frank Mashuda Co.,*
    360 U.S. 185, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959) . . . . . . . . . . . . . . . . . . . . . . . 13

*Creek Ventures, LLC v. World Parts, LLC,*
    2004 U.S. Dist. LEXIS 9808 (W.D.N.Y. Apr. 5, 2004) . . . . . . . . . . . . . . . . . . . . . . . 24

*Crouch v. Crouch,*
    566 F.2d 486 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Csibi v. Fustos,*
    670 F.2d 134 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Drewes v. Ilnicki,*
    863 F.2d 469 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dunn v. Cometa,*
    238 F.3d 38 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Eisenstein v. Haber,*
    No. 92 Civ. 8061, 1993 U.S. Dist. LEXIS 1264 (S.D.N.Y. Feb. 8, 1993) . . . . . . . . . . 22

*Finova Capital Corp v. Cote (In re Finova Capital Corp.),*
    358 B.R. 113 (Bankr. D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Friedlander v. Friedlander,*
    149 F.3d 739 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fursaro v. Fusaro,*
    550 F. Supp. 1260 (E.D. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Giardina v. Fontana,*
    733 F.2d 1047 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16

*Gonzales v. Gonzales,*
    74 F. Supp. 883 (E.D.Pa. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graning v. Graning,*
    411 F. Supp. 1028 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hickey v. Daniels,*
    No. 06-CV-6838, 2007 U.S. Dist. LEXIS 47822 (E.D.N.Y. July 2, 2007) . . . . . . . . . . 18

*Interstate Material Corp. v. City of Chicago,*
    847 F.2d 1285 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jackson v. Levy,*
    Case No. 98 Civ. 8890, 2000 WL 124822 (S.D.N.Y. Feb. 2, 2000) . . . . . . . . . . . . . . . 24

*Johnson v. Rodrigues,*
    226 F.3d 1103 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kahn v. Kahn,*
    21 F.3d 859 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kaufman v. Kaufman,*
    135 A.D.2d 786 (2d Dep't 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,19

*Knize v. Knize,*
    No. 3:07CV00872, 2007 U.S. Dist. Lexis 43506 (D.Conn. June 15, 2007) . . . . . . . . . . 18

*Kuhn v. Kuhn,*
    No. 98 C 2395, 1998 U.S. Dist. LEXIS 15315 (N.D. Ill. Sept. 16, 1998) . . . . . . . . . 13,14

*Lannan v. Maul,*
    979 F.2d 627 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,14

*Lefkowitz v. Bank of N.Y.,*
    528 F.3d 102 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Massey v. Massey,*
    No. 4:96cv39, 1996 U.S. Dist. LEXIS 15456 (E.D. Va. Aug. 1, 1996) . . . . . . . . . . . . . 8

*McArthur v. Bell,*
    788 F. Supp. 706 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McIntyre v. McIntyre,*
    771 F.2d 1316 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McLaughlin v. Cotner,*
    193 F.3d 410 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Minot v. Eckardt-Minot,*
    No. 92 Civ. 3334, 1993 U.S. Dist. LEXIS 4291 (S.D.N.Y. Apr. 6, 1993) . . . . . . . . . . . 6

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 13,14

*Palaniappan v. Vijayalakshmi,*
    No. 07-CV-0176A, 2007 U.S. Dist. LEXIS 75408 (W.D.N.Y. Oct. 4, 2007) . . . . . . . . 23

*Pandozy v. Robert J. Gumenick, P.C.,*
    No. 07 Civ. 1242, 2008 U.S. Dist. LEXIS 41440 (S.D.N.Y. May 23, 2008) . . . . . . . . . 2

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,*
    490 F.2d 509 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,14

*Railroad Commission of Texas v. Pullman Co.,*
    312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941) .............................. 14

*Richie v. Richie,*
    186 F. Supp. 592 (E.D.N.Y. 1960) ........................................... 11

*Rosenstiel v. Rosenstiel,*
    278 F. Supp. 794 (S.D.N.Y. 1967) ................................... 6,7,10,14

*Schottenstein v. Schottenstein,*
    No. 04 Civ. 5851, 2004 U.S. Dist. LEXIS 22648 (S.D.N.Y. 2004) ............. 7,9,11

*Southard v. Southard,*
    305 F.2d 730 (2d Cir. 1962) ................................................ 8

*Selected Risks Ins. Co. v. Kobelinski,*
    421 F. Supp. 431 (E.D. Pa. 1976) .......................................... 11

*Spindel v. Spindel,*
    283 F.Supp. 797 (E.D.N.Y. 1968) ........................................ 6,11

*Syms, Inc. v. IBI Sec. Service, Inc.,*
    586 F. Supp. 53 (S.D.N.Y. 1984) .......................................... 24

*Tilley v. Anixter Inc.,*
    283 F. Supp. 2d 729 (D. Conn. 2003) ....................................... 9

*Tonti v. Petropoulous,*
    656 F.2d 212 (6th Cir. 1981) .............................................. 21

*Williams v. Lambert,*
    46 F.3d 1275 (2d Cir. 1995) ............................................. 6,7

*Wight v. BankAmerica Corp.,*
    219 F.3d 79 (2nd Cir. 2000) ............................................... 11

*Wise v. Bravo,*
    666 F.2d 1328 (10th Cir. 1981) ............................................ 21

*Younger v. Harris,*
    401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971) ....................... 14-15

vi

STATUTES

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

## INTRODUCTION

Pursuant to the Court's Order, dated August 4, 2008, Plaintiff Toehl Harding ("Plaintiff" or "Harding"), respectfully submits this Memorandum of Law: (a) in support of a finding that this Court has subject matter jurisdiction over the parties' dispute; or, alternatively, (b) that Plaintiff is entitled to sanctions under 28 U.S.C. §§ 1927 and 1441 for the Defendant David Naseman's ("Defendant" or "Naseman") having wrongfully multiplied these proceedings and removed the case to federal court supposedly without a legitimate basis; together with (c) such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

As set forth in more detail *infra*, and as has been expressly acknowledged by Defendant on multiple occasions, this Court has subject matter jurisdiction over the parties' dispute under 28 U.S.C. § 1332.  Simply put, this case involves citizens of different States and the amount in controversy exceeds $75,000.  Nonetheless, in the hope of delaying this matter further, Defendant has turned a complete about-face, and he challenges this Court's subject matter jurisdiction to hear the exact same case that he initially removed to federal court.

However, the exception to subject matter jurisdiction relied upon by Defendant does not pertain to our facts, because Plaintiff has not sued for a decree of alimony, a decree of child custody, or a judgment of divorce (the "Domestic Relations Exception").  Hence, the notion that the Court lacks subject matter jurisdiction over the parties' dispute based upon the narrowly construed Domestic Relations Exception must be rejected.  Similarly, abstention is not warranted under our facts, as this litigation at its core concerns fraud and breach of contract claims, not domestic relations issues. Abstention is especially inappropriate in this case, considering that the litigation was brought

to the Southern District of New York by Defendant's own motion practice, which has already delayed this matter considerably.

Nonetheless, if the Court were to conclude that it lacks subject matter jurisdiction over this case, or that it should otherwise abstain from hearing it – erroneously, we respectfully contend – at a minimum, sanctions should be imposed against Defendant pursuant to 28 U.S.C. §§1927 and 1441. Sanctions are plainly warranted, because if Defendant is right, he removed this case without any legitimate reason for doing so, and then succeeded in having it transferred to this Court based upon express representations that there is subject matter jurisdiction over the parties' dispute in the Southern District of New York. As a result, Plaintiff, this Court, and the United States District Court for the District of Nevada (the "Nevada District Court"), have all expended substantial resources needlessly in order to address Defendant's procedural gambits. Defendant should be sanctioned accordingly.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

In the fall of 1992, Naseman informed Harding that he wanted a divorce and moved to Nevada to establish a local residency. (*See* Ex. A hereto, a true and accurate copy of the First Amended Complaint [the "Complaint"], at ¶ 10). (All exhibits referenced herein, which are public filings relating to this case, are annexed to this Memorandum of Law and we respectfully request that the Court take judicial notice of same.).[1]

---

[1]    *Pandozy v. Robert J. Gumenick, P.C.*, No. 07 Civ. 1242, 2008 U.S. Dist. LEXIS 41440, at *5-6 (S.D.N.Y. May 23, 2008) (Buchwald, D.J.).

2

In reasonable reliance upon Naseman's having knowingly and materially misrepresented the value of the parties' marital estate, in or around May 1993, Harding entered into the Property Settlement Agreement ("PSA") at issue in this case. *Id.* at ¶¶ 27-30.

In June 1993, less than two months after Harding and Naseman's divorce became final, Naseman married Marcia Bothe ("Bothe"). *Id.* at ¶ 31. In early 2006, Bothe sent Harding various incriminating documents revealing, *inter alia*, that Naseman had fraudulently induced Harding to enter into the PSA by providing falsified tax returns to her as part of the financial disclosure attendant to the negotiation of that contract. *Id.* at ¶¶ 39-44.

On January 12, 2007, Harding filed a First Amended Complaint in this action in the Second Judicial District Court of the State of Nevada. (Ex. A). On or about February 13, 2007, Naseman removed the litigation to the United States District Court for the District of Nevada. (*See* Ex. B, a true and accurate copy of the Docket in the Nevada Federal litigation, at Entry No. 1; *see also* Ex. C, a true and accurate copy of the Notice of Removal without the annexed Complaint).

The Notice of Removal states that "[j]urisdiction of this action is founded upon 28 U.S.C. §§ 1332 and 1441(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." Ex. C at ¶ 1.

The Notice of Removal also provides that "[t]he First Amended Complaint ... alleges twelve claims for relief that are based upon fraud/misrepresentation, contract, conversion, breach of fiduciary duty, and equity." Ex. C at ¶ 6. Therefore, in removing this case, Defendant himself acknowledged that the Complaint does not seek relief from any of the prohibited categories under the Domestic Relations Exception, *i.e.*, child custody decree, divorce decree, or alimony decree. *See* discussion *infra*.

3

The Notice of Removal further confirmed that the relief sought in the Complaint does not invoke the Domestic Relations Exception, by providing that the Nevada District Court "has original jurisdiction over the subject matter of this claim under the provisions of 28 U.S.C. § 1332 in that there is complete diversity between the parties and more than $75,000 in controversy exclusive of interest and costs. Pursuant to 28 U.S.C. § 1441, Mr. Naseman is, therefore, entitled to remove this action to this Court." *Id.* at ¶ 7.

Following removal, on or about March 1, 2007, Naseman moved to dismiss, or in the alternative, to transfer the litigation to this Court. Ex. B, at Entry No. 8. *See also* Ex. D, a true and accurate copy of Defendant's transfer motion. In making this motion, Defendant expressly represented to the Nevada District Court that there is subject matter jurisdiction over the parties' dispute in this Court. *See* Ex. D at p. 12, where Defendant writes: "In the present case, venue, personal jurisdiction, **and subject matter jurisdiction are all proper in the United States District Court for the Southern District of New York.**" (Emphasis supplied).

Defendant's motion was granted in part and denied in part by way of an Order entered on or about October 3, 2007, which directed the Clerk of the Court to take steps to transfer the litigation to the United States District Court for the Southern District of New York. Ex. B at Entry No. 11. Therefore, based upon Defendant's representation to the Nevada District Court that subject matter jurisdiction is proper in this Court, he was successful in having the litigation transferred here.

4

## ARGUMENT

### POINT I

### THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS LITIGATION

**A.     Diversity Jurisdiction Exists in this Case**

The basis for the subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a district court's subject matter jurisdiction may be exercised only when a "federal question" is presented, or when the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds the sum or value of $ 75,000.00. *See* 28 U.S.C. §§ 1331 and 1332. Defendant, as the party who initially removed the case to federal court, clearly does not dispute that the requirements of 28 U.S.C. § 1332 have been met. Both parties are citizens of different States (Complaint, Ex. A at ¶¶ 1 and 2), and the amount in controversy is in excess of $ 75,000. *Id.* at ¶¶ 65, 67, 75, 86, 88, 96, 103, 112, 122, 127, 131, and 145-146). Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**B.     General Principles Concerning the Domestic Relations Exception to Federal Subject Matter Jurisdiction Confirm its Lack of Application to this Case**

In an attempt to further prolong this litigation and cause Plaintiff additional expense, Defendant now asserts that this case should be remanded to state court, because the allegations in the Complaint supposedly fall within the Domestic Relations Exception to federal jurisdiction. The Domestic Relations Exception was first articulated in *Barber v. Barber*, 62 U.S. 582 (1859);[2] it

---

[2]     Notably, "in *Barber* itself, the Supreme Court sustained jurisdiction over an action to enforce a state court alimony award." *American Airlines v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (emphasis supplied).

divests the federal courts of power to issue divorce, alimony, and child custody decrees. *See Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S. Ct. 2206, 2215 (1992).

There is no constitutional basis for the Domestic Relations Exception. *See Minot v. Eckardt-Minot*, No. 92 Civ. 3334, 1993 U.S. Dist. LEXIS 4291, at *3-4 (S.D.N.Y. Apr. 6, 1993) (Mukasey, D.J.) ("An examination of *Barber* and Article III of the Constitution makes clear that the Constitution does not exclude domestic relations cases from the jurisdiction otherwise granted by statute to the federal courts. * * * Therefore federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 is proper in this case.") (citing *Ankenbrandt*, 112 S. Ct. at 2210).[3]  Rather, the Domestic Relations Exception, which is the governing law although it has been subject to criticism,[4] is a narrowly construed creation of the judiciary founded upon an interpretation of the diversity statute. *See Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995):

> The matrimonial exception to diversity jurisdiction, as articulated in *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L. Ed. 226 (1859), is still in effect today – federal courts will not exercise jurisdiction over cases on the subjects of divorce, alimony or the custody of children. *Ankenbrandt v. Richards*, 504 U.S. 689, 119 L. Ed. 2d 468, 112 S. Ct. 2206, 2214-15 (1992); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). *See also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973).  However, the Court in *Ankenbrandt* held

---

[3]     In *Ankenbrandt*, the Supreme Court analyzed the legal and historical origins of the domestic relations exception by reviewing previous cases beginning with *Barber v. Barber*, 62 U.S. 582 (1859). The Court concluded that the domestic relations exception exists as a matter of statutory construction rather than constitutional mandate. *Ankenbrandt*, 504 U.S. 695-700, 112 S. Ct. 2206 at 2210-2213.

[4]     *See, e.g.*, Judge Weinstein's opinion in *Spindel v. Spindel*, 283 F.Supp. 797, 806 (E.D.N.Y. 1968) ("This broad interpretation [of the Domestic Relations Exception] is unwarranted by the Constitution, any statute, holding of the Supreme Court or current jurisdictional theory and we decline to follow it. Even if the federal courts lack jurisdiction to grant a divorce, '[this] does not necessarily mean * * * that they lack jurisdiction to determine * * * the validity of a divorce decree rendered by * * * a foreign court * * * provided there is some jurisdictional basis, such as diversity.' 6A Moore, Federal Practice P57.21[2] at pp. 3125-3126.").

> that the matrimonial exception to federal jurisdiction is not based on Article III of the
> Constitution but is instead an interpretation of the diversity statute, 28 U.S.C. § 1332.
> 112 S. Ct. at 2213-14.  It also found that the exception is very narrow.  The Court
> stated that "**the** *Barber* **Court ... did not intend to strip the federal courts of
> authority to hear cases arising from the domestic relations of persons <u>unless</u>
> they seek the granting or modification of a divorce or alimony decree**," *id.* at
> 2214, **or a child custody decree.** *Id.* at 2215.

(Emphasis supplied).

Thus, as the Second Circuit confirmed in *Williams*, the Domestic Relations Exception is to

be narrowly construed.  The Supreme Court's holding in *Ankenbrandt* confirms as much: "[T]he

domestic relations exception encompasses **only cases involving the issuance of a divorce, alimony,**

**or child custody decree.**"  504 U.S. at 704, 112 S. Ct. at 2215.  "[T]he scope of this matrimonial

exception to federal jurisdiction is 'rather narrowly defined,' *Phillips, Nizer, Benjamin, Krim &*

*Ballon v. Rosenstiel*, 490 F.2d 509, 514 (2d Cir. 1973); '**only** where a federal court is asked to grant

a divorce or annulment, determine support payments or award custody of a child' does it generally

decline jurisdiction pursuant to the matrimonial exception. *Csibi v. Fustos*, 670 F.2d 134, 137 (9th

Cir. 1982)." *American Airlines*, 905 F.2d at 14 (emphasis supplied).[5]

As Defendant acknowledged in the Notice of Removal, "[t]he First Amended Complaint ...

alleges twelve claims for relief that are based upon fraud/misrepresentation, contract, conversion,

---

[5] *See also, e.g., Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001) ("Despite the breadth of the phrase 'domestic relations exception' and the potential reach of the exception's aim, *Ankenbrandt* made clear that the exception is narrowly limited.  In general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree."); and *Schottenstein v. Schottenstein*, No. 04 Civ. 5851, 2004 U.S. Dist. LEXIS 22648, at *22 (S.D.N.Y. 2004) (Scheindlin, D.J.) ("This exception is very narrow and is not intended to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree, or a child custody decree.") (Quoting *Williams*, 46 F.3d at 1283) (quotation marks, citations and footnotes omitted).

breach of fiduciary duty, and equity." Ex. C at ¶ 6. Therefore, by Defendant's own admission, this case does not fall within the ambit of the Domestic Relations Exception, as Plaintiff has not sued for "the issuance of a divorce, alimony, or child custody decree." Consequently, the narrowly construed Domestic Relations Exception is inapplicable. *See, e.g., Southard v. Southard*, 305 F.2d 730 (2d Cir. 1962) (Federal courts had subject matter jurisdiction over suit for declaratory judgment as to the validity of a divorce decree.). *See also Massey v. Massey*, No. 4:96cv39, 1996 U.S. Dist. LEXIS 15456, at *7, n. 2 (E.D. Va. Aug. 1, 1996), where under facts similar to ours, the Court found the Domestic Relations Exception to be inapplicable. In particular, the *Massey* Court held: "On March 14, 1995, Ms. Massey filed this action in federal court, alleging that Dr. Massey has refused to return certain items of her personal property, that Dr. Massey has not honored the property agreement, and that Dr. Massey misrepresented the value of his medical practice during negotiations over the agreement. This court has diversity jurisdiction over the matter, pursuant to 28 U.S.C. §§ 1332." *Id.* at *3-4.

## C.     The Domestic Relations Exception Does Not Apply to Tort Claims

The case law further confirms that the Domestic Relations Exception does not apply to litigations asserting claims that – as here – sound in tort. As held by the Supreme Court in *Ankenbrandt*:

> [b]y concluding... that **the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree,** we necessarily find that the Court of Appeals erred by affirming the District Court's invocation of this exception. **This lawsuit in no way seeks such a decree; rather, it alleges that respondents Richards and Kesler committed torts** against L. R. and S. R., Ankenbrandt's children by Richards. Federal subject-matter jurisdiction pursuant to § 1332 thus is proper in this case.

*Ankenbrandt*, 504 U.S. at 704, 112 S. Ct. at 2215 (emphasis supplied). In *Ankenbrandt*, as here, the

Domestic Relations Exception was inapplicable because the lawsuit did not seek divorce, alimony,

or child custody decrees. Instead, the claims in *Ankenbrandt* arose from allegations that respondents

committed torts against petitioner's children. Accordingly, the court held that federal subject-matter

jurisdiction pursuant to § 1332 was proper. 504 U.S. at 706-707.[6]

**D.     The Domestic Relations Exception Does Not Apply to Claims Involving Breach of Contract**

The case law further recognizes that claims for breach of contract, such as that asserted by

Plaintiff herein, do not fall within the ambit of the Domestic Relations Exception.[7]

As held in *Lannan v. Maul*, 979 F.2d 627, 630-631 (8th Cir. 1992):

---

[6]     *See also Schottenstein*, No. 04 Civ. 5851, 2004 U.S. Dist. LEXIS 22648, at *22-24 ("[C]laims arising in the domestic relations context, but sounding in tort or contract, or alleging civil rights violations ordinarily fall outside the ambit of the domestic relations exception."); *Tilley v. Anixter Inc.*, 283 F. Supp. 2d 729, 736-737 (D. Conn. 2003) ("[S]everal courts have ruled that claims for intentional infliction of emotional distress instituted by a spouse against a former spouse do not fit within the domestic relations exception. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1112 (10th Cir. 2000) ('Plaintiff's complaint also alleges . . . intentional infliction of emotional distress. The Supreme Court in *Ankenbrandt* made clear that such tort claims do not fall within the domestic relations exception . . . .'); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998) (holding that case for intentional infliction of emotional distress did not fit within the domestic relations exception); *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988) ('It appears that the domestic relations exception to diversity jurisdiction clearly does not apply to the claims of intentional infliction of emotional distress . . . .').").

[7]     In concluding that breach of contract claims are properly brought here free of entanglements with the judgment of divorce, it is important that the PSA was executed **after** the Nevada divorce judgment was entered. The PSA does not state that it was merged into the judgment, and Defendant has not submitted any evidence of merger. Thus, a suit for breach of the PSA may be maintained separate and apart from that judgment. *See Kaufman v. Kaufman*, 135 A.D.2d 786, 787 (2d Dep't 1987) ("Since the stipulation was incorporated but not merged in the judgment of divorce, the present action is not barred by that judgment. The terms of the agreement were separable and subject to an independent suit. The present claim of fraud in the inducement, by its very nature, has not been precluded by either the terms of the stipulation or the findings in the judgment.") (citations omitted).

> [T]he domestic relations exception, as articulated by the Supreme Court in *Ankenbrandt*, is a <u>narrow</u> one. *Id.* at 2215 n.6 (Noting that better reasoned views among Courts of Appeals have similarly limited the domestic relations exception) (emphasis supplied).
>
> The case at bar is similar to *Ankenbrandt*. The issues presented here do not involve a domestic relations dispute between a feuding couple concerning a divorce, alimony, or child custody decree. Rather, **it concerns a third-party beneficiary claim based on contract law.** We hold, therefore, that **the district court erred in holding that it lacked jurisdiction because the domestic relations exception does not encompass collateral issues, such as the alleged breach of contract presented here.**

(Emphasis supplied). *See also Crouch v. Crouch*, 566 F.2d 486, 487-488 (5th Cir. 1978):

> While we approvingly acknowledge the so-called domestic relations exception to diversity jurisdiction ... **we find it inapplicable to the instant case, which involves little more than a private contract to pay money between persons long since divorced,** whose children are well into adulthood. **We are faced here with no questions of custody or parental rights, no pending state court action or agreement to litigate in state court, and no threat that the former spouses will seek to play one court system off against the other.** *Solomon v. Solomon*, 516 F.2d at 1025. Nor do we perceive any strong state interest in the adjudication of this suit or any special competence on the part of state courts, other than their superior ability to interpret state law, which is always present in diversity suits. Because none of the rationales for the domestic relations exception obtain in this case – with the possible exception of congested federal dockets – we uphold the district court's exercise of jurisdiction and proceed to determine the merits.

(Emphasis supplied). *See also Graning v. Graning*, 411 F. Supp. 1028, 1028-1029 (S.D.N.Y. 1976):

> The defendant Harold Martin Graning, Jr. has moved to dismiss this action or for a change of venue. The suit was instituted by defendant's ex-wife, Jane Graning, to recover over $24,000 allegedly due plaintiff for breach of a 1969 pre-divorce property settlement. * * *
>
> The defendant's motion challenges both subject matter and in personam jurisdiction. It is undisputed that both diversity of citizenship and a claim in excess of $10,000 are present within the meaning of 28 U.S.C. § 1332. However, defendant contends that the action involves the domestic relations of the parties and therefore cannot be maintained in the federal court. *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794 (S.D.N.Y. 1967).

> **The defendant mistakes the nature of this action which is essentially a breach of contract suit. <u>The marital relationship between the parties has apparently already been determined and is not in dispute.</u> Accordingly, diversity of citizenship affords an adequate basis for subject matter jurisdiction** in this dispute. *See Spindel v. Spindel*, 283 F. Supp. 797 (E.D.N.Y. 1968); *Richie v. Richie*, 186 F. Supp. 592 (E.D.N.Y. 1960); *Gonzales v. Gonzales*, 74 F. Supp. 883 (E.D.Pa. 1947).

(Emphasis supplied). *See also Schottenstein*, *supra*, 2004 U.S. Dist. LEXIS 22648, at *22

("[C]laims arising in the domestic relations context, but sounding in tort or contract, or alleging civil

rights violations ordinarily fall outside the ambit of the domestic relations exception.").

The principles set forth in these precedents apply with equal force here. Plaintiff's suit

centers around the PSA, its breach, Defendant's having fraudulently induced Plaintiff to enter into

that contract, as well as related tort claims. There are no children of the marriage; Plaintiff does not

seek to modify the parties' Nevada divorce; and alimony is not at issue. Nor are there any parallel

state court proceedings, let alone the heightened acrimony that can attend actual divorce cases.

Rather, the parties' marriage ended in 1993, and Plaintiff is suing for money damages. Under the

circumstances, there are no grounds to invoke the Domestic Relations Exception.

**E.   <u>The Application of Judicial Estoppel</u>**

The Second Circuit has noted that "[i]ndeed, it has been cautioned that 'special care' should

be taken in considering whether judicial estoppel should even apply 'to matters affecting federal

subject matter jurisdiction.'" *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89-90 (2d Cir. 2000).

However, Courts have applied the doctrine of judicial estoppel where a party knowingly asserted its

position on jurisdiction. *See Selected Risks Ins. Co. v. Kobelinski*, 421 F. Supp. 431, 435 (E.D. Pa.

1976) ("The SBA has procured a dismissal in the prior action by contending that the Court lacked

jurisdiction and now wishes to effect a removal by asserting that the Court has jurisdiction. The

11

plaintiff has been removed from his chosen forum, only to be returned there once he has made alternate arrangements. This course of action has consumed the time of three busy courts with a lawsuit which could most conveniently have been handled in one."). Here, Defendant expressly represented to the Nevada District Court that subject matter jurisdiction is "proper" in the Southern District of New York (Ex. D at p. 12), then obtained the transfer of the case to this Court based upon that representation, and now seeks to turn his former position on its head to obtain a remand.

Therefore, while we are cognizant of the Court's caution with respect to the application of judicial estoppel to questions of subject matter jurisdiction, and submit that Defendant's argument against the existence of subject matter jurisdiction fails on the merits, the doctrine is nonetheless available under our unique facts as an additional basis to confirm that the Court has subject matter jurisdiction over this dispute.

## POINT II

### THERE IS NO BASIS FOR THE COURT TO INVOKE THE DOCTRINE OF ABSTENTION IN THIS CASE

#### A.    The Relevant Precedents Prohibit the Application of the Abstention Doctrine

As the foregoing makes clear, this Court plainly has subject matter jurisdiction over this case. Hence, Defendant's actual position must be that the Court should abstain from determining this case despite the obvious existence of subject matter jurisdiction. *See Ankenbrandt*, 504 U.S. at 704:

> By concluding, as we do, that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree, we necessarily find that the Court of Appeals erred by affirming the District Court's invocation of this exception. * * *  We now address whether, even though subject-matter jurisdiction might be proper, sufficient grounds exist to warrant abstention from the exercise of that jurisdiction.

The Supreme Court confirmed in *Ankenbrandt* that "[i]t is axiomatic, however, that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" 504 U.S. at 704 (Quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)). As further explained in *Kuhn v. Kuhn*, No. 98 C 2395, 1998 U.S. Dist. LEXIS 15315, at *6-9 (N.D. Ill. Sept. 16, 1998):

> In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), the Supreme Court stated: ... "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, **is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest**." (quoting *Colorado River*, 424 U.S. at 813; quoting *County. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189, 79 S. Ct. 1060, 3 L. Ed. 2d 1163 (1959)).

(Emphasis supplied). *See also McIntyre v. McIntyre*, 771 F.2d 1316, 1319 (9th Cir. 1985) ("In abstention cases the district court must exercise its discretion within the narrow and specific limits prescribed by the particular abstention doctrine invoked. **There is no discretion to abstain in a case that does not meet the abstention requirements.** *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983).") (Emphasis supplied).

The three categories of abstention are: (1) avoiding a federal constitutional issue by seeking a state determination of state law; (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration; and (3) declining to restrain state criminal proceedings, collection of state taxes and the like. *See Colorado River Water Conservation District v. United States*, 424 U.S. at 814-16.[8]

---

[8]      *See also McIntyre v. McIntyre*, 771 F.2d at 1319 ("The Supreme Court has confined
(continued...)

13

There are no exceptions over and above these three, limited grounds for abstention. As held

by the Second Circuit in *Giardina v. Fontana*, 733 F.2d 1047, 1052-1053 (2d Cir. 1984):

> Since *Phillips, Nizer* [*Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509
> (2d Cir. 1973)], the Supreme Court has decided *Colorado River Water Conservation
> District v. United States*, 424 U.S. 800, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976) and
> *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103
> S. Ct. 927, 74 L. Ed. 2d 765 (1983), which identify three categories of cases in which
> abstention is proper and which emphasize that abstention is the exception, not the
> rule. **Outside of these three categories ... the district courts have "the virtually
> unflagging obligation . . . to exercise the jurisdiction given them."** *Colorado*, 424
> U.S. at 817.

(Emphasis supplied).

Generally, moreover, for a District Court to properly abstain with respect to a litigation

involving matrimonial issues where the Domestic Relations Exception does not apply, there must

be an ongoing, related state court litigation:

> The contention that states have an important interest and concern in domestic matters
> that affect their citizens is not questioned; however, that argument here is misplaced.
> The issues presented here not only fall outside the domestic relations exception, as
> we held above, but they also have no substantial relationship to any pending state
> proceeding. Thus, we disagree with the district court's decision to abstain based on
> the finding that the issues raised in this action are substantially related to and
> intertwined with issues presently pending before the state court.

*Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992). *See also Kuhn v. Kuhn*, 1998 U.S. Dist. LEXIS

15315, at *7:

---

[8](...continued)
the circumstances appropriate for abstention to three general categories of cases: (1) those that
present a federal constitutional issue that might be affected by a state court determination of pertinent
state law, *see Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 85 L. Ed. 971, 61 S. Ct.
643 (1941); (2) those that present important questions of state policy transcending the result in the
case at bar, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 87 L. Ed. 1424, 63 S. Ct. 1098 (1943); and (3)
those in which federal jurisdiction has been invoked to restrain pending state criminal proceedings,
*see Younger v. Harris*, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971). *Colorado River*, 424
U.S. at 814-17 (addressing these three categories).").

Any analysis of *Colorado River* abstention requires a court to first ask whether the concurrent state and federal court proceedings are parallel. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988). If the proceedings are not parallel, the *Colorado River* doctrine is inapplicable. *Id.* Suits are parallel when "substantially the same parties are contemporaneously litigating the same issues in another forum." *Id.* (*citing Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979)).

Here, of course, there is no parallel state court litigation. Rather, the parties' judgment of divorce was entered in Nevada back in April 1993. Regardless, an analysis of the three categories for abstention demonstrates the inapplicability of that doctrine to our case.

**First**, this case presents no federal constitutional issue that could be obviated, avoided, or differently determined under state law. To the contrary, Plaintiff simply seeks money damages for breach of contract, fraudulent inducement, and related torts.

**Second**, this case in no way presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. Instead, Plaintiff maintains that $2.7 million in liquid assets, or alternatively $5,561,728.19 in actual joint gross income, was fraudulently concealed by Defendant in connection with the negotiation of the PSA. Ex. A at ¶¶ 37-40. Moreover, the parties already agreed to the percentages of marital assets that each would take under the PSA, which was roughly 50/50. Accordingly, there is no need even to look to state law to see what Plaintiff should have received absent Defendant's fraud. But even if the trier of fact were required to look to the general law as to equitable distribution of New York (the law governing the PSA) or Nevada (the jurisdiction where the parties' judgment of divorce was entered), that would hardly bear on policy problems of substantial public import that would transcend the parties' dispute. The equitable distribution laws of Nevada and New York are both well settled.

**Third**, it is facially apparent that this case does not entail the restraint of state criminal proceedings or the collection of state taxes.

**B.**    **Judicial Estoppel and Related Concepts Prevent the Application of Abstention**

As the forgoing makes clear, abstention is not appropriate based upon a straightforward analysis of the principles governing its application. Defendant, however, is further barred from even seeking to invoke abstention.

*Giardina, supra,* 733 F.2d 1047, is on point, based upon the role that the circuitous procedural history of that case played in the Second Circuit's determination that abstention was improper. There, the Second Circuit held that it was error for the District Court to have abstained from hearing a case based upon the analogous probate exception[9] to federal subject matter jurisdiction. *Giardina* thus found:

> [I]t was error to abstain here. This conclusion is buttressed by the peculiar procedural maneuvers indulged in by appellee. **Fontana apparently successfully argued to the district court that Giardina's claim fell within the probate exception to diversity jurisdiction and then successfully argued to the Florida probate court that it did not have jurisdiction because the claim was not a probate matter.** We do not know why Judge Sifton did not attach more weight to this fact; we find that it almost makes out exceptional circumstances for keeping the case in the district court.

---

[9]     *See Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105, 108 (2d Cir. 2007) ("The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction....[The] probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. The probate exception does not, however, bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction. *** The probate exception can no longer be used to dismiss widely recognized torts such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court. Accordingly, these claims may not be dismissed under the probate exception.") (Citations and some quotations omitted).

*Id.* at 1053 (Emphasis supplied).

So too here, Defendant has represented to the Nevada District Court first that it had subject matter jurisdiction, and then that subject matter jurisdiction was "proper" before this Court. Ex. D at p. 12. Now, after succeeding in his transfer motion based upon those representations, Defendant seeks to invoke the doctrine of abstention in this Court. Not only do such procedural maneuvers make out "exceptional circumstances for keeping the case in the district court," *Gardina*, 733 F.2d at 1053, but Naseman is further judicially estopped from invoking the abstention doctrine. *See Finova Capital Corp v. Cote (In re Finova Capital Corp.)*, 358 B.R. 113, 117 (Bankr. D. Del. 2006):

> The doctrine of judicial estoppel is an equitable doctrine used by the courts to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and with a recognition that each case must be decided upon its own particular facts and circumstances. The Third Circuit has consistently held that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

> The Court finds that the case at hand is a textbook example that illustrates the need for the doctrine of judicial estoppel. **The Defendants succeeded in getting the summary judgment vacated and the Plaintiff's claims dismissed in Vermont by arguing that this Court is the proper forum in which to hear these claims. Once the Plaintiff filed the adversary proceeding in this Court, the Defendants changed their tune, arguing that the claims should not be heard here....** If the Defendants have their way in this Court as they have in the Superior Court, the Plaintiff will be left without forum in which to bring its claims. Courts generally should not abstain from hearing a case or controversy where the plaintiff has no other forum in which to seek relief.

(Emphasis supplied; citations, footnote and quotations omitted).

The Court in *Finova* could easily have been writing about Defendant, who has sent Plaintiff on a merry-go-round of various forums from the Nevada State Court, to the Nevada District Court,

to this Court, and now if Defendant has his way, back to state court again.  The law does not abide such procedural gamesmanship.

## POINT III

### THE CASE LAW RELIED UPON BY DEFENDANT IS NOT ON POINT

At the outset, we note that none of the precedents relied upon by Defendant concern our situation where the party challenging the federal court's subject matter jurisdiction actually removed the case in the first place.  The case law is materially distinguishable for a host of other reasons as well.

**First**, the Plaintiff in *Hickey v. Daniels*, No. 06-CV-6838, 2007 U.S. Dist. LEXIS 47822 (E.D.N.Y. July 2, 2007), filed a **child-custody petition** in state court.  Defendant then removed it to federal court, arguing she did not seek a custody determination, but rather wanted to litigate the issue of "Parental Alienation Syndrome."  The Court reconfirmed it was without jurisdiction because, "(1) no federal statutory or constitutional issues appear on the face of the state-**court child custody petition** that Daniels seeks to remove, and (2) it has an obligation to 'decline jurisdiction' over **child custody petitions** pursuant to the 'domestic relations' exception to federal jurisdiction." *Id.* at *4 (Emphasis supplied).

**Second**, in *Knize v. Knize*, No. 3:07CV00872, 2007 U.S. Dist. Lexis 43506, at *1 (D.Conn. June 15, 2007), the Defendant attempted to remove to federal court a state court complaint that sought "**dissolution of marriage**, division of assets, **alimony** and child support, and attorney's fees." *Knize*, at *1 (Emphasis supplied).  In addition, there was no diversity jurisdiction and the complaint did not raise a federal question. *Id.* at *4-5.

18

**Third**, in *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999), the Court rested its finding of a lack of subject matter jurisdiction on the fact that "this case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status." *Id.* at 414. The court further reasoned that since the "separation agreement containing the clause in regard to the sale of marital property was incorporated into the divorcee decree, and consequently, the obligations now imposed are not those imposed by the law of contract or torts, as plaintiff contends, but are those imposed by the divorce decree." *Id.* In this case, New York law governs the PSA as opposed to that of Ohio. Because the PSA was not merged into the divorce judgment, a separate suit for breach of contract is available under the PSA.[10] The court in *McLaughlin* was also persuaded to apply the Domestic Relations Exception given that a parallel action regarding the sale of the marital residence was then pending in state court. *Id.* at 413. No such parallel state action exists in this case.

**Fourth**, in *Kahn v. Kahn*, 21 F.3d 859 (8th Cir. 1994), the court did not exercise jurisdiction where plaintiff brought claims identical to those alleged in a petition for the dissolution of marriage that had been already conclusively resolved in a separate divorce proceeding through trial and then appeal. In fact, the lower court had actually ruled that the complaint was barred by *res judicata*. *Id.* at p. 860. Here, Plaintiff is suing in connection with the PSA, not any underlying divorce proceedings. Moreover, under Missouri law, the Court could not address the distribution of marital

---

[10]    *See Kaufman v. Kaufman*, 135 A.D.2d 786, 787 (2d Dep't 1987) ("Since the stipulation was incorporated but not merged in the judgment of divorce, the present action is not barred by that judgment. The terms of the agreement were separable and subject to an independent suit.").

property in isolation, because it was "inextricably related to the divorce determination and the issue of **alimony**." *Id.* at 862 (emphasis supplied). Alimony is not at issue in this case.

**Fifth**, in *Cassens v. Cassens*, 430 F. Supp. 2d 830 (S.D. Ill. 2006), the court held that the plaintiff's claims were "in the nature of a request for a decree regarding the division of marital property and **alimony**." *Id.* at 837 (Emphasis supplied). Further, the *Cassens* court had significant forum shopping concerns, as the plaintiff sought to determine the scope of her interest in marital property prior to bringing a divorcee proceeding: "To permit claims like the ones asserted by [plaintiff] against her husband to be adjudicated in federal court would effectively eviscerate the exception, by allowing married persons to jockey for position in impending divorce proceedings by shopping for a favorable forum in state or federal court, as their interests dictate." *Id.* at 837. In this case, the parties resolved the distribution of marital property amongst themselves, albeit based upon Defendant's fraud, and Harding sues in connection with that contract. There are no policy concerns that **Plaintiff** is engaging in forum shopping; to the contrary, it is Defendant who now seeks to move the case to a fourth forum.

**Sixth**, in *American Airlines, Inc. v. Block*, 905 F. 2d 12, 14 (2d Cir. 1990), the Second Circuit in fact held that "the district court had jurisdiction over this matter." The Second Circuit further ruled that the District Court "was within its discretion in collecting and distributing the interpleader fund for those maintenance and arrears reduced to valid final judgment in state court." *Id.* The only thing that the District Court could not do, because it would intrude upon the province of the state court in connection with an ongoing proceeding, was assert jurisdiction over "continuing maintenance obligations and arrears which had not been reduced to final judgment in state court."

*Id.* Moreover, as *American Airlines* was an abstention case, none of the countervailing factors applicable here (*e.g.*, Defendant's removal of this litigation and transfer motion) were present.

**Seventh**, in *McArthur v. Bell*, 788 F. Supp. 706 (E.D.N.Y. 1992), there was no diversity jurisdiction. Instead, that case involved an attempt to bootstrap a matrimonial action into federal Court by asserting "frivolous" constitutional claims. In particular, the plaintiff alleged "that Judge Friedenberg and her two law clerks were biased against him, and that Judge Friedenberg directed hostile remarks to him and to his attorney." *Id.* at 708. The court dismissed the complaint for failure to state a claim, noting that "[w]here constitutional claims arising out of a domestic relations dispute are frivolous, the action must be dismissed because it is an abortive attempt to involve the federal courts in domestic relations matters best left to the states." *Id.* 709.

**Eighth**, *Wise v. Bravo*, 666 F.2d 1328 (10th Cir. 1981), also concerned the assertion of constitutional claims arising out of domestic matters, so once again there was no independent basis for subject matter jurisdiction. Moreover, the gravamen of plaintiff's claim was "a dispute between Wise and his ex-wife, Gayle, over visitation rights to their daughter." *Id.* at 1330. The court found no federal constitutional claim and remanded to state court as "there is no substantive federal constitutional, statutory or common law governing family relationships, including matters of custody and visitation rights between parents and children." *Id.* at 1332. The court further went on to note that "§ 1983 should not be viewed as a vehicle to resolve a dispute involving visitation rights-privileges." *Id.*

**Ninth**, *Tonti v. Petropoulous*, 656 F.2d 212 (6th Cir. 1981), involved a dispute over a will, with the plaintiff claiming that "he was deprived of his constitutional right of a fair trial because his claim was determined by a biased and prejudiced probate judge." *Id.* at 216. There was no

21

independent basis for jurisdiction under 28 U.S.C. 1332, and the District Court had "ruled that the doctrine of *res judicata* barred Tonti's claim...." *Id.* Noting that federal courts have no independent probate jurisdiction, *Tonti* held that "[t]his litigation represents yet another misuse of 42 U.S.C. § 1983 in an attempt to obtain federal jurisdiction." *Id.* at 216.

**Tenth**, in *Eisenstein v. Haber*, No. 92 Civ. 8061, 1993 U.S. Dist. LEXIS 1264 (S.D.N.Y. Feb. 8, 1993), a plaintiff once again sought to make a constitutional case out of separate state court divorce proceedings. *Eisenstein* found that "[p]laintiff's claims in this action boil down to an attempt to force this Court to re-examine the decisions of the state court in relation to [p]laintiff's divorce." *Id.* at * 8. The court held that "where the constitutional claims are frivolous or could entangle the Court in factual disputes determined at the state level 'the suit should be dismissed as an impermissible attempt to embroil the federal courts in matrimonial matters best left to the states.'" *Id.* at *7 (citation omitted).

**Eleventh**, in *Fursaro v. Fusaro*, 550 F. Supp. 1260 (E.D. Pa. 1982), the concerns of comity and inconsistent verdicts were once again present because, unlike here, there were parallel state court litigations addressing the identical claims. Thus, "the exact claims asserted by Mr. Fusaro in this action regarding the agreement and other marital property are being litigated in state court lawsuits." *Id.* at 1263. "The fact that Mr. Fusaro's allegations are being used as a shield in the state courts and a sword in this court is a distinction without difference. The end result is the same: several courts adjudicating identical claims." *Id.* at 1263.

**Twelfth**, in *Brenhouse v. Bloch*, 418 F. Supp. 412 (S.D.N.Y. 1976), the District Court adopted the Magistrate Judge's Report and Recommendation that it "abstain from asserting our

22

jurisdiction because we would necessarily have to become involved in questions of **child custody and visitation rights**." *Id.* at 413 (emphasis supplied). No such prohibited issues are raised here.

**Thirteenth**, in *Palaniappan v. Angamuthu*, No. 07-CV-0176A, 2007, U.S. Dist. LEXIS 75408, at *10 (W.D.N.Y. Oct. 4, 2007), not only did the complaint fail to state a claim, but the court declined to exercise jurisdiction because it was "abundantly clear" that the plaintiff was "asking the Court to review the custody decree adjudicating the rights between him and his ex-wife in relation to the custody of their daughter."

**Fourteenth** and finally, in *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (2004), the Supreme Court deferred to the state court's **custody** decisions in evaluating the plaintiff father's standing to assert a First Amendment claim based on his daughter's school's practice of having students recite the Pledge of Allegiance with the phrase "under God." The Court explained that its "holding does not rest ... on either the domestic relations exception or the abstention doctrine." *Id.* at 13, n. 5. Rather, the Court acknowledged that "[t]he merits question undoubtedly transcends the domestic relations issue, but the standing question surely does not." *Id.*

## POINT IV

### IF THE COURT HOLDS THAT IT LACKS SUBJECT MATTER JURISDICTION OR THAT ABSTENTION IS WARRANTED, PLAINTIFF SHOULD BE AWARDED COSTS AND ATTORNEYS' FEES

As set forth above, Plaintiff respectfully submits that the Court has subject matter jurisdiction over this action and that abstention is not warranted. However, if the Court disagrees and holds either that the Court lacks subject matter jurisdiction or that abstention is appropriate, the Court, pursuant to its inherent powers and 28 U.S.C. §1447(c), should award Plaintiff sanctions as well as

costs and attorneys' fees incurred in (a) opposing Defendant's removal to the District of Nevada and transfer, and (b) preparing the instant papers.

In order to impose sanctions pursuant to its inherent power, a court must find that: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Jackson v. Levy*, No. 98 Civ. 8890, 2000 WL 124822, at *6 (S.D.N.Y. Feb. 2, 2000) (Pauley, D.J.). As to Section 1447(c), it provides in relevant part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *See also Syms, Inc. v. IBI Sec. Service, Inc.*, 586 F. Supp. 53, 56-57 (S.D.N.Y. 1984) (Sprizzo, D.J.) ("[T]he federal courts are authorized to award costs against the removing party pursuant to 28 U.S.C. § 1447(c), and may properly do so where a removal is effected in bad faith...."); *Creek Ventures, LLC v. World Parts, LLC*, No. 01-CV-89C, 2004 U.S. Dist. LEXIS 9808, at *11 (W.D.N.Y. Apr. 5, 2004) ("The court has discretion to award attorney's fees and costs under this section because it is not a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party. Here, it is apparent that, as removal in both cases was improper, defendant should be responsible for the actual costs and attorney fees incurred by the plaintiff ....") (quotations and citations omitted).

Plaintiff brought this action in the Nevada State Court, and it was Defendant who removed it to the District of Nevada and caused it to be transferred to this Court. Indeed, in Defendant's removal papers, he specifically cited Plaintiff's Complaint and claims in arguing that the District of Nevada had subject matter jurisdiction and that it would be proper for that Court to adjudicate those claims. Thus, if Defendant is right in **now** arguing that the Court lacks subject matter jurisdiction or that abstention is warranted, he clearly removed this case in bad faith without any colorable basis.

24

Nothing in Plaintiff's summary judgment opposition could have legitimately changed Defendant's position. To the contrary, by not seeking rescission so as to attack the underlying divorce judgment, if anything, Plaintiff's claims are further removed from domestic relations law.

Therefore, if the Court holds that it lacks subject matter jurisdiction or that abstention is warranted, the Court should award Plaintiff sanctions in the amount no less than the costs and attorneys' fees incurred by Plaintiff in opposing Defendant's removal to the District of Nevada and transfer to this Court as well in preparing the instant papers. If the Court grants such sanctions, costs and attorneys' fees, we respectfully request leave to then submit papers detailing such costs and fees.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court: (a) determine that it has subject matter jurisdiction over this litigation; or alternatively (b) issue sanctions against Defendant; together with (c) such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 15, 2008

                      Respectfully yours,

                      JUDD BURSTEIN, P.C.,

By:    Peter B. Schalk (PBS-8257)
       1790 Broadway, Suite 1501
       New York, New York 10019
       Tel.: 212-974-2400
       Fax: 212-974-2944

25